## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACOB and JAMES JUNG, as Administrators of the Estate of LOUIS JUNG, JR., | : : : : | No. 2:24-cv-05618-TJS |
| Plaintiff, | : : : | |
| v. | : : | **JURY TRIAL DEMANDED** |
| CITY OF PHILADELPHIA; YesCare Corp.; BLANCHE CARNEY, Former Commissioner of Philadelphia Dept. of Prisons; LALITHA TRIVIKRAM; MAUREEN GAY; Correctional Officer John Does 1-10, | : : : : : : : | |
| Defendants. | : : | |

**Brief in Opposition to City of Philadelphia and Defendant Carney's Motion to Dismiss**

### I.    Introduction

Plaintiffs Jacob and James Jung, as Administrators of the Estate of Louis Jung, Jr. ("Mr. Jung"), initiated the above-captioned case by filing a Complaint against Defendant City of Philadelphia, YesCare Corp, Blanche Carney, Lalitha Trivikram, Maureen Gay, and Doe Defendants 1-10 on October 23, 2024. Dkt. 1, Complaint. The Complaint raises seven counts based on violations of Mr. Jung's constitutional and statutory rights during his incarceration in the Philadelphia Department of Prisons (PDP). *Id*. ¶¶ 151-181. Mr. Jung died a preventable death from diabetic ketoacidosis after a 23-month period of incarceration beset with chronic, severe, and lift-threatening failures to provide proper, necessary treatment for his Type 1 diabetes.

Before the Court is a motion to dismiss filed by the City of Philadelphia and Defendant Carney. Because the claims in the Complaint are supported by abundant, plausible factual allegations that meet all the relevant legal standards, this motion must be denied.

## II.    Relevant Factual Background

The claims in this case arise from the incarceration of Louis Jung, Jr. within the Philadelphia Department of Prisons (PDP) and his death at the Curran-Fromhold Correctional Facility from diabetic ketoacidosis on November 6, 2023. *See* Dkt. 1, Complaint, ¶¶ 1-2 (hereafter "Complaint").[1] Mr. Jung was born on April 16, 1973, and was diagnosed with Type 1 diabetes in his adolescence. *Id*. ¶¶ 50-51. Mr. Jung was arrested and incarcerated in the PDP on December 16, 2021, and had to be hospitalized for diabetic ketoacidosis a mere four days later. *Id*. ¶¶ 55-56. From this beginning of his incarceration until his death, PDP "failed to develop a treatment plan, failed to provide necessary insulin, and failed to properly document Mr. Jung's glucose levels and insulin dosages." *Id*. ¶ 57. This resulted in Mr. Jung requiring emergency hospital treatment for diabetic ketoacidosis on multiple occasions in December 2021, and in January and April 2022. *Id*. ¶¶ 58-59. Despite being aware of Mr. Jung's high-intensity medical needs, PDP officials did not house him in a medical unit or take other necessary steps to ensure that staff properly provided and documented insulin and glucose checks. *Id*. ¶¶ 60-63.

Mr. Jung was committed to Norristown Psychiatric Hospital while incarcerated at PDP. *Id*. ¶ 65. When he returned to PDP from Norristown on October 28, 2023, he was in medical emergency with a glucose level of 542, and he self-reported he had not been provided insulin the previous three days. *Id*. ¶¶ 68-71. The systemic failures of PDP to ensure proper diabetes care once again afflicted Mr. Jung between October 28, 2023 and his death on November 6, 2023. He did not have any medical follow up to provide proper emergency care. *Id*. ¶ 77. He was only provided 7 of 16 doses of prescribed insulin between October 28-31, and the actual insulin dosages he received

---

[1] Facts in this section are those from the Complaint that are the most relevant to the motion before the Court.

were not properly documented. *Id*. ¶¶ 81, 82.  His glucose was only checked 5 of 8 times between October 28-31, and the glucose level was not documented on any of those occasions. *Id*. ¶ 83. Then, between November 1 and 6, Mr. Jung was provided no insulin or glucose checks at all, resulting in his death from diabetic ketoacidosis. *Id*. ¶¶ 84, 88. Correctional Officers in the employ and supervision of the PDP failed to respond to Mr. Jung while he slowly died "despite the fact that the PDP was supposed to train them to recognize symptoms of medical distress, including diabetic ketoacidosis." *Id*. ¶ 87.

The PDP long recognized that the American Diabetes Association provides the appropriate standard of care for treatment of incarcerated diabetes patients. *Id*. ¶ 20. When renewing its contract with Corizon Health (now known as YesCare Corp.) in 2021, the PDP accepted the bid of Corizon that included recognition of the importance of providing care for diabetes patients consistent with the standards of the American Diabetes Association. *Id*. ¶¶ 22-23. The American Diabetes Association provided explicit and copiously detailed standards in an October 2021 position statement. *Id*. ¶¶ 26-47. Despite these standards and PDP's recognition of them, Defendant Carney failed to intervene and ensure that correctional and medical care staff were effectively trained and properly implementing these standards of care. *Id*. ¶¶ 48-49.

Instead, Defendant City of Philadelphia maintained customs and practices of deficient medical care, including diabetes care, that "PDP officials, including defendant Carney, knew of and failed to remedy," and which caused the death of Mr. Jung. *Id*. ¶ 91. These included: a custom of failing to timely respond to medical emergencies; a custom of ignoring the medical needs of incarcerated persons with physical and psychiatric disabilities; a custom of failing to provide care for individuals with diabetes that complied with the standards established by the American Diabetes Association; a custom of failing to provide timely rounds by corrections officers and their failure

to respond to signs and symptoms of distress indicating a need for medical or psychiatric care; a custom of failing to appropriately train, discipline, and/or supervise its employees regarding the protection of persons admitted to the PDP with serious medical problems. *Id.* ¶ 91.

PDP had been plagued by deaths in custody and medical failures in the period preceding Mr. Jung's death. *Id.* ¶ 93. In the year before Mr. Jung's death, 12 people died in PDP facilities, and in previous years several individuals died due to PDP's failures to provide timely emergency medical care. *Id.* One report from the Philadelphia Inquirer in January 2022 indicated that there had been "consistent reports of incarcerated people experiencing chest pain, seizures, diabetic shock, and panic attacks in their cells, while their urgent calls for medical attention went ignored. One man, a 49-year-old diabetic reported that 'there's an emergency button in his cell but it doesn't work. I have had hypoglycemic events and anxiety attacks in my cell with no way to ask staff for help.'" *Id.* The City of Philadelphia and defendant Carney were also aware of other medical emergencies, including deaths, of incarcerated patients from diabetic ketoacidosis. *Id.* ¶¶ 94-100. Despite being aware of these medical failures and deficiencies in providing emergency care and proper care for diabetes, "PDP had a custom or de facto policy to allow egregious gaps in treatment to persist, of failing to provide ADA-compliant diabetic care, and to ignore medical emergencies resulting from such gaps, with deliberate indifference to the fact that ignoring such problems would risk death or grave physical harm for incarcerated patients." *Id.* ¶ 101. This custom included not creating individualized treatment plans for diabetic patients; not creating plans to obtain appropriate A1C levels for diabetes patients; not documenting the dosage levels of insulin provided or the glucose levels of diabetic patients; failing to properly administer insulin and glucose checks to diabetic patients; and failing to properly investigate and remedy allegations contained in lawsuits against them. *Id.* ¶¶ 102-107. Defendants City of Philadelphia and Carney further "failed to put in place

an effective policy of ensuring adequate emergency medical care for those incarcerated at PDP."
*Id*. ¶ 118.

Defendants City of Philadelphia and Carney were further put on notice by the class action
lawsuit, *Remick v. City of Philadelphia*, that resulted in the imposition of a consent decree in April
2022. *Id*. ¶¶ 108-111. This agreement included provisions to ensure adequate staffing and medical
care for individuals like Mr. Jung. The City of Philadelphia was held in contempt of court for its
failure to comply with the consent decree in *Remick* in July 2024, and the noncompliance period
included the period when Mr. Jung died in PDP custody. *Id*. ¶ 112. Defendant Carney further failed
to properly supervise and train staff to ensure incarcerated people in PDP custody received
appropriate treatment. *Id*. ¶ 114. "This supervisory deficiency involved, among other things, a
failure to properly monitor staff compliance with this constitutional mandate, a failure to properly
investigate breaches of this mandate, and a failure to properly discipline and retrain staff following
such breaches." *Id*. ¶ 114.

Mr. Jung's Type 1 diabetes was a condition that substantially limited the function of his
endocrine system, rendering him a qualified individual with a disability within the meaning of
Title II of the Americans with Disabilities Act (ADA). *Id*. ¶¶ 139-140. Defendant City of
Philadelphia was aware of Mr. Jung's disability and is a public entity within the meaning of the
ADA. *Id*. ¶¶ 141-142. Defendant City of Philadelphia failed to provide at least the following eight
reasonable accommodations to Mr. Jung: a) an initial treatment plan upon each admission to PDP;
b) an exercise plan to aid in diabetes care; c) regular glucose level checks; d) regular and prescribed
insulin medication administration; e) documentation of glucose levels and insulin doses; f) a
specialized diabetic diet; g) medically appropriate housing, including placement in the infirmary
to ensure necessary provision of care and medical attention; h) training of staff on signs and

symptoms of ketoacidosis and diabetes care, and emergency attention and care. *Id*. ¶ 144. Defendant City of Philadelphia "discriminated against Mr. Jung by failing to provide him medication that he needed because of his diabetes" and by "fail[ing] to administer regular glucose level checks and insulin administration as needed" and "fail[ing] to provide any care whatsoever in the 6 days preceding his untimely death." *Id*. ¶ 149. In addition to being denied medication and medical services on account of his disability, defendant City of Philadelphia's failure to provide reasonable accommodations resulted in Mr. Jung being "denied access to services and programs including but not limited to congregate activity in the dayroom, visitation, telephone calls, and participation in programming due to illness and hospitalization caused by defendants' failures to provide reasonable accommodations for his Type 1 diabetes." *Id*. ¶ 147. He was also denied appropriate meal services due to defendants' failure to accommodate his diabetes with a medically individualized diet plan. *Id*. ¶ 148.

## III.    Legal Standard

The question for the Court to address in a motion to dismiss is "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009)). In resolving a Rule 12(b)(6) motion to dismiss, the Court accepts all pleaded facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The complaint's function is not to prove the plaintiff's case, but rather to provide "a short and plain statement of the claim showing that the pleader is entitled to relief…to give the defendant fair notice of what the …claim is and the grounds upon which it rests." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (cleaned up).

"[A] complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *White v. Brommer*, 747 F.Supp.2d 447, 457 (E.D. Pa. 2010) (citing *Fowler*, 579 F.3d at 210). Rather, "at this early stage of the proceedings, it is enough…to allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Connelly*, 809 F.3d at 789. The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc.v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## IV.    Argument

### a.    Plaintiffs' abundant factual allegations against the City of Philadelphia and Defendant Carney readily establish plausible *Monell* claims

Pretrial detainees "retain at least those constitutional rights that...are enjoyed by convicted prisoners." *Bell v. Wolfish,* 441 U.S. 520, 545 (1979). Governments are required "to provide for [the] basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety" for those they take into custody and deprive of their liberty. *DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 199-200 (1989). Failure to provide for basic human needs "transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause." *Id.* The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides protections "at least as great as the Eighth Amendment protections available to convicted prisoners." *Boring v. Kozakiewicz,* 833 F.2d 468, 472 (3d Cir. 1987) (internal quotations omitted); *Reynolds v. Wagner,* 128 F.3d 166, 173 (3d Cir. 1997).[2]

---

[2] Plaintiffs do not concede that the Eighth Amendment provides the appropriate standard for resolving the Fourteenth Amendment claims in this case, as Mr. Jung was a pretrial detainee who should be subject to the "objectively unreasonable" standard of *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). Several circuit courts have applied this standard to medical care claims brought by pretrial detainees. *Miranda v. Cty. of Lake*, 900 F.3d 335, 351-2 (7th Cir. 2018); *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1120, 1122–25

The obligation of the government to provide medical care to those in the custody of its jails is non-delegable. *See Johnson v. Stempler*, 373 F. App'x 151, 154 (3d Cir. 2010) (citing *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 705–06 (11th Cir.1985). Municipal defendants are liable when they fail to adopt policies, and when they show customs or practices of inaction, that result in injuries to plaintiffs, where policymakers were deliberately indifferent to and did nothing in the face of such knowledge to change it. *See Beck v. City of Pittsburgh*, 89 F. 3d 966, 971-72 (3d. Cir. 1990). Municipal Defendants are also liable for failing to train and supervise their staff despite being aware of staff members' history of mishandling situations that resulted in the denial of adequate healthcare. *See Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999). To plead a failure to train claim a plaintiff must allege that "(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (cleaned up).

**Count One**

Contrary to Defendants' mischaracterization of the allegations in the Complaint, Plaintiffs did not make "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," Dkt. 14, Defs. Brief in Support of Motion to Dismiss (hereafter "Defs. Brief"), but instead pled numerous specific customs with clearly articulated factual bases that applied to Mr. Jung's incarceration within PDP over a course of 23 months. Plaintiff identified six distinct customs that individually and cumulatively satisfy the pleading standard for *Monell* claims: a

---

(9th Cir. 2018); *Bruno v. City of Schenectady*, 727 Fed.Appx. 717, 720 (2d Cir. 2018). Since Plaintiffs allegations satisfy both the objective unreasonableness and deliberate indifference standard, the Court need not resolve this question at this stage.

custom of failing to timely respond to medical emergencies; a custom of ignoring the medical needs of incarcerated persons with physical and psychiatric disabilities; a custom of failing to provide care for individuals with diabetes that complied with the standards established by the American Diabetes Association; a custom of failing to provide timely rounds by corrections officers; a custom of corrections officers' failing to respond to signs and symptoms of distress indicating a need for medical or psychiatric care; a custom of failing to appropriately train, discipline, and/or supervise its employees regarding the protection of persons admitted to the PDP with serious medical problems. Complaint ¶ 91.

The Complaint further alleged facts specific to Mr. Jung demonstrating that these customs resulted in his death. The failure to develop an individual treatment plan for Mr. Jung, the failure to provide necessary insulin, and failure to document Mr. Jung's glucose levels and insulin dosages resulted in his being hospitalized while in PDP custody for diabetic ketoacidosis on three occasions prior to his death in PDP custody. *Id*. ¶¶ 55-63. These allegations, which span a 23-month period, plausibly support the existence of customs within the PDP of ignoring the medical needs of incarcerated patients with physical and psychiatric disabilities and failing to provide care for diabetic patients consistent with the standards established by the American Diabetes Association.

The circumstances of Mr. Jung's death further support those customs, along with the customs of failing to timely respond to medical emergencies, failing to provide timely rounds by corrections officers, and failure of corrections officers to respond to signs and symptoms of medical distress. In November 2023, Mr. Jung went without insulin or glucose checks for six days, slowly dying from diabetic ketoacidosis, without any correction officer responding to what must have been obvious signs of severe medical distress. *Id*. ¶ 87.

The Complaint then further alleged numerous facts that more than plausibly put Defendants City of Philadelphia and Carney on notice that the PDP had serious and chronic failures to provide necessary medical care, including diabetes care and emergency care, and failures to ensure timely rounds and respond to emergencies by correctional staff. These allegations include the high rate of 12 deaths within PDP facilities in the preceding year, including several deaths identified in the Complaint that support the plausible existence of a custom of correctional officers failing to make timely rounds that could have prevented or responded to violence or medical emergencies. *Id.* ¶¶ 93-100. These included six deaths as well as a report from the Philadelphia Inquirer that spoke of "consistent reports of incarcerated people experiencing chest pain, seizures, diabetic shock, and panic attacks in their cells, while their urgent calls for medical attention went ignored. One man, a 49-year-old diabetic reported that "there's an emergency button in his cell but it doesn't work. 'I have had hypoglycemic events and anxiety attacks in my cell with no way to ask staff for help.'" *Id.* ¶ 93. Additionally, in August 2021, Defendant Carney was provided a letter from the Pennsylvania Institutional Law Project about an incarcerated patient with diabetes that "[t]he PDP has neglected to reliably provide [patient] with medication to treat his diabetes, with detrimental consequences ... On some occasions, his doses have been skipped altogether. With recent staff shortages, these occasions have increased in frequency. Going without insulin is incredibly dangerous for insulin-dependent diabetics and can lead to diabetic ketoacidosis and even death." *Id.* 100. Despite this warning, which occurred a mere four months prior to Mr. Jung's incarceration, Defendant Carney did not take action to ensure that proper care was being provided to diabetic patients in PDP custody.

That these allegations are plausible is further reinforced by the allegations pertaining to the *Remick* litigation, in which Defendants City of Philadelphia and Carney entered into a consent

decree to, *inter alia*, ensure proper medical care in PDP facilities. *Id.* ¶¶ 107-111. In that lawsuit, as alleged in the Complaint, Defendants received further reports of a custom of failing to provide proper diabetes care, as an incarcerated person submitted an affidavit in November 2021 stating that "staff shortages have also affected medical care. I have diabetes and since I have been on this unit, I have missed 4 or 5 blood sugar checks. It is very dangerous as a diabetic to go without monitoring my blood sugar levels." *Id.* ¶110.

These allegations more than establish plausible claims that the City of Philadelphia and Defendant Carney were aware of persistent failures to provide appropriate medical care, including to diabetic patients, and that corrections officers were not making rounds as required or responding to incarcerated people in medical distress.

The Defendants appear to argue that the PDP's contract with a private medical company and Plaintiffs' claims against that company and its employees somehow relieve the City of Philadelphia and Defendant Carney of their constitutional obligations to ensure proper medical care to incarcerated people in their custody. Courts have repeatedly recognized, however, that a county jail's contract with a medical care provider does not "absolve the County of its duty." *Tressler* v. Centre County, 2024 WL 4989315, at *16 (M.D. Pa. Dec. 5, 2024) (citing *Ponzini v. Monroe County*, 2015 WL 5123720, at *10 (M.D. Pa. Aug. 31, 2015). This is because this constitutional obligation is non-delegable. *Johnson*, 373 F. App'x at, 154. *Ramos-Vazquez v. PrimeCare Medical, Inc.*, 2010 WL3855546 (E.D. Pa. Sept. 30, 2010), a case from this district, is instructive in this regard. The Court found these allegations sufficient to plausibly state *Monell* liability against Bucks County:

> Plaintiff alleges that, pursuant to the policies, procedures and/or customs of Berks County or PrimeCare, his effective antipsychotic was confiscated and not replaced, he was prevented from seeing a doctor for at least the first ten days of his incarceration, he was prevented from seeing a psychiatrist until the eighteenth day

of his incarceration, his follow-up appointment with the psychiatrist was delayed, on his release from BCP he was provided with insufficient and ineffective medication, and finally, that he was denied any antipsychotic medication throughout his incarceration. Moreover, Plaintiff alleges that these actions were taken even though prison and PrimeCare personnel were aware that Plaintiff had been diagnosed with schizoaffective disorder and was taking a prescribed antipsychotic until his arrival at BCP. Therefore, Plaintiff alleges, Defendants were aware or should have been aware that failure to treat Plaintiff's schizoaffective disorder could have serious negative consequences.

*Id.* at 9. The Court found that it was "reasonable for Plaintiff to conclude that the actions he complains of were undertaken pursuant to some policy, procedure or custom of at least one of the entities that controlled and implemented medical treatment at the prison," but at the pleading stage the Plaintiff cannot "be expected to know which entity formulated each policy" being challenged. *Id*. For that reason the Court held that the allegations were "sufficient to state a claim against the County and against PrimeCare." *Id.* The same result must follow here, as Plaintiffs' Complaint contains more numerous and more specific allegations regarding *Monell* liability than those found sufficient in *Ramos-Vazquez*.

Defendants also assert without any citation to legal authority that only prior instances of failure to properly treat diabetes are relevant to Mr. Jung's claims. *See* Defs. Brief, p. 5. Defendants erroneously imply that only prior deaths are relevant, ignoring three other instances of alleged failures to provide proper diabetes care. Complaint ¶¶ 93(f), 100, 110. These are in addition to the allegations specific to Mr. Jung that span a 23-month period.[3] But while it is the case there are

---

[3] Defendants also cite five cases for the proposition that Mr. Jung has not alleged a sufficient number of similar prior instances to establish a practice that has "the force of law," but every one of those cases is inapposite to the question in front of the Court. In one, the issue was a discovery dispute in which the Court granted Plaintiff "everything she originally asked for" in regard to her *Monell* claim. *Constantino v. City of Atl. City*, 152 F.Supp. 3d 311, 315(D.N.J. 2015). Of the other four cases, all are outside the Third Circuit, two were at the summary judgment stage, *Peterson v. City of Fort Worth*, 588 F.3d 838 (5th Cir. 2009) and *Giaccio v. City of New York*, 308 Fed. App'x 470 (2d Cir. 2009), and two more were at the trial stage, *Carter v. District of Columbia*, 795 F.2d 116 (D.C. Cir. 1986) and *Jones v. Town of E. Haven*, 691 F.3d 72 (2d Cir. 2012). The obvious distinction between the pleading standard governing a motion to dismiss and the evidentiary standards at play at the summary judgment or trial stages of civil litigation is

ample allegations pertaining to customs of inadequate care for diabetic patients, that is not the relevant legal standard. It is improper "to dismiss a *Monell* claim at the pleadings stage if plaintiffs do not demonstrate 'a high degree of similarity' between prior incidents that are alleged to be similar to the plaintiffs' alleged harm." *Chambers v. City of Philadelphia*, 2024 WL 870574, at *7 (E.D. Pa. Feb. 29, 2024). This principle has been recognized by other courts that have rejected the argument that the pattern of constitutional violations necessary to establish deliberate indifference required incidences involving the same harm suffered by the plaintiff in this case. *See Green v. Meeks,* 2023 WL 1447817, at *8 (S.D. Ill. Feb. 1, 2023) ("Plaintiff does not have to show that other prisoners suffered from the exact same medical condition or physical injury . . . but that the other prisoners suffered from similar constitutional violations resulting from the same policy); *Mollica v. County of Sacramento*, 2021 WL 2417118, at *2 (E.D. Cal. June 14, 2021); *Kaether v. Armor Corr. Health Servs.,* No. 16-62950-CIV, 2017 WL 6507793, at *3 (S.D. Fla. Dec. 11, 2017) (rejecting defendant's objection that concerning medical incidents are too dissimilar to Herring's death to be relevant for the purposes of discovery); *Greer v. Cnty. of San Diego*, 19-CV-378-GPC-DEB, 2021 WL 5989933, at *2–3 (S.D. Cal. Dec. 17, 2021) (ordering the production of records of 13 prior jail deaths because deliberate indifference may be shown by a pattern of similar constitutional violations even though the violations inflict different types of harm to inmates).

Plaintiffs have more than adequately alleged *Monell* claims under Count One of the Complaint against the City of Philadelphia and Defendant Carney. Defendants motion to dismiss these claims must be denied.

**Count V – Failure to Train**

To prove a failure to train claim a plaintiff must:

so axiomatic to the Federal Rules of Civil Procedure that it requires no further argument as to why they are irrelevant to the Court's determination of a motion to dismiss.

> identify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure.

*Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 317 (3d Cir. 2014), *rev'd on other grounds*, *Taylor v. Barkes*, 575 U.S. 822 (2015).

Plaintiffs alleged that the City of Philadelphia had a custom of failing to appropriately train, discipline, and/or supervise its employees on the following bases:

- Failing to train and supervise staff in providing timely responses to medical emergencies;

- Failing to train and supervise staff on recognizing and responding to the medical needs of incarcerated persons with physical and psychiatric disabilities, including diabetes;

- Failing to train and supervise medical staff to provide care for individuals with diabetes that complied with the standards established by the American Diabetes Association;

- Failing to train and supervise correctional staff in making timely rounds and responding to signs and symptoms of distress indicating a need for medical or psychiatric care, including signs and symptoms associated with diabetes;

- Failing to discipline correctional staff who failed in their responsibilities as they relate to medical emergencies.

Complaint ¶ 170. The facts discussed at length in the preceding section also provide adequate allegations to allow the failure to train claim to proceed.

The *Chambers* case is again instructive, as the Court found that factual allegations detailing several instances of failures to respond to medical emergencies, as well as the ongoing reports in the *Remick* litigation were sufficient to sustain a failure-to-train or failure-to-supervise theory against Defendant Carney:

the Court finds that the plaintiffs have adequately pleaded a failure-to-train or failure-to-supervise theory, based on the limited information known to the plaintiffs. The Court easily finds that (1) Commissioner Carney should have expected that C.O.s at CFCF would confront situations in which incarcerated people would report possible medical emergencies, (2) that these choices may be difficult or complex, and (3) the wrong choice—the failure to identify and address a medical emergency—would frequently lead to preventable serious injury or death, in violation of the Eighth Amendment right that incarcerated people have access to adequate medical care. Thus, if the plaintiffs are able to identify training that did not occur or that was deficient, it is plausible that they will be able to prove that the City was deliberately indifferent.

*Chambers*, 2024 WL 870574, at *8 (E.D. Pa. Feb. 29, 2024). The same result must follow here.

Defendants' reliance on *Torres v. City of Allentown*, 2008 WL 2600314 (E.D. Pa. June 30, 2008), is readily distinguishable. Defendants' brief noted that the Court found the *Torres* Complaint insufficient to sustain a failure-to-train claim because it "lack[ed] any specific factual allegations referencing the conduct, time, place, and persons responsible for any municipal policy or custom[.]" Defs. Brief, quoting *Torres*, 2008 WL 2600314, at *5. This quotation, however, is grossly misleading as it omits the full sentence, which reads "The amended complaint lacks any specific factual allegations referencing the conduct, time, place, and persons responsible for any official municipal policy *or custom endorsing the police officers' conduct*." *Id.* (emphases added). The implication of the full sentence is both clear and consistent with the legal standard for a failure-to-train claim, which requires alleging and proving an official municipal policy *or* a custom that effectively endorsed the challenged conduct. Here, the facts alleged in support of Plaintiffs' failure-to-train claims explicate several relevant customs and their factual predicates, and Defendant Carney's awareness and effective endorsement of these customs. The Complaint also has ample allegations of the conduct resulting in injury and death to Mr. Jung, the place (within the PDP), the time period of his incarceration, and the persons responsible, including Defendant Carney. *Torres* in no way supports dismissal of Count Five.

Accordingly, Defendants motion to dismiss Count Five must be rejected as well.

> **b. Plaintiffs are not pursuing a medical malpractice claim against the City of Philadelphia**

As recognized by Defendants, Plaintiffs do not address any of the substantive paragraphs in Count II toward the City of Philadelphia. The inclusion of City of Philadelphia in Count II was in error, and Plaintiffs are not raising or pursuing state law medical malpractice claims against any Defendants other than YesCare, Trivikram, and Gay.

> **c. Plaintiffs alleged numerous failures to provide reasonable accommodations in violation of the Americans with Disabilities Act**

Congress created the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). To state a claim under Title II, a plaintiff must establish that "(1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Calloway v. Boro of Glassboro Dep't of Police*, 89 F. Supp. 2d 543, 551 (D.N.J. 2000); 42 U.S.C. § 12132. Title II of the ADA "has been interpreted as all-encompassing, and without any exception." *Schorr v. Borough of Lemoyne*, 243 F. Supp. 2d 232, 237 (M.D. Pa. 2003) (quotations omitted). ADA protections apply to the activities of correctional institutions. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209-10 (1998).

Importantly, the ADA's text "demonstrates a recognition by Congress that discrimination against persons with disabilities differs from discrimination on the basis of, for example, gender, or race...[A] person with a disability may be the victim of discrimination precisely because [he] did not receive disparate treatment when [he] needed accommodation." *Presta v. Peninsula*

*Corridor Joint Powers Bd*, 16 F. Supp. 2d 1134, 1136 (N.D. Cal. 1998). A public entity, including a prison, violates the ADA by failing to provide reasonable accommodations "in all of their programs, services, and activities" so that individuals with disabilities are accorded equal access or benefit. *Furgess v. Pennsylvania Dep't of Corr.* 933 F.3d 285, 287 (3d Cir. 2019); *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) ("Discrimination under the ADA encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities."). Failure to properly treat or accommodate individuals with diabetes is actionable under the ADA and Rehabilitation Act. *Rouse v. Plantier*, 997 F. Supp. 575, 582 (D.N.J. 1998), *vacated on other grounds*, 182 F.3d 192 (3d Cir. 1999) ("evidence that Defendants either directly or indirectly, *i.e.,* by failing to adequately treat their diabetes and the complications thereof, excluded Plaintiffs from participating in prison programs" satisfies ADA standard). ADA claims and Rehabilitation Act claims are analyzed together because "the substantive standards for determining liability are the same." *Furgess*, 933 F.3d at 288.

In light of the clearly established case law recognizing that failures to provide reasonable accommodations to individuals with disabilities constitutes impermissible discrimination under the ADA and the Rehabilitation Act, Defendants' argument in support of dismissing Counts III and IV is baseless. Defendants argue that "[n]owhere in Plaintiffs' Complaint do they allege discrimination." Defs' Brief at 9.  This is flagrantly untrue.

Plaintiffs' Complaint alleged that Defendant City of Philadelphia's failure to provide these eight distinct reasonable accommodations to Mr. Jung violated the ADA and Rehabilitation Act: a) an initial treatment plan upon each admission to PDP; b) an exercise plan to aid in diabetes care; c) regular glucose level checks; d) regular and prescribed insulin medication administration; e)

documentation of glucose levels and insulin doses; f) a specialized diabetic diet; g) medically appropriate housing, including placement in the infirmary to ensure necessary provision of care and medical attention; h) training of staff on signs and symptoms of ketoacidosis and diabetes care, and emergency attention and care. Complaint ¶ 144. The Complaint also explicitly alleged that the Defendant City of Philadelphia "discriminated against Mr. Jung by failing to provide him medication that he needed because of his diabetes" and by "fail[ing] to administer regular glucose level checks and insulin administration as needed" and "fail[ing] to provide any care whatsoever in the 6 days preceding his untimely death." *Id*. ¶ 149. This failure to provide reasonable accommodations resulted in Mr. Jung being "denied access to services and programs including but not limited to congregate activity in the dayroom, visitation, telephone calls, and participation in programming due to illness and hospitalization caused by defendants' failures to provide reasonable accommodations for his Type 1 diabetes." *Id*. ¶ 147. He was also denied appropriate meal services due to defendants' failure to accommodate his diabetes with a medically individualized diet plan. *Id*. ¶ 148.

The reasonable accommodations that the Complaint alleges were not provided include accommodations necessary to ensure equal access to medical services by failing to provide medication and failing to document glucose levels and insulin dosages, as well as by failing to house him in a medically appropriate housing unit where his health needs would be met; a specialized diabetic diet that would have provided equal access to appropriate nutrition; an exercise plan to ensure equal access to physical recreation that accommodated his diabetic condition; proper training of staff to recognize signs and symptoms of ketoacidosis so as to ensure access to emergency medical services; and all of these accommodations were necessary to prevent health complications arising from untreated or improperly treated diabetes that resulted in multiple

instances of physical injury and hospitalization that further deprived Mr. Jung of access to dayroom activities, visitation, telephone calls, and program participation.

The Defendants' brief makes no mention of these factual allegations, which more than meet the legal standard for stating claims under the ADA and Rehabilitation Act. The argument to dismiss Counts III and IV is frivolous.

### d. Wrongful Death and Survival Actions Must Not Be Dismissed

Defendants' further seek dismissal of the Wrongful Death and Survival Action claims against the City of Philadelphia and Defendant Carney on the basis that these are not independent causes of action. Defs. Brief at 9-10. This argument cannot succeed, however, since the remaining claims raised against the City of Philadelphia and Defendant Carney are properly and plausibly pled and not subject to dismissal. Accordingly, this request to dismiss these claims must be rejected as well.

### V.    Conclusion

For the foregoing reasons, Defendants' City of Philadelphia and Carney's Motion to Dismiss should be denied and Plaintiffs should be allowed to proceed to discovery on their claims.

Respectfully submitted,

*/s/ Bret Grote*
Bret Grote (PA 317273)
*/s/ Nia Holston*
Nia Holston (PA 327384)
*/s/ Rupalee Rashatwar*
Rupalee Rashatwar (PA 331085)
*/s/ Margaret Hu \**
Margaret Hu (PA 334438)
990 Spring Garden
Philadelphia, PA 19123
(412) 654-9070
bretgrote@abolitionistlawcenter.org
nia@alcenter.org
rupalee@alcenter.org

margo@alcenter.org

DATE: January 6, 2025

<u>**CERTIFICATE OF SERVICE**</u>

      I, Bret Grote, hereby certify that on January 6, 2025, I caused to be served a true and correct copy of the foregoing Brief in Opposition to Motion to Dismiss to the following via the Court's ECF system:

            Michael Pestrak
            Deputy City Solicitor
            michael.pestrak@phila.gov

            Counsel for City of Philadelphia and Blanche Carney

            Thomas J. Gregory, Esquire
            O'CONNOR KIMBALL, LLP
            email:  tgregory@okllp.com

            Counsel for YesCare Corp., Lalitha Trivkram, Maureen Gay

*/s/ Bret Grote*
Bret Grote (PA 317273)
990 Spring Garden
Philadelphia, PA 19123
(412) 654-9070
bretgrote@abolitionistlawcenter.org