**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JACOB and JAMES JUNG, as | : | |
| Administrators of the Estate of LOUIS | : | |
| JUNG, JR, | : | No.  2:24-cv-05618-TJS |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **JURY TRIAL DEMANDED** |
| | : | |
| CITY OF PHILADELPHIA; YesCare Corp.; | : | |
| BLANCHE CARNEY, Former | : | |
| Commissioner of Philadelphia Dept. of | : | |
| Prisons; LALITHA TRIVIKRAM; | : | |
| MAUREEN GAY; MARIESHA APOLLON, | : | |
| BLAIR CABELLOS, GENA FRAISER, | : | |
| WANDA BLOODSAW | : | |
| | | |
| Defendants. | | |

**RESPONSE IN OPPOSITION TO DEFENDANT MARIESHA APOLLON'S
MOTION TO DISMISS**

**I.     Introduction**

Plaintiffs Jacob and James Jung, as Administrators of the Estate of Louis Jung, Jr. ("Mr. Jung"),

initiated the above-captioned case by filing a Complaint against Defendant City of Philadelphia,

YesCare Corp, Blanche Carney, Lalitha Trivikram, Maureen Gay, and Doe Defendants 1-10 on

October 23, 2024. Dkt. 1, Complaint. The Complaint raised seven counts based on violations of

Mr. Jung's constitutional and statutory rights during his incarceration in the Philadelphia

Department of Prisons (PDP). Id. ¶¶ 151-181. Mr. Jung died a preventable death from diabetic

ketoacidosis after a 23-month period of incarceration beset with chronic, severe, and life-

threatening failures to provide proper, necessary treatment for his Type 1 diabetes.

Plaintiffs filed a Motion for Leave to File an Amended Complaint on March 13, 2025, Dkt 25,

and the Amended Complaint was deemed filed on March 14, 2025. Dkt. 26. Plaintiffs' Amended

Complaint named four new defendants: Mariesha Apollon, Blair Cabellos, Gena Frasier, and Wanda Bloodsaw. Ms. Apollon was a registered nurse working at PDP, Ms. Cabellos was a licensed practical nurse at PDP, and Ms. Frasier and Ms. Bloodsaw were correctional officers working in the housing unit where Mr. Jung died. All were sued in their individual capacity.

Before the Court is a Motion to Dismiss and Motion to Strike filed by the Defendant Mariesha Apollon. Dkt 35. Because the claims in the Complaint are supported by abundant, plausible factual allegations that meet all the relevant legal standards, this Motion must be denied.

## II.    Relevant Factual Background

The claims in this case arise from the incarceration of Louis Jung, Jr. (hereafter "Mr. Jung") within the Philadelphia Department of Prisons (PDP) and his death at the Curran-Fromhold Correctional Facility from diabetic ketoacidosis on November 6, 2023. *See* Dkt. 27, Complaint, ¶¶ 1-2 (hereafter "Complaint"). Mr. Jung was arrested and incarcerated in the PDP on December 16, 2021, and had to be hospitalized for diabetic ketoacidosis a mere four days later. *Id*. ¶¶ 58-59. From this beginning of his incarceration until his death, PDP "failed to develop a treatment plan, failed to provide necessary insulin, and failed to properly document Mr. Jung's glucose levels and insulin dosages." *Id*. ¶ 60. This resulted in Mr. Jung requiring emergency hospital treatment for diabetic ketoacidosis on multiple occasions in December 2021, and in January and April 2022. *Id*. ¶¶ 61-62. Despite being aware of Mr. Jung's high-intensity medical needs, PDP officials did not house him in a medical unit or take other necessary steps to ensure that staff properly provided and documented insulin and glucose checks. *Id*. ¶¶ 63-66.

Mr. Jung was committed to Norristown Psychiatric Hospital while incarcerated at PDP. *Id*. ¶ 65. When he returned to PDP from Norristown on October 28, 2023, he was in medical emergency with a glucose level of 542, and he self-reported he had not been provided insulin the previous

three days. *Id*. ¶¶ 72-74. Inexplicably however, Defendants Apollon and Gay did not provide emergency care for Mr. Jung's urgent condition, nor did they send him to a hospital to receive emergency care. They instead scheduled him for a chronic care follow up in another 28 days. ¶¶ 77-78. Further, Defendant Apollon entered incorrect information on his chart, stating that he was not diabetic, not taking any medications for medical conditions, despite his prescribed insulin, and that he had not been returned from Norristown Hospital. ¶ 79.

The systemic failures of PDP to ensure proper diabetes care once again afflicted Mr. Jung between October 28, 2023 and his death on November 6, 2023. He did not have any medical follow up to provide proper emergency care. *Id*. ¶ 80. He was only provided 7 of 16 doses of prescribed insulin between October 28-31, and the actual insulin dosages he received were not properly documented. *Id*. ¶¶ 84-85. His glucose was only checked 5 of 8 times between October 28-31, and the glucose level was not documented on any of those occasions. *Id*. ¶ 86. Then, between November 1 and 6, Mr. Jung was provided no insulin or glucose checks at all, resulting in his death from diabetic ketoacidosis. *Id*. ¶¶ 87. Correctional Officers and Medical Staff members failed to respond to Mr. Jung while he slowly died despite the fact that the PDP was supposed to train them to recognize symptoms of medical distress, including diabetic ketoacidosis. *Id*. ¶ 96. Defendant Apollon was required to provide Mr. Jung with necessary and life-sustaining care for his common and treatable illness, instead, he died a preventable and tragic death.

## III.    Legal Standard

### a.    Motion to Dismiss

Motions to dismiss are viewed with disfavor and as such, are rarely granted. 5 Wright and Miller, *Federal Practice and Procedure* § 1357 (1969). The question for the Court is "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for

relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009)).

In resolving a Rule 12(b)(6) motion to dismiss, the Court accepts all pleaded facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The complaint's function is not to prove the plaintiff's case, but rather to provide "a short and plain statement of the claim showing that the pleader is entitled to relief…to give the defendant fair notice of what the …claim is and the grounds upon which it rests." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (cleaned up). As a result, the plausibility standard is not exacting; a complaint may not be dismissed merely because it appears unlikely that the plaintiff will prevail on the merits. *White v. Brommer*, 747 F. Supp. 2d 447, 457 (E.D. Pa. 2010) (citing *Fowler*, 578 F.3d at 210); see also *Phillips v. Cty. Of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). At this stage, it is sufficient for the pleadings to allege "sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Connelly*, 809 F.3d at 789.

**b.  Deliberate Indifference to a Serious Medical Need**

Jail systems have a duty to provide incarcerated persons with medical care. *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). This duty includes the proper treatment of "serious medical needs" such as diabetes. *Oliver v. Wetzel*, 861 F. App'x 509, 515 (3d Cir. 2021). This right is violated when jail officials are deliberately indifferent to the serious medical needs of detainees, including those with diabetes. *Id*. Private contractors hired to provide state functions such as healthcare services are jail employees. To succeed on a deliberate indifference claim, an incarcerated person must show that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly,

or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Estelle*, 429 U.S. at 107. The Supreme Court has concluded that the Fourteenth Amendment affords pretrial detainees protections "at least as great as the Eighth Amendment protections available to a convicted prisoner." *Natale v. Camden Cnty, Corr. Facility*, 318 F.3d 575, 581 (3d. Cir. 2003) (quoting *Ingraham v. Wright*, 430 U.S. 651, 671-72 n. 40 (1977)).

The consensus judicial opinion is that, for constitutional deliberate indifference claims, diabetes is objectively a "serious medical condition." *See, e.g., Ortiz v. City of Chicago*, 656 F.3d 523, 532 (7th Cir. 2011) (identifying diabetes as a "serious medical condition" for the purposes of a deliberate indifference claim); *Williams v. Hartz*, 43 Fed. Appx. 964, 965 (7th Cir. 2002) ("diabetes is a serious medical condition"); *Naphier v. County of Genesee*, No. 11-13754, 2012 WL 6652945, *8 (E.D. Mich. 2012); *Aull v. Osborne*, No. 4:07-cv-00016, 2009 WL 111740, *6 (W.D. Ky. 2009) ("diabetes unquestionably is a serious medical condition"). The well-known risks of harm to incarcerated people with diabetes without adequate monitoring and treatment are such that jail staff's knowledge of a patient's diabetes is, on its own, sufficient to establish notice of a serious treatment need under the Eighth Amendment. The fact that a person has diabetes can be enough to put staff on notice of a need for care. Courts have also recognized the harms associated with severe high or low blood glucose episodes. *See, e.g., Ortiz v. City of Chicago*, 656 F.3d 523, 527, 530-52; *Anders v. Bucks Cnty.*, 2014 WL 1924114, at *1-*2 (E.D. Pa. May 12, 2014); *Phillips v. Roane Cnty., Tennessee*, 534 F.3d 531, 540-41 (6th Cir. 2008). In short, serious harms can be prevented before they occur by providing a sufficient diabetes management plan and emergent care, especially for someone with Type 1 diabetes experiencing dangerously high glucose levels.

Even the mere delay of care can constitute a constitutional violation "if there has been deliberate indifference that results in substantial harm." *Williams v. Certain Individual Emps. Of*

*Texas Dep't of Crim. Just.-Institutional Div. at Jester III Unit, Richmond, Texas*, 480 F.App'x 251, 257 (5th Cir. 2010). Certain courts have held that delay in providing medical care may violate the constitution. *Thomas v. Town of Davie*, 847 F.2d 771,772-73 (11th Cir. 1988). The Tenth Circuit noted that delays that violate the Eighth Amendment frequently involve life-threatening situations in which is it apparent that delay would exacerbate a prisoner's problems. *Id*. Additionally, courts have found that a jury could reasonably conclude that the defendant perceived and disregarded a substantial risk to a plaintiff's health and therefore is deliberately indifferent if an individual conducting an intake screening notes significant medical concerns but does not call for medical care. *Naphier v. County of Genesee*, No. 11-13754 at *28.

### c. Pennsylvania Medical Malpractice Standard

The Pennsylvania Supreme Court has recognized that medical malpractice can be broadly defined as the unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services." *Toogood v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1145 (Pa. 2003). To prevail on a state law medical malpractice claim a plaintiff must show the medical professional defendant had a duty of care to the patient, breached that duty of care, that the breach was a proximate cause of harm to the plaintiff, and that the harm resulted in damages. *Id*. Expert testimony is required to establish that the care and treatment provided to the plaintiff was deficient and that this caused injury to the plaintiff. *Id.*

### d. Motion to Strike

Striking a portion of a pleading is a drastic remedy and is often sought by the movant simply as a dilatory or harassing tactic. *Zarichny v. Complete Payment Recovery Services, Inc.*, 80 F.Supp.3d 610, 615 (E.D. Pa. Jan. 21, 2015) (citing 5C Charles Alan Wright and Arthur R. Miller,

*Federal Practice & Procedure* § 1380 (3d ed. 2014)). Therefore, motions under Rule 12(f) are viewed with disfavor by the federal courts and are infrequently granted. *Id*. A court possesses considerable discretion in disposing of a Rule 12(f) motion to strike. *Id*. Courts usually deny such motions "unless the allegations have no possible relation to the controversy **and** may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Id*. (quoting *River Road Devel. Corp. v. Carlson Corp.-Northeast*, 1990 WL 69085 at *3 (E.D. Pa. May 23, 1990). Therefore, the federal courts have established a standard under which it must be shown that the allegations being challenged are so unrelated to the plaintiff's claims as to be unworthy of any consideration as a defense and that their presence in the pleading throughout the proceeding will be prejudicial to the moving party. *Bloom v. Congregation Beth Shalom*, 2014 WL 356624 (W.D. Pa. Jan. 31, 2014).

### IV.    Argument

#### a.  The Plaintiffs Have Sufficiently Pled Facts Supporting All Claims Against Defendant Apollon

Defendant Apollon claims that "the allegations mentioning Apollon fail to specify any misconduct that would give rise to any liability." Defendant Apollon's Brief in Support of Motion to Dismiss, p. 1. That is simply untrue. Defendant Apollon is a trained medical professional authorized to conduct intake screenings of pre-trial detainees, which regularly include glucose checks. Defendant Apollon saw that Mr. Jung's glucose level at intake was 542, a dangerously high reading that could lead to immediate serious medical complications and required urgent medical attention. Amended Complaint ¶ 73. A reading that high is an indication of severe hyperglycemia, and a potential emergency like diabetic ketoacidosis. Defendant Apollon was a registered nurse, a medical professional that requires specialized schooling, the passage of a

licensing examination, and regular continuing education to be licensed by the Commonwealth of Pennsylvania. Defendant Apollon knew that Mr. Jung had Type 1 diabetes and had been diagnosed with diabetic ketoacidosis in the past. And yet, as alleged in the Amended Complaint, she provided no form of emergent or urgent care that would stop the progression of his condition. *Id*. ¶ 75-76. She did not provide further assessment for diabetic ketoacidosis. She did not initiate emergency protocols or prepare for transport to an Emergency Room. Such care is not merely optional in a medical emergency, it is mandatory and required by the appropriate standard of care, as alleged in the Amended Complaint.

Additionally, Defendant Apollon was aware that Mr. Jung had ketones in his body, the accumulation of which causes diabetic ketoacidosis. *Id*. ¶ 77. This information, in addition to the elevated glucose, should have triggered emergency care to stabilize his condition. *Id*. ¶ 77-78. Instead of taking him to the infirmary or the hospital for consistent and necessary treatment and stabilization, Mr. Jung's medical emergency was not treated as such, resulting in the continuing deterioration of his condition and ultimate death due to the failure of defendants, including defendant Apollon, in providing emergency care. Given the risk faced by Mr. Jung from uncontrolled diabetes, the presence of ketones, and his corresponding need for frequent monitoring, insulin dosages, dietary, and other interventions, the failure to provide emergency care knowingly exposed him to a substantial risk of harm that ultimately resulted in his death.

Further, at such a critical time, Defendant Apollon did not document his chart properly, evincing a flagrant disregard for the most basic medical protocol. She erroneously indicated he did not have diabetes, a fact belied by his very condition and presentation and perhaps the most crucial fact to get right in that moment. The idea that she merely contributed to a "mistake in recordkeeping" ignores the multiple allegations regarding improper care in the Amended

Complaint that demonstrate these failures were part of a pattern of deliberate indifference to a serious need for emergency medical treatment. Defendant Apollon refused to perform her gatekeeping role in a diabetic emergency and Mr. Jung suffered as a result.

Likewise, the Plaintiffs have pled facts sufficient to state a claim on all remaining counts at issue. Defendant Apollon's actions fell well short of the medical standard of care, and her failures were a contributing factor to his death just over one week later. If she had initiated protocols for providing emergency treatment on October 28, 2023, Mr. Jung would have ended up in a hospital until his condition was stable again. Plaintiffs have already indicated why Ms. Apollon's actions constitute deliberate indifference under the Fourteenth Amendment, a higher standard than the negligence standard. Ms. Apollon cites no caselaw in support of her incredulous proposition that failing to provide emergency treatment and properly document known medical conditions falls below the standard of care.

It is also curious that Ms. Apollon would suggest that Plaintiffs allegations are "absent any claim of a deviation from the standard of care or proximate causation of harm" when the Amended Complaint says just that: "Defendant Apollon, Gay, and YesCare employees responsible for medical care for incarcerated people in the intake section of CFCF knew Mr. Jung was possibly suffering from diabetic ketoacidosis on October 28. They then failed to provide prescribed care for the remainder of October, not providing the majority of his prescribed insulin, not providing necessary ketone testing, not providing emergency care…This flagrant and knowing deviation from the standard of care for a patient with type 1 diabetes resulted in a worsening of Mr. Jung's medical emergency." ¶ 88. The same analysis holds true for both the wrongful death and survival actions. Defendants Motion to Dismiss should be denied.

### b.  Defendant Apollon's Motion to Strike Paragraphs 13-52 Should Be Denied

Defendant Apollon asks this Court to strike nearly **_forty_** paragraphs from Plaintiffs' Amended Complaint. This is a drastic measure and wholly inappropriate. In support of her sweeping request, Defendant cites minimal caselaw and doesn't engage in a thorough analysis of why each section, or subsection(s) contained within those paragraphs should be stricken. In fact, these exact paragraphs actually _undermine_ her position that the Plaintiffs failed to state a claim under the various counts. It is strange to suggest that, on the one hand, there is no evidence that her actions fell below the standard of care, and then, on the other hand, file a motion to strike and remove the exact paragraphs that are useful for the Court in evaluating those standards of care, including paragraphs that specifically talk about the medical training provided to employees ¶ 26, screening standards at intake for correctional settings, including standards implemented at PDP ¶ 30, and standards for follow-up once an individual has an extraordinarily high blood glucose level ¶ 47. And while most courts assume that diabetes is a serious medical condition, plaintiffs still must plead specific facts that clearly show the dangerous consequences of improper diabetes care, especially improper diabetes care in correctional settings, otherwise they risk their claims being thrown out.

The paragraphs at issue in defendant's motion to strike assist in rendering Mr. Jung's claims plausible such that they must survive a motion to dismiss. They describe clearly-established medical protocols that would have been known to defendants, and it is the allegations that defendants deviated from these standards that allows the inference that they were deliberately indifferent. The motion to strike must also be denied.

### V.    Conclusion

For the foregoing reasons, Defendant Apollon's Motion to Dismiss under Fed. R. Civ. P.

12(b)(6) and Motion to Strike under Fed. R. Civ. P. 12 (f) should be denied.


Respectfully submitted,

*/s/ Bret Grote*
Bret Grote (PA 317273)
*/s/ Nia Holston*
Nia Holston (PA 327384)
*/s/ Rupalee Rashatwar*
Rupalee Rashatwar (PA 331085)
*/s/ Margaret Hu\**
Margaret Hu (PA 334438)
990 Spring Garden
Philadelphia, PA 19123
(412) 654-9070
bretgrote@abolitionistlawcenter.org
nia@alcenter.org
rupalee@alcenter.org
margo@alcenter.org

DATE: May 14, 2025

## CERTIFICATE OF SERVICE

I, Nia O. Holston, hereby certify that on May 14, 2025, I caused to be served a true and correct copy of the foregoing Brief in Opposition to Motion to Dismiss to the following via the Court's ECF system:

Jonathan M. Kaminsky
Sarah M. Baker
JKaminsky@KiernanTrebach.com
sbaker@kiernantrebach.com

Counsel for Mariesha Apollon


Michael Pestrak
Deputy City Solicitor
michael.pestrak@phila.gov

Counsel for City of Philadelphia and Blanche Carney

Thomas J. Gregory, Esquire
O'CONNOR KIMBALL, LLP
email:  tgregory@okllp.com

Counsel for YesCare Corp., Lalitha Trivkram, Maureen Gay


*/s/ Nia O. Holston*
Nia Holston (PA 327384)
990 Spring Garden
Philadelphia, PA 19123
(267) 357-0948
nia@alcenter.org