IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACOB and JAMES JUNG, as Administrators of the Estate of LOUIS JUNG, JR, | :<br>:<br>:   No. 2:24-cv-05618-TJS |
| Plaintiff, | :<br>: |
| v. | :   **JURY TRIAL DEMANDED** |
| CITY OF PHILADELPHIA; YesCare Corp.; BLANCHE CARNEY, Former Commissioner of Philadelphia Dept. of Prisons; LALITHA TRIVIKRAM; MAUREEN GAY;  MARIESHA APOLLON; BLAIR CABELLOS; GENA FRASIER; WANDA BLOODSAW, | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: |
| Defendants. | |

**BRIEF IN SUPPORT OF MOTION TO COMPEL DISCOVERY**

### I.     Introduction

This matter arises from a complaint filed by Plaintiffs on behalf of the Estate of Louis Jung, Jr. against the Defendant City of Philadelphia, YesCare Corp., Blanche Carney, Lalitha Trivikram, Maureen Gay, Mariesha Apollon, Blair Cabellos, Gena Frasier, and Wanda Bloodsaw (collectively, "Defendants"). Dkt. 27, First Amended Complaint. The Complaint raised seven counts based on violations of Mr. Jung's constitutional and statutory rights during his incarceration in the Philadelphia Department of Prisons (PDP). Id. ¶¶ 151-181. Mr. Jung died a preventable death from diabetic ketoacidosis after a 23-month period of incarceration beset with chronic, severe, and life-threatening failures to provide proper, necessary treatment for his Type 1 diabetes.

Pursuant to Federal Rules 26 and 37, Plaintiffs James and Jacob Jung ("Plaintiffs") herby file this brief in support of their motion to compel defendants YesCare Corp, Lalitha Trivirkram, Maureen Gay, and Blair Cabellos (collectively, "YesCare Defendants" or "YesCare) to provide

1

complete responses and full discovery production to Plaintiffs' First Set of Requests for Production to YesCare. Plaintiffs move to compel defendants to produce five categories of documents they have refused to provide: (1) all documents pertaining to or referencing Louis Jung Jr. in YesCare's possession; (2) all documents pertaining to the operation of the Pharmacist-Directed Diabetes Initiative at PDP facilities; (3) all investigations, audits, assessments, etc. into the provision of diabetes care within PDP facilities conducted by YesCare or its predecessors between January 1, 2015 and the present; (4) all Performance Improvement Plains produced by YesCare Corp or its predecessor pertaining to the provision of medical care in PDP facilities between January 1, 2018 and December 31, 2023; and (5) all medical records in YesCare's possession pertaining to the admission to or treatment of patients with Type 1 or Type 2 diabetes in a hospital or outside medical facility. These documents will supply necessary evidence of the grievous problems at the Philadelphia Department of Prisons related to the provision of medical care that resulted in the death of Mr. Jung, and will lead to a just and efficient resolution of this case.

## II.     Procedural History

Plaintiffs recount herein the relevant facts pertaining to their efforts to obtain the information that is the subject of this motion against YesCare through the discovery process.

On February 11, 2025, this Court issued its initial case management order, which established that all fact discovery was to be completed by June 6, 2025. Dkt. 23. On February 20, 2025, Plaintiffs sent Requests for Production of Documents (RPD) and Interrogatories to YesCare Defendants. Ex. 1, Plaintiffs' RPD's. The RPDs included the following requests that are relevant to this brief:

> 2. All documents pertaining to or referencing Louis Jung, Jr. in YesCare's possession, including medical records; mental health records; grievances; disciplinary records; sick call slips or requests for medical care; requests to staff;

2

correspondences or emails to, from or about Mr. Jung; Report of Investigation Office of Special Investigations into the death of Louis Jung, Jr. and any correspondence, communications, or subsequent actions taken in response to the investigation in the death of Louis Jung, Jr., including any disciplinary action against staff.

3. All documents pertaining to the operation of the Pharmacist-Directed Diabetes Initiative at PDP facilities between January 1, 2020 and December 31, 2023.

. . .

6. Any investigation, audit, assessment, evaluation, report, analysis, or any inquiry into the provision of diabetes care within PDP facilities conducted by YesCare or its predecessor between January 1, 2015 and the present, including Qualify Assurance plans and Performance Improvement Plans.

7. All Performance Improvement Plans produced by YesCare Corp. or its predecessor, Corizon, pertaining to the provision of medical care in PDP facilities between January 1, 2018 and December 31, 2023.

10. All medical records in possession of YesCare pertaining to admissions to and treatment within any PDP infirmary or medical unit or to an outside medical facility such as a hospital that involve patients with Type 1 or Type 2 diabetes between January 1, 2020 and December 31, 2023.[1]

The "Pharmacist-Directed Diabetes Initiative and Performance Improvement Plans were both terms used in the contract for services between YesCare and the City of Philadelphia, which was initially entered into between the City and Corizon, Inc., the predecessor company of YesCare. Ex. 2, Contract Excerpts.

On March 14, 2025, Plaintiffs submitted their unopposed amended complaint, adding Defendants Mariesha Apollon, Wanda Bloodsaw, Mariesha Apollon, and Blair Cabellos. Defendant Cabellos is also represented by counsel for YesCare.

---

[1] Plaintiffs also requested this information from the City of Philadelphia Defendants. Counsel for the City Defendants informed Plaintiffs' counsel that he would have to obtain these documents from YesCare, which is why this motion is directed at YesCare only. The evidence sought is relevant to the claims against all Defendants.

3

On March 12, 2025, Plaintiffs agreed to a 15-day extension for all Defendants' responses to Plaintiffs' discovery requests, making responses due April 7, 2025. On April 8, 2025, a day after discovery requests were due, Defendant YesCare still had not sent their responses. Plaintiffs' counsel emailed YesCare Counsel inquiring about the status of said responses. On April 16, 2025, Defendant YesCare still had not responded to Plaintiff's initial set of discovery requests or the previous email. Plaintiffs' counsel emailed YesCare Counsel again, informing him that responses were now nine days overdue and requesting a meet and confer. On April 18, 2025, YesCare Counsel responded via email, informing Plaintiff's counsel that answers to the interrogatories and document production would be forthcoming following his assistant's return to the office, on April 22, 2025. On April 24, 2025, Plaintiffs' counsel emailed YesCare Counsel again, following up on the aforementioned responses. Later that day, Plaintiffs' counsel received limited responses to their first set of Interrogatories and Requests for Production of Documents from YesCare Defendants. Ex. 3, YesCare RPD Responses.

On May 22, 2025, the Court granted an additional 60 days for discovery and ordered that all fact discovery should be completed no later than August 1, 2025.

On May 27, 2025, Plaintiffs sent YesCare counsel a letter outlining deficiencies in Defendants' discovery responses, which included lacking or incomplete responses for production, boilerplate objections, and unverified interrogatory responses. *See* Ex. 4, May 27 Deficiency Letter. In the same letter, Plaintiffs requested a telephonic conference to discuss these requests no later than June 3, 2025.

On June 4, 2025, and in response to a motion filed by Plaintiffs, this Court entered a protective order that will allow Defendants to produce documents and information that are responsive to discovery requests in a confidential manner that ensures the protection of patient health

4

information. Dkt. 50. The Court issued a subsequent order allowing Defendants to redact any personal identifying information for patients other than the decedent that were turned over in discovery. Dkt 52.

On June 2, 2025, Plaintiffs' Counsel and YesCare Counsel conferred via telephone conference. During that call, counsel for YesCare indicated that he had not learned if YesCare did any evaluation, called a "Sentinel Report," into the death of Louis Jung, Jr., but surmised that he thought they would have. He also had not sought to determine if any documents pertaining to the Pharmaicist-Directed Diabetes Initiative requested in RPD 3 existed for the time-period in question, or whether Performance Improvement Plans as requested in RPD 7 existed for the time period in question. Plaintiffs' counsel explicitly asked to be notified if the PIPs went by any other name and made it clear that any audit, assessment, or evaluation "pertaining to the provision of medical care in PDP facilities between January 1, 2018 and December 31, 2023" were being sought. Counsel for YesCare also indicated that he had not attempted to identify responsive documents to RPD #10.

Following this discussion, YesCare Counsel agreed to send along outstanding and revised discovery documents by June 10, 2025. On June 6, 2025, Plaintiffs emailed YesCare Counsel modifying Request for Production #10 so that it now was requesting "All medical records in possession of YesCare pertaining to admissions to and treatment within an outside medical facility such as a hospital that involve patients with Type 1 or Type 2 diabetes between January 1, 2020 and December 31, 2023." Ex. 5, Email of 6/6/25.

On June 9, 2025, Plaintiffs' Counsel sent a letter summarizing the status of outstanding discovery issues pertaining to YesCare's production. Ex. 6, June 9 Letter to YesCare Counsel. On June 11, 2025, Plaintiffs had yet to receive any further discovery responses and emailed counsel

5

for YesCare Defendants requesting a response within 24 hours, further production, and a timeline for all pending requests. YesCare Counsel responded promising production by the end of the day. Plaintiffs later received supplemental document and responses to production from YesCare Counsel via his assistant. Ex. 7, YesCare Supplemental Responses.

On June 12, 2025, due to the inadequacy of the additional production, Plaintiffs emailed counsel for YesCare Defendants inquiring about the existence or withholding of further documents, illegible pages, and any attempt to identify responsive records for Request for Production #10. In that email, Plaintiffs' counsel advised that we will have to seek Court intervention if outstanding issues were not resolved. Ex. 8, Email of 6/12/25.  Plaintiffs requested a response by June 13, 2025. Counsel for YesCare did not respond.

On June 16, 2025, Plaintiffs' counsel informed counsel for YesCare that a motion to compel was forthcoming. Counsel for YesCare did not respond.

### III.   Argument

#### a. *Legal Standard*

The information that is relevant for discovery purposes is determined by the legal standard Plaintiffs must prove to prevail on their claims. For claims against municipal governments, such as the City of Philadelphia, violations of the federal constitution are found if such violations were the result of a policy or custom of the municipality. *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 690-691 (1978). "[T]o prove [] claims" of municipal liability, a Section 1983 plaintiff "must have the opportunity to establish a pattern or practice of conduct on the part of the City that evidences deliberate indifference." *McCoy v. City of Phila.*, 2023 WL 4108834, at *1–2 (E.D. Pa. June 20, 2023) (Pappert, J.) (cleaned up).

Private corporations under contract with state or local governments to provide medical services to people in custody can be held liable under § 1983 as such conduct is "fairly attributable to the state" and "[c]ontracting out medical care does not relieve the [municipality] of its constitutional duty to provide adequate medical treatment to those in its custody, and does not deprive state's prisoners of means of vindication of their Eighth Amendment rights under § 1983." *West v. Atkins*, 487 U.S. 42, 56 (1988). A private corporation contracted by the government to provide medical services at a local correctional facility can be held liable if the defendant corporation acted pursuant to a policy or custom that caused a Plaintiff's constitutional rights to be violated. *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003).

Moreover, "[t]he great weight of the policy in favor of discovery in civil rights actions supplements the normal presumption in favor of broad discovery," which "[t]ogether . . . suggest that the defendants' case for restricted disclosure must be extremely persuasive." *King v. Conde*, 121 F.R.D. 180, 195 (E.D.N.Y. 1988) (Weinstein, J.) Fed. R. Civ. P. 26(b)(1) generally permits a broad scope of discovery. *Swain v. General Motors Corp*., 81 F.R.D. 698, 700 (W.D. Pa. 1979). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope need not be admissible in evidence to be discoverable." Fed. R. Civ. Pro. 26(b)(1). Relevance encompasses any matter that bears on, or reasonably could lead to other matters that could bear on any issue that is or may be in the case. *Oppenheimer Fund Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

7

Objections to discovery requests must comply with Fed R. Civ. P. 34(b)(2)(C), which requires that objections "must state whether any responsive materials are being withheld on the basis of [the] objection." In addition to the requirement to identify any responsive materials being withheld, objections may not be boilerplate. *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982). Instead "the party resisting discovery must show specifically how . . . each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive." *Id*. The Third Circuit has subsequently recognized the applicability of this standard in assessing the appropriateness of any discovery request. *Redland Soccer Club, Inc. v. Department of Army of U.S.*, 55 F.3d 827, 856 (3d Cir. 1995) (remanded for reconsideration of "the *Josephs* standards" in addressing request for document production).

Rule 37(a) authorizes a motion for enforcing discovery obligations. *See* Wright & Miller 8B Fed. Prac. & Proc. Civ. § 2285 (3d ed.). Rule 37(a)(3)(B) says that such a motion can be used to compel discovery when a deponent fails to answer a question, when a party fails to answer an interrogatory, or when a party fails to comply with a Rule 34 request, or when a corporate party fails to designate a representative to respond on its behalf to discovery. *Id*.  Before filing a motion to compel further discovery pursuant to Rule 37(a), the aggrieved party must attempt to confer with the unresponsive party in an effort to obtain the desired material without court action. All motions to compel must include a certification that such an effort has been made. *Id*.

    **b. Plaintiffs' discovery requests are relevant, discoverable, and this Court should compel their production**

Plaintiffs ask the Court to compel production of the following discovery requests:

- RPD #2, which requests "All documents pertaining to or referencing Louis Jung, Jr. in YesCare's possession", as applied to any "Sentinel Report" or other inquiry into the circumstances of Mr. Jung's death."

Any report on the death of the decedent in this case by the Defendant medical care company that was obligated to provide him with care is relevant. Defendants have failed to identify any specific objection to production of this report in their response to RPD #2 or their supplemental response, instead in both instances referring to document production that did not contain any Sentinel Report or a report by any other name into Mr. Jung's death.

YesCare has failed to identify whether there are responsive documents being withheld, in contravention of their obligations. *See Josephs*, 677 F.2d at 992. Additionally, Defendants have waived any specific objection to this request by failing to raise it in a timely fashion. Absent good cause, the failure to timely respond to discovery requests results in a waiver of the objection. See Fed. R. Civ. P. 33(b)(4); *Harris v. PV Holding Corp.*, No. 09-1568, 2009 U.S. Dist. LEXIS 74462, at *3 (E.D. Pa. Aug. 20, 2009) (citing *Rintchen v. Walker*, No. 95-6861, 996 WL 238701, at *1 (E.D. Pa. May 7, 1996); and, *Keystone Medical Corp. V. Rosner*, No. 86-6400, 1987 WL 6015, at *1 (E.D. Pa. Jan. 29, 1987) ("failure to object to the request for production of documents and depositions of witnesses within the time fixed by the rules constitutes a waiver of any objection")).

If, however, Defendants attempt to argue that any such Sentinal Report is precluded from discovery due to a peer review privilege, such an objection is unavailing in any event. While it is the case that states often provide some form of protection to materials developed through a medical peer review process, the overwhelming weight of federal authority establishes that such protections do not apply in cases, like this one, involving federal civil rights claims. Most relevant is the decision in *Agster v. Maricopa County*, 422 F.3d 836 (9th Cir. 2005). In that case, the plaintiff estate brought a civil rights wrongful death action alleging that the decedent died as a result of the defendants' improper conduct while the decedent was detained in a county jail. *Id.* at 837-38. In discovery, the estate sought production of a mortality review conducted by the private contract

entity providing medical services at the jail, and the defendants objected to production of the review based on Arizona's statutory peer review privilege. *Id.* at 838-39. On appeal from the district court's order directing production of the requested materials, the court rejected the assertion of privilege.

At least one district court in the E.D.Pa. has already recognized that the peer-review privilege must give way in these circumstances. "We are satisfied that permitting Corizon to withhold the mortality and sentinel-event reviews does not promote sufficiently important interests to outweigh the need for probative evidence. We agree with the Ninth Circuit Court of Appeals that "in the prison context[,] the safety and efficiency of the prison" render it 'peculiarly important that the public have access to the assessment by peers of the care provided.' *Agster v. Maricopa Cnty.*, 422 F.3d 836, 839 (9th Cir. 2005) (declining to apply peer-review privilege in context of prisoner civil-rights lawsuit)." *Williams v. City of Phila.*, No. 08-1979, 2014 U.S. Dist. LEXIS 156480, at *10 (E.D. Pa. Nov. 4, 2014). The same result must follow here if YesCare attempts to raise this objection.

Defendants must search for and produce any Sentinel Report or other investigation, assessment, inquiry, or other review of the death of Louis Jung, Jr. in their possession.

- <u>RPD #3: All documents pertaining to the operation of the Pharmacist-Directed Diabetes-Initiative at PDP facilities between January 1, 2020 and December 31, 2023.</u>

This request seeks documents pertaining to a contractually-required treatment initiative for incarcerated patients with diabetes, which is relevant to Plaintiffs' claims pertaining to the death of their father from diabetic ketoacidosis while in the care of YesCare Defendants.

Defendants have failed to identify whether any documents exist, whether the Pharmacist-Directed Diabetes Initiative was in effect in the relevant time period. See Exhibits 3 and 7, RFP Response 3. Instead, they directed Plaintiffs to their production, which does not include any such

documents. Accordingly, they have failed to properly object to this RPD and have waived any right to do so. *Harris v. PV Holding Corp.*, No. 09-1568, 2009 U.S. Dist. LEXIS 74462, at *3 (E.D. Pa. Aug. 20, 2009). Plaintiffs are entitled to responsive documents to this request.

- <u>RPD #6 and #7: Any Performance Improvement Plans or Quality Assurance plans or audits, assessments, or reports regarding the provision of diabetes or medical care provided by YesCare Corp., or its predecessor, Corizon, pertaining to the provision of medical care in PDP facilities between January 1, 2018 and December 31, 2023.</u>

Again, Defendants responses to these requests are deficient, and they have failed to state any specific objection. *Harris v. PV Holding Corp.*, No. 09-1568, 2009 U.S. Dist. LEXIS 74462, at *3 (E.D. Pa. Aug. 20, 2009). Defendants have produced two audits of diabetes care that post-date the death of Mr. Jung, but they failed to produce any from prior to his death, or, in the alternative to indicate if there are no such responsive documents. Plaintiffs requested this via the email sent to counsel for YesCare on 6/10/25, but there has been no response. Ex. 5., email of 6/12/25.

Plaintiffs also have not been provided any indication that Performance Improvement Plans, as identified in the contract for Corizon, now YesCare, have been searched for, let alone produced. In the event that any comparable audit, performance evaluation, or assessment of the care provided within PDP in the relevant time period was produced under a different heading, Plaintiffs request that it be produced due to it being fairly encompassed in RPDs 6 and 7.

That Performance Improvement Plans and audits of diabetes and medical care in PDP facilities are relevant in a case raising *Monell* and corporate liability claims for policies and customs of deficient medical care over an approximately 23-month period is beyond dispute. These must be produced.

- <u>RPD #10: All medical records in possession of YesCare pertaining to admissions to and treatment within an outside medical facility such as a hospital that involve patients with Type 1 or Type 2 diabetes between January 1, 2020 and December 31, 2023.</u>

Plaintiffs have narrowed this request as initially stated so that it now seeks medical records for diabetic patients in PDP custody who were admitted to a hospital or other outside medical facility in a four-year period. Defendants have made no effort to identify these patients or their records, instead objecting on the basis that they do not track patients by illness. See Exhibit 7. This objection misses the mark for several reasons.

First, it strains credulity that YesCare cannot identify who in their care has diabetes and requires treatment for such. How do they determine who is provided with glucose checks and insulin during medication administration? How do they track and search through information? They have provided no details on why this is not ascertainable.

Second, even if they do not track individual patients by illness, that does not prevent them from responding to the request, which is focused on those admitted for care outside of PDP. YesCare must identify who was sent to the hospital, and this certainly can be done. To transport an incarcerated person off-site requires coordination with PDP, transport orders, and associated documentation. It is not credible that this information is not tracked and cannot be discerned.

Third, the fact that Defendants may have an inadequate recordkeeping system is not a sufficient objection. *See Caruso v. Coleman Co.*, 157 F.R.D. 344, 349 (E.D. Pa. 1994) ("The lack of an adequate filing system has not excused a party from producing requested documents."); *Baxter Travenol Labs., Inc. v. LeMay*, 93 F.R.D. 379, 383 (S.D. Ohio 1981) ("[A]n unwieldy record-keeping system, which requires heavy expenditures in money and time to produce relevant records, is simply not an adequate excuse to frustrate discovery."); *Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 76 (D. Mass. 1976) ("To allow a defendant whose business generates massive records

12

to frustrate discovery by creating an inadequate filing system, and then claiming undue burden, would defeat the purposes of the discovery rules.").

To date, Defendants position appears to be that they have tried nothing and they are all out of ideas. That is inadequate to prevent discovery of these relevant documents, which are likely to lead to the discovery of admissible evidence in the form of records of diabetes patients in the custody of PDP who were also receiving inadequate care for their diabetes by YesCare, thus putting Defendants on notice of the policies and customs that resulted in the improper care – and ultimate death – of Louis Jung, Jr.

The existence of this Court's issuance of a protective order and the order allowing for redaction of personal identifying information clearly contemplate that medical records or other medical information of patients other than Mr. Jung may be relevant and can be produced. Plaintiffs ask the Court to compel the records sought in RPD #10 as modified.

## IV. Conclusion

Therefore, this Court should order Defendants to disclose documents responsive to RPDs 2, 3, 6, 7, and 10, as argued above.

Respectfully submitted,

*/s/ Bret Grote*
Bret Grote (PA 317273)
*/s/ Nia Holston*
Nia Holston (PA 327384)
*/s/ Rupalee Rashatwar*
Rupalee Rashatwar (PA 331085)
*/s/ Margaret Hu*
Margaret Hu (PA 334438)
990 Spring Garden
Philadelphia, PA 19123
(412) 654-9070

bretgrote@alcenter.org  
nia@alcenter.org  
rupalee@alcenter.org  
margo@alcenter.org  

14

## CERTIFICATE OF SERVICE

  I, Bret Grote, hereby certify that on June 17, 2025, I caused to be served a true and correct copy of the foregoing Plaintiffs' Brief in Support of Motion to Compel to the following via the Court's ECF system:

  Jonathan M. Kaminsky
  Sarah M. Baker
  JKaminsky@KiernanTrebach.com
  sbaker@kiernantrebach.com

  Counsel for Mariesha Apollon


  Michael Pestrak
  Deputy City Solicitor
  michael.pestrak@phila.gov

  Counsel for City of Philadelphia and Blanche Carney

  Thomas J. Gregory, Esquire
  O'CONNOR KIMBALL, LLP
  email:  tgregory@okllp.com

  Counsel for YesCare Corp., Lalitha Trivkram, Maureen Gay


*/s/ Bret Grote*
Bret Grote (PA 317273)
990 Spring Garden
Philadelphia, PA 19123
(412) 654-9070
bretgrote@abolitionistlawcenter.org