# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JACOB and JAMES JUNG, as Administrators of the Estate of LOUIS JUNG, JR., | : : : No. 2:24-cv-05618-TJS |
| Plaintiff, | : : : |
| v. | : **JURY TRIAL DEMANDED** : |
| CITY OF PHILADELPHIA; YesCare Corp.; BLANCHE CARNEY, Former Commissioner of Philadelphia Dept. of Prisons; LALITHA TRIVIKRAM; MAUREEN GAY; Correctional Officer John Does 1-10, | : : : : : : |
| Defendants. | : |

**PLAINTIFFS FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO**
**DEFENDANTS YESCARE CORP., LALITHA TRIVKRAM, AND MAUREEN GAY**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs Jacob and

James Jung as the Administrators of the Estate of Louis Jung, by their undersigned counsel,

hereby request that Defendants YesCare Corp., Trivikram and Gay produce all responsive

documents to the following requests.

**INSTRUCTIONS**

1.      You are required in responding to these document requests to obtain and produce

all responsive documents in your possession, custody, or control including your counsel.

2.      Where specific documents are requested, such request shall be interpreted to

include any other documents that contain information relevant or responsive to the request other

than exact duplicate documents.

3.      If a document described by the request was but no longer is in existence or subject to the control of you or your attorney, state: (a) the last known location of that document; (b) the names of all persons with knowledge of the contents of the document; and (c) why the document is no longer in existence or subject to such control.

4.      If a document responsive to a request was previously provided to Plaintiff's counsel please state in your response: (a) the name or title of the document; (b) the name of the Plaintiff's counsel to whom the document was provided; and (c) the method by which the document was provided (e.g., email, etc.).

5.      Each request represents a continuing and ongoing request for production. The fact that Defendants may have ongoing investigations or inquiries regarding the subjects covered by these Requests is no basis to withhold responsive documents that currently exist. If additional responsive documents are created or received after service of your responses to these Requests, you must promptly produce such documents without another or further request and revise and serve updated discovery responses consistent with the Federal Rules of Civil Procedure.

6.      Any document request propounded in the disjunctive shall also be read as propounded in the conjunctive and vice versa. Any document request propounded in the singular shall also be read as propounded in the plural and vice versa. Any document request propounded in the present tense shall also be read as propounded in the past tense and vice versa. The word "each" shall be understood to include and encompass "every" and vice-versa. "All" and "any" should be understood to mean "any and all."

7.      If a document request calls for a response as to which you claim any privilege, set forth each and every fact on which your claim of privilege is based with sufficient specificity to permit the court to make a determination as to whether your claim of privilege is valid, including,

but not limited to: (a) the number and particular part of the document request to which the claimed privileged information is responsive; (b) a description of the information or communications; (c) the date and time of the information or communications; (d) the basis upon which the privilege is claimed; and (e) the identity of each person (other than the attorneys representing you in this action) to whom the information or contents of the communication have been disclosed, either orally or by document.

8.     If you object to any document request on the ground that the request is overbroad, you are instructed to respond to the document request as narrowed to conform to your objection within the thirty-day period allowed for a response.

9.     If you object to any document request in whole or in part on the ground that the request is unreasonably burdensome, identify the approximate number and nature of the documents needed to be searched, the location of the documents, and the number of person-hours and costs required to conduct the search. You are instructed to respond to the document request as narrowed to conform to your objection within the thirty-day period allowed for a response.

10.     No document request should be left unanswered. If the answer to a request or subparagraph of a request is "none" or "unknown," the word "none" or "unknown" must be written in the answer. If the request is inapplicable, "n/a" must be written as the response.

11.     Produce photographs, video, and audio recordings responsive to a document request in the format in which they were originally created. Where photographs were taken digitally, produce an electronic copy. Where photographs exist only in hard copy, produce high resolution copies printed on standard photographic stock.

12.     Unless otherwise stated in the individual Requests below, the time period applicable to each Request is from January 1, 2020 - present.

## DEFINITIONS

Unless specifically stated otherwise, these requests for the production of documents shall be read and interpreted in accordance with the definitions set forth below:

1.  The terms "you," and "your" and "YesCare" mean the YesCare Corp, as well as all arms, branches, agencies, institutions, and departments of YesCare Corp., including all employees, agents, and others acting on behalf thereof.

2.  The term "Defendant(s)" refers to Defendants in the above-captioned action.

3.  The term mental health care includes, but is not limited to, care provided by a psychiatrist, psychologist, or social worker.

4.  The term "person(s)" means any natural person and/or any corporation, association, government body or agency or other business enterprise or legal entity, and means both the singular and plural.

5.  The terms "document(s)" and "record(s)" include all materials listed in Rule 34(a) of the Federal Rules of Civil Procedure (including, but not limited to, written, typewritten, printed, recorded, taped, graphic, magnetic, photographed, filmed, and computer-based materials) in the possession, custody, or control of you or your attorney, or known by you or your attorney, to exist. If a document has been prepared in several copies, or additional copies have been made that are not identical (or no longer identical by reason of subsequent notation or other modification of any kind whatever, including without limitation notations on the backs of pages thereof) each non-identical copy is a separate document to be produced.

6.  The term "correspondence" refers to letters, e-mails, texts, electronic communications, telexes, facsimiles, memoranda, and any other documents used to make or to record communications.

7.      The terms "concern," "concerning," "relate," "relating," "refer," and "referring" mean concerning, relating to, referring to, recording, regarding, evidencing, containing, setting forth, constituting, establishing, compromising, reflecting, memorializing, showing, disclosing, describing, explaining, summarizing, substantiating, supporting or negating (whether directly or indirectly), identifying, or pertaining to.

8.      The terms "policy" and "policies" refer to any rules, regulations, guidelines, customs, laws, procedures, directives, practices, or courses of conduct, whether formal or informal, written or unwritten, recorded, or unrecorded.

## REQUESTS FOR PRODUCTION

1.      All documents referenced or relied on by Defendants in responding to Plaintiffs' First Set of Interrogatories produced in a manner that clearly identifies the documents and the corresponding Interrogatory.

2.      All documents pertaining to or referencing Louis Jung, Jr. in YesCare's possession, including medical records; mental health records; grievances; disciplinary records; sick call slips or requests for medical care; requests to staff; correspondences or emails to, from or about Mr. Jung; Report of Investigation Office of Special Investigations into the death of Louis Jung, Jr. and any correspondence, communications, or subsequent actions taken in response to the investigation in the death of Louis Jung, Jr., including any disciplinary action against staff.

3.      All documents pertaining to the operation of the Pharmacist-Directed Diabetes Initiative at PDP facilities between January 1, 2020 and December 31, 2023.

4.      For the period between January 1, 2021 and December 31, 2024, all YesCare Corp. policies, protocol, clinical guidelines, memorandum, or orders in effect regarding:

    a.   Access to medical care;

    b.   Diabetes care;

    c.   Mental health care;

    d.   Disability accommodation;

    e.   Intake screening and medical clearance;

    f.   Protocols for routine medication administration with lower staffing numbers;

    g.   Inmate refusals of healthcare services;

    h.   Admissions to specialized medical housing units or an infirmary;

5.       For the period between January 1, 2021 and December 31, 2024, provide all documents utilized in training correctional and medical care staff employed by or working within PDP facilities on the following subjects:

    a.   Recognizing and responding to signs and symptoms of medical distress;

    b.   Recognizing and responding to signs and symptoms of diabetes;

    c.   Recognizing and responding to signs and symptoms of mental illness;

    d.   Documenting medical care, including documenting insulin dosages, glucose checks, and other aspects of diabetes care;

    e.   Classification and placement in and administration of Medical housing units.

6.       Any investigation, audit, assessment, evaluation, report, analysis, or any inquiry into the provision of diabetes care within PDP facilities conducted by YesCare or its predecessor between January 1, 2015 and the present, including Qualify Assurance plans and Performance Improvement Plans.

7.       All Performance Improvement Plans produced by YesCare Corp. or its predecessor, Corizon, pertaining to the provision of medical care in PDP facilities between

January 1, 2018 and December 31, 2023.

8.      All documents tracking the number and identities of inmates with diabetes at PDP between January 1, 2020 and November 30, 2023, including lists of inmates identified at intake who require placement in PDP's chronic care clinic for diabetes and automatic scheduling for chronic care appointments in eCW via the Clinical Rules Engine.

9.      All documents involved in assessing patient outcomes and performance metrics for the provision of diabetes care at PDP facilities between January 1, 2020 and December 31, 2023.

10.     All medical records in possession of YesCare pertaining to admissions to and treatment within any PDP infirmary or medical unit or to an outside medical facility such as a hospital that involve patients with Type 1 or Type 2 diabetes between January 1, 2020 and December 31, 2023.

11.     Any investigation into staff misconduct, negligence, or failure to abide by policy in the provision of diabetes care, including the result(s) of those investigation and any remedial or disciplinary measures taken in response between January 1, 2020 and June 1, 2024.

12.     All deposition or trial transcripts for all of the named defendants.


Respectfully submitted,

*/s/ Bret Grote*
Bret Grote (PA 317273)
*/s/ Nia Holston*
Nia Holston (PA 327384)
*/s/ Rupalee Rashatwar*
Rupalee Rashatwar (PA 331085)
*/s/ Margaret Hu \**
Margaret Hu (PA 334438)
990 Spring Garden

Philadelphia, PA 19123
(412) 654-9070
bretgrote@abolitionistlawcenter.org
nia@alcenter.org
rupalee@alcenter.org
margo@alcenter.org

DATE: February 20, 2025

# EXHIBIT 2



All incoming medications are reconciled with the shipping manifest using barcode scanning technology to identify discrepancies in real time.

### *Sophisticated High-Level Clinical Initiatives*

Corizon Health is proud of the accomplishments the clinical pharmacist has achieved, incorporating patient care and cost-effective and appropriate medication selection into sophisticated, high-level decision points that extend beyond traditional pharmacy services. The onsite clinical program is distinguished by its results-proven clinical pharmacy offerings such as the **Pharmaceutical Forecasting Service**, **Pharmacy and Therapeutics Meetings**, **Formulary Management**, and **Clinical Education Programs** add value to PDP.  We are also excited to offer PDP key clinical enhancements, like the **Pharmacist-Directed Non-formulary Management Program** and patient consults. Corizon Health recognizes the challenges that face correctional healthcare systems today, and we believe a multidisciplinary approach, inclusive of Clinical Pharmacy Services, brings results.

The clinical pharmacist has achieved success in the implementation of patient-directed pharmaceutical care. The pharmacist-driven, disease state management program allows for excellent quality of care, provider accountability, improved adherence, and greater cost savings. The mature clinical models, initiatives, and tested outcomes have made the clinical pharmacist an integral part of the healthcare team for PDP. The following list provides a sampling of successes and current initiatives:

**Diabetes Care** has been significantly improved through the Pharmacist-Directed Diabetes Initiative. Patients are identified for enrollment in the clinical pharmacist clinic through physician referrals and inclusion in chronic care clinics. Physician referrals are most often generated by concerns of noncompliance and poly-pharmacy. In addition to the enrollment of patients referred by physicians, the clinical pharmacist identifies patients through utilization reports and medical chart reviews. This initiative specifically targets patients diagnosed with poorly controlled or uncontrolled diabetes, hypertension and hyperlipidemia.

**Anticoagulation** Warfarin therapy is considered to be the second most dangerous medication regimen in the country because of its narrow therapeutic index. When managed inappropriately, patients receiving warfarin require increased provider time and increased utilization of other healthcare resources.   Currently our clinical pharmacist collaborates with the treating physician in monitoring all the warfarin patients in PDP, which has resulted in improved patient outcomes.

**Asthma** costs have significantly increased on a national level over the past three years, primarily due to overutilization of albuterol and the dramatic increase in the cost of this agent, due to EPA formulation requirements. Our clinical pharmacist, in collaboration with the treating physicians, has had a positive impact on asthma costs. He conducts routine medication use evaluations to identify patients who are potentially overusing their albuterol inhalers and also steps down patients whose asthma is well-controlled and meet step down criteria per National Heart Lung and Blood Institute.

**Hypertension** is a disease state that is responsive to patient education and lifestyle changes. The clinical pharmacist has assisted the treating physicians with this patient population through counseling and patient education in chronic care clinics.

Successful Applicant must fully orient all administrative and regional staff to the contractually required scope of services prior to the Contract start. Additionally, all new employees must be oriented to this scope of services and complete HIPAA training within two weeks of employment. Prior to employment, Contract Staff are required to attend 2 days of security training provided by PDP and must receive a PDP security clearance.

### 35. Significant Clinical Incidents

Successful Applicant shall document and report significant incidents that occur on site and analyze those incidents for possible changes in policy and procedure. These incidents include medical emergencies, life threatening adverse reactions to medication, suicide attempts, disease outbreaks or similar extraordinary occurrences. All reporting will recognize the PDP chain of command and will include PDP Executive Staff as well as appropriate system and facility staff. Self-injury attempts must be reviewed and analyzed in relation to written self-injury prevention policies. Successful Applicant will further be requested to cooperate with the Commissioner of Prisons in providing additional information or completing reports as required. Self-injury attempts are to be reported immediately and must be reviewed and analyzed in relation to written self-injury prevention polices. Self-injury prevention policies must provide for identification, training, assessment, monitoring, housing, intervention, notification, reporting, review and critical incident debriefings.

### 36. Quality Assurance and Quality Improvement

Successful Applicant must provide its current Performance Measurement and Quality Assurance (QA) plans, together to be known as the Performance Improvement Plan (PIP), within 60 days of Contract execution. Successful Applicant must review these plans specific to the Contract and thereafter review and report this review to PDP monthly including self-critical analysis and trending of quantifiable performance by facility. The QA plan must include clinical guidelines for chronic diseases (at a minimum: asthma, COPD, diabetes, viral hepatitis, hypertension, seizure disorders, sickle cell disease, HIV, HCV, intoxication and detoxification), nurse protocols for acute illnesses, airborne and blood-borne pathogen control following CDC and/or OSHA guidelines and infection control (including, at a minimum, STDs and MRSA). The PIP is subject to PDP approval. The PIP must provide for monitoring of all significant aspects of healthcare including at least the following: access to care, timeliness of care, timeliness of medication management, appropriateness of care, nursing services, physician services, access to specialty care, access to behavioral health services, pharmacy services, dental services, environmental services, infection control procedures, healthcare records, sick call services, Intake screening and evaluations, chronic disease services, infirmary care, diagnostic services, and adverse patient occurrences including all deaths. The PIP Program must identify all deficiencies in services to inmates as well as any staff training needs and/or deficiencies. Corrective action plans to address all deficiencies must be prepared, reported to the Office of the Chief of Medical Operations and implemented promptly, and the PIP Program (Program) shall include ongoing assessment of the effectiveness of corrective plans and actions. The Program shall include self-critical reviews of inmate deaths and other significant adverse outcomes and a prompt written report to PDP following each of these reviews. A multi-disciplinary Quality Improvement Committee chaired by the Chief of Medical Operations shall meet regularly, review trends in performance data, and perform reviews of all significant aspects of health care

34

*Revised: October 2020*

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PA**

| | | |
|---|---|---|
| JACOB and JAMES JUNG as Administrators | : | |
| for the Estate of LOUIS JUNG, JR. | : | |
| v. | : | CASE NO. 24-CV-05618 |
| CITY OF PHILADELPHIA; YES CARE CORP., | : | |
| BLANCHE CARNEY, LALITHA TRIVIKRAM, | : | |
| MAUREEN GAY, and CORRECTIONAL | : | |
| OFFICER JOHN DOES 1-10 | : | |

**ANSWER OF DEFENDANTS, YES CARE CORP.,**
**LALITHA TRIVIKRAM, AND MAUREEN GAY, TO PLAINTIFF'S**
**FIRST SET OF REQUEST FOR PRODUCTION OF DOCUMENTS**

Pursuant to the applicable Rules of Civil Procedure, the Answering Defendants, YesCare Corp., Lalitha Trivikram, and Maureen Gay, respond to Plaintiff's Request to Produce. Each response is subject to all objections as to competence, relevance, materiality, propriety, and admissibility, and to any and all other objections on any grounds that would require the exclusion of any statements or documents contained herein if such documents were asked of, or documents contained herein were made by, a witness presented and testifying in Court, all of which objections and grounds are expressly reserved and may be interposed at the time of Trial.

Answering Defendants respond to Plaintiff's Request to Produce subject to the following objections and responses ("General Objections"), expressly preserving and without waiving such objections, the Answering Defendants do not waive any of these objections by making responses or by providing documents attached hereto.

## GENERAL OBJECTIONS

I. Answering Defendant objects to Plaintiff's Request to Produce to the extent that they seek information protected from disclosure by the attorney/client privilege, the work/product doctrine, or any other applicable privilege, rule of law or statute limiting discovery. To the extent applicable, any waiver of such privilege will be set forth specifically in the response to the request for production of documents.

II.    Answering Defendants object to Plaintiff's Request to Produce to the extent that they are overly broad, unduly burdensome and/or seek information that is not relevant to the subject matter of this action and were reasonably calculated to the discovery of admissible evidence.

III.    Answering Defendants object to Plaintiff's Request to Produce to the extent that they seek information concerning activities, policies, practices or procedures of any other party or person not under Answering Defendants' control, because those parties or persons are best able to provide responses concerning their operations.

IV.    All objections and responses to Plaintiff's Request to Produce are made by the Answering Defendants, subject to, and without in any way waiving or intending to waive, but on the contrary, intending to reserve and reserving the right to object to other discovery practices and procedures involving or relating to the subject matter of the interrogatories.

V.    Answering Defendants object to Plaintiff's Request to Produce subject to and without in any way waiving or intending to waive, and expressly reserving any objections as to competency, relevancy, materiality, privilege, and admissibility of any information and documents.

VI.    Answering Defendants reserve the right to produce additional information and documents and to assert additional objections.

VII.    Answering Defendants object to Plaintiff's request for production of documents to the extent that the requests are in violation of the Rules of Civil Procedure, specifically, that the requests fail to provide a description of the specific documents requested with reasonable particularity.  By way of further objection, Answering Defendants specifically object to the attempts by the Plaintiff to obtain file material regarding matters of representation between Answering Defendants and their counsel.  Answering Defendants assert that the Plaintiff's attempt to obtain such information is improper, and the production of such information is protected from disclosure by the attorney/client privilege and/or the work/product doctrine.

VIII.    The General Objections shall be applicable and included in Answering Defendant's responses to Plaintiff's Request to Produce as if set forth in full therein.

# REQUESTS FOR PRODUCTION

1.      All documents referenced or relied on by Defendants in responding to Plaintiffs' First Set of Interrogatories produced in a manner that clearly identifies the documents and the corresponding Interrogatory.

**ANSWER:**      See documents produced, Bates-stamped YesCare 1-3250.

2.      All documents pertaining to or referencing Louis Jung, Jr. in YesCare's possession, including medical records; mental health records; grievances; disciplinary records; sick call slips or requests for medical care; requests to staff; correspondences or emails to, from or about Mr. Jung; Report of Investigation Office of Special Investigations into the death of Louis Jung, Jr. and any correspondence, communications, or subsequent actions taken in response to the investigation in the death of Louis Jung, Jr., including any disciplinary action against staff.

**ANSWER:**      See response to #1.

3.      All documents pertaining to the operation of the Pharmacist-Directed Diabetes Initiative at PDP facilities between January 1, 2020 and December 31, 2023.

**ANSWER:**      See response to #1.

4.      For the period between January 1, 2021 and December 31, 2024, all YesCare Corp. policies, protocol, clinical guidelines, memorandum, or orders in effect regarding:
   a.      Access to medical care;
   b.      Diabetes care;
   c.      Mental health care;
   d.      Disability accommodation;
   e.      Intake screening and medical clearance;
   f.      Protocols for routine medication administration with lower staffing numbers;
   g.      Inmate refusals of healthcare services;
   h.      Admissions to specialized medical housing units or an infirmary;

**ANSWER:**      See response to #1.

5.       For the period between January 1, 2021 and December 31, 2024, provide all documents utilized in training correctional and medical care staff employed by or working within PDP facilities on the following subjects:
   a.      Recognizing and responding to signs and symptoms of medical distress;

| | |
|---|---|
| b. | Recognizing and responding to signs and symptoms of diabetes; |
| c. | Recognizing and responding to signs and symptoms of mental illness; |
| d. | Documenting medical care, including documenting insulin dosages, glucose checks, and other aspects of diabetes care; |
| e. | Classification and placement in and administration of Medical housing units. |

**ANSWER:**    See response to #1.

6.    Any investigation, audit, assessment, evaluation, report, analysis, or any inquiry into the provision of diabetes care within PDP facilities conducted by YesCare or its predecessor between January 1, 2015 and the present, including Qualify Assurance plans and Performance Improvement Plans.

**ANSWER:**    See response to #1.

7.    All Performance Improvement Plans produced by YesCare Corp. or its predecessor, Corizon, pertaining to the provision of medical care in PDP facilities between January 1, 2018 and December 31, 2023.

**ANSWER:**    See response to #1.

8.    All documents tracking the number and identities of inmates with diabetes at PDP between January 1, 2020 and November 30, 2023, including lists of inmates identified at intake who require placement in PDP's chronic care clinic for diabetes and automatic scheduling for chronic care appointments in eCW via the Clinical Rules Engine.

**ANSWER:**    See response to #1.

9.    All documents involved in assessing patient outcomes and performance metrics for the provision of diabetes care at PDP facilities between January 1, 2020 and December 31, 2023.

**ANSWER:**    See response to #1.

10.    All medical records in possession of YesCare pertaining to admissions to and treatment within any PDP infirmary or medical unit or to an outside medical facility such as a hospital that involve patients with Type 1 or Type 2 diabetes between January 1, 2020 and December 31, 2023.

**ANSWER:**    See response to #1.

11.     Any investigation into staff misconduct, negligence, or failure to abide by policy in the provision of diabetes care, including the result(s) of those investigation and any remedial or disciplinary measures taken in response between January 1, 2020 and June 1, 2024.

**ANSWER:**     There have been no specific investigations related to the provision of diabetes care.  By way of further response, to the extent that this request seeks the discovery of any documents related to procedures conducted by the answering defendant pursuant to the PSQIA, such are privileged and not discoverable.  By way of further response, to the extent that this request seeks information which would reveal the identity of inmates other than the plaintiffs' decedent, no such disclosure would be permissible pursuant to HIPAA.

12.     All deposition or trial transcripts for all of the named defendants.

**ANSWER:**      It is believed that Dr. Lalitha Trivikram has been deposed in another matter.  A search is being made for a transcript of that deposition.

**O'CONNOR KIMBALL LLP**

By:     *Thomas J. Gregory*
        Thomas J. Gregory, Esquire
        Two Penn Center Plaza, Suite 1100
        1500 John F. Kennedy Boulevard
        Philadelphia, PA 19102
        215-564-0400          Facsimile: 215-564-1973
        Email: tgregory@okllp.com
        Our File No. 210-2544
        *Attorney for Defendants, YesCare Corp., Lalitha*
        *Trivikram, M.D., and Maureen Gay, N.P.*

Dated:  April 24, 2025

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACOB and JAMES JUNG, as | : | |
| Administrators of the Estate of LOUIS | : | |
| JUNG, JR, | : | No. 2:24-cv-05618-TJS |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| CITY OF PHILADELPHIA; YesCare | : | |
| Corp.; BLANCHE CARNEY, Former | : | |
| Commissioner of Philadelphia Dept. of | : | |
| Prisons; LALITHA TRIVIKRAM; | : | |
| MAUREEN GAY;  MARIESHA | : | |
| APOLLON; BLAIR CABELLOS; GENA | : | |
| FRASIER; WANDA BLOODSAW, | : | |

Defendants.

### Discovery – Letter Describing Deficiency of Production

Dear Counsel:

On February 20, 2025, Plaintiffs directed Request for Production of Documents (RPDs) and Interrogatories to defendants YesCare Corp., Lalitha Trivikram, and Maureen Gay [hereafter "YesCare Defendants"]. On March 12, Plaintiffs' counsel agreed to a 15-day extension for defendants to respond. The YesCare Defendants responded on April 24, 2025, producing limited responses to a number of RPDs and Interrogatories.

Though Plaintiffs' counsel made nearly two dozen requests, you have failed to provide any discovery beyond Mr. Jung's medical records, which were already previously provided to counsel, YesCare policies, and insurance information. Moreover, you have not provided us with any indication of your opinion on the proposed protective order, which was sent to you on May 6, 2025, which we need to continue to move this case forward in a timely and efficient manner.

Pursuant to Federal Rule of Civil Procedure 37, we are writing to challenge the failure to respond to Plaintiff's discovery requests in full in an attempt to resolve these matters. In the event that defendants continue their refusal to produce documents and written discovery relevant to this litigation and discoverable pursuant to Fed. R. Civ. P. 26(b), 33, and 34, Plaintiffs will file a motion to compel discovery. Plaintiff reserves the right to make further objections or challenges if necessary.

The produced responses are deficient for the following reasons.

### 1. Specific Requests for Production of Documents

First, your responses to RPD's 3, and 5-11 have not produced **any** responsive documents, nor any responses which indicate what documents are being withheld. For RPD 4, the protocol for diabetes treatment, which is identified in the interrogatories, has not been produced. Neither have any policies pertaining to disability accommodation been produced. Additionally, you did not lodge any specific objections to any request other than RPD 11. You state the following: "By way of further response, to the extent that this request seeks the discovery of any documents related to procedures conducted by the answering defendant pursuant to the PSQIA, such are privileged and not discoverable. By way of further response, to the extent that this request seeks information which would reveal the identity of inmates other than the Plaintiffs' decedent, no such disclosure would be permissible pursuant to HIPAA."

These requests are plainly relevant under *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). Your objection is not valid in light of our good faith effort to come to an agreement on a protective order, which would allow the production of these documents. Further, objections based on the PSQIA, which establishes the privileges for "patient safety work product" do not apply to information developed, collected, or maintained separately from a patient safety evaluation system, and therefore "such separate information or a copy thereof reported to a patient safety organization shall not by reason of its reporting be considered patient safety work product." 42 U.S.C. § 299b-21(7)(B)(ii).

Second**,** RPD 2 is incomplete. There are no records of any relevant disciplinary actions pertaining to staff for failure to provide proper care to Mr. Jung, nor are there any emails produced involving discussion of Mr. Jung. It does not appear a search has even been conducted for emails.

Third, every one of the defendants' general objections fails under the *Josephs* standards due to their being boilerplate, lacking in the requisite particularity and specificity required under Fed. R. Civ. P. 34(b)(2)(C). *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982) ("[T]he mere statement by a party that [an] interrogatory was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection to an interrogatory."); *Redland Soccer Club, Inc. v. Department of Army of U.S.*, 55 F.3d 827, 856 (3d Cir. 1995).

Fourth**,** RPDs 1-11 additionally fail to comply with Fed R. Civ. P. 34(b)(2)(C), which requires that objections "must state whether any responsive materials are being withheld on the basis of [the] objection." That is virtually every request, save the first request for documents relied on in answering the interrogatories submitted by plaintiffs. Most of these responses direct Plaintiffs to a batch of documents that have been produced, but they fail to identify if any are being withheld, and it appears that many of the requests have not resulted in the production of any actually responsive documents.

In summary, we demand revised answers to all RPDs. Given the requests at issue, the overlapping issues pertaining to identification of withheld documents, the relevance of the requests under *Natale* and other applicable constitutional and statutory standards at issue in this case, the need to discuss an appropriate protective order, we believe the most efficient manner to proceed is to promptly schedule a meet and confer in order to address these requests *in seriatim*.

## 2. Interrogatory Responses Not Verified by Defendants

Federal Rule of Civil Procedure 33(b) clearly requires defendants to sign the responses under oath and for defendants' counsel to sign the objections. "The interrogatories must be answered (A) by the party to whom they are directed" and [t]he person who makes the answers must sign them, and the attorney who objects must sign any objections." Fed. R. Civ. P. 33(b)(1), (5). Moreover, each answer must be "in writing under oath." Fed. R. Civ. P. 33(b)(3). Without signed verification by Defendants, the Interrogatory responses are not valid. "interrogatory responses not verified by the [responding party] are not valid responses." *See, e.g., In re Asbestos Prods. Liab. Litig*, 2012 U.S. Dist LEXIS 165332, at *21-24 (E.D. Pa. 2012) (citing cases, including a case explaining that the attorney becomes a witness by signing the interrogatory responses); *see also id.* at *26 ("The authorities are clear that this verification is mandatory and a substitute by counsel is simply insufficient.").

Defendants interrogatory responses are not verified by defendants, even though they are the parties to whom the interrogatories were directed. The only signature is from defendants' counsel, "Thomas Gregory," not any of the defendants. Because the responses are signed by counsel, but not signed by defendants, the responses are not valid.

Please provide the proper verification for the Interrogatory responses, including amended responses that address further deficiencies outlined *infra*.

## 3. Specific Interrogatory Responses

Interrogatories 1-2 can be addressed with an agreed-upon productive order. Plaintiffs are willing to work in good-faith with counsel for YesCare Defendants to define "sustained instances" for interrogatory 2.

Interrogatories 3-5 all reference documents that were not properly produced in response to the RPDs. These are the "diabetes clinical pathway", "hyperglycemia/hypoglycemia NET form", and "Modules in YesCare Unviersity." Plaintiffs' counsel also requires clarification as to what "NETS" refers to in 5.

Interrogatory 6 references the PSQIA, as did RPD 11, but that acronym is not defined, nor is there any authority cited as to what privilege protects these audits, quality assurance reviews, and any other similar assessments from identification and production.

Interrogatory 11 describes malingering but does not actually identify if there are any policies, practices, or training for identifying malingering that were in place for YesCare employees working in PDP facilities. Please clarify if there are any such policies, practices, or training.

### Conclusion

YesCare Defendants have not fully complied with their obligations to respond to Plaintiffs discovery requests. The form and content of the responses to the Interrogatories and the Request for Production of Documents are deficient under the well-established standards of the Federal Rules of Civil Procedure as interpreted by the Third Circuit Court of Appeals.

We are seeking a promptly scheduled telephonic conference to discuss these requests no later than June 3.

Failure to resolve these matters to the parties' mutual agreement will result in our seeking court intervention.

Sincerely,

*/s/ Bret Grote*
Bret Grote (PA 317273)
*/s/ Nia Holston*
Nia Holston (PA 327384)
*/s/ Rupalee Rashatwar\**
Rupalee Rashatwar (PA 331085)
*/s/ Margaret Hu*
Margaret Hu (PA 334438)
990 Spring Garden
Philadelphia, PA 19123
(412) 654-9070
bretgrote@abolitionistlawcenter.org
nia@alcenter.org
rupalee@alcenter.org
margo@alcenter.org

DATE: May 27, 2025

# EXHIBIT 5

## Jung v. City of Philadelphia - modified RPD #10

1 message

**Bret Grote** <bretgrote@alcenter.org>                                    Fri, Jun 6, 2025 at 12:55 PM
To: Thomas Gregory <tgregory@okllp.com>
Cc: Nia <nia@alcenter.org>, Rupalee Rashatwar <rupalee@alcenter.org>, Margaret Hu <margo@alcenter.org>

Tom,

We are willing to modify and narrow Plaintiffs' Request for Production of Documents #10 so that it now requests the following:

10. All medical records in possession of YesCare pertaining to admissions to and treatment within an outside medical facility such as a hospital that involve patients with Type 1 or Type 2 diabetes between January 1, 2020 and December 31, 2023.

If these documents are not forthcoming we will include this narrowed request in a motion to compel.

Thank you.

Bret Grote
Legal Director
Abolitionist Law Center

# EXHIBIT 6



**Abolitionist Law Center**
990 Spring Garden
Philadelphia, PA 19123
abolitionistlawcenter.org

June 9, 2025

Thomas J. Gregory
Two Penn Center Plaza, Suite 1100
1500 John F. Kennedy Boulevard
Philadelphia, PA 19102

**Re: Outstanding discovery issues in *Jung v. City of Philadelphia*, 2:24-cv-05618-TJS**

Counsel,

      This letter details outstanding issues in the Requests for Production of Documents (RPDs) and Interrogatories submitted to your clients by Plaintiffs in *Jung v. City of Philadelphia*. The notes contained herein are based on the most recent phone conference between ourselves and you on June 2, 2025.

      During that call, you indicated you will be providing revised discovery responses and further information on Tuesday, June 10. We anticipate that this will result in production of information requested by Plaintiffs and discussed below, including information that will be covered by the protective order that has now been approved by the Court.

      We understand that for several requests you had to determine if there were responsive documents. If there are responsive documents then we expect a timely production of those documents.

      Here are the outstanding discovery issues:

**Requests for Production of Documents**

- **RPD 1:** All documents reference or relied on by Defendants in responding to Plaintiffs' First Set of Interrogatories produced in a manner that clearly identifies the documents and the corresponding Interrogatory.
    - o Attorney Gregory will produce NETs, Chronic Care Policy, Diabetes Clinical Pathways, YesCare University Modules.
    - o Attorney Gregory indicated YesCare undergoes "Quarterly QI Diabetes Auditing, and a DKA Spot Check Audit on in 12/2023. Plaintiffs assert that these must be produced. Defendants objection, contained in response to ROG 6, cites no legal authority, and Plaintiffs do not believe any legal authority allows withholding of these documents.
    - o Additionally, if YesCare conducted a "Sentinel Event" review or other review of the death of Louis Jung, Jr., Plaintiffs assert that this must be produced.

- **RPD 2:** All documents pertaining to or referencing Louis Jung, Jr. in YesCare's possession, including medical records; mental health records; grievances; disciplinary records sick call slips or requests for medical care; requests to staff; correspondences or emails to, from or about Mr. Jung; Report of Investigation Office of Special



**Abolitionist Law Center**
990 Spring Garden
Philadelphia, PA 19123
abolitionistlawcenter.org

Investigations into the death of Louis Jung, Jr. and any correspondence, communications, or subsequent actions taken in response to the investigation in the death of Louis Jung, Jr., including any disciplinary action against staff.

- o Attorney Gregory is seeking a formal answer regarding whether any disciplinary action was taken in response to the investigation into Mr. Jung's death.
- o Attorney Gregory maintains that there are no responsive emails involving Mr. Jung. Revised responses should indicate this.

- **RPD 3:** All documents pertaining to the operation of the Pharmacist-Directed Diabetes Initiative at PDP facilities between January 1, 2020 and December 31, 2023.
  - o Attorney Gregory will check to see if there is anything responsive and reflect this in his revised responses.

- **RPD 4:** For the period between January 1, 2021 and December 31, 2024, all YesCare Corp. policies, protocol, clinical guidelines, memorandum, or orders in effect.
  - o Attorney Gregory will provide the Nursing Encounter Tools (NET's), chronic care clinic policy, Diabetes Clinical Pathway, and determine if there is a responsive disability accommodation policy.

- **RPD 5:** For the period between January 1, 2021 and December 31, 2024, provide all documents utilized in training correctional and medical care staff employed by or working within PDP facilities on the following subjects:
  - o Attorney Gregory stated that the NET's will have this information and these will be produced. Revised answer will reflect that all applicable responsive documents have been produced.

- **RPD 6:** Any investigation, audit, assessment, evaluation, report, analysis, or any inquiry into the provision of diabetes care within PDP facilities conducted by YesCare or its predecessor between January 1, 2015 and the present, including Qualify Assurance plans and Performance Improvement Plans.
  - o Attorney Gregory will determine if there are responsive documents and revise his answer to reflect that they exist and are being produced, or that there are no responsive documents.

- **RPD 7:** All Performance Improvement Plans produced by YesCare Corp. or its predecessor, Corizon, pertaining to the provision of medical care in PDP facilities between January 1, 2018 and December 31, 2023.
  - o Attorney Gregory will determine if there are responsive documents that use this term or if another term is utilized, and revise his answer to reflect that they exist and are being produced, or that there are no responsive documents.

- **RPD 8:** All documents tracking the number and identities of inmates with diabetes at PDP between January 1, 2020 and November 30, 2023, including lists of inmates identified at intake who require placement in PDP's chronic care clinic for diabetes and

**Abolitionist Law Center**
**990 Spring Garden**
**Philadelphia, PA 19123**
abolitionistlawcenter.org

automatic scheduling for chronic care appointments in eCW via the Clinical Rules
Engine.
  - o  Attorney Gregory will determine how this information is maintained.
  - o  Plaintiffs position is that the protective order in place permits disclosure of this
       information, though the Court permits the redaction of patient names.

- **RPD 9**: All documents involved in assessing patient outcomes and performance metrics
  for the provision of diabetes care at PDP facilities between January 1, 2020 and
  December 31, 2023.
  - o  Attorney Gregory will determine what review YesCare Corp. provided for its
       diabetes care within PDP during this time period.

- **RPD10, modified by Plaintiffs' counsel's email of 6/6/25:** All medical records in
  possession of YesCare pertaining to admissions to and treatment within an outside
  medical facility such as a hospital that involve patients with Type 1 or Type 2 diabetes
  between January 1, 2020 and December 31, 2023.
  - o  Plaintiffs position is that the protective order in place permits disclosure of this
       information, though the Court permits the redaction of patient names.

- **RPD11:** "Any investigation into staff misconduct, negligence, or failure to abide by
  policy in the provision of diabetes care, including the result(s) of those investigation and
  any remedial or disciplinary measures taken in response between January 1, 2020 and
  June 1, 2024."
  - o  Attorney Gregroy is going to determine whether there was a Sentinel report was
       generated in response to Mr. Jung's death. Plaintiffs assert this must be produced
       if it exists.

- **RPD 12**: All deposition or trial transcripts for all of the named defendants.
  - o  Attorney Gregory will produce a deposition transcript of Dr. Trivikiam.

**Interrogatories**

- **ROG1**: "Identify the number of individuals that were provided diabetes care in PDP
  facilities by YesCare Corp. or its predecessor, Corizon, between January 1, 2020 and
  November 20, 2023, including their names, dates of their incarceration, housing unit, and
  whether they had Type 1 or Type 2 diabetes."
  - o  Plaintiffs position is that the protective order in place permits disclosure of this
       information, though the Court permits the redaction of patient names.

- **ROG2**: "Identify all sustained instances where YesCare staff working in PDP facilities
  failed to respond to a need for emergency medical care between January 1, 2020 and
  December 31, 2023, including the name of the officer(s) involved, the nature of the
  medical emergency, any injury or injuries suffered by the patient, and any remedial or
  disciplinary action taken in response."



Abolitionist Law Center
990 Spring Garden
Philadelphia, PA 19123
abolitionistlawcenter.org

    o  Attorney Gregory will meet with his clients and go through these and supplement as appropriate.

- **ROG3:** "Identify all policies, memoranda, protocols, clinical guidelines, or other instructions pertaining to the provision of diabetes care within PDP facilities."
  - o Attorney Gregory will provide the Nursing Encounter Tools (NET's), chronic care clinic policy, Diabetes Clinical Pathway, and revise responses to indicate all responsive documents have been identified and provided.

- **ROG4:** "Identify all trainings, training materials, presentations, and educational materials that YesCare staff or contractors were provided regarding recognition of signs and symptoms of diabetes."
  - o Attorney Gregory will provide the Nursing Encounter Tools (NET's), chronic care clinic policy, Diabetes Clinical Pathway, and revise responses to indicate all responsive documents have been identified and provided.

      We appreciate that we have made some progress in specifying the outstanding discovery disputes. Upon receipt of further responses from you on Tuesday, June 10, 2025, we will promptly review and notify you if there are outstanding disputes that we intend to raise with the Court. Given the current case management order, we will have to seek Court intervention swiftly if discovery is not forthcoming or disputes remain regarding discovery that Plaintiffs have a right to receive.

Sincerely,

*/s/ Bret Grote*
Bret Grote (PA 317273)
*/s/ Nia Holston*
Nia Holston (PA 327384)
*/s/ Rupalee Rashatwar*
Rupalee Rashatwar (PA 331085)
*/s/ Margaret Hu*
Margaret Hu (PA 334438)
990 Spring Garden
Philadelphia, PA 19123
(412) 654-9070
bretgrote@abolitionistlawcenter.org
nia@alcenter.org
rupalee@alcenter.org
margo@alcenter.org

# EXHIBIT 7

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PA

JACOB and JAMES JUNG as Administrators :
for the Estate of LOUIS JUNG, JR.          :
    v.                                      :  CASE NO. 24-CV-05618
CITY OF PHILADELPHIA; YES CARE CORP.,  :
BLANCHE CARNEY, LALITHA TRIVIKRAM,   :
MAUREEN GAY, and CORRECTIONAL          :
OFFICER JOHN DOES 1-10                       :

### SUPPLEMENTAL ANSWERS OF DEFENDANTS, YES CARE CORP., LALITHA TRIVIKRAM, AND MAUREEN GAY, TO PLAINTIFF'S FIRST SET OF REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to the applicable Rules of Civil Procedure, the Answering Defendants, YesCare Corp., Lalitha Trivikram, and Maureen Gay, respond to Plaintiff's Request to Produce.   Each response is subject to all objections as to competence, relevance, materiality, propriety, and admissibility, and to any and all other objections on any grounds that would require the exclusion of any statements or documents contained herein if such documents were asked of, or documents contained herein were made by, a witness presented and testifying in Court, all of which objections and grounds are expressly reserved and may be interposed at the time of Trial.

Answering Defendants respond to Plaintiff's Request to Produce subject to the following objections and responses ("General Objections"), expressly preserving and without waiving such objections, the Answering Defendants do not waive any of these objections by making responses or by providing documents attached hereto.

### GENERAL OBJECTIONS

I. Answering Defendant objects to Plaintiff's Request to Produce to the extent that they seek information protected from disclosure by the attorney/client privilege, the work/product doctrine, or any other applicable privilege, rule of law or statute limiting discovery.   To the extent applicable, any waiver of such privilege will be set forth specifically in the response to the request for production of documents.

II.    Answering Defendants object to Plaintiff's Request to Produce to the extent that they are overly broad, unduly burdensome and/or seek information that is not relevant to the subject matter of this action and were reasonably calculated to the discovery of admissible evidence.

III.    Answering Defendants object to Plaintiff's Request to Produce to the extent that they seek information concerning activities, policies, practices or procedures of any other party or person not under Answering Defendants' control, because those parties or persons are best able to provide responses concerning their operations.

IV.    All objections and responses to Plaintiff's Request to Produce are made by the Answering Defendants, subject to, and without in any way waiving or intending to waive, but on the contrary, intending to reserve and reserving the right to object to other discovery practices and procedures involving or relating to the subject matter of the interrogatories.

V.    Answering Defendants object to Plaintiff's Request to Produce subject to and without in any way waiving or intending to waive, and expressly reserving any objections as to competency, relevancy, materiality, privilege, and admissibility of any information and documents.

VI.    Answering Defendants reserve the right to produce additional information and documents and to assert additional objections.

VII.    Answering Defendants object to Plaintiff's request for production of documents to the extent that the requests are in violation of the Rules of Civil Procedure, specifically, that the requests fail to provide a description of the specific documents requested with reasonable particularity.  By way of further objection, Answering Defendants specifically object to the attempts by the Plaintiff to obtain file material regarding matters of representation between Answering Defendants and their counsel.  Answering Defendants assert that the Plaintiff's attempt to obtain such information is improper, and the production of such information is protected from disclosure by the attorney/client privilege and/or the work/product doctrine.

VIII.    The General Objections shall be applicable and included in Answering Defendant's responses to Plaintiff's Request to Produce as if set forth in full therein.

## REQUESTS FOR PRODUCTION

1.      All documents referenced or relied on by Defendants in responding to Plaintiffs' First Set of Interrogatories produced in a manner that clearly identifies the documents and the corresponding Interrogatory.

**ANSWER:**    See documents produced, Bates-stamped YesCare 1-3250. As a supplemental response see documents Bates-stamped YesCare 3251-3495.

2.      All documents pertaining to or referencing Louis Jung, Jr. in YesCare's possession, including medical records; mental health records; grievances; disciplinary records; sick call slips or requests for medical care; requests to staff; correspondences or emails to, from or about Mr. Jung; Report of Investigation Office of Special Investigations into the death of Louis Jung, Jr. and any correspondence, communications, or subsequent actions taken in response to the investigation in the death of Louis Jung, Jr., including any disciplinary action against staff.

**ANSWER:**    See response to #1.

3.      All documents pertaining to the operation of the Pharmacist-Directed Diabetes Initiative at PDP facilities between January 1, 2020 and December 31, 2023.

**ANSWER:**    Any such documents would be included in the voluminous documents produced and referenced in response to #1.

4.      For the period between January 1, 2021 and December 31, 2024, all YesCare Corp. policies, protocol, clinical guidelines, memorandum, or orders in effect regarding:
   a.    Access to medical care;
   b.    Diabetes care;
   c.    Mental health care;
   d.    Disability accommodation;
   e.    Intake screening and medical clearance;
   f.    Protocols for routine medication administration with lower staffing numbers;
   g.    Inmate refusals of healthcare services;
   h.    Admissions to specialized medical housing units or an infirmary;

**ANSWER:**    See response to #1.

5.      For the period between January 1, 2021 and December 31, 2024, provide all documents utilized in training correctional and medical care staff employed by or working within PDP facilities on the following subjects:

      a.      Recognizing and responding to signs and symptoms of medical distress;
      b.      Recognizing and responding to signs and symptoms of diabetes;
      c.      Recognizing and responding to signs and symptoms of mental illness;
      d.      Documenting medical care, including documenting insulin dosages, glucose checks, and other aspects of diabetes care;
      e.      Classification and placement in and administration of Medical housing units.

**ANSWER:**    See response to #1.


6.      Any investigation, audit, assessment, evaluation, report, analysis, or any inquiry into the provision of diabetes care within PDP facilities conducted by YesCare or its predecessor between January 1, 2015 and the present, including Qualify Assurance plans and Performance Improvement Plans.

**ANSWER:**    See response to #1.


7.      All Performance Improvement Plans produced by YesCare Corp. or its predecessor, Corizon, pertaining to the provision of medical care in PDP facilities between January 1, 2018 and December 31, 2023.

**ANSWER:**    See response to #1.


8.      All documents tracking the number and identities of inmates with diabetes at PDP between January 1, 2020 and November 30, 2023, including lists of inmates identified at intake who require placement in PDP's chronic care clinic for diabetes and automatic scheduling for chronic care appointments in eCW via the Clinical Rules Engine.

**ANSWER:**    Objection. To the extent that this request seeks the production of document which would bear the identities and medical conditions of inmates other than the Plaintiff's decedent, they would be protected pursuant to the confidentiality provisions of HIPAA. Without waiver of said objection, however, the answering defendants do not track inmates by illness. Accordingly, the answering defendants are unable to produce documents responsive to such a request.


9.      All documents involved in assessing patient outcomes and performance metrics for the provision of diabetes care at PDP facilities between January 1, 2020 and December 31, 2023.

**ANSWER:**    See response to #8.

10.    All medical records in possession of YesCare pertaining to admissions to and treatment within any PDP infirmary or medical unit or to an outside medical facility such as a hospital that involve patients with Type 1 or Type 2 diabetes between January 1, 2020 and December 31, 2023.

**ANSWER:**    See response to #8.


11.    Any investigation into staff misconduct, negligence, or failure to abide by policy in the provision of diabetes care, including the result(s) of those investigation and any remedial or disciplinary measures taken in response between January 1, 2020 and June 1, 2024.

**ANSWER:**    To the extent that this request seeks the discovery of any documents related to procedures conducted by the answering defendant pursuant to the PSQIA, such are privileged and not discoverable.  By way of further response, to the extent that this request seeks information which would reveal the identity of inmates other than the plaintiffs' decedent, no such disclosure would be permissible pursuant to HIPAA.  Without waiver of said objection, included in the documents produced in response to request #1 is a spread sheet delineating staff employees who were terminated from 2020, through 2023.  Also provided are documents related to in-house "Insulin Adherence Audits" conducted subsequent to the death of the plaintiff's decedent.  Further information on the individual terminations will be forthcoming.


12.    All deposition or trial transcripts for all of the named defendants.

**ANSWER:**    Dr. Lalitha Trivikram has been deposed in the matter of McNamara v. Corizon Health.  A copy of the transcript of that deposition is being produced herewith.


**O'CONNOR KIMBALL LLP**

By: _____

Thomas V. Gregory, Esquire
Two Penn Center Plaza, Suite 1100
1500 John F. Kennedy Boulevard
Philadelphia, PA 19102
215-564-0400        Facsimile: 215-564-1973
Email: tgregory@okllp.com
Our File No. 210-2544
*Attorney for Defendants, YesCare Corp., Lalitha Trivikram, M.D., and Maureen Gay, N.P.*

Dated: 6/11/25

# EXHIBIT 8

---

**Discovery Letter to Counsel for YesCare Defendants-6.9.25**

---

Bret Grote <bretgrote@alcenter.org>                                                              Thu, Jun 12, 2025 at 11:24 AM
To: Thomas Gregory <tgregory@oklLlp.com>
Cc: Nia <nia@alcenter.org>, Rupalee Rashatwar <rupalee@alcenter.org>, Margaret Hu <margo@alcenter.org>

Tom,

We are in receipt of your discovery production from yesterday and have clarifying questions for you:

1)  In addition to the two insulin/accu-check audits that were produced that post-dated the death of Mr. Jung, are there others from the date range identified in RPD 6 – January 1, 2015 through the present?

2) For number 7, are there any Performance Improvement Plans, a term utilized in the contract that Corizon, and now YesCare, has with the City of Philadelphia for the provision of medical care in PDP facilities between January 1, 2018 and December 31, 2023? The response, which just directs us to RPD #1's response, is not helpful as there are no PIPs in the production to date. If an alternative term for PIPs is used, we are seeking any comparable audit, performance evaluation, assessment, or quality assurance review of the medical care in PDP facilities for the date range identified in RPD #7. We need to know if you are claiming that no such documents exist, if they are called another name (and if so we are certainly willing to modify the text of the request), or if you are withholding them. This will help us determine if we need to take this request to the Court, and if so what the contours of any dispute are.

3) As to RPD #10, it does not appear that you made any attempt to identify responsive records. We modified this request via an email sent to you on 6/6/25. To send patients to an outside medical facility entails a process that will inevitably create a documentary record. From that record individuals can be identified. If that then requires a review of those electronic medical files to determine which individuals had Type 1 or Type 2 diabetes then that is what must be done. If YesCare does not organize its records in an efficient way that is not a justification for withholding discovery. We are willing to jump on a phone call to discuss what steps you have taken to attempt to locate documents. As it stands, we will have to seek Court intervention and inform the Court that your response that illnesses are not tracked was provided without any indication that you made any effort to identify individual patients who were sent to outside medical providers in order to determine the scope of records that can then be reviewed to identify diabetic patients.

Finally, the staff termination log is cut off / illegible on 3468-3469. That should be fixable by manipulating the size of the excel cells so that they are fit to the text within them.

Please respond to these questions no later than noon on Friday. The discovery schedule requires us to resolve these matters swiftly.

Sincerely,

Bret Grote
Legal Director
Abolitionist Law Center