UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PA

| | |
|---|---|
| JACOB and JAMES JUNG as Administrators for the Estate of LOUIS JUNG, JR.<br>v.<br>YESCARE CORP., LALITHA TRIVIKRAM, MAUREEN GAY, BLAIR CABELLOS, et al.<br>v.<br>CAREERSTAFF UNLIMITED, LLC | :<br>:<br>: CASE NO. 24-CV-05618<br>:<br>:<br>:<br>: |

## ORDER

**AND NOW**, this _____ day of _____, 2025, upon consideration of Plaintiffs' Motion to Compel the Production of Financial Documents of Defendant YesCare Corp, and Defendant's Opposition thereto, it is hereby **ORDERED** and **DECREED** that Defendants' Motion is **DENIED**.

                                                                      **BY THE COURT:**

                                                                      _____ J.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PA

| | |
|---|---|
| JACOB and JAMES JUNG as Administrators for the Estate of LOUIS JUNG, JR.<br>v.<br>YESCARE CORP., LALITHA TRIVIKRAM, MAUREEN GAY, BLAIR CABELLOS, et al.<br>v.<br>CAREERSTAFF UNLIMITED, LLC | CASE NO. 24-CV-05618 |

**RESPONSE OF DEFENDANT, YESCARE CORP., IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL FINANCIAL DOCUMENTS**

**COMES NOW**, the Responding Defendant, YesCare Corp., by and through its counsel, and as and for its Response to Plaintiff's Motion to Compel to Plaintiffs' Second (sic)[1] Request for Production of Documents, seeking production of Defendant's Financial Assets, hereby incorporates by reference the attached Memorandum of Law in Opposition to the instant discovery motion.

Respectfully submitted,

**O'CONNOR KIMBALL LLP**

By: _/s/ Thomas J. Gregory_
Thomas J. Gregory, Esquire
Two Penn Center Plaza, Suite 1100
1500 John F. Kennedy Boulevard
Philadelphia, PA 19102
215-564-0400    Facsimile: 215-564-1973
Email: tgregory@okllp.com
*Attorney for Defendants, YesCare Corporation, Lalitha Trivikram, M.D., Maureen Gay, N.P., and Blair Cabellos, LPN*

Dated: 11/21/25

---

[1] This is Plaintiffs' THIRD Set of Request for Production of Documents propounded upon Defendant, YesCare Corp.

2

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PA

| | |
|---|---|
| JACOB and JAMES JUNG as Administrators for the Estate of LOUIS JUNG, JR.<br>v.<br>YESCARE CORP., LALITHA TRIVIKRAM, MAUREEN GAY, BLAIR CABELLOS, et al.<br>v.<br>CAREERSTAFF UNLIMITED, LLC | :<br>:<br>:  CASE NO. 24-CV-05618<br>:<br>:<br>:<br>: |

**MEMORANDUM OF LAW OF DEFENDANT, YESCARE CORP., IN SUPPORT OF ITS OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL FINANCIAL DOCUMENTS**

**COMES NOW**, Responding Defendant YesCare Corporation, by and through its counsel, O'Connor Kimball LLP, and as and for its Response in Opposition to Plaintiffs' Motion to Compel the Production of its Financial Documents, states as follows:

**FACTUAL BACKGROUND:**

On October 28, 2023, the 50 year old male Decedent, well known at the Philadelphia Department of Prisons ("PDP"), was admitted to the prison with a history of diabetes mellitus. The inmate's history was notable for non-compliance with treatment. The inmate was received at the prison after having been incarcerated for several months at Norristown State Hospital for psychiatric evaluation. Upon his return from Norristown, the Decedent's vital signs were stable, but his blood sugars measured 542, for which he was given several units of insulin. After a brief stay in the prison, the Decedent passed away.

Defendant YesCare Corporation is the contract provider of medical services to the inmates of the Philadelphia Department of Prisons, by way of a contract with the City of Philadelphia. Defendant Lalitha Trivikram, MD, a YesCare employee, was at the time the "Site Medical Director" at the Curran Fromhold Correctional Facility, one of the prisons of the PDP. The allegations against Dr. Trivikram include a failure to supervise and implement medical procedures befitting the standard of care. Defendant Maureen Gay, a Nurse Practitioner and YesCare employee, is a mid-level provider alleged to have failed to detect the Decedent's elevated blood

sugars and the need for emergent care. Defendant Blair Cabellos is a Licensed Practical Nurse and a YesCare employee who is alleged to have neglected to provide care to the Decedent shortly prior to his death.

It is helpful to a full understanding of the facts to consider the following, fairly extensive synopsis of the Decedent's recent medical history:

**Louis Jung,** born April 16, 1973 passed away on November 6, 2023. He was 50 years of age at the time of death, having been uninterruptedly incarcerated since December 16, 2021. The inmate's past medical history is significant for Diabetes Mellitus ("DM"), which was being treated with intramuscular insulin injections. There was a history of diabetic ketoacidosis ("DKA"). Jung had a previous short incarceration in 2016.

Incarcerated on 12/16/2021, the inmate had a behavioral health initial evaluation 12/17/2021. Observation noted that it was uncertain if the patient was withdrawing from substances due to his behavior, as a result of which he was placed in Med-Lock. Suicide risk assessment was completed and he was found to be low risk. Jung described hearing voices, acknowledged depression, and claimed an inability to concentrate. He was not able to provide details of his history and spoke in vague terms about any serious mental illness diagnoses or treatment.

From 12/16/2021 to 12/21/2021 he declined a full intake and assessment by the nursing team. During this period of time, he was seen by nursing for elevated blood sugars. He was provided insulin for blood sugar treatment. On 12/20/2021, the inmate was found to be nonresponsive and emergent intervention proceeded. Providers were notified and the inmate was transferred to the emergency room *via* ambulance. His vital signs indicated an elevated blood sugar and prior to transport, he received separate doses of insulin, 20 units each time.

He was hospitalized from 12/21/21 through 1/5/2022 and upon return to the prison from the hospital on 1/5/2022 his diagnoses included COVID, pneumonia, Pulmonary emboli, DM, with treatment of DKA. He had a CT scan of the brain due to encephalopathic behavior, namely confusion. The brain CT was described as without changes, without bleeding or swelling. It noted CXR infiltrates and opacities. A chest CT confirmed same and was followed up with CT angiogram to diagnose pulmonary emboli bilaterally. He remained in the ICU most of his hospitalization. He

was treated with dexamethasone and remdesivir for COVD. He tested positive on MRSA screen and did have a 5-day course of Vancomycin IV for empiric treatment of possible staph pneumonia. His blood sugars were controlled, and DKA corrected. He was discharged back to the prison on 1/5/2022 on 10 L NC Oxygen. His pulse ox had dropped upon arrival and the receiving physician reported that the facility was not able to maintain O2 level at the 10 L NC flow rate. As a result, the inmate was re-admitted to the hospital on 1/5/2022 and discharged back to the facility on 1/9/2022. Discharge medications included Eliquis 5 mg BID, Lantus 20 units at Bedtime, Lispro insulin 9 units, with three meals daily plus additional insulin on a sliding scale, as is protocol for such a patient. His blood cultures were negative. He developed thrombocytopenia due to the use of heparin for anticoagulation, which was changed to Lovenox and ultimately Eliquis.

On 1/10/2022 the inmate's Initial Psychiatric Evaluation was completed. Jung reported auditory hallucinations. He appeared to be oriented and alert, although he was described as having very poor hygiene. He denied suicidal or homicidal ideation. He was not able to recall if he had prior psychiatric treatment. Medications from the hospitalization included Abilify 10 mg BID, Buspar 10 mg TID, and Doxepin 100mg at bedtime as needed. Diagnoses from hospitalization included Bipolar, PTSD and anxiety. His community-based medications were initiated during the hospitalization and continued upon discharge back to the prison.

The inmate was found to have syphilis with no known treatment history. He was prescribed Bicillin 2.4 million units IM x 3 weekly doses.

From his return from inpatient hospitalization until the next hospitalization, on 4/7/22, Jung had numerous encounters with nurses and providers. He would routinely and chronically refuse to permit medical staff to conduct Accu-Cheks (finger "sticks" to detect blood glucose levels) and constantly refused the administration of insulin. He would also decline vaccinations, decline attendance at off-site visits and decline visits to the on-site chronic care clinic for follow up. His blood sugar fluctuated, and his insulin use was unpredictable due to his tendency to decline its administration. A review of the Accu-Chek logs and insulin Medication Administration Records ("MARs") demonstrate the non-predictable nature of Jung's self-determination in his care.

3

Most of the time refusal forms for Accu-Cheks and insulin were in the chart, signed by the nurse and witness although rarely by Jung himself. Other refusal forms, typically upon declining a vaccination, were signed by him. He often signed the refusal form when he declined specialists' visits. Although he attended an endocrine follow-up appointment, he refused cardiology care. The chronic care clinics, which are important for chronic disease management, were not regularly completed due to the patient's recalcitrance. Initial chronic care for DM, hyperlipidemia and hypothyroid is to be done within 21 days of admission to the facility. The intake was delayed, then Jung was in the hospital.

He was hospitalized on 4/7/22 for DKA. He reported emesis and dizziness. Blood sugar was 484. He was treated for DKA, hyperglycemia and pneumonia. He returned to the facility on 4/9/22 with a prescription for antibiotic Linzolid 600 mg, BID for 7 days. Off-site return notes are complete in the chart.

On 5/6/22, a certificate for Involuntary Mental Health Commitment was submitted to determine Jung's competency to stand trial. He was court-ordered to treatment, first at the Prison Health Services Wing ("PHSW") within the Philadelphia Detention Center for 60 days. There was also a petition for Involuntary Mental health treatment. He was transferred and admitted to Norristown State Hospital (for forensic psychiatry) on 9/27/22. He returned to the PDP on 12/14/22. He was deemed to have restored competency to stand trial. During his admission, the diagnosis of bipolar and substance use disorder remained. He did not have any psychotic episodes and there was an indication in the notes that Jung may have been misrepresenting his symptoms, based on what he reported to the staff psychiatrist and how his observed behavior was not congruent with self-reporting or symptoms. It was noted that Jung was of higher intelligence than he reported and was able to understand the legal system and consequences.

Upon return to the prison, the pattern of near-daily refusal of Accu-Chek and insulin recurred. On 1/8/23 Jung was hospitalized for hyperglycemia, elevated ketones and lethargy. His hospital course at Jefferson Hospital consisted of 4 inpatient days to correct the DKA. He was returned to the prison with the discharge comment that Jung had not cooperated with care. On 1/23/23, Jung was determined to be confused; he had been refusing his insulin and Accu-Cheks and

he would not allow an IV for Fluids. As a result, he was transferred to the Emergency Department and was admitted through the ER with pneumonia and DKA. Treatment included IV fluids at the hospital. Discharge from this hospitalization occurred on 1/30/23 with diagnosis of COVID and pneumonia. Upon return to the PDP, Jung was placed in quarantine/isolation due to the positive COVID test of 1/23/23 at the hospital. Upon return, the rapid test was negative. He remained in isolation until 2/2/23 whereupon he was transferred to the Detention Center infirmary for care.

On 2/5/23, Jung was transferred to general population. Once in general population, the pattern of refusing to take insulin and Accu-Chek refusals resumed. He declined to take a cardiology consultation in early March 2023. On 3/10/23, he was sent *via* EMS to the emergency department. The on-site findings were positive for DKA, Accu-Chek was HI, and ketones were in the urine. The on-site treatment plan consisted of the initiation of IV fluids, which Jung refused, and as a result, he was transferred to the ED for treatment. He was admitted to the hospital for care and returned to the prison on 3/14/23. On 3/19/23, there was yet another transfer to the ED for DKA, as a result of elevated blood sugar and urine Ketones. He treated in the ED with fluids, Lantus insulin and regular insulin and returned back to the prison. On 4/13/23, another referral to Norristown State Hospital was made due to Jung appearing to remain incompetent to stand trial. The actual transfer was not made for 60 days. Jung was transferred back to Norristown on 6/2/23. During the interval while awaiting transfer, while in custody in the PDP, Jung would refuse to have his blood sugars checked and to receive insulin. This could occur several times a day. There are witness-signed refusals in the chart; just as the decedent refused medical treatment, he also refused to sign acknowledgements of said refusals.

The second Norristown admission was from 6/2/23 until 10/28/23. Upon his return to the PDP, on intake, Jung reported that "he had not received insulin for 3 days." However, review of the Norristown records demonstrated that insulin was ordered and received, on schedule, on the several days prior to return. On 10/31/23, Jung declined vaccination.

On 11/6/23 Jung was found nonresponsive, though breathing, on the floor of his cell. Emergency response was initiated once discovered. He resided in a cell on the upper tier of his housing unit. The medical team managed to remove him from the cell, get him onto a stretcher, then

to the base floor for effective CPR and bagging. AED was in place. EMS arrived. Narcan given, 14 units regular insulin due to Accu-Chek reading HI. Unable to get blood pressure reading or pulse. EMS arrived and continued to provide emergency treatment, but the inmate passed away.

**THE CLAIMS ASSERTED IN THE LITIGATION:**

Not unexpectedly, in the lawsuit filed by the estate of the decedent, as against these medical defendants, there are essentially two claims asserted, one for common law medical malpractice, the other for Constitutional violations pursuant to 42 U.S.C. § 1983.

Extensive discovery has been pursued by the Plaintiffs, and in response to their voluminous requests, the medical defendants have thus far provided more than 5000 pages of documents. Among the documents are pages upon pages of the decedent's medical records, which meticulously document the extensive care rendered to the decedent over his many incarcerations.

Most recently, the Plaintiffs have, in their "Second (actually, their "Third") Request for Production of Documents," sought to obtain financial records of YesCare, the contracted-for medical services provider to the Philadelphia Department of Prisons, and the employer of the individually named medical defendants.

**THERE IS NO BASIS FOR THE PLAINTIFFS TO EXAMINE THE FINANCIAL RECORDS OF THE DEFENDANT:**

Clearly, what the Plaintiffs are attempting to do by their most recent request for production of documents is to view the financial posture of the defendant corporation in order to assess an appropriate goal for a settlement demand. It is assets discovery, pure and simple.

As to the medical malpractice claims, the law is fairly clear that there is no basis for the Plaintiffs to obtain information on the financial condition of the Defendant. Candidly, it does not appear to be the position of the Plaintiffs that they are entitled to explore the Defendant's finances in connection with their negligence claims.

Instead, the Plaintiffs claim that assets discovery is appropriate since they have made a claim for deliberate indifference which, they claim, carries with it the award of punitive damages.

With respect to deliberate indifference, as claimed by the Plaintiffs, "it is well settled that claims of negligence or medical malpractice without some more culpable state of mind, do not constitute deliberate indifference." Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999); Booth v. King, 228 Fed. Appx. 167 (2007 U.S. Apt. LEXIS 8327) (3d Cir. 2007).

Deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and unwanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors is their response to prisoner's needs or by prison guards by intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285 (1976).

Federal Rule of Civil Procedure 26 does not permit the discovery of facts concerning a defendant's financial status or ability to satisfy a judgment, since such matters are not relevant and cannot lead to the discovery of admissible evidence. McCurdy v. Wedgewood Capital Management Co., 1998 U.S. Dist. LEXIS 18875 (E.D. Pa. 1998); Mack Boring & Parts Co. v. Knovis Marine Ltd., 2008 U.S. Dist. LEXIS (DNJ, 2008). The longstanding principle is that discovery concerning an opposing party's assets is not ordinarily permitted unless such discovery is relevant to the merits of a pending claim. Liberty Mutual Insurance Co. v. Universal Enterprises., 2010 U.S. Dist. LEXIS 192764 (E.D. Pa., 2010).

It is clear from just a cursory review of the medical history of the decedent provided above that he was provided with an enormous amount of medical care directed towards his diabetes and his other comorbid conditions. It is respectfully submitted that the Plaintiffs cannot make out a *prima fascia* showing, at this time, of an entitlement to punitive damages for deliberate indifference

7

to a serious medical need. The Plaintiffs would have this court equate some sort of failure on the part of the medical defendants to appropriately care for the plaintiff's condition to the conduct of "indifference." The extent to which care was administered to the Plaintiffs' Decedent is hardly demonstrative of an attitude of indifference.

**CONCLUSION:**

Accordingly, it is respectfully requested that the Court deny the Plaintiffs' requested discovery.

Respectfully submitted,

**O'CONNOR KIMBALL LLP**

By: _____
Thomas J. Gregory, Esquire
Two Penn Center Plaza, Suite 1100
1500 John F. Kennedy Boulevard
Philadelphia, PA 19102
215-564-0400      Facsimile: 215-564-1973
Email: tgregory@okllp.com
*Attorney for Defendants, YesCare Corp., Lalitha Trivikram, M.D., Maureen Gay, N.P. and Blair Cabellos, LPN*

Dated: 11/21/25

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PA

JACOB and JAMES JUNG as Administrators
for the Estate of LOUIS JUNG, JR.
   v.
YESCARE CORP., et al.
   v.
CAREERSTAFF UNLIMITED, LLC

CASE NO. 24-CV-05618

### CERTIFICATE OF SERVICE

  I, Thomas J. Gregory, Esquire, hereby certify that I caused a true and correct copy of the foregoing Response to Plaintiffs' Motion to Compel Production of Defendant's Financial Documents, with Memorandum of Law in support thereof, to be electronically filed on this this 21st day of November, 2025, and thereby served via the Court's Electronic ECF Filing System upon:

bretgrote@abolitionistlawcenter.org
rupalee@alcenter.org
margo@alcenter.org
lolo@alcenter.org
Bret Grote, Esquire
Rupalee Rashatwar, Esquire
Margaret Hu, Esquire
Lolo Salsbury Serrano, Esquire
Abolitionist Law Center
990 Spring Garden Street
Philadelphia, PA 19123
*Attorneys for Plaintiff*

michael.pestrak@phila.gov
emily.hoff@phila.gov
Michael Pestrak, Esquire
Emily M. Hoff, Esquire
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
*Attorneys for Defendants, City of Philadelphia and Blanche Carney*

jkaminsky@kiernantrebach.com
Jonathan Kaminsky, Esquire
Kiernan Trebach, LLP
10 Penn Center
1801 Market Street, Suite 770
Philadelphia, PA 19103
*Attorney for Defendant, Mariesha Apollon*

scthomas@grsm.com
Summer C. Thomas, Esquire
Gordon Rees Scully
1717 Arch Street, Suite 610
Philadelphia, PA 19103
*Attorney for Additional Defendant, CareerStaff Unlimited, LLC*

      O'CONNOR KIMBALL LLP

      By: _____
        Thomas J. Gregory, Esquire
        Two Penn Center Plaza, Suite 1100
        1500 John F. Kennedy Boulevard
        Philadelphia, PA 19102
        215-564-0400  Facsimile: 215-564-1973
        Email: tgregory@okllp.com
        *Attorney for Defendants, YesCare Corporation, Lalitha Trivikram, M.D., Maureen Gay, N.P., and Blair Cabellos, LPN*