IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACOB and JAMES JUNG as administrators for the estate of LOUIS JUNG, JR., <br><br> Plaintiffs, <br><br> vs. <br><br> YESCARE CORP., LALITHA TRIVIKRAM, MAUREEN GAY, BLAIR CABELLOS, et al., <br><br> Defendants, <br><br> vs. <br><br> CAREERSTAFF UNLIMITED, LLC, <br><br> Third Party Defendant, <br><br> TEKACCEL, INC., <br><br> Fourth Party Defendant. | Civil Action No.  2:24-CV-05618-TJS |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CAREERSTAFF UNLIMITED, LLC'S MOTION FOR SUMMARY JUDGMENT**

Defendant, CareerStaff Unlimited, LLC ("CareerStaff" or "Defendant"), for its Memorandum in Support of its Motion for Summary Judgment states as follows:

**PRELIMINARY STATEMENT**

There is no dispute that Nurse Mariesha Appolon was not an employee of CareerStaff and as a result of this undisputed fact of record any and all claims against CareerStaff fail as a matter of law. As a result, CareerStaff respectfully requests that the Court enter Summary Judgment against Defendant/Third Party Plaintiff, YesCare Corporation ("YesCare") and dismiss

YesCare's Third Party Complaint in its entirety. In its Third Party Complaint (Document 60), Plaintiff brings actions for Medical Negligence (Count I) and Deliberate Indifference (Count II) under the theories of vicarious liability, common law contribution and/or indemnification, and/or contractual indemnification. Discovery has revealed that none of YesCare's claims have any basis in law or in fact. Accordingly, YesCare's Third Party Complaint should be dismissed with prejudice.

The basis of Plaintiffs' claims stem from the death of Louis Jung, Jr. ("Decedent") while in custody at Curran-Fromhold Correctional Facility ("CFCF") in Philadelphia County. Plaintiffs sued The City of Philadelphia, YesCare, Blanche Carney, Lalitha Trivikram, Maureen Gay, Mariesha Apollon, Blair Cabellos, Gena Frasier, and Wanda Bloodsaw. See Plaintiffs' First Amended Complaint (Document 27).

Plaintiffs allege that the Decedent was arrested and incarcerated in the Philadelphia Department of Prisons ("PDP") on December 16, 2021. Plaintiffs further allege that Decedent had pre-existing Type I diabetes, and that during his incarceration, Decedent was hospitalized on numerous occasions, including a hospitalization at Norristown Psychiatric Hospital from March 23, 2023 through October 28, 2023. Plaintiffs allege that Decedent returned to CFCF from Norristown State Psychiatric Hospital on October 28, 2023, at which time he underwent a medical screening by Mariesha Apollon ("Apollon"), which revealed a glucose level of 542. Plaintiffs allege that Decedent should have been, but was not sent to the infirmary or an outside hospital for medical treatment, and that the failure to send Decedent for emergency medical treatment resulted in a worsening of Decedent's condition, and he subsequently died from diabetic ketoacidosis on November 6, 2025. Relevant to this Motion, Plaintiffs allege that

Decedent's injuries and death are the result of, *inter alia*, alleged deliberate indifference, objective unreasonableness, and negligence of Apollon.

The basis for YesCare's claims against CareerStaff is YesCare's allegation that Apollon was an employee of CareerStaff such that CareerStaff is liable to Plaintiff under a theory of vicarious liability and/or liable to YesCare under common law contribution, common law indemnity, and/or contractual indemnification. YesCare's claims are wholly without merit.

Critically, the record has shown that Apollon was not employed by YesCare, nor did YesCare exert any control, supervision, or other action on Apollon at any point relevant hereto. The two Counts of YesCare's Third Party Complaint are bound up in negligence, and the record cannot support a claim for negligence against CareerStaff, whether directly or through vicarious liability. Plaintiff cannot prove that CareerStaff employed Apollon, and thus, cannot prove that it is vicariously liable for her alleged negligence. Furthermore, there is no basis in contract or common law to support YesCare's claims for contribution and/or indemnification.

Therefore, Defendant respectfully requests that the Court enter Summary Judgment in its favor and dismiss YesCare's Third Party Complaint with prejudice as no genuine issue of material fact exists and Defendant is entitled to judgment as a matter of law.

## **LEGAL STANDARD**

Discovery has made clear that Summary Judgment in favor of Defendant is appropriate in this matter. A party is entitled to Summary Judgment "if the pleadings, depositions, answers to interrogatories, and admissions of fact, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for Summary Judgment bears the initial burden

of demonstrating the absence of a genuine issue for trial. Padillas v. Stork-Gamco, Inc., 186 F.3d 412, 414 (3d Cir. 1999).

Once the moving party has met its burden, the non-moving party cannot simply rest on the allegations or denials in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Padillas, 186 F.3d at 414.

Moreover, the court's focus must be on evidence, not rumor, hearsay, argument, or speculation:

> The non-moving party 'cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial.' Arguments made in briefs 'are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion.'

Donaldson v. Norfolk Southern Railway, Co., 2011 U.S. Dist. LEXIS 90572 at *9 (M.D. Pa. 2011) (citations omitted); Mroczek v. Bethlehem Steel Corp., 126 F. Supp.2d 379, 384 (E.D. Pa. 2001).

The non-moving party must also provide evidence of substantial disputed facts:

> [T]he non-moving party 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must produce more than a 'mere scintilla of evidence in its favor' to withstand summary judgment. If the non-moving party fails to create 'sufficient disagreement to require submission [of the evidence] to a jury,' the moving party is entitled to judgment as a matter of law.

Saidu-Kamara v. Parkway Corp., 155 F. Supp.2d 436, 438-39 (E.D. Pa. 2001) (citations omitted).

The Supreme Court has instructed that Summary Judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"

4

Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).  Here, Summary Judgment is appropriate because Plaintiff cannot demonstrate that a triable issue exists.

## **LEGAL ARGUMENT**

**I.     YESCARE'S MEDICAL NEGLIGENCE AND DELIBERATE INDIFFERENCE CLAIMS SHOULD BE DISMISSED**

There is no material fact in dispute that can survive summary judgment on YesCare's medical negligence and deliberate indifference claims against CareerStaff.  YesCare couches its medical negligence and deliberate indifference claims on Apollon's alleged employment by CareerStaff (Document 60, ¶ 12), under the theory of vicarious liability. As set forth below, YesCare has failed to produce any evidence to support these causes of action such that they should be dismissed with prejudice.

> **a.    There is no dispute that Nurse Mariesha Appolon was not an employee of CareerStaff and YesCare cannot establish that CareerStaff is vicariously liable for the alleged actions or inactions of Registered Nurse Mariesha Apollon as she was not an employee of CareerStaff**

This is no dispute that Nuse Mariesha Appolon was not an employee of CareerStaff. YesCare is unable to establish that Apollon was employed by CareerStaff, the allegation upon which all of YesCare's claims against CareerStaff are based. In fact, the established record shows that Apollon was at all times employed by Tekaccel, Inc. Accordingly, the causes of action of Medical Negligence (Count I) and Deliberate Indifference (Count II) against CareerStaff should be dismissed, with prejudice.

There is no evidence to support YesCare's allegation that CareerStaff employed Apollon. To the contrary, all credible evidence reflects that Apollon was employed by Tekaccel, Inc. ("Tekaccel") at all times relevant hereto, starting with Apollon's own testimony.

5

Apollon stated that she was hired through an agency called Tekaccel to work at the Philadelphia Department of Prisons in August 2023, where she worked for 26 months until January 2024. A true and correct copy of Mariesha Apollon's Deposition Transcript is attached hereto as **Exhibit A**. See 19:16-20:5; 27:10-27:14; 54:7-54:15. Apollon was asked whether she was familiar with an entity called "Career Staffing," which she denied, and then she described the circumstances of her hiring. Id. at 20:3-20:5. Specifically, a recruiter from Tekaccel reached out to her via email and stated that they (*i.e. Tekaccel*) would like to offer her a position, which she subsequently accepted. Id. at 20:9-20:19. Apollon was not familiar with CareerStaff Unlimited, and Tekaccel was listed on her 2023 tax returns. Id. at 117:3-117:12. Further, she believed the training she received for her employment at CFCF was provided by YesCare employees. Id. at 47:24-48:2.

To the extent Apollon's unequivocal testimony does not resolve the question of her employment, the contract between YesCare and CareerStaff clearly does so. On or around April 28, 2022, CareerStaff entered into a Managed Services Agreement with CHS Staffing, LLC ("Original MSA"), which was assigned to YesCare via an agreement between CHS Staffing, YesCare, and CareerStaff dated May 2, 2024 ("Assigned MSA") (collectively "MSA Agreements"). True and correct copies of the Original MSA and Assigned MSA are attached hereto as **Exhibits B & C**. As such, all of the terms in both agreements govern the relationship between CareerStaff and YesCare.[1]

The Original MSA concisely explains the role that CareerStaff serves pursuant to the agreement. Specifically, CareerStaff provided YesCare with access to its staffing vendor network ("VMS"). Id. at p. 1. YesCare provided certain services in support of its affiliated companies

---

[1] Based upon the assignment, and for ease of reference, the remainder of this Memorandum will refer only to YesCare in connection with the MSA Agreements and terms and provisions of same.

6

("Correctional Healthcare Entities") which in turn provided correctional healthcare services to detainees and inmates in the care, custody, and control of certain prisons and jails. Id. The Correctional Healthcare Entities at times required qualified personnel on a temporary and/or permanent basis ("Registry Personnel") for the correctional centers they serviced, one of which being the CFCF within the Philadelphia Department of Prisons. Id. at p. 1. YesCare's Correctional Healthcare Entities submitted work orders in the VMS for staffing needs outlining requirements of the open positions, such as the duration required of Registry Personnel, as well as required skills, experience, and qualifications. Id. at ¶¶ 1.2-1.2.1.

CareerStaff and/or staffing vendors with which it contracted (e.g. Tekaccel) would then submit candidates for approval. Pursuant to this process, Apollon's application was submitted by her employer, Tekaccel. Her application was accepted and then, Apollon was assigned to CFCF where she started working in August 2023. According to the record evidence, after this assignment, CareerStaff had no direct involvement with Apollon.

Critically, the Original MSA acknowledges that all personnel that were supplied to the Correctional Healthcare Entities by staffing vendors utilizing the VMS were W-2 employees of the staffing vendors, *not employees of CareerStaff*. Id. at ¶¶ 5.1-5.1.1; 5.3-5.3.6. Apollon's status as an employee of Tekaccel is further reinforced in other provisions of the Original MSA, including Paragraph 5.3 which outlines staffing vendors' (e.g. Tekaccel's) responsibilities as the employer of the supplied Registry Personnel (e.g. Apollon). Id. at p. 8. Other references to the Registry Personnel (e.g. Apollon) supplied by staffing vendors (e.g. Tekaccel) being employees of said vendors are contained throughout the Original MSA. Id. at ¶¶ 1.8; 2.3. Moreover, the Original MSA specifically disclaims any kind of "partnership, joint venture or joint employment arrangement amongst any of the parties," which includes CareerStaff. Id. at p. 4, ¶ 2.1.

7

Further evidence disproving an employment relationship between Apollon and CareerStaff is found in the July 12, 2022 Staffing Vendor Services Agreement between CareerStaff and Tekaccel ("Staffing Vendor Agreement"). A true and correct copy of the Staffing Vendor Agreement is attached hereto as **Exhibit D**.

Pursuant to the Staffing Vendor Agreement, CareerStaff would provide a vendor management system, the VMS, for distribution and requests of staffing needs, and staffing vendors (e.g. Tekaccel) would supply temporary workers directly to CHS Staffing, LLC and/or Correctional Healthcare Entities. Id. at p. 1.

Consistent with the terms of the MSA Agreements, the Staffing Vendor Agreement unambiguously indicates that personnel staffed to CHS Staffing, LLC and the Correctional Healthcare Entities are W-2 employees of the staffing vendors. Id. at ¶¶ 1.6; 5.1; 5.1.1; 5.3; 5.3-5.3.6.. As the employer of workers supplied to the correctional centers, Tekaccel was required to, *inter alia*, maintain payroll records, calculate wages and withhold taxes, and pay fringe benefits, if any. Id. at ¶ 5.3. Additionally, the Staffing Vendor Agreement provides that staffing vendors and Registry Personnel are contractors with, and not partners, agents, or employees of…[CareerStaff]. Id. at ¶ 2.1.

The only evidence that connects CareerStaff and Apollon to the underlying action is an email from Khagesh Bhatt, a representative of Tekaccel, to Apollon on July 19, 2023. The email *from Tekaccel* states, "Congratulations on your offer from CareerStaff Unlimited!" and then clearly states that Tekaccel was offering a registered nurse position with YesCare at CFCF starting on August 7, 2023. The reference to "an offer from CareerStaff Unlimited," *which is stated by a Tekaccel representative,* is clearly nothing more than a poor choice of words, and it does not create

8

a genuine issue of material fact regarding Apollon's employment, which all evidence of record, including the testimony of Apollon, shows was with Tekaccel.

Ultimately, YesCare has presented no witnesses, documents, or other evidence to show that Apollon was employed by CareerStaff at any time, much less during the period of Apollon's alleged deliberate indifference and medical negligence. There is no genuine issue of fact; rather, there is no question at all that Apollon was employed by Tekaccel. As such, Plaintiff's deliberate indifference and medical negligence claims should be dismissed summarily and with prejudice.

  **b. YesCare cannot establish a cause of action for violations of § 1983 (Count II) against CareerStaff**

Arguendo, even if YesCare was able to establish an employment relationship between CareerStaff and Apollon (it can't), CareerStaff cannot be held liable for YesCare's § 1983 claim for deliberate indifference under the 14th Amendment to the US Constitution.

To establish a § 1983 claim, a plaintiff "must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation [violation of a right] was committed by a person acting under the color of state law." Cahill ex rel. Cahill v. Live Nation, 866 F. Supp. 2d 503, 509 (W.D. Pa. 2011).

A viable cause of action under Section 1983 must allege sufficient facts to support the plausibility of two essential elements: "(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." Schneyder v. Smith, 653 F.3d 313, 319 (3d Cir. 2011).

There is no dispute that CareerStaff is a private company. For a private company providing healthcare services at a correctional center, the actions of the employees of the company cannot

9

serve as a basis for liability under § 1983 under a theory of respondeat superior or vicarious liability. Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583–84 (3d Cir. 2003).

As recently noted by the US Court of Appeals for the Third Circuit in Montanez v. Price, 154 F.4th 127, 142 (3d Cir. 2025), private entities under contract to provide prison health services are liable for constitutional violations under § 1983 only if their policies or customs caused the constitutional violation. See also Natale, 318 F.3d 575, 583–84 (3d Cir. 2003) (holding that for a private entity providing healthcare services to inmates at a correctional facility to be liable for § 1983 purposes, "the [plaintiffs] must provide evidence that there was a relevant policy or custom, and that the policy caused the constitutional violation that they allege.").

In the present matter, there is neither an allegation by YesCare that CareerStaff's policies or customs caused the alleged 14th Amendment violation, nor is there a scintilla of evidence to support such a conclusion. See YesCare's Third Party Complaint (Document 60), generally. Accordingly, Count I of YesCare's Third Party Complaint, which asserts a cause of action for deliberate indifference against CareerStaff, must be dismissed with prejudice.

II. **PLAINTIFF'S CLAIMS FOR CONTRIBUTION, INDEMNIFICATION, AND CONTRACTUAL INDEMNIFICATION SHOULD BE DISMISSED**

YesCare asserts claims against CareerStaff for common law contribution and indemnity. However, as stated in further detail below, no legal basis exists for YesCare to pursue its claims for common law contribution and indemnity under Pennsylvania law, and therefore, said claims must be dismissed.

    a. **YesCare's claims for common law contribution are not supported under Pennsylvania law**

In Pennsylvania, contribution is governed exclusively by statute under the Uniform Contribution Among Tort-feasors Act ("UCATA"). 42 Pa. Cons. Stat. §§ 8321 *et seq*. The

UCATA establishes a right to contribution among joint tort-feasors. 42 Pa. Cons. Stat § 8324(a). Contribution is a fault-sharing mechanism between two parties responsible for a harm. Kemper National P & C Companies v. Smith, 615 A.2d 372, 375 (Pa. Super. Ct. 1992). Contribution "is not a recovery for the tort, but rather it is the enforcement of an equitable duty to share liability for the wrong done by both." Swartz v. Sunderland, 169 A.2d 289, 290 (Pa. 1961) (citing Parker to Use of Bunting v. Rodgers, 189 A. 693, 695 (Pa. Super. Ct. 1937) ("The doctrine of contribution rests on the principle that, when the parties stand in *aequali jure*, the law requires equality, which is equity, and one of them shall not be obliged to bear a common burden in ease of the rest.")). Under the UCATA, "a joint tort-feasor is entitled to contribution if he has paid more than his *pro rata* share of the common liability." Mattia v. Sears. Roebuck & Co., 366 Pa. Super. 504, 531 A.2d 789 (1987).

Pennsylvania law does not recognize a right to contribution in a breach of contract case. See, e.g., Kemper National P & C Co. v. Smith, 419 Pa. Super. 295, 309, 615 A.2d 372, 380 (1992) ("Pennsylvania only authorizes contribution among joint tortfeasors."); TVSM, Inc. v. Alexander & Alexander, Inc., 583 F. Supp. 1089, 1092 (E.D. Pa. 1984) ("A right to contribution in Pennsylvania arises only among joint tortfeasors."); Richardson v. John F. Kennedy Memorial Hosp., 838 F. Supp. 979, 989 (E.D. Pa. 1993) ("Under Pennsylvania law, the right to contribution only arises among joint tortfeasors"). Thus, in order to succeed on its claim for contribution against CareerStaff, YesCare would need to establish that CareerStaff is a "joint tort-feasor" and is liable over to YesCare for damages awarded by a jury arising out of YesCare's alleged tortious conduct.

As set forth *supra*, YesCare's claims are based entirely upon the allegation that Mariesha Apollon was an employee of CareerStaff. However, YesCare has failed to produce any evidence in support of this claim. To the contrary, the evidence of record conclusively establishes that

Mariesha Apollon was employed by Tekaccel. Accordingly, Plaintiff's claim for common law contribution must summarily be dismissed, with prejudice.

### b. YesCare's claim for common law indemnity is not supported under Pennsylvania law

YesCare also asserts a claim for common law indemnity against CareerStaff. As set forth in detail herein, based on the absence of an employment relationship between CareerStaff and Apollon that could support a claim for vicarious liability, YesCare's claim for common law indemnity must be dismissed as a matter of law.

Under Pennsylvania law, "indemnity is available only in the following circumstances: (1) where primary versus secondary or vicarious liability is present or (2) where there is an express contract to indemnify." Nat'l R.R. Passenger Corp. v. URS Corp., 528 F. Supp. 2d 525, 532 (E.D. Pa. 2007) (quoting Richardson v. John F. Kennedy Mem'l Hosp., 838 F. Supp. 979, 989 (E.D. Pa. 1993)).

As set forth above, Apollon testified that she was not aware of the existence of CareerStaff Unlimited, and that she was employed by Tekaccel. This is consistent with the MSA Agreements, which clearly state that all workers that were placed with Correctional Healthcare Entities, which includes the CFCF, were W-2 employees of the staffing vendor, which in this case was Tekaccel. Nearly identical language is contained the Staffing Vendor Agreement, further confirming Apollon's employment with Tekaccel. In short, there is not a shred of proof that CareerStaff employed Apollon such that it could be vicariously liable for her alleged tortious conduct. Because there is no issue of fact regarding Apollon's employment, YesCare's claim for common law indemnity must be dismissed on summary judgment.

### c. YesCare cannot establish that it is entitled to contractual indemnity under Pennsylvania law

Despite briefly referencing contractual indemnification within its Third Party Complaint, YesCare conspicuously failed to identify any contractual provisions supporting such a claim. As set forth below, no such provisions exist.

The indemnification responsibilities between CareerStaff and YesCare are outlined in Paragraph 9 of the Original MSA, which provides the following:

9.1. Each Party shall indemnify, defend, and hold the other, its officers, directors, shareholders and employees harmless from any claim, demands and costs, including attorneys' fees, by any third party due to or arising out of:

>9.1.1. Its breach of this Agreement

>9.1.2. Its gross negligence or reckless or willful misconduct or

>9.1.3 Any act or omission by a Party or its agents, servants, or employees pursuant to this Agreement which results in a claim for bodily injury or death or property loss or damage by whomsoever (including specifically, but without limitation, employees of the Parties and members of the general public).

Exhibit B, p. 11-12.

Additionally, CareerStaff is required to indemnify YesCare and its Correctional Healthcare Entities for claims involving:

>9.1.4. Workers' compensation and unemployment compensation claims brought by staffing vendors assigned to registry personnel.

>9.1.5. Any state or federal law claims asserted by Staffing Vendors assigned Registry Personnel alleging wrongful discharge, constructive discharge, or discrimination by Staffing Vendor related to any of such assigned Registry Personnel's terms and conditions of employment with Staffing Vendor.

Exhibit B, p. 12.

As noted above, YesCare asserts its claim for contractual indemnification against CareerStaff without identifying any language of the MSA Agreements in support. Initially, it

13

must be pointed out that Paragraph 9 and its subparagraphs of the Original MSA identify several circumstances when CareerStaff could be required to provide indemnification, three of which are pertinent to the matter at hand.

First, indemnification must be provided for breaches of the MSA Agreements. The second indemnification trigger is when CareerStaff engages in gross negligence, reckless or willful misconduct. The third and final trigger of CareerStaff's indemnity obligation is in the event a claim is made against YesCare for any act or omission by CareerStaff or its agents, servants, or employees, pursuant to the MSA Agreements which results in a claim for, *inter alia*, bodily injury and death.

However, even when one analyzes the three "triggers" set forth in Paragraph 9 and its subparagraphs contained in the MSA Agreements, it becomes obvious that YesCare is unable to establish *any* one of the grounds set forth in the MSA Agreements needed to trigger CareerStaff's indemnity obligation. YesCare does not allege that a breach of the MSA Agreements resulted in Plaintiffs' claims, or that CareerStaff committed acts of gross negligence, recklessness, or willful misconduct, and the record is devoid of any evidence to support either these triggers. Further, all evidence of record clearly establishes that Apollon was an employee of Tekaccel, precluding application of the third trigger.

Finally, Paragraph 5.1 of the Original MSA states that all personnel supplied to the Correctional Healthcare Entities are W-2 employees of the staffing vendor (i.e. Tekaccel). See Exhibit B, p. 7, ¶¶ 5.1-5.1.1; 5.3.4; 5.6. Paragraph 5.3 then outlines vendors' (i.e. Tekaccel's) responsibilities as employer of the supplied personnel (i.e. Apollon). Id. at p. 8. Other references to the workers supplied by staffing vendors being employees of said vendors are littered throughout the Original MSA. Id. at ¶¶ 1.8; 2.3. Moreover, the Original MSA specifically

14

disclaims any kind of "partnership, joint venture or joint employment arrangement amongst any of the parties." Id. at p. 4, ¶ 2.1.

Accordingly, YesCare is not entitled to contractual indemnification from CareerStaff and its claim should be dismissed, with prejudice.

### III.   CONCLUSION

CareerStaff Unlimited, LLC is entitled to summary judgment as none of YesCare's claims have any basis in law or in fact and respectfully requests that this Court dismiss all of YesCare's claims with prejudice.

                                              Respectfully submitted,

                                              GORDON REES SCULLY MANSUKHANI LLP

Date:  December 5, 2025                By: _/s/ Alexander B. Possino_____
                                              Alexander B. Possino, Esquire
                                              PA Bar No. 324659
                                              apossino@grsm.com
                                              707 Grant Street, Suite 3800
                                              Pittsburgh, PA 15219
                                              *Counsel for Third Party Defendant/Fourth*
                                              *Party Plaintiff, CareerStaff Unlimited, LLC*