IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACOB and JAMES JUNG as administrators for the estate of LOUIS JUNG, JR.,<br><br>Plaintiffs,<br>vs.<br><br>YESCARE CORP., LALITHA TRIVIKRAM, MAUREEN GAY, BLAIR CABELLOS, et al.,<br><br>Defendants,<br>vs.<br><br>CAREERSTAFF UNLIMITED, LLC,<br><br>Third Party Defendant,<br><br>TEKACCEL, INC.,<br><br>Fourth Party Defendant. | Civil Action No. 2:24-CV-05618-TJS |

**CONCISE STATEMENT OF UNDISPUTED MATERIAL FACTS**

NOW, comes the Defendant, CareerStaff Unlimited, LLC ("CareerStaff"), by and through its undersigned counsel, Gordon, Rees, Scully, & Mansukhani, and files this Concise Statement of Undisputed Material Facts in support of its Motion for Summary Judgment:

**A.    Staffing Services Agreements**

1. On or around April 28, 2022, CareerStaff entered into a Managed Services Agreement with CHS Staffing, LLC ("Original MSA"), which was assigned to YesCare via an agreement between CHS Staffing, YesCare, and CareerStaff dated May 2, 2024 ("Assigned MSA") (collectively "MSA Agreements"). True and correct copies of the Original MSA and

Assigned MSA are attached hereto as **Exhibits A & B**. As such, all of the terms in both agreements govern the relationship between CareerStaff and YesCare.[1]

2. Pursuant to the Original MSA, CareerStaff provided YesCare with access to its staffing vendor network ("VMS"). See Exhibit A at p. 1.

3. YesCare provided certain services in support of its affiliated companies ("Correctional Healthcare Entities") which provided correctional healthcare services to detainees and inmates in the care, custody, and control of certain prisons and jails. Id.

4. The Correctional Healthcare Entities at times required qualified personnel on a temporary and/or permanent basis ("Registry Personnel") for the correctional centers they serviced, such as the Curran-Fromhold Correctional Center ("CFCF"). Id. at p. 1.

5. YesCare's Correctional Healthcare Entities submitted work orders in the VMS for staffing needs outlining requirements of the open positions, such as the duration required of Registry Personnel, as well as required skills, experience, and qualifications. Id. at ¶¶ 1.2-1.2.1.

6. On or around July 12, 2022, CareerStaff and Tekaccel entered into a Staffing Vendor Services Agreement ("Staffing Vendor Agreement"). A true and correct copy of the Staffing Vendor Agreement is attached hereto as **Exhibit C**.

7. Pursuant to the Staffing Vendor Agreement, CareerStaff would provide a vendor management system, the VMS, for distribution and requests of staffing needs, and staffing vendors (e.g. Tekaccel) would supply temporary workers directly to YesCare and/or Correctional Healthcare Entities. Id. at p. 1.

---

[1] Based upon the assignment, and for ease of reference, the remainder of this Concise Statement of Undisputed Material Facts will refer only to YesCare in connection with the MSA Agreements and terms and provisions of same.

8. The Staffing Vendor Agreement unambiguously indicates that personnel staffed to YesCare are W-2 employees of the staffing vendors. Id. at ¶¶ 1.6; 5.1; 5.1.1; 5.3; 5.3-5.3.6.

9. Additionally, the Staffing Vendor Agreement provides that Staffing Vendors and Registry Personnel are contractors with, and not partners, agents, or employees of…[CareerStaff]. Id. at ¶ 2.1.

10. Work orders from Correctional Healthcare Entities were fulfilled by staffing vendors submitting candidates (e.g. Tekaccel) for the work orders through the VMS. Id. at ¶ 1.5.

11. Upon the Correctional Healthcare Entities' acceptance of a candidate, the VMS provided YesCare and the staffing vendor with a confirmation. Id. at ¶ 1.7.

12. Following confirmation, the Registry Personnel (such as Mariesha Apollon), were to report to the assigned Correctional Healthcare Entity location and supervisor in accordance with the work order. Id. at ¶ 1.8.

13. After assignment, the Correctional Healthcare Entities had the authority to request the removal of any such Registry Personnel provided that they did not engage in unlawful discrimination, at which time the staffing vendor was required to remove said employees from the Correctional Healthcare Entities. Id.

14. Pursuant to this process, Mariesha Apollon's ("Apollon") application was submitted by staffing vendor, Tekaccel, Inc. ("Tekaccel"), and accepted by YesCare and/or a Correctional Healthcare Entity.

15. Apollon was assigned to CFCF where she started working in August 2023.

16. The Original MSA acknowledges that all personnel that were supplied to the Correctional Healthcare Entities by staffing vendors utilizing the VMS were W-2 employees of the staffing vendors, *not employees of CareerStaff*. Id. at ¶¶ 5.1-5.1.1; 5.3-5.3.6.

3

17. Paragraph 5.3 of the Original MSA outlines staffing vendors' (e.g. Tekaccel's) responsibilities as the employer of the supplied Registry Personnel (e.g. Apollon). Id. at p. 8.

18. Other references to the Registry Personnel supplied by staffing vendors (e.g. Tekaccel) being employees of said vendors are contained throughout the Original MSA. Id. at ¶¶ 1.8; 2.3.

19. Moreover, the Original MSA specifically disclaims any kind of "partnership, joint venture or joint employment arrangement amongst any of the parties," which includes CareerStaff. Id. at ¶ 2.1.

20. The indemnification responsibilities between CareerStaff and YesCare are outlined in Paragraph 9 of the Original MSA, which provides the following:

> 9.1. Each Party shall indemnify, defend, and hold the other, its officers, directors, shareholders and employees harmless from any claim, demands and costs, including attorneys' fees, by any third party due to or arising out of:
>
> > 9.1.1. Its breach of this Agreement
> >
> > 9.1.2. Its gross negligence or reckless or willful misconduct or
> >
> > 9.1.3 Any act or omission by a Party or its agents, servants, or employees pursuant to this Agreement which results in a claim for bodily injury or death or property loss or damage by whomsoever (including specifically, but without limitation, employees of the Parties and members of the general public).

See Exhibit A, p. 11-12.

21. Additionally, CareerStaff is required to indemnify YesCare and the Correctional Healthcare Entities for claims involving:

> 9.1.4. Workers' compensation and unemployment compensation claims brought by staffing vendors assigned to registry personnel.
>
> 9.1.5. Any state or federal law claims asserted by Staffing Vendors assigned Registry Personnel alleging wrongful discharge, constructive discharge, or

4

discrimination by Staffing Vendor related to any of such assigned Registry Personnel's terms and conditions of employment with Staffing Vendor.

See Exhibit A, p. 12.

**B.     Louis Jung, Jr.'s Incarceration at Curran-Fromhold Correctional Center**

22.     In December 2021, Louis Jung, Jr. ("Decedent") was arrested and incarcerated in the Philadelphia Department of Prisons ("PDP").

23.     In March 2023, Decedent was committed to Norristown Psychiatric Hospital pursuant to a court order.

24.     On October 28, 2023, Decedent was returned to CFCF, within the PDP, where he underwent a medical screening that was conducted by Apollon.

**C.     Mariesha Apollon's Employment With Tekaccel**

25.     At the time of the October 28, 2023 medical screening and all other times relevant hereto, Apollon was not directed, controlled, supervised, instructed, or provided guidance in connection with her responsibilities at CFCF by any employees or agents of CareerStaff.

26.     At the time of the October 28, 2023 medical screening and all other times relevant hereto, Apollon was a W-2 employee of Tekaccel.

27.     During her deposition, Apollon stated that she was hired through an agency called Tekaccel to work at the Philadelphia Department of Prisons in August 2023, where she worked for 26 months until January 2024. A true and correct copy of Mariesha Apollon deposition transcript is attached hereto as **Exhibit D**. See 19:16-20:5; 27:10-27:14; 54:7-54:15.

28.     Apollon was asked whether she was familiar with an entity called "Career Staffing," which she denied, and then she described the circumstances of her hiring. Id. at 20:3-20:5.

29. Specifically, a recruiter from Tekaccel reached out to her via email and stated that they would like to offer her a position, which she subsequently accepted. Id. at 20:9-20:19.

30. Apollon was not familiar with CareerStaff Unlimited, and Tekaccel was listed on her 2023 tax returns. Id. at 117:3-117:12.

31. Further, the training Apollon received for her employment at CFCF was provided by YesCare employees. Id. at 47:24-48:2.

32. On November 6, 2023, Decedent passed away.

          Respectfully submitted,

          GORDON REES SCULLY MANSUKHANI LLP

Date: December 5, 2025      By: *(signature)*
          Alexander B. Possino, Esquire
          PA Bar No. 324659
          apossino@grsm.com
          707 Grant Street, Suite 3800
          Pittsburgh, PA 15219
          *Counsel for Third Party Defendant/Fourth Party Plaintiff, CareerStaff Unlimited, LLC*