IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACOB and JAMES JUNG, as Administrators of the Estate of LOUIS JUNG, JR, | : <br> : <br> : No. 2:24-cv-05618-TJS <br> : |
| Plaintiff, | : <br> : |
| v. | : **JURY TRIAL DEMANDED** <br> : |
| CITY OF PHILADELPHIA; YesCare Corp.; BLANCHE CARNEY, Former Commissioner of Philadelphia Dept. of Prisons; LALITHA TRIVIKRAM; MAUREEN GAY;  MARIESHA APOLLON; BLAIR CABELLOS; GENA FRASIER; WANDA BLOODSAW, | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |
| Defendants, | : <br> : |
| v. | : <br> : |
| CAREERSTAFF UNLIMITED, LLC, | : <br> : |
| Third Party Defendant, | : <br> : |
| v. | : <br> : |
| TEKACCEL, INC., | : <br> : |
| Fourth Party Defendant. | : |

**PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

1.  Diabetes is a set of chronic conditions characterized by the inability to produce or absorb insulin. Ex. 1, YesCare Clinical Pathway: Diabetes Mellitus at 1; Ex. 2, Deposition of Defendant Lalitha Trivikram, 30(b)(6) designee for YesCare [hereafter "Trivikram Deposition"] at 83:12-16; Ex. 3, Export Report of Dr. Jonathan S. Williams [hereafter "Williams Report"], at 2.

2. Insulin is a hormone that helps to break down glucose into energy, regulating glucose levels in the body. Ex. 2, Trivikram Deposition at 83:9-10; Ex. 3, Williams Report at 2.

3. Without insulin, a person's body cannot break down glucose in their bloodstream into energy. This results in high blood glucose levels, also known as hyperglycemia. Ex. 3, Williams Report at 2; Ex. 2, Trivikram Deposition at 145:17-18.

4. There are two main types of diabetes: Type 1 and Type 2. Although there are many similarities between Type 1 and Type 2 diabetes – both are serious conditions – the causes are different, which is also reflected in each type's respective treatment. Ex. 2, Trivikram Deposition p. 84:4-86:17; Ex. 1, YesCare Clinical Pathway at 1.

5. Type 1 diabetes is an autoimmune condition where an individual's pancreas is unable to produce insulin. It is characterized by absolute insulin deficiency. Ex. 1, YesCare Clinical Pathway: Diabetes Mellitus at 1; Ex. 2, Trivikram Deposition at 84:5-8; Ex. 3, Williams Report at 2.

6. Type 1 diabetics are treated with the administration of insulin, often consisting of multiple daily injections. Ex. 2, Trivikram Deposition at 85:9-14; Ex. 1, YesCare Clinical Pathway: Diabetes Mellitus at 4; Ex. 3, Williams Reports at 2.

7. Type 1 diabetics cannot live without administered insulin. Ex. 2, Trivikram Deposition at 85:20-22; Ex. 3, Williams Report at 2-3.

8. Lack of insulin can cause diabetic ketoacidosis (DKA). Ex. 2, Trivikram Deposition at 147:4-13; Ex. 1, YesCare Clinical Pathway: Diabetes Mellitus at 5; Ex. 3, Williams Report at 2-3.

9. Diabetes ketoacidosis (DKA) is a life-threatening condition. Ex. 2, Trivikram Deposition at 184:20-22; Ex. 3, Williams Report at 3.

10. Diabetic ketoacidosis occurs when the body does not have enough insulin to break down glucose properly. As a result, the body starts breaking down fats as a fuel source. This fat breakdown produces fatty acids and ketones, which acidify the blood. Acid build-up in the blood disrupts normal body processes, and ultimately causes multi-organ dysfunction and failure. Ex. 2, Trivikram Deposition at 112:17-21, 147:4-13; Ex. 3, Williams Report at 2-3.

11. For a Type 1 diabetic, the omission of insulin for as little as 24 hours can result in severe metabolic decompensation, including diabetic ketoacidosis. Ex. 4, American Diabetes Association, Diabetes Management in Detention Facilities (October 2021) at 2; Ex. 2, Trivikram Deposition at 98:23-99:7; Ex. 3, Williams Report at 2-3.

12. In the contract entered into between Corizon, Inc. and the City of Philadelphia, which was assigned to YesCare Corporation [hereafter "YesCare"], Corizon stated that its care for diabetic patients was based on the American Diabetes Association (ADA) guidelines. Ex. 5, Jan. 2022 Contract excerpt at PJUNG002333; Ex. 6, Deposition of Sandy Varghese, 30(b)(6) designee for PDP [hereafter "Varghese Deposition"] at 17:1-10, 52:13-17.

13. The ADA states that all patients must have access to prompt treatment for hypoglycemia (low blood glucose) and hyperglycemia (high blood glucose). Ex. 4, American Diabetes Association, Diabetes Management in Detention Facilities (October 2021) at 5.

14. The ADA further states that facility staff should be required to notify a physician of all blood glucose results outside of a specified range, as determined by the treating physician. Ex. 4, American Diabetes Association, Diabetes Management in Detention Facilities (October 2021) at 5.

15. YesCare recognized that prompt treatment for hyperglycemia and notification of a medical provider was required for diabetic patients with elevated glucose levels in its Clinical Pathway for diabetes care. Ex. 1, YesCare Diabetes Clinical Pathway, p. 3-4.

16. Under policy in force through 2024, when a diabetic patient's glucose level equaled or exceeds 400 in a Finger Stick Blood Glucose (FSBG) check, YesCare nursing staff were required to determine if ketones are present in the patient's urine; notify the facility or on-call practitioner for orders and document in the patient's chart; conduct a follow-up FSBG check in approximately two hours; and place the patient on sick call to be seen by the provider for the next day that the provider is on-site. *Id*.

17. When a diabetic patient's glucose level equals or exceeds 300 in a FSBG check, YesCare nursing staff were required to determine if ketones are present in the patient's urine. *Id*. at 4.

18. YesCare recognized insulin as a "critical medication" that required medical staff to follow-up with a patient each time a single dose was missed. Ex. 7, YesCare Core Process Program: Medication Administration at 7; YesCare Policy: Refusal of Medication or Clinical Encounter at 4; Ex. 2, Trivikram Deposition at 75:22-76:6.

19. Missing a critical medication such as insulin requires nursing staff to implement the "Red Flag" policy. This policy requires nursing staff to schedule a patient "Red Flag Encounter" with a medical provider, so that the patient may be counseled on their medications. These encounters are documented in the patient's electronic health record. Ex. 2, Trivikram Deposition at 77:19-80:13; Ex. 9, PDP Red Flag Medication Compliance System; Ex. 8, Deposition of Marsha Jeoboham [hereafter "Jeoboham Deposition"] at 59:23-60:9, 68:14-25.

4

20. The "Red Flag Encounter" procedure states: "When an incarcerated person refuses to take or otherwise is not given medication three doses in a row, three days in a row, or in some other pattern of non-compliance such as taking morning medications but refusing evening medications, the nurse will counsel the patients regarding the need to be medication compliant. If the nurse counsels the incarcerated person, and the incarcerated person agrees to take their medication, the nurse will record the administration and delete the name from the non-compliant list. If the incarcerated person continues to refuse despite counseling by the nurse, the incarcerated person will sign the Against Medical Advice Medication Refusal Form. The nurse will activate the Red Flag alert, which only displays in the electronic medical record. The nurse will then schedule a Red Flag visit with the physical and/or behavioral health care prescriber. At that time, the appointment transmits to the IJMS scheduling module so PDP security staff are aware of the appointment." Ex. 9, PDP Red Flag Medication Compliance System.

21. If the patient agrees to accept insulin, it is to be provided; if the patient refuses, the patient is to be counseled on the risks of refusal of insulin, a refusal form is supposed to be filled out, and the refusal is documented on the patient's Medication Administration Record, according to YesCare policy. Ex. 10, YesCare Policy: Refusal of Medication or Clinical Encounter at 4; Ex. 2, Trivikram Deposition at 76:11-77:16; Ex. 8, Jeoboham Deposition at 59:23-60:9, 64:6-66:1.

22. Louis Jung, Jr. [hereafter "Mr. Jung"] was born on April 16, 1973. Ex. 11, PDP Inmate Timeline of Louis Jung, Jr.

23. Mr. Jung was diagnosed with Type 1 diabetes as was an adolescent. Ex. 12, Jung Endocrinologist Record, July 20, 2022.

24. Mr. Jung was incarcerated within the PDP on December 16, 2021. Ex. 13, Jung Psychiatric Evaluation, April 27, 2022 at 1-2.

5

25. Mr. Jung was hospitalized on the following dates for the following reasons while in PDP custody and under the medical care of YesCare:

    a. December 20, 2021 – January 5, 2022: diabetic ketoacidosis (DKA);

    b. April 7, 2022 – April 9, 2022: DKA;

    c. January 8, 2023 – January 12, 2023: DKA;

    d. January 23, 2023 – January 29, 2023: DKA;

    e. March 11, 2023 – March 14, 2023: DKA

    f. March 19, 2023 – March 20, 2023 – Hyperglycemia.

Ex. 14, Expert Report of Dr. Homer Venters [hereafter "Venters Report"] at 5-6.

26. On June 2, 2023, Mr. Jung was transferred to Norristown State Psychiatric Hospital. Ex. 15, Jung Competency Letter.

27. On October 27, 2023, Mr. Jung was transferred from Norristown State Psychiatric Hospital to PDP custody, arriving at Curran-Fromhold Correctional Facility (CFCF) at around 12:55 PM. Ex. 16, Jung Intake Screening Questionnaire by Correctional Officer.

28. Mr. Jung's medical intake screening occurred on the morning of October 28, 2023. Ex. 17, Jung Medical Records October 28, 2023 – November 6, 2023 at YesCare-1464-1471.

29. Mr. Jung's blood glucose level at intake on October 28, 2023 was 542. *Id*. at YesCare-1464-1465.

30. Mr. Jung tested positive for ketones during his intake when he was provided a urine test for the presence of ketones. *Id*. at YesCare-1470.

31. The intake nurse, Mariesha Apollon, contacted the medical provider, Maureen Gay, on October 28, 2023 at around 10:02 AM regarding Mr. Jung. *Id*. at YesCare-1466.

32. Maureen Gay was at the time an employee of YesCare. Ex. 18, Deposition of Defendant Maureen Gay at 7:14-19.

33. Maureen Gay issued the following orders for Mr. Jung's Type 1 diabetes:

   a. NovoLIN N Suspension, 100 UNIT/ML, 10 units, Subcutaneous, TWICE DAILY, start date 10/28/2023;

   b. NOVOLIN R Solution, 100 UNIT/ML, 2-12 units, Injection, TWICE DAILY PRN, start date 10/28/2023, Notes: 151-200 give 4 units, 201-250 give 6 units, 251-300 give 8 units, 301-400 give 10 units, > or = 401 give 12 units;

   c. Accu Chek Reading,[1] TWICE DAILY; start date 10/28/2023.

Ex. 17, Jung Medical Records October 28, 2023 – November 6, 2023 at YesCare-1464-1465.

34. On October 28, 2023, there was not a documented medical order requiring nursing staff to check Mr. Jung's glucose within approximately two hours as required by YesCare's Diabetes Mellitus Clinical Pathway. *Id*.; Ex. 1, YesCare Diabetes Clinical Pathway, p. 3-4.

35. On October 28, 2023, there was not a documented medical order requiring Mr. Jung to be seen by a medical provider the next day that a provider was on site, as required by YesCare's Diabetes Mellitus Clinical Pathway. Ex. 17, Jung Medical Records October 28, 2023 – November 6, 2023 at YesCare-1464-1465; Ex. 1, YesCare Diabetes Clinical Pathway, p. 3-4.

36. Maureen Gay scheduled Mr. Jung to be seen by a provider for his diabetes care 28 days from the date of his intake. Ex. 17, Jung Medical Records October 28, 2023 – November 6, 2023 at YesCare-1464-1465.

---

[1] An Accu-check reading is a Finger Stick Blood Glucose Test.

37. Mr. Jung was ordered to be provided insulin twice per day, during an AM and PM administration. *Id*.; Ex. 19, Medication Administration Record, October 2023; Ex. 20, Patient Safety Event Report, p. 4.

38. During the PM glucose check and insulin administration for Mr. Jung on October 29, 2023, his glucose level was 585. *Id*.

39. A medical provider did not see Mr. Jung in response to his elevated glucose level of 585 on October 29, 2023. YesCare is not able to produce evidence that Mr. Jung was seen by a provider on this date. Ex. 17, Jung Medical Records October 28, 2023 – November 6, 2023.

40. According to YesCare's Patient Safety Event Report, there is a notation in "the EMAR" from October 29, 2023 that a provider was notified and a urine obtained, but there is no documentation of a provider notification or the result of this urine test. Ex. 20, Patient Safety Event Report, p. 4.

41. There is no documentation as to whether Mr. Jung had ketones present in his urine on October 29, 2023, when his blood glucose level was 585, or that his ketone level was checked. *Id*.; Ex. 17, Jung Medical Records October 28, 2023 – November 6, 2023; Ex. 3, Williams Report at 4-5.

42. During the PM glucose check and insulin administration for Mr. Jung on October 31, 2023, his glucose level was 500. Ex. 20, Patient Safety Event Report, p. 4.

43. A medical provider was not notified by nursing staff and a medical provider did not see Mr. Jung in response to his elevated glucose level of 500 on October 31, 2023. YesCare is not able to produce evidence that Mr. Jung was seen by a provider on this date. Ex. 17, Jung Medical Records October 28, 2023 – November 6, 2023; Ex. 3, Williams Report at 5.

44. Mr. Jung was not checked for ketones on October 31, 2023 when his blood glucose level was 500. YesCare is not able to produce evidence that Mr. Jung was checked for ketones on this date. Ex. 18, Jung Medical Records October 28, 2023 – November 6, 2023; Ex. 3, Williams Report at 5.

45. During the PM glucose check and insulin administration for Mr. Jung on November 1, 2023, his glucose level was 411. Nursing staff did not administer any corrective regular insulin at this time. Ex. 20, Patient Safety Event Report, p. 4, 5; Ex. 3, Williams Report at 5.

46. A medical provider was not notified by nursing staff and a medical provider did not see Mr. Jung in response to his elevated glucose level of 411 on November 1, 2023. YesCare is not able to produce evidence that Mr. Jung was seen by a provider on this date. Ex. 17, Jung Medical Records October 28, 2023 – November 6, 2023; Ex. 3, Williams Report at 5.

47. Mr. Jung was not checked for ketones on November 1, 2023 when his blood glucose level was 411. YesCare is not able to produce evidence that Mr. Jung was checked for ketones on this date. Ex. 17, Jung Medical Records October 28, 2023 – November 6, 2023; Ex. 3, Williams Report at 5.

48. YesCare nursing staff did not document whether Mr. Jung had any symptoms associated with hyperglycemia and/or diabetic ketoacidosis when his blood glucose level was higher than 400 on October 29 and 31, 2023, and November 1, 2023. YesCare nursing staff did not use the YesCare Hypoglycemia/Hyperglycemia Nursing Encounter Tool (NET) to document whether or not Mr. Jung was symptomatic; they did not document any symptoms in a progress note; they did not even generate any progress note; nor did they produce any documentation in Mr. Jung's medical records whatsoever pertaining to the presence or absence of symptoms of hyperglycemia and/or diabetic ketoacidosis. Ex. 17, Jung Medical Records October 28, 2023 –

November 6, 2023; Ex. 20, Patient Safety Event Report, p. 6 (noting that "Nurses failed to utilize Hyper/Hypoglycemia NET during med pass (BS >400)).

49. Each time Mr. Jung missed a dose of insulin, YesCare nursing staff was required to see the patient in person in order to provide the patient with an opportunity to receive insulin and to generate a "Red Flag" encounter for him to see a medical provider. Ex. 7, YesCare Core Process Program: Medication Administration at 7; Ex. 10, YesCare Policy: Refusal of Medication or Clinical Encounter at 1-2; Ex. 9, PDP Red Flag Medication Compliance System, Ex. 2, Trivikram Deposition at 76:11-80:13; Ex. 8, Jeoboham Deposition at 59:23-60:9, 68:14.

50. YesCare nursing staff failed to schedule and conduct a Red Flag encounter with Mr. Jung when he was not provided insulin on the following days and times:

    a. October 30, 2023, PM administration, reason given: Not Documented;

    b. November 1, 2023, AM administration, reason given: Refused (no refusal form);

    c. November 3, 2023, AM administration, reason given: No Show;

    d. November 4, 2023, PM administration, reason given: Not Documented;

    e. November 5, 2023, AM administration, reason given: No Show;

    f. November 5, 2023, PM administration, reason given: Refused (no form).

Ex. 20, Patient Safety Event Report, p. 4-6 (noting that "Nurses failed to obtain a signed refusal or schedule a red flag appointment" and did not schedule a red flag for "no shows"); Ex. 3, Williams Report at 5.

51. If a patient refuses insulin, YesCare nursing staff are required to follow the refusal policy, counsel the patient on the risks of not taking the medication, and obtain a patient's signature on the refusal form. If the patient refuses to sign then the nursing staff member is to sign the form and obtain the signature of a witness. Ex. 10, YesCare Policy: Refusal of Medication or Clinical

10

Encounter at 1-2; Ex. 2, Trivikram Deposition at 76:11-77:1; Ex. 8, Jeoboham Deposition at 64:12-65:5.

52. YesCare nursing staff failed to obtain refusal forms on November 1 and 5, 2023, when it was claimed that Mr. Jung refused his insulin. Ex. 20, Patient Safety Event Report, p. 4-5 (noting that "Nurses failed to obtain a signed refusal or schedule a red flag appointment).

53. Defendant LPN Blair Cabellos was an employee of YesCare Corp. from August 2023 to May 2024. Ex. 21, Deposition of Defendant Blair Cabellos [hereafter "Cabellos Deposition"] at 15:16-19.

54. On the morning of November 5, 2023, Defendant Blair Cabellos was performing a medication pass at CFCF B1pod3. *Id* at 74:8-76:14; Ex. 22, Interview of Blair Cabellos.

55. Defendant Blair Cabellos was informed by a correctional officer that an inmate, Mr. Jung, wanted to see a nurse because he didn't feel good. Ex. 21, Cabellos Deposition at 76:8-16.

56. In an interview with PDP investigator Shawn Jay, Defendant Cabellos stated that she saw an incarcerated person on the floor of the doorway of cell #21 and that the incarcerated person stated that he needed help to get up. Ex. 22, Interview of Blair Cabellos.

57. Later, Defendant Cabellos testified that Mr. Jung was standing in the back of his cell when she arrived at the cell, and that he walked to the door and set himself on the floor. Ex. 21, Cabellos Deposition at 76:14-77:9.

58. Defendant Cabellos heard Mr. Jung state that his legs hurt, or that he needed help to get up. *Id* at at 76:16-18; Ex. 22, Interview of Blair Cabellos.

59. YesCare policy and the standard of care for reasonable nursing required Defendant Cabellos to identify potential urgent/emergent health needs for patients, and to use clinical knowledge and critical thinking skills to identify current or potential health issues that would

11

require more immediate treatment. Ex. 23, YesCare Core Process Program 503-C-SOP: Urgent/Emergent Care; Ex. 24, Expert Report of Lori Roscoe [hereafter "Roscoe Report"], at 13-14.

60. YesCare policy and the standard of care for reasonable nursing required Defendant Cabellos to identify patients that present with potential urgent or emergent health needs, provide emergency care if appropriate, or arrange for urgent care by contacting a provider. Ex. 23, YesCare Core Process Program 503-C-SOP: Urgent/Emergent Care; Ex. 24, Roscoe Report at 13-14.

61. YesCare policy and the standard of care for reasonable nursing required Defendant Cabellos to document encounters where patients such as Mr. Jung communicated their health needs. Ex. 25, YesCare General Health Services Policy & Procedure – Curran-Fromhold Correctional Facility: Communication on Patient's Health Needs at 1; Ex. 24, Roscoe Report at 14; Ex. 22, Cabellos Deposition at 62:23-63:22.

62. Defendant Cabellos did not check Mr. Jung's vitals or his blood glucose levels on November 5, 2023. Ex. 27, PDP Report of Investigation, Office of Special Investigations, pp. 4, 10; Ex. 21, Cabellos Deposition at 80:15-17; Ex. 24, Roscoe Report at 13-14.

63. Defendant Cabellos did not review Mr. Jung's medical chart on November 5, 2023. Ex. 26, PDP Report of Investigation, Office of Special Investigations, pp. 4, 10; Ex. 21, Cabellos Deposition at 79:23-80:1.

64. Defendant Cabellos did not contact any other correctional staff or medical staff in regard to Mr. Jung on November 5, 2023. Ex. 26, PDP Report of Investigation, Office of Special Investigations, pp. 4, 10; Ex. 21, Cabellos Deposition at 89:1-7; Ex. 24, Roscoe Report at 13-14.

65. Defendant Cabellos did not document her encounter with Mr. Jung at all. Ex. 26, PDP Report of Investigation, Office of Special Investigations, pp. 4, 10; Ex. 17, Jung Medical Records October 28, 2023 – November 6, 2023; Ex. 24, Roscoe Report at 14.

66. Defendant Cabellos stated in her interview that she told the officer to call a stretcher because the incarcerated person stated he needed help to get up. She later testified at her deposition that she told the officer to call a stretcher if the incarcerated person continued to complain of pain. Ex. 22, Interview of Blair Cabellos; Ex. 21, Cabellos Deposition at 77:5-9.

67. Mr. Jung was dragged back into his cell by two incarcerated people after Defendant Cabellos left his cell. Ex. 26, PDP Report of Investigation, Office of Special Investigations, pp. 4, 10.

68. On November 6, 2023 at approximately 6:04 A.M., Mr. Jung was discovered in a state of medical emergency in his cell. *Id* at 3.

69. Mr. Jung was pronounced dead on PDP premises at CFCF at 6:47 A.M. on November 6, 2023. *Id* at 1.

70. The last documented instance that Mr. Jung had been administered insulin was during the AM on November 4, 2023. Ex. 20, Patient Safety Event Report p. 4.

71. Mr. Jung did not receive any insulin at all on November 5, 2023. *Id* at 5; Ex. 3, Williams Report at 5.

72. The cause of Mr. Jung's death was diabetic ketoacidosis due to lack of insulin. Ex. 3, Williams Report at 6-7.

73. YesCare conducted a review of Mr. Jung's death. That review was the basis for a Patient Safety Event Report about Mr. Jung's death. Ex. 20, Patient Safety Event Report.

74. The Patient Safety Event identified, *inter alia*, the following problems with the care provided to Mr. Jung:

   a. "Nurse failed to utilize the Hyper/Hypoglycemia NET during the Intake screening or schedule a follow up (walk in appt)" and "will receive a write up for not completing a NET form for elevated Blood sugar upon examination or scheduling a follow up visit";

   b. "Nurse did not utilize CRIC for BS>400 nor notify the provider" and will "receive a write up for failure to administer sliding scale insulin coverage for a BS of 411";

   c. "Nurses failed to obtain a signed refusal or schedule a red flag appointment" and will "receive a write up for not receiving a refusal";

   d. "Nurses failed to utilize the Hyper/Hypoglycemia NET during med pass (BS >400)" and will "receive a write up for not completing a NET form for elevated Blood sugar upon examination";

   e. "Nurses documented a NO SHOW for insulin" and would "receive a write up for not scheduling a red flag appointment";

   f. "Nurses failed to document in the EMAR (Not Documented)" and will receive further education on documentation of medication administration;

   g. "Provider failed to follow up in real time regarding telephone call about patient with BS of 542 and positive ketones" and "was verbally educated by the SMD [Site Medical Director].

*Id*, p. 5-6.

75. YesCare conducted no audits of insulin administration prior to November 2023. YesCare cannot put forth evidence of insulin administration audits prior to November 2023.

14

76. YesCare conducted no audits of red flag policy prior to November 2023. YesCare cannot put forth evidence of red flag policy audits prior to November 2023.

77. YesCare conducted no audits of its refusal policy prior to November 2023. YesCare cannot put forth evidence of refusal policy audits prior to November 2023.

78. Multiple prior hospitalizations for diabetic complications including hypoglycemia and hyperglycemia, both in Mr. Jung's own case and those of other patients, reflected problems similar to those identified in the Patient Safety Report on Mr. Jung:

   a. Mr. Jung was hospitalized on January 23, 2023 for hyperglycemia. His medication administration record for the three days leading up to his hospitalization only show two documented administrations of insulin, on the mornings of 1/20 and 1/21; the rest of his MAR for blood sugar checks or insulin doses in these three days reflect refusals (with no refusal forms), "not documented," or "no show." Ex. 14, Venters Report at 6-7.

   b. Mr. Jung was hospitalized for diabetic ketoacidosis on March 11, 2023. His medication administration record for insulin and blood sugar checks in the week leading up to this hospitalization reflects five "no shows", three "not documented", and five refusals. Only three refusal forms are present, none of them signed by Mr. Jung. Ex. 14, Venters Report at 6, 8.

   c. "Patient 1" was hospitalized three times for diabetic complications while under the care of YesCare/Corizon at CFCF. In the 11-day period leading up to his most recent hospitalization on August 24, 2022, his medication administration record for blood sugar check contained an entry of "not documented" for 19 of 44 checks. His medical records reflect a telephone call about his blood sugar level being at 508 ten days before this hospitalization, but contain no corresponding Nursing Encounter Tool for hyperglycemia. Ex. 14, Venters Report at 11-12.

   d. "Patient 3" was hospitalized for diabetic complications on May 25, 2022 while under the care of YesCare/Corizon at CFCF. In the 11-day period leading up to this hospitalization, his medication administration record contains entries of "not documented" for 13 of 22 blood sugar checks. Ex. 14, Venters Report at 12-13.

   e. "Patient 4" was hospitalized for diabetic complications on January 12, 2023 while under the care of YesCare/Corizon at CFCF. In the 11-day period leading up to this hospitalization, his medication administration record reflects an entry of "not documented" for 8 of 22 blood sugar checks. A week before this hospitalization, his medical records reflect a "stretcher call" for a hypoglycemic episode where the patient was unable to respond to questions. He was given a tube of glucose gel and two sugar packets. His medical records do not reflect any further encounters with

15

medical providers between this episode and his hospitalization. Ex. 14, Venters Reports at 13.

79. YesCare's Patient Safety Event Report categorizes events that it reviews on scale of 1-4. First, YesCare determines if there "was a deviation from generally accepted performance standards". If the answer is yes, then YesCare asks "[d]id the deviation reach the patient?" If the answer to this question is yes, then YesCare asks "[d]id the deviation lead to moderate to severe harm or death"? If the answer to that question is yes, then YesCare determines that the event is a Category 4 "Serious Safety Event," the most serious type in its Category Assignment. Ex. 20, Patient Safety Event Report, p. 7.

80. YesCare determined that there were deviations from generally accepted performance standards in regard to the care provided to Mr. Jung that was reviewed in its Patient Safety Report. *Id*.

81. YesCare determined that these deviations reached the patient, Mr. Jung. *Id*.

82. YesCare determined that these deviations led to moderate to severe harm or death in this case. *Id*.

83. YesCare determined that the death of Mr. Jung was a Category 4 Serious Safety Event where the deviations in generally accepted performance standards reached Mr. Jung and caused his death. *Id.*

84. The Site Medical Director for CFCF, Defendant Dr. Lalitha Trivikram, was designated as the 30(b)(6) deponent for YesCare. Ex. 2, Trivikram Deposition at 10:5-13:5.

85. Dr. Trivikram testified that the classification of Mr. Jung's death as a Category 4 event was accurate. *Id*. at 238:14-239:7.

86. Dr. Trivikram testified that Mr. Jung's death was preventable. *Id*. at 249:8-10.

87. Dr. Trivikram testified that the death of Mr. Jung could have been prevented if they had provided him with insulin. *Id*. at 249:12-19.


Respectfully submitted,

*/s/ Bret Grote*
Bret Grote (PA 317273)
*/s/ Rupalee Rashatwar*
Rupalee Rashatwar (PA 331085)
*/s/ Margaret Hu*
Margaret Hu (PA 334438)
*/s/ Lolo Salsbury Serrano*
Lolo Salsbury Serrano (PA 338184)
990 Spring Garden
Philadelphia, PA 19123
(412) 654-9070
bretgrote@abolitionistlawcenter.org
rupalee@alcenter.org
margo@alcenter.org
lolo@alcenter.org

*Counsel for the Plaintiffs*

**CERTIFICATE OF SERVICE**

      I, Bret Grote, Esq., hereby certify that I caused a true and correct copy of the foregoing Plaintiffs' Statement of Undisputed Material Facts to be electronically filed on December 5, 2025, and thereby served upon all parties entered into the Court's ECF system.

/s/ *Bret Grote*
_____
Bret Grote