# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JACOB and JAMES JUNG, as Administrators of the Estate of LOUIS JUNG, JR,** | :<br>:<br>:<br>: |
| Plaintiffs, | :<br>:  **Civil Action**<br>:  **No. 2:24-cv-05618** |
| v. | :<br>: |
| **CITY OF PHILADELPHIA, et al.,** | :<br>: |
| Defendants. | :<br>: |

## PROPOSED ORDER

AND NOW, this _____ day of _____, 202\_, upon consideration of Defendants, City of Philadelphia, Blanche Carney, Gena Fraiser, and Wanda Bloodshaw's (hereinafter "Moving Defendants" or "Corrections Defendants") Motion to Preclude the testimony and report of Plaintiffs' Expert, Arthur Wallenstein, and Plaintiffs' response thereto, it is hereby **ORDERED** that Defendant's Motion is **GRANTED**.

BY THE COURT:

_____
**TIMOTHY J. SAVAGE, J.**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JACOB and JAMES JUNG, as Administrators of the Estate of LOUIS JUNG, JR,** | |
| Plaintiffs, | Civil Action<br>No. 2:24-cv-05618 |
| v. | |
| **CITY OF PHILADELPHIA, et al.,** | |
| Defendants. | |

<u>DEFENDANTS' CITY OF PHILADELPHIA'S, BLANCHE CARNEY'S, GENA FRASIER'S, AND WANDA BLOODSAW'S *DAUBERT* MOTION</u>

Defendants, City of Philadelphia, Blanche Carney, Wanda Bloodsaw, and Gena Frasier, hereby files this Motion to Preclude Plaintiffs' Expert Arthur Wallenstein, pursuant to Federal Rules of Evidence 26 and 702, and incorporates by reference the attached Memorandum of Law. Defendants respectfully requests that this Court preclude Plaintiffs' Expert from testifying at trial in this matter.

Respectfully submitted,

Date: December 12, 2025

/s/ Michael Pestrak
**Michael Pestrak**
Senior Attorney
Attorney I.D. No. 208611
**Emily M. Hoff**
Deputy City Solicitor
Attorney I.D. No. 330859
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
*Attorneys for Defendants City of Philadelphia, Carney, Frasier, and Bloodsaw*

1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACOB and JAMES JUNG, as Administrators of the Estate of LOUIS JUNG, JR, | : : : : |
| Plaintiffs, | : : Civil Action |
| v. | : No. 2:24-cv-05618 |
| CITY OF PHILADELPHIA, et al., | : : |
| Defendants. | : |

DEFENDANTS' CITY OF PHILADELPHIA'S, BLANCHE CARNEY'S, GENA FRASIER'S, AND WANDA BLOODSAW'S MEMORANDUM OF LAW
IN SUPPORT OF ITS *DAUBERT* MOTION

Defendants, City of Philadelphia, Blanche Carney, Gena Fraiser, and Wanda Bloodshaw (hereinafter "Moving Defendants" or "Corrections Defendants") move to preclude Plaintiffs from introducing the testimony of Arthur Wallenstein (hereinafter "Mr. Wallenstein") at trial, as his opinions fail to conform to the requirements set forth in Federal Rule of Evidence (hereinafter "Rule") 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Plaintiffs' failure to timely notice Mr. Wallenstein, his unqualified opinion, his lack of methodology, and his resorting to credibility determinations to base his opinions upon establish that preclusion of Mr. Wallenstein's testimony, in its entirety, is proper.

I.  APPLICABLE LAW

Federal Rule of Civil Procedure 26(a) prohibits parties from calling any witness or using any information not disclosed accordingly. There are two exceptions: upon a showing of "substantial justification" or if the failure to disclose is merely "harmless." *Fuller v. City of Philadelphia*, 2008 WL 11515717, at *4 (E.D. Pa. May 15, 2008). The criteria for the Court's decision are: (1) the

2

prejudice or surprise in fact to the opposing party, (2) the ability of the party to cure the prejudice, (3) the extent of disruption of the orderly and efficient trial of the case, and (4) the bad faith or willfulness of the non-compliant party. *Beissel v. Pittsburgh & Lake Erie R. Co.,* 801 F.2d 143, 150 (3d Cir. 1986). Federal Rule of Civil Procedure 26(2)(D) provides the timing for when the disclosure of experts is supposed to occur; "[a] party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made at least 90 days before the date set for trial or for the case to be ready for trial."

The Supreme Court decision in *Daubert*, and its subsequent codification in Rule 702, governs the admissibility of expert testimony. *See generally* Fed. R. Evid. 702; *Daubert*, 509 U.S. 579. Under the framework established by Rule 702 and *Daubert*, a court must determine: (1) whether the witness is qualified as an expert by knowledge, skill, experience, training, or education; (2) whether the expert's reasoning or methodology underlying the testimony is reliable; and (3) whether the testimony will assist the trier of fact in understanding the evidence or determining a fact in issue. *Elcock v. Kmart Corp*, 233 F.3d 734, 741 (3d Cir. 2000). This analysis applies to scientific and nonscientific, technical or specialized knowledge alike. *Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137 (1999). Ultimately, the proponent of expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence. *See Daubert*, 509 U.S. at 592 n.10.

When district courts exercise their gatekeeping responsibility under *Daubert*, the first question is "whether the expert has sufficient qualifications to testify." *Humphrey v. Diamant Boart, Inc.*, 556 F. Supp.2d 167, 174 (E.D.N.Y. 2008). This threshold inquiry involves the court's comparison of "the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004). Notably, the Third Circuit does "not pursue[] a policy of qualifying *any* proffered witness as an expert." *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998) (collecting cases). Even doctors, who may

be experts in one area, must be qualified to opine on the topic at hand. *See id.* (citing to *Diaz v. Johnson Matthey, Inc.*, 893 F. Supp. 358, 373 (D.N.J. 1995)).

Once a district court determines that a witness qualifies as an expert, it moves to the second part of the inquiry – determining whether the expert's testimony is reliable. To determine whether an expert's testimony is reliable, the Third Circuit has put forth the following factors: (1) whether a method consist of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put. *Crowley v. Chait*, 322 F.Supp.2d 530, 535 (D.N.J. 2004) (citing to *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 742 (3d Cir. 1994).

However, because "the *Daubert* factors do not always fit neatly into or easily translate in the context of nonscientific testimony . . . the inquiry into an expert's reliability may focus instead upon personal knowledge or experience." *Crowley*, 322 F.Supp.2d at 535 (internal quotations omitted) (*citing to Voilas v. Gen. Motors Corp.*, 73 F. Supp.2d 452, 461 (D.N.J. 1999)); *see also On Track Innovations Ltd. V. T-Mobile USA, Inc.,* 106 F. Supp.3d 369, 411 (S.D.N.Y. 2015) (quoting *WeddingChannel.Com, Inc. v. The Knot, Inc.*, 03-cv-7369 (RWS), 2005 WL 165286, at 6 (S.D.N.Y. Jan. 26, 2005) ("[I]n some cases, reliability concerns may focus on personal knowledge or experience rather than strict scientific methods")).

When determining the reliability of non-scientific expert testimony, "[t]he relevant reliability concerns [will] focus upon the personal knowledge [and] experience of the witness and the methodology used will be applying that experience to the facts of the case." *Walsh/Granite, JV v. HDR Engineering, Inc.*, Case No. 17-cv-558, 2020WL13876908, at *6 (E.D. Pa. June 15, 2020)

4

(quoting *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 286 F.R.D. 266, 269 (W.D. Pa. 2012)). Since, "in the nonscientific world, theories are often not subject to testing or experimentation[,]" the amount of experience and training that an expert has determines the reliability of his or her testimony. *Voilas*, 73 F.Supp.2d at 461; *see also Elcock*, 233 F.3d at 749 ("As we made clear in *Paoli II*, an expert's 'level of expertise may affect the reliability of the expert's opinion.'").

If a court determines that an expert witness is qualified and that his methodology is reliable, the court should last turn to the question of whether the expert's testimony "fits" the facts and issues presented in the case. *See Elcock*, 233 F.3d at 741. An expert's testimony "fits" the needs of the case if the testimony "will help the trier of fact to [1] understand the evidence or [2] to determine a fact in issue." Fed. R. Evid. 702. To determine whether an expert's testimony "fits" the needs of the case, courts often look to arguments usually reserved for a Rule 403 analysis. *In re Paoli II*, 35 F.3d at 746 ("We explained in Downing that Rule 702 analysis partly incorporates Rule 403 analysis but leaves room for Rule 403 to operate independently."). However, because "expert evidence is often more misleading than other evidence, [the] Rule 403 [analysis] gives a judge more power over experts than over lay witnesses." *Id*. at 747.

II.     ARGUMENT

Moving Defendants contend that preclusion of Mr. Wallenstein's report and testimony is warranted on multiple grounds. The first being lack of notice pursuant to Rule 26(a). Plaintiffs first proffered a list of experts on June 18, 2025. Mr. Wallenstein was not on this list. In fact, no expert in the field that Mr. Wallenstein is a purported expert in was noticed. Exhibit A ("Plaintiffs' June 18, 2025, Updated Rule 26(a)(2) Disclosures"). The first time Moving Defendants were put on notice of the existence of an expert related to the claims against them was at 4:00 PM on December 3, 2025, the closing date of Expert discovery, two days prior to the deadline for dispositive motions, and ten days before the deadline for *Daubert* Motions. Plaintiffs did not send a copy of Mr. Wallenstein's CV

5

with his report until Moving Defendants noted its absence. Despite being extremely prejudiced by this ambush, Moving Defendants incurred extra expense to not only facilitate, but also expedite, Mr. Wallenstein's deposition and its transcript a mere eight days from the notice and within two days of the deadline to file this instant motion. Further, Plaintiffs had retained Mr. Wallenstein on October 14, 2025—more than a month prior to the close of expert discovery. *See* Exhibit B ("Emails Dated October 14 and 15, 2025"). There is no reason why notice of Mr. Wallenstein's retention could not have been provided prior to 4:00 PM the day expert discovery closed. As highlighted above, Plaintiffs did not identify Mr. Wallenstein in their initial disclosures, interrogatory responses, expert materials, or any supplements under Rule 26(e) until the very last moment—an hour before the close of business on the stipulated expert discovery deadline. This late disclosure, much less than ninety days before trial, prevented moving Defendants from getting an expert of their own. Moving Defendants are extremely prejudiced by the lack of notice and the ambush of suppling notice by way of report on the last day of discovery and for that reason alone Mr. Wallenstein should be precluded.

Moving Defendants also contend that Mr. Wallenstein should be precluded even on the alleged merits of Mr. Wallenstein's expertise, as required by Rule 702(a). Mr. Wallenstein was never a Correctional Officer, Exhibit C ("Wallenstein Dep.") at 8:8-13, nor a medical professional. *See* Exhibit D ("Wallenstein Resume"). Yet, his opinions rest on his personal disagreement with actions taken by Correcional Officers and a medical professional on November 5, 2023, and credibility determinations Mr. Wallenstein makes based on documentation in the record.

In Mr. Wallenstein's summary of opinions he states, "It is my opinion that [C]orrectional Officer Gena Frasier and Lieutenant Wanda Bloodsaw failed as both a line correctional officer and as a senior supervisor to come to the aid of inmate Louis Jung in an appropriate manner to ensure his access to professional healthcare, knowing that he suffered from a chronic illness, diabetes, that at all times defined his condition while under their care." When asked during his deposition what his

6

opinion was, Mr. Wallenstein was unable to state one and instead pointed to his summary of opinion section, which includes personal anecdotes from his previous employment, his five findings, and his conclusion. Exhibit C at 27:14-28:4. His findings will be addressed further in more detail, but are based upon facts not of record, Mr. Wallenstein's own personal non-medical opinion about the state of Mr. Jung, and improper credibility determinations. Mr. Wallenstein's conclusion states, "Nonprofessional correctional staff were adequately trained in the rudimentary basics of supervising the inmate population. They knew what steps were needed when any inmate was discovered in need of healthcare services or appeared to be in distress. They were trained to know that they were not independent decision-makers regarding any matters regarding the health status of an inmate." Exhibit E ("Wallenstein Expert Report") at 17. Mr. Wallenstein's opinion appears to be that the staff were trained properly, that Officer Frasier and Lt. Bloodsaw failed to provide medical access to Louis Jung, and that there is a pattern of not doing rounds.

However, Mr. Wallenstein's report fails to conform to Rule 702's requirements. Accordingly, the Moving Defendants now move to preclude the expert "opinion" of Mr. Wallenstein, in full, as his report rests on an opinion he is not qualified to provide, is the product of an unreliable methodology, and is inadmissible in its entirety.

    A.    MR. WALLENSTEIN IS NOT QUALIFIED TO OPINE ON THE MEDICAL CONDITION OF MR. JUNG ON NOVEMBER 5, 2023.

Mr. Wallenstein admitted he has never served as a Correctional Officer. Exhibit C at 8:8-13. While Mr. Wallenstein had a long career in the administration and management of prisons, none of his experience is in the day-to-day activity and decision making of a line Correctional Officer assigned to oversee a housing unit of incarcerated people. Furthermore, Mr. Wallenstein has no medical background, knowledge, training, licensure, or experience. *See* Exhibit D; *see also* Exhibit C at 94:20-96:12.

Mr. Wallenstein's opinion in this case is based upon his determination that Mr. Jung was in "obvious distress" when Officer Frasier and Lt. Bloodsaw interacted with him on November 5, 2023. Exhibit E at 8. This is belied by the record, as will be shown further in this Motion, and outside his experience in which to offer an opinion. Despite having no medical knowledge whatsoever, Mr. Wallenstein's only factual support for Mr. Jung's "obvious distress" is the fact that Mr. Jung can be seen laying on the ground in the video of the incident. The video has no sound and is taken from a long distance away. Despite reading the deposition of Licensed Practical Nurse Blair Cabellos, Mr. Wallenstein's opinion discounts and disagrees with the factual recitation of Mr. Jung's condition during the interaction captured on video. *Compare id*. (only discussing the video and failing to discuss any other evidence in the record), *with id*. at 19 (indicating that he reviewed Nurse Cabellos' deposition). Additionally, Mr. Wallenstein substitutes his own non-medical judgement for the Licensed Practical Nurses, not only without any ground to do so, but seeming to make one of many credibility determinations that Mr. Wallenstein's opinion is based on. When confronted with Nurse Cabellos's description of Mr. Jung, Mr. Wallenstein felt that Nurse Cabellos should have done more. Exhibit C at 47:3-49:19. Mr. Wallenstein is not qualified to give any medical opinion, let alone disagree with a person licensed in a field he is not in. Therefore Mr. Wallenstein is not qualified to opine that Mr. Jung was in "obvious distress" nor in need of emergent medical attention. As such, his whole opinion should be precluded.

      B.      MR. WALLENSTEIN'S REPORT RESTS UPON UNRELIABLE METHODOLOGY.

Mr. Wallenstein's expert opinion is also inadmissible as it is based on an unreliable methodology. Mr. Wallenstein described his review of the case as watching the video at least 15 times and reading the reports and transcripts both before and after watching the video. Exhibit C at 21:5-23:5; *see also* Exhibit E, at pp. 18-19. In his report, Mr. Wallenstein mentions two publications he

8

reviewed but does not cite to anything in those publications. Exhibit E generally and at p. 3. Mr. Wallenstein also detailed the version of the events on the video in a log he created. Exhibit E pp. 15-16. In the materials considered section, Mr. Wallenstein uses a third of the section to discuss several personal anecdotes from his time as Warden that do not apply to any of the facts in this case. *Id.* 4-5.

Mr. Wallenstein failed to apply any methodology when rendering his opinions. Instead, he merely parroted the testimony of various fact witnesses and his recitation of the video. *See In re Lincoln Nat'l 2017 COI Rate Litig.*, 620 F. Supp.3d 268, 282 (E.D. Pa. 2022) (Pappert, J.) (quoting *In re Processed Egg Prod. Antitrust Litig.*, 81 F. Supp.3d 412, 421 (E.D. Pa. 2015)) ("If the expert 'simply reads and interprets evidence . . . as any juror might,' their opinion is not necessary or proper."). This basic defect, a lack of methodology, is but one of the many reasons to preclude Mr. Wallenstein's opinion as it is the product of confirmation bias and has no bearing on the policies and practices of the Philadelphia Department of Prisons ("PDP"). *See Greenwald Caterers Inc. v. Lancaster Host, LLC*, 699 F.Supp.3d 382, 399 (E.D. Pa. 2023) ("We need not dwell on whether his methodology passes muster under Third Circuit law because there simply is no methodology."). Thus, any conclusion derived from Mr. Wallenstein's methodology would be unreliable and improper due to a clear lack of methodology.

In his report, Mr. Wallenstein organizes his analysis into five different findings, three findings specific to Officer Fraiser, one to Lieutenant Bloodsaw, and one related to a review of other cases. For the reasons set forth more fully below, Mr. Wallenstein's "analysis" on each of these five findings is devoid of a true methodology or the application of specialized knowledge for which he is qualified to support his conclusions. Accordingly, and for the reasons set forth more fully below, Moving Defendants respectfully request that this Court grant its motion to preclude the expert opinions of Mr. Wallenstein at trial.

> i. Mr. Wallenstein's Finding that Officer Frasier failed to come to the assistance of Mr. Jung is inadmissible.

Not only is Mr. Wallenstein unqualified to testify about Mr. Jung's medical status, but also his conclusion is inapposite of the only record evidence of Mr. Jung's condition on November 5, 2023. Mr. Wallenstein ignores the record evidence that Officer Frasier properly provided Mr. Jung access to a medical professional, despite Mr. Wallenstein's accusations to the contrary. Officer Frasier brought the nurse to Mr. Jung when he asked. Exhibit F ("Deposition of Blair Cabellos") at 76:8-14 Officer Frasier facilitated an interaction between the medical professional and Mr. Jung. *Id.* Mr. Jung was lying on the floor, a practice that Officer Frasier, a Correctional Officer who worked frequently in intake, testified was routine. Exhibit G ("Deposition of Gena Frasier") at 139:24-141:21. Again, there is nothing on the record to support this finding except Mr. Wallenstein's unsupported disagreement with the medical status of Mr. Jung.

> ii. Mr. Wallenstein's finding that Officer Frasier did not document Mr. Jung's refusal is inadmissible as it is based on a credibility determination.

The next finding Mr. Wallenstein's proffers is that Officer Frasier did not announce the presence of medical personnel and did not document Mr. Jung's refusal to get his insulin from those medical personnel. This opinion is not only unsupported by the record but also involves improper credibility determinations by Mr. Wallenstein. Despite reviewing Officer Frasier's deposition where she stated she announced insulin and that she heard Mr. Jung refuse, Mr. Wallenstein doubts this interaction happened. *Compare* Exhibit F at 127:1-129:6 *with* Exhibit E at 10. Mr. Wallenstein's basis for this doubt is based on him not knowing if she could hear him because housing units could be noisy. Exhibit D at 76:12-78:22. Further, Mr. Wallenstein contends that there is no documentation for this refusal. However, when confronted with Officer Frasier's log entry and the medical records, which he reviewed, Mr. Wallenstein decides Officer Fraiser's credibility. In his report, Mr. Wallenstein states "[i]n the electronic log[,] it was noted in the post-event investigation that this

10

inmate [Mr. Jung] refused medication. What was equally clear from my review is that there was a very strong likelihood that the record was **falsified**." Exhibit E at 10. (emphasis added). When asked to support his conclusion that the record was falsified, Mr. Wallenstein could give no support other than he did not believe her. Exhibit D at 60:8-74:1. It must be noted that after a disciplinary hearing and due process, Officer Frasier was found to have committed no violation of PDP policy. Exhibit H ("Disciplinary Hearing memo").

Mr. Wallenstein disagrees that the logbook entries and the medical records are documentation of refusal. Mr. Wallenstein is unable to define what documentation would be, only that computer records could be false.[1] Exhibit D at 70:2-18. Mr. Wallenstein refers to "hard" documentation, a qualification that carries a credibility factor to it, and complains about the lack of a signed document by Mr. Jung. *Id.* at 62:1-63:24. Mr. Wallenstein found no fault in the 'red flag policy.' *Id.* at 34:1-35:3 & 81:13-82:14 The "red flag policy" explains that it is medical staff's, not Officer Frasier's, responsibility to get a signed refusal form. Exhibit I ("Red Flag Medication Compliance System").

   iii. <u>Mr. Wallenstein's finding related to Lt. Bloodsaw is inadmissible for all the same reasons as his first finding related to Officer Frazier.</u>

Mr. Wallenstein's finding relating to Lt. Bloodsaw is based entirely on his reasoning for his finding related to Officer Fraiser in finding #1, with the addition of Lt. Bloodsaw not knowing that Mr. Jung had been seen by a nurse. Since the premises of both findings is based on the improper and unqualified opinion that Mr. Jung was in "obvious distress" and in need of "emergency aid," this finding is also inadmissible. The additional fact that Lt. Bloodsaw was brought down to the housing unit to handle a refusal does not change that there is no record evidence that Mr. Jung needed medical

---

[1] Moving Defendants point out the Mr. Wallenstein's inability to define documentation is consistent with his practice and experience as a prison administrator. Mr. Wallenstein was liable for failing to implement **facts** and it was noted that the paperwork system in place at the facility "appears to have been plagued with recordkeeping problems." *Bass by Lewis v. Wallenstein*, 769 F.2d 1173 at 1179 (7th.Cir 1985).

treatment at the time of her interaction with him. Exhibit J ("Log of entries made by Officer Frasier on November 5, 2023") at entry for 11:01.

        iv.      <u>Mr. Wallenstein's fourth finding related to Officer Frasier's conducting of rounds is also inadmissible.</u>

In his fourth finding, Mr. Wallenstein asserts that it is a core function of a Correctional Officer to make rounds. Exhibit E at 13. Mr. Wallenstein then extends this to form a conclusion that Officer Frasier did not follow up with Mr. Jung due to his distress. *Id.* This finding suffers from the same fundamental flaw as the prior three. There is no evidence that Mr. Jung was in distress. Mr. Wallenstein is still relying solely on his improper and unqualified opinion of Mr. Jung's status and therefore this finding is also inadmissible. Further, Mr. Wallenstein's assumptions on the lack of follow-up are unsupported by the record. Officer Frasier's logbook denotes the multitude of rounds, tours, and headcounts she made. *See* Exhibit I generally.

        v.      <u>The Fifth Finding is inadmissible as it relies on the four prior findings.</u>

Mr. Wallenstein's fifth and final finding is that there was a pattern of Correctional Officers not providing access to medical care. Moving Plaintiff's note that Mr. Wallenstein's opinion is completely lacking in methodology and Mr. Wallenstein is again replacing his own personal feelings instead of an expert opinion. Exhibit E at 13 ("I cannot understand a Lt. or any member of the correctional staff associated with public service walking away from any person laying on the floor[.]"); Exhibit E at 17 ("I cannot accept that there is any valid explanation of staff members making decisions on their own[.]"); Exhibit E at 18 ("My dismay is based on the merits[.]"). Regardless, Mr. Wallenstein's finding here is not connected to the pattern he claims to notice. Mr. Wallenstein's premise is that Mr. Jung was not provided with access to medical care by Officer Fraiser and Lt. Bloodsaw. As shown repeatedly above, this premise is not supported by the facts, involves an improper credibility decision

by Mr. Wallenstein, and remains based on Mr. Wallenstein's improper and unqualified medical opinion of Mr. Jung's condition of November 5, 2023. As such, this finding is also inadmissible.

III.  CONCLUSION

For the foregoing reasons, Moving Defendants respectfully requests that this Court issue a decision granting their Motion to Preclude the testimony of Mr. Wallenstein, together with such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Date: December 12, 2025                    */s/ Michael Pestrak*
                                            **Michael Pestrak**
                                            Senior Attorney
                                            Attorney I.D. No. 208611
                                            **Emily M. Hoff**
                                            Deputy City Solicitor
                                            Attorney I.D. No. 330859
                                            City of Philadelphia Law Department
                                            1515 Arch Street, 14th Floor
                                            Philadelphia, PA  19102
                                            *Attorneys for Defendants City of Philadelphia, Carney, Frasier, and Bloodsaw*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JACOB and JAMES JUNG, as Administrators of the Estate of LOUIS JUNG, JR,** : : : : : **Plaintiffs,** : : **v.** : : **CITY OF PHILADELPHIA, et al.,** : : **Defendants.** : | **Civil Action No. 2:24-cv-05618** |

## CERTIFICATE OF SERVICE

On December 12, 2025, undersigned counsel caused the foregoing *Daubert* Motion to be filed via the Court's electronic filing system, and it is available for downloading to all counsel of record.

Respectfully submitted,

Date: December 12, 2025

*/s/ Michael Pestrak*
**Michael Pestrak**
Senior Attorney
Attorney I.D. No. 208611
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA  19102
*Attorneys for Defendants City of Philadelphia, Carney, Frasier, and Bloodsaw*