IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACOB and JAMES JUNG as Administrators for the Estate of LOUIS JUNG, JR. | : : | |
| v. | : | CASE NO. 24-CV-05618 |
| CITY OF PHILADELPHIA; YESCARE CORP., BLANCHE CARNEY, LALITHA TRIVIKRAM, MAUREEN GAY, MARIESHA APOLLON, BLAIR CABELLOS, GENA FRASIER, and WANDA BLOODSAW | : : : : : : | |

# <u>O R D E R</u>

**AND NOW** this _____ day of _____, 202__, upon consideration of the Plaintiffs' Motion for Partial Summary Response, and the Response of Defendants YesCare Corporation and Blair Cabellos, it is hereby **ORDERED** and **DECREED** that the Plaintiffs' Motion is **DENIED**.

**BY THE COURT:**

_____
J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACOB and JAMES JUNG as Administrators for the Estate of LOUIS JUNG, JR.  :<br>            v.                                                                                           :<br>CITY OF PHILADELPHIA; YESCARE CORP., :<br>BLANCHE CARNEY, LALITHA TRIVIKRAM, :<br>MAUREEN GAY, MARIESHA APOLLON,   :<br>BLAIR CABELLOS, GENA FRASIER, and     :<br>WANDA BLOODSAW                                      :<br>                                                                               : | CASE NO. 24-CV-05618 |

**RESPONSE OF DEFENDANTS, YESCARE CORP. AND BLAIR CABELLOS, TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGEMENT**

**COME NOW,** Defendants, YesCare Corp. and Blair Cabellos, by and through their counsel, O'Connor Kimball, LLP, hereby submit the following Response to Plaintiffs' Motion for Partial Summary Judgment. The arguments and authorities in support of this Motion are set forth in the accompanying Brief. A proposed form of Order is attached.

Respectfully submitted,

**O'CONNOR KIMBALL LLP**

By:    /s/ *Thomas J. Gregory*
Thomas J. Gregory, Esquire
Two Penn Center Plaza, Suite 1100
1500 John F. Kennedy Boulevard
Philadelphia, PA 19102
215-564-0400         Facsimile: 215-564-1973
Email: tgregory@okllp.com
*Attorney for Defendants, YesCare Corporation, Lalitha Trivikram, M.D., Maureen Gay, N.P. and Blair Cabellos*

Dated: December 23, 2025

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACOB and JAMES JUNG as Administrators for the Estate of LOUIS JUNG, JR.<br>　　　　v.<br>CITY OF PHILADELPHIA; YESCARE CORP., BLANCHE CARNEY, LALITHA TRIVIKRAM, MAUREEN GAY, MARIESHA APOLLON, BLAIR CABELLOS, GENA FRASIER, and WANDA BLOODSAW | CASE NO. 24-CV-05618 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS,
YESCARE CORP. AND BLAIR CABELLOS, IN SUPPORT OF THEIR
RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGEMENT**

**COME NOW**, Moving Defendants, YesCare Corp. and Blair Cabelos, by and through their undersigned counsel, O'Connor Kimball LLP, and as and for their Memorandum of Law in support of their Response to Plaintiffs' Motion for Partial Summary Judgment in the above-captioned matter state as follows:

**I.    FACTUAL BACKGROUND:**

On October 28, 2023, the 50 year old male Decedent, well known at the Philadelphia Department of Prisons ("PDP"), was admitted to the prison with a history of diabetes mellitus. The inmate's history was notable for non-compliance with treatment. The inmate was received at the prison after having been incarcerated for several months at Norristown State Hospital for psychiatric evaluation. Upon his return from Norristown, the Decedent's vital signs were stable, but his blood sugars measured 542, for which he was given several units of insulin. After a brief stay in the prison, the Decedent passed away.

Defendant YesCare Corporation is the contract provider of medical services to the inmates of the Philadelphia Department of Prisons, by way of a contract with the City of Philadelphia. Defendant Lalitha Trivikram, MD, a YesCare employee, was at the time the "Site Medical Director" at the Curran Fromhold Correctional Facility, one of the prisons of the PDP. The allegations against Dr. Trivikram include a failure to supervise and implement medical procedures befitting the standard of care. Defendant Maureen Gay, a Nurse Practitioner and YesCare

employee, is a mid-level provider alleged to have failed to detect the Decedent's elevated blood sugars and the need for emergent care. Defendant Blair Cabellos is a Licensed Practical Nurse and a YesCare employee who is alleged to have neglected to provide care to the Decedent shortly prior to his death.

It is helpful to a full understanding of the facts to consider the following, fairly extensive synopsis of the Decedent's recent medical history:

Louis Jung was born on April 16, 1973 and passed away on November 6, 2023. He was 50 years of age at the time of death, having been uninterruptedly incarcerated since December 16, 2021. The inmate's past medical history is significant for Diabetes Mellitus ("DM"), which was being treated with intramuscular insulin injections. There was a history of diabetic ketoacidosis ("DKA"). Jung had a previous short incarceration in 2016.

Incarcerated on December 16, 2021, the inmate had a behavioral health initial evaluation 12/17/2021. Observation noted that it was uncertain if the patient was withdrawing from substances due to his behavior, as a result of which he was placed in Med-Lock. Suicide risk assessment was completed and he was found to be low risk. Jung described hearing voices, acknowledged depression, and claimed an inability to concentrate. He was not able to provide details of his history and spoke in vague terms about any serious mental illness diagnoses or treatment.

From December 16, 2021 to December 21, 2021 Jung declined a full intake and assessment by the nursing team. During this period of time, he was seen by nursing for elevated blood sugars. He was provided insulin for blood sugar treatment. On December 20, 2021, the inmate was found to be nonresponsive and emergent intervention proceeded. Providers were notified and the inmate was transferred to the emergency room *via* ambulance. His vital signs indicated an elevated blood sugar and prior to transport, he received separate doses of insulin, 20 units each time.

He was hospitalized from December 21, 2021 through January 5, 2022 and upon return to the prison from the hospital on January 5, 2022 his diagnoses included COVID, pneumonia, Pulmonary emboli, DM, with treatment of DKA. He had a CT scan of the brain due to encephalopathic behavior, namely confusion. The brain CT was described as without changes, without bleeding or swelling. It noted CXR infiltrates and opacities. A chest CT confirmed same

and was followed up with CT angiogram to diagnose pulmonary emboli bilaterally. He remained in the ICU most of his hospitalization. He was treated with dexamethasone and remdesivir for COVD. He tested positive on MRSA screen and did have a 5-day course of Vancomycin IV for empiric treatment of possible staph pneumonia.

His blood sugars were controlled, and DKA corrected. He was discharged back to the prison on January 5, 2022 on 10 L NC Oxygen. His pulse ox had dropped upon arrival and the receiving physician reported that the facility was not able to maintain O2 level at the 10 L NC flow rate. As a result, the inmate was re-admitted to the hospital on January 5, 2022 and discharged back to the facility on January 9, 2022. Discharge medications included Eliquis 5 mg BID, Lantus 20 units at Bedtime, Lispro insulin 9 units, with three meals daily plus additional insulin on a sliding scale, as is protocol for such a patient. His blood cultures were negative. He developed thrombocytopenia due to the use of heparin for anticoagulation, which was changed to Lovenox and ultimately Eliquis.

On January 10, 2022 the inmate's Initial Psychiatric Evaluation was completed. Jung reported auditory hallucinations. He appeared to be oriented and alert, although he was described as having very poor hygiene. He denied suicidal or homicidal ideation. He was not able to recall if he had prior psychiatric treatment. Medications from the hospitalization included Abilify 10 mg BID, Buspar 10 mg TID, and Doxepin 100mg at bedtime as needed. Diagnoses from hospitalization included Bipolar, PTSD and anxiety. His community-based medications were initiated during the hospitalization and continued upon discharge back to the prison.

The inmate was found to have syphilis with no known treatment history. He was prescribed Bicillin 2.4 million units IM x 3 weekly doses.

From his return from inpatient hospitalization until the next hospitalization, on April 7, 2022, Jung had numerous encounters with nurses and providers. He would routinely and chronically refuse to permit medical staff to conduct Accu-Cheks (finger "sticks" to detect blood glucose levels) and constantly refused the administration of insulin. He would also decline vaccinations, decline attendance at off-site visits and decline visits to the on-site chronic care clinic for follow up. His blood sugar fluctuated, and his insulin use was unpredictable due to his tendency to decline its

administration. A review of the Accu-Chek logs and insulin Medication Administration Records ("MARs") demonstrate the non-predictable nature of Jung's self-determination in his care.

Most of the time refusal forms for Accu-Cheks and insulin were in the chart, signed by the nurse and witness although rarely by Jung himself. Other refusal forms, typically upon declining a vaccination, were signed by him. He often signed the refusal form when he declined specialists' visits. Although he attended an endocrine follow-up appointment, he refused cardiology care. The chronic care clinics, which are important for chronic disease management, were not regularly completed due to the patient's recalcitrance. Initial chronic care for DM, hyperlipidemia and hypothyroid is to be done within 21 days of admission to the facility. The intake was delayed, then Jung was in the hospital.

He was hospitalized on April 7, 2022 for DKA. He reported emesis and dizziness. Blood sugar was 484. He was treated for DKA, hyperglycemia and pneumonia. He returned to the facility on April 9, 2022 with a prescription for antibiotic Linzolid 600 mg, BID for 7 days. Off-site return notes are complete in the chart.

On May 6, 2022, a certificate for Involuntary Mental Health Commitment was submitted to determine Jung's competency to stand trial. He was court-ordered to treatment, first at the Prison Health Services Wing ("PHSW") within the Philadelphia Detention Center for 60 days. There was also a petition for Involuntary Mental health treatment. He was transferred and admitted to Norristown State Hospital (for forensic psychiatry) on September 27, 2022. He returned to the PDP on December 14, 2022. He was deemed to have restored competency to stand trial. During his admission, the diagnosis of bipolar and substance use disorder remained. He did not have any psychotic episodes and there was an indication in the notes that Jung may have been misrepresenting his symptoms, based on what he reported to the staff psychiatrist and how his observed behavior was not congruent with self-reporting or symptoms. It was noted that Jung was of higher intelligence than he reported and was able to understand the legal system and consequences.

Upon return to the prison, the pattern of near-daily refusal of Accu-Chek and insulin recurred. On January 8, 2023 Jung was hospitalized for hyperglycemia, elevated ketones and

lethargy. His hospital course at Jefferson Hospital consisted of 4 inpatient days to correct the DKA. He was returned to the prison with the discharge comment that Jung had not cooperated with care. On January 23, 2023, Jung was determined to be confused; he had been refusing his insulin and Accu-Cheks and he would not allow an IV for Fluids. As a result, he was transferred to the Emergency Department and was admitted through the ER with pneumonia and DKA. Treatment included IV fluids at the hospital. Discharge from this hospitalization occurred on January 30, 2023 with diagnosis of COVID and pneumonia. Upon return to the PDP, Jung was placed in quarantine/isolation due to the positive COVID test of January 30, 2023 at the hospital. Upon return, the rapid test was negative. He remained in isolation until February 2, 2023 whereupon he was transferred to the Detention Center infirmary for care.

On February 5, 2023, Jung was transferred to general population. Once in general population, the pattern of refusing to take insulin and Accu-Chek refusals resumed. He declined to take a cardiology consultation in early March 2023. On March 10, 2023, he was sent *via* EMS to the emergency department. The on-site findings were positive for DKA, Accu-Chek was HI, and ketones were in the urine. The on-site treatment plan consisted of the initiation of IV fluids, which Jung refused, and as a result, he was transferred to the ED for treatment. He was admitted to the hospital for care and returned to the prison on March 14, 2023. On March 19, 2023, there was yet another transfer to the ED for DKA, as a result of elevated blood sugar and urine Ketones. He treated in the ED with fluids, Lantus insulin and regular insulin and returned back to the prison. On April 13, 2023, another referral to Norristown State Hospital was made due to Jung appearing to remain incompetent to stand trial. The actual transfer was not made for 60 days. Jung was transferred back to Norristown on June 2, 2023. During the interval while awaiting transfer, while in custody in the PDP, Jung would refuse to have his blood sugars checked and to receive insulin. This could occur several times a day. There are witness-signed refusals in the chart; just as the decedent refused medical treatment, he also refused to sign acknowledgements of said refusals.

The second Norristown admission was from June 2, 2023 until October 28, 2023. Upon his return to the PDP, on intake, Jung reported that "he had not received insulin for 3 days." However,

5

review of the Norristown records demonstrated that insulin was ordered and received, on schedule, on the several days prior to return. On October 31, 2023, Jung declined vaccination.

On November 5, 2023, there was an interaction between the Decedent and the Answering Defendant, Blair Cabellos, which occurred while Cabellos was conducting distribution of medication to other inmates. The Plaintiffs' version of this incident, if taken on its face without verification, would have the court believe that the Decedent was *in extremis* and the nurse turned away from providing care. Quite a different version of that event was provided by Cabellos in her deposition, in which she testified that her observations of the Decedent at that time failed to reveal that he was in any sort of condition requiring urgent medical intervention. To the contrary, Cabellos's description of that event has the Decedent walking, talking, and voluntarily moving his body from a standing position to a prone position on the floor. It is instructive that the Plaintiffs have cited Nurse Cabellos' deposition testimony in their motion. Clearly, there is dispute over the facts surrounding this encounter.

While it is correct that the following day, the Decedent passed away as a result of complications from his diabetes, the degree to which the conduct of the Answering Defendants could be deemed to be responsible for his death is a question of fact to be decided by the jury in the case.

It is respectfully submitted that the Motion for Summary Judgment as proffered by the Plaintiffs at this time is inappropriate.

## II.   LEGAL ARGUMENT:

F.R.Civ.P. 56(c) provides that summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, reveal no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. The responsibility of this Honorable Court is not to resolve disputed issues of fact, but to determine

whether any factual dispute exists to be tried. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 91 L. ED.2d 202, 106 S.Ct. 2505 (1986). Summary judgement is inappropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 248. In making this determination, all of the facts must be viewed in a light most favorable to the non-moving party and all reasonable inferences must be drawn in favor of the non-moving party. Id. at 256.

In the Plaintiffs' Motion for Partial Summary Judgment, it is interesting to note that there is no mention whatsoever of the numerous recorded instances of the Plaintiffs' Decedent's rejection of treatment. Those instances are documented in the extensive medical records accumulated on the Decedent and described in the foregoing factual background section of this Brief. By their instant motion, the Plaintiffs seek to have the Court enter summary judgment on the state-law negligence count. Yet glaringly absent from their motion is a meritorious argument as to causation.

The Plaintiffs' negligence claims are governed by Pennsylvania state law. It is well-settled in Pennsylvania law that there are four basic elements of a negligence cause of action. They are (1) duty, (2) breach of duty, (3) causal relationship between the breach and resulting injury, and (4) actual loss or damages. Casey v. Geiger, 499 A.2d 606 (Pa. Super. 1985). A plaintiff must establish all four to establish a right to relief. In order to establish causation, the plaintiff must prove that the conduct of the defendant was a substantial factor in bringing about the harm that occurred, i.e., that it is the "legal cause" of that harm. See, §3.25 of the Pennsylvania Standard Jury Instructions. See also, Utain v. Crum Creek Construction, 1996 Pa D&C, Dec. LEXIS 87 (CCP, 1996).

More recently, the Pennsylvania Superior Court, in the matter of Yeiter v. Kmart, Corp. Berenson's Property Services, 2014 Pa. Super., Unpub. LEXIS 2767 (2013), reiterated the four-point test for the establishment of the right to recover in a negligence action, citing Estate of Swift by Swift v. Northeastern Hospital, 690 A.2d 719 (Pa. Super. 1997).

In the matter of Whitner v. Lojeski, 263 A.2d 889 (Pa. 1970), the PA Superior Court focused on the concept of "cause-in-fact," explaining that the defendant's wrongful act is a cause-in-fact if the plaintiff can prove that the injury he suffered would not have happened but for the defendant's

7

act. The Plaintiffs have offered nothing in terms of a determination that the conduct of Nurse Cabellos at the interaction in question was the proximate cause of the death of the inmate the following day. What the Plaintiffs would do here is have the Court usurp the function of the jury as to this important requisite in the negligence equation.

Importantly, the testimony regarding the events of November 5, 2023 is varied and divergent. Thus, the facts surrounding that event are in dispute. Those facts, as well as facts presented by other witnesses regarding the Decedent's overall reluctance to accept treatment for his health conditions, is at the crux of the case, and the credibility of the witnesses is within the province of the jury, not the district court. <u>Fullman v. City of Philadelphia</u>, 793 Fed. Appx. 126 (3d Cir., 2019).

It is respectfully submitted that this Honorable Court should not usurp the function of the jury, whose province includes determination of the credibility of the witnesses.

## III.   <u>CONCLUSION:</u>

It is respectfully submitted that the Plaintiffs' Motion for Partial Summary Judgment is inappropriate and should be denied, due to the existence of disputed issues of material fact.

        Respectfully submitted,

        **O'CONNOR KIMBALL LLP**

By:   /s/ *Thomas J. Gregory*
       Thomas J. Gregory, Esquire
       Two Penn Center Plaza, Suite 1100
       1500 John F. Kennedy Boulevard
       Philadelphia, PA 19102
       215-564-0400    Facsimile: 215-564-1973
       Email: tgregory@okllp.com
       *Attorney for Defendants, YesCare Corporation, Lalitha Trivikram, M.D., Maureen Gay, N.P. and Blair Cabellos*

Dated:  December 23, 2025

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PA

| | |
|---|---|
| JACOB and JAMES JUNG as Administrators for the Estate of LOUIS JUNG, JR. : <br> v. : <br> YESCARE CORP., et al. : <br> v. : <br> CAREERSTAFF UNLIMITED, LLC : | CASE NO. 24-CV-05618 |

## CERTIFICATE OF SERVICE

    I, Thomas J. Gregory, Esquire, hereby certify that I caused a true and correct copy of the foregoing Response to Plaintiffs' Motion for Partial Summary Judgement with Memorandum of Law in support thereof, to be electronically filed on this this 23rd day of December, 2025, and thereby served via the Court's Electronic ECF Filing System upon:

bretgrote@abolitionistlawcenter.org
rupalee@alcenter.org
margo@alcenter.org
lolo@alcenter.org
Bret Grote, Esquire
Rupalee Rashatwar, Esquire
Margaret Hu, Esquire
Lolo Salsbury Serrano, Esquire
Abolitionist Law Center
990 Spring Garden Street
Philadelphia, PA 19123
*Attorneys for Plaintiff*

michael.pestrak@phila.gov
emily.hoff@phila.gov
Michael Pestrak, Esquire
Emily M. Hoff, Esquire
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
*Attorneys for Defendants, City of Philadelphia and Blanche Carney*

jkaminsky@kiernantrebach.com
Jonathan Kaminsky, Esquire
Kiernan Trebach, LLP
10 Penn Center
1801 Market Street, Suite 770
Philadelphia, PA 19103
*Attorney for Defendant, Mariesha Apollon*

scthomas@grsm.com
Summer C. Thomas, Esquire
Gordon Rees Scully
1717 Arch Street, Suite 610
Philadelphia, PA 19103
*Attorney for Additional Defendant, CareerStaff Unlimited, LLC*

**O'CONNOR KIMBALL LLP**

By:    /s/ *Thomas J. Gregory*
        Thomas J. Gregory, Esquire
        Two Penn Center Plaza, Suite 1100
        1500 John F. Kennedy Boulevard
        Philadelphia, PA 19102
        215-564-0400    Facsimile: 215-564-1973
        Email: tgregory@okllp.com
        *Attorney for Defendants, YesCare Corporation, Lalitha Trivikram, M.D., Maureen Gay, N.P., and Blair Cabellos, LP*