IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| JACOB AND JAMES JUNG, ADMINISTRATORS OF ESTATE OF LOUIS JUNG, JR, PLAINTIFFS, <br><br> v. <br><br> CITY OF PHILADELPHIA, ET AL. DEFENDANTS. | CIVIL ACTION: <br><br> No. 24-cv-05618-TJS |

**MARIESHA APOLLON'S REPLY BRIEF TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

Defendant, Mariesha Apollon (hereinafter referred to as "Nurse Apollon") by and through her attorneys, Kiernan Trebach LLP, hereby submits this Reply Brief to Plaintiffs' Opposition to Motion for Summary Judgment (hereinafter "opposition") and says as follows:

**A. "MAGIC WORDS" ARE NOT REQUIRED – BUT CAUSATION OPINIONS ARE**

Plaintiffs' opposition concedes that they are required to produce a qualified causation opinion against Nurse Apollon to sustain their malpractice claims[1]. Instead, however, they engage in a recitation of the standard of care opinions expressed by Nurse Roscoe, and Dr. Williams. Although it should go without saying, standard of care and causation are two different legal concepts, and Plaintiffs are required to provide expert opinion as to both to make it past summary judgment. *See, e.g., Mitzelfelt v. Kamrin*, 526 Pa. 54, 62, 584 A.2d 888, 892 (1990).

Plaintiffs entitle this section of their opposition, "Plaintiffs' expert reports opine that Defendant Apollon deviated from the standard of care for Type 1 diabetes and that this deviation

---

[1] The Wrongful Death and Survival actions are derivative of the state law malpractice claims, and thus require proof of causation as well.

made a substantial contribution to Mr. Jung suffering from hyperglycemia, diabetic ketoacidosis, and death." ECF 120, page 18. Those causation statements do not appear anywhere in Plaintiffs' expert reports. See, Exhibits K and L to Nurse Apollon's Motion for Summary Judgment. Nowhere do Nurse Roscoe or Dr. Williams say that Nurse Apollon's action substantially contributed to those three conditions, and they certainly offer no opinion that Ms. Apollon's care was a substantial factor in Mr. Jung's death. *Id.*

Nurse Apollon does not argue that specific "magic words" are necessary to constitute a causation opinion. ECF 97-2, generally. Plaintiffs are required, however, to produce expert opinion which identifies the alleged deviations from the standard of care, **and then** describes how that deviation caused the claimed harm or damages. *Mitzelfelt, supra,* 526 Pa. at 62. Thus, the substance of the expert's testimony must establish the necessary elements of negligence. *Welsh v. Bulger,* 548 Pa. 504 (Pa. 1996), citing, *Mitzelfelt, supra.* The substance of the reports of Nurse Roscoe and Dr. Williams does not constitute a causation opinion against Nurse Apollon.

Plaintiffs argue:

> Evidence that Defendant Apollon did not obtain Mr. Jung's medical records and that this substantially contributed to his not being prescribed sufficient insulin, evidence that Defendant Apollon did not utilize the NET to determine if Mr. Jung has symptoms indicative of diabetic ketoacidosis and a resultant higher level of care, and evidence that Defendant Apollon did not follow up with Mr. Jung to monitor and treat his hyperglycemia and potential diabetic ketoacidosis provide individual and cumulative bases for fact-finder to determine that her conduct substantially contributed to Mr. Jung suffering from hyperglycemia, diabetic ketoacidosis, and death. These findings are part and parcel of the expert analyses of Roscoe and Williams, and accordingly Defendant Apollon's contention that the experts have not sufficiently opined on causation is without merit.

ECF 120, page 22.

Yet, neither nurse Roscoe nor Dr. Williams have opined that any of those alleged failures actually *caused* Mr. Jung's death. Plaintiffs' counsel insert their own argument that Ms. Apollon's conduct "substantially contributed to Mr. Jung suffering from hyperglycemia, diabetic ketoacidosis, and death," and suggest to the Court that the question is for a jury to determine. That is not the case, however, where the expert reports are so devoid of opinion as to causation regarding Ms. Apollon, that they do not establish a *prima faciae* case. *Mitzelfelt, supra*.

Repeating standard of care criticisms does not transform those criticisms into a causation opinion, and Plaintiffs do not identify any statement in either expert report that links Nurse Apollon's conduct and medical care to Mr. Jung's death. The "no magic words" argument cannot fill a gap where the required causal link is simply missing.

Interestingly, Plaintiffs' opposition never says, "Plaintiffs' causation opinion against Ms. Apollon is contained within the report of so-and-so, and appears on page X," or anything of the like. Instead, Plaintiffs recite lengthy portions of the reports of Nurse Roscoe and Dr. Williams, all of which contain standard of care opinions alone. ECF 120, pages 19-20. The excerpt from Dr. Williams' report does not even mention Nurse Apollon by name. *Id.*

It is also interesting for Plaintiffs to argue that, "magic words" are not required, when both Nurse Roscoe and Dr. Williams manage to use the phrases "standard of care," "deviation" and "disregarding a known risk," throughout their reports. Yet, when it comes to the issue of causation, Plaintiffs engage in a multi-page discussion of their expert reports, amounting to a recitation of their standard of care opinions, without more, in an attempt to construct for the Court a non-existent causation opinion as to Nurse Apollon. ECF 120, 18-22.

Unsurprisingly, Plaintiffs do not adequately address Nurse Apollon's argument that Dr. Williams' opinion would be inconsistent with itself if he were to opine that Nurse Apollon's conduct caused Mr. Jung's death. Instead, Plaintiffs muddy the waters on that point by contending that causation is an issue for the jury. ECF 120, page 16.

First, Dr. Williams' opinion ***would be*** inconsistent with itself if he opined that Nurse Apollon caused Mr. Jung's death. Dr. Williams himself has opined that DKA is treatable in a short period of time (1-2 days), and that DKA develops rapidly (hours to a day or two). Exhibit K to Nurse Apollon's Motion for Summary Judgment. There is **no** opinion or evidence to suggest that Nurse Apollon was involved in the care after October 28, 2023. Instead, the evidence shows that Mr. Jung was under the care of many other providers during that time, none of whom have blamed Nurse Apollon for Mr. Jung's death. If, as Dr. Williams opines, Mr. Jung's DKA was easily and quickly treatable well after the day on which Nurse Apollon saw him, he **cannot** credibly contend that her care caused his death.

Second, the issue of causation can only be for the jury when a qualified expert has provided an actual causation opinion in his/her report, on which Plaintiffs can reach the jury. This is the essence of the Court's important gate-keeping function. *In re Paoli R.R. Yard Pcb Litig.,* 35 F.3d 717 (3d. Cir. 1994)*(Daubert* requires District Court to act as gatekeeper.) Most respectfully, it would be reversible error to allow the issue of causation go to the jury against Nurse Apollon. *Id.*

4

**B. PLAINTIFFS' OPPOSITION ARGUES TO APPLY THE WRONG STANDARD, IGNORES EVIDENCE, AND ENTIRELY IGNORES THEIR OBLIGATION TO DEMONSTRATE A CAUSAL LINK BETWEEN NURSE APOLLON'S ALLEGEDLY "DELIBERATELY INDIFFERENT" CONDUCT AND MR. JUNG'S DEATH**

Plaintiffs begin the "deliberate indifference" section of their opposition arguing that this Honorable Court should apply a standard they concede has not been adopted by the Third Circuit. Little more need be said about that argument. The deliberate indifference standard applies.

Although Plaintiffs attempt to argue that an "adequacy of care" lens should be applied, they conflate the "adequacy of care" issue with medical negligence, attempting to lower the bar they need to clear. The "adequacy of care" analysis still requires a fundamental finding of deliberate indifference. As *Palakovic*, the case cited by Plaintiffs states, "For instance, prison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for 'an easier and less efficacious treatment' of the inmate's condition.'" *Palakovic v. Wetzel,* 854 F.3d 209, 228 (3d Cir. 2017*)(citing West v. Keve,* 571 F.2d 158, 162 (3d Cir. 1978)).

Plaintiffs then suggest that this issue is a credibility determination for the jury, because Nurse Apollon and Nurse Gay to not agree about whether Nurse Gay instructed Nurse Apollon to conduct a re-assessment of Mr. Jung within two (2) hours of the intake. That argument, however, ignores a major issue with Plaintiffs' position on deliberate indifference as to Nurse Apollon: they must still prove that her alleged deliberate indifference *caused* the claimed harm to Mr. Jung. *Lau v. City of Philadelphia*, 2025 U.S. Dist. LEXIS 129815, *citing*, *DeJesus v. Delaware through Delaware Dep't of Corr.*, 833 Fed.Appx. 936, 940 (3d. Cir. 2020)("a plaintiff who alleges defendants were deliberately indifferent to his serious medical need must show that 1) he had a serious medical need, 2) defendants were deliberately indifferent to that need, and 3) the deliberate indifference caused harm or physical injury to the plaintiff.")

5

Additionally, in their opposition, while spending substantial time focusing on the reassessment issue, Plaintiffs *entirely ignore* the uncontradicted testimony from Nurse Apollon at her deposition regarding reassessments:

> Q: In a situation where somebody at intake has ketones and they are to be reassessed consistent with your testimony within 30 minutes to an hour or shortly thereafter the intake assessment, where does that reassessment occur?
>
> …
>
> A: I am stationed at intake. So another nurse would have to take over for that, reassess.

ECF 97-5, Deposition of Mariesha Apollon, page 75, lines 8-12, 18-20.

While Plaintiffs list a number of alleged failures on the part of Nurse Apollon, none of which are supported by evidence of deliberate indifference, their experts reports, as discussed in the section above in this Reply, do not support a finding of causation. Plaintiff's endocrinology expert opines that a type 1 diabetic will begin to generate ketones within hours to a day or two, in the absence of insulin. (2-3). See, Exhibit K to Nurse Apollon's Motion for Summary Judgment, page 2. He then opines that, "Although DKA is fatal if not corrected, it is one of the rare life-threatening conditions wherein someone can be near death, yet discharged from the hospital to normal health in a day or two." *Id.*

No one in this case contends that Mr. Jung was "near death" at the time he was evaluated by Nurse Apollon at intake. The import of those opinions from Dr. Williams regarding DKA is that 1) it is a condition which develops rapidly, and 2) that it is a condition that resolves rapidly once treated. *Id.* While Plaintiffs try to downplay what Nurse Apollon actually did for Mr. Jung, it is worth repeating that Nurse Apollon assessed Mr. Jung, obtained orders from the on duty

6

provider for insulin, ***administered the insulin***, took note of the ketones in Mr. Jung's urine, and ***encouraged him to drink plenty of water***, which according to their own expert, was part of the treatment (volume resuscitation and reduction in glucose levels with insulin). *Id.*

Plaintiffs have not, however, produced a report from an expert who opines that the supposedly deliberately indifferent actions by Nurse Apollon caused Mr. Jung's death. Instead, Dr. Williams' report discusses the period of time between November 5, 2023 and November 6, 2023 (more than a week after Mr. Jung's only interaction with Nurse Apollon.) *Id.* at page 7. He discusses the symptoms Mr. Jung was experiencing at that time, as well as how Mr. Jung's health rapidly declined on the last day. *Id.* Of course, he also discusses how treatable DKA is, even when a patient is "near death." *Id.* at page 3. It is therefore not surprising that Dr. Williams does not offer a causation opinion as to Nurse Apollon.

Plaintiffs' reliance on an "objective unreasonableness" standard does not change the analysis. Even if that standard applied to pretrial detainees, it still requires conduct that rises to the level of a constitutional violation. Plaintiffs' references to missed steps, incomplete forms, and policy deviations describe alleged deficiencies in care, not conduct so egregious that it amounts to punishment under the Fourteenth Amendment. Their framing does not supply the deliberate indifference element that the standard requires.

C. **PLAINTIFFS' UNTIMELY EXPERT REPORTS**

Plaintiffs attempt to neutralize the effect of their late production of expert reports, by arguing that they offered to produce their experts for deposition, despite the proximity to trial. This offer alone evidences their consciousness regarding the lateness of their reports. It is simply unreasonable for Plaintiffs to produce their reports two (2) days prior to the dispositive motion deadline, just weeks before trial, and just prior to the winter holidays, and assert that preclusion

would be inappropriate[2]. *See, Fulton v. Soh,* slip op. at *6-8 (M.D. Pa.), *citing, Nicholas v. Pa State Univ.,* 227 F.3d 133, 148(3d. Cir. 2000).

In the interest of economy, and to comply with the Court's page limits regarding reply briefs, Nurse Apollon incorporates by reference the Motion in Limine filed by co-Defendant YesCare, in which she joins, for further argument on this issue.

### D. CONCLUSION

For the foregoing reasons, and for the reasons articulated in her Motion for Summary Judgment, Defendant, Mariesha Apollon, R.N. respectfully requests that this Honorable Court Grant her Motion for Summary Judgment and dismiss all claims against her, with prejudice.

Respectfully submitted,

**KIERNAN TREBACH, LLP**

_____
Sarah M. Baker, Esq.
Attorneys for Mariesha Apollon

**KIERNAN TREBACH, LLP**

_____
Jonathan M. Kaminsky, Esq.
Attorneys for Mariesha Apollon

Date: December 24, 2025

---

[2] Due to the late production, proximate to the holiday season, Nurse Apollon has been able to produce one of two of her expert reports at the time of this filing.

**VERIFICATION**

I, Jonathan M. Kaminsky, Esquire, verify that I am counsel for Defendant Apollon in this action, and, on behalf of such party, verify that the facts set forth in the attached are true and correct to the best of my knowledge, information, and belief. The undersigned further certifies that this Verification is made subject to the provisions of 18 Pa.C.S. sec. 4904, relating to unsworn falsification to authorities.

                                                /s/Jonathan Kaminsky
                                          JONATHAN M. KAMINSKY, ESQUIRE

## CERTIFICATE OF SERVICE

I, JONATHAN KAMINSKY, ESQUIRE, hereby certify that copies of Defendant Apollon's Reply In Support of Motion for Summary Judgment in the instant proceedings was served on or about the below date via electronic filing or electronic mail. By regular mail where service by electronic means is unavailable.

**COUNSEL FOR PLAINTIFF**
Bret Grote, Esquire
Nia Holston, Esquire
Rupalee Rashatwar, Esquire
Margaret Hu, Esquire
ABOLITIONIST LAW CENTER
990 Spring Garden
Philadelphia, PA 19123
bretgrote@abolitionistlawcenter.org
nia@alcenter.org
rupalee@alcenter.org
margo@alcenter.org

**COUNSEL FOR YESCARE CORP., LALITHA TRIVIKRAM, MD AND MAUREEN GAY, N.P.**
Thomas J. Gregory, Esquire
O'CONNOR KIMBALL LLP
Two Penn Center Plaza, Suite 1100
1500 John F. Kennedy Boulevard
Philadelphia, PA 19102
Tgregory@okllp.com

**COUNSEL FOR CITY OF PHILADELPHIA AND BLANCHE CARNEY**
Michael Pestrak, Deputy City Solicitor
CITY OF PHILADELPHIA LAW DEPARTMENT
1500 Arch Street, 14th Floor
Philadelphia, PA 19102
Michael.pestrak@phila.gov

**COUNSEL FOR CAREERSTAFF**
Danielle Pell, Esquire
Alex Possino, Esquire
GORDON REES SCULLY MANSUKHANI, LLP
Three Logan Squre
1717 Arch Street, Suite 610
Philadelphia, PA 19103
dpell@grsm.com
apossino@grsm.com

                                                       **KIERNAN TREBACH, LLP**

12/24/2025                                       By:__/s/ *Jonathan Kaminsky*_____
                                                                                Jonathan Kaminsky, Esquire