IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JACOB and JAMES JUNG, as Administrators of the Estate of LOUIS JUNG, JR,** | |
| Plaintiffs, | Civil Action No. 2:24-cv-05618 |
| v. | |
| **CITY OF PHILADELPHIA, et al.,** | |
| Defendants. | |

**REPLY IN SUPPORT OF
<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

Defendants, the City of Philadelphia, Commissioner Blanche Carney, Lt. Wanda Bloodsaw, and Correctional Officer Gena Frasier ("Moving Defendants") briefly address herein specific issues raised by Plaintiff's Opposition. [Dkt. 116].

**I.   Plaintiff fails to create a material issue of fact sufficient to overcome summary judgment.**

Plaintiff's Reponses in Opposition to Moving Defendants' Motion for Summary Judgment relies on speculation, logical leaps without support, and ask this Court to read beyond the record to determine that Officer Frasier and Lt. Bloodsaw should have acted when medical personnel saw no reason to act. Instead of pointing to facts that rebut Moving Defendants, Plaintiffs spend a lot of effort on arguing that Moving Defendants do not have evidence to disprove Plaintiffs claims. Not only is this factually incorrect, but it also ignores Plaintiffs burden of developing evidence that proves their claims. Plaintiffs also spend an inordinate amount of time attempting to create credibility issues where no credibility determination needs to be made.

The facts of this case related to Moving Defendants are simple, Mr. Jung was provided access to medical care, and there was no Constitutional violation by an employee of the City of

Philadelphia that could allow for *Monell* liability to attach. As shown in Moving Defendants Motion and in this Reply, the facts are clear and summary judgment is warranted in Moving Defendants' favor.

### A. The standard remains the standard.

Plaintiffs, perhaps knowing that they cannot prove that Defendants were deliberately indifferent to a serious medical need, wish this Court to apply a standard that does not apply. In the over ten years since *Kingsley* was decided, the third Circuit has not changed the standard for this type of claim. This Court should not do so now. For all the reasons adduced in Moving Defendants' Motion for Summary Judgment, Plaintiffs have not shown evidence that meets the applicable standard and summary judgment must be granted in Moving Defendants favor.

### B. Lt. Bloodsaw and Officer Frasier were not deliberately indifferent to a medical condition.

Moving Defendants note that Plaintiffs are not seeking to hold Lt. Bloodsaw or Officer Frasier liable for Mr. Jung's diabetes. This is because Mr. Jung was in medical personnels' care for diabetes. Any flaws with that care cannot be laid at the feet of either Lt. Bloodsaw or Officer Frasier. Instead, Plaintiffs are alleging a different serious medical need on November 5, 2023.

While it might be disputed if LPN Cabellos told Officer Frasier to call a stretcher on November 5, this fact is not dispositive and is misdirection. What is important and undisputed is LPN Cabellos's observation and description of Mr. Jung, which Officer Frasier would have also seen, prior to any alleged statement regarding a stretcher call. Officer Frasier coordinated medical attention when she told Nurse Cabellos that Mr. Jung was asking to see a medical provider while Nurse Cabellos was on the pod. Exhibit C of Motion for Summary Judgment ("MSJ") at 76:2-77:9. LPN Cabellos made observations of Mr. Jung but did not constitute said interactions as rising to the level of a medical encounter. Exhibit N of MSJ at 5. LPN Cabellos testified that Mr. Jung

verbally complained of leg pain and indicated that he could not walk. Exhibit C of MSJ at 76:2-77:9; *see also* Exhibit A of MSJ at BS5.[1] However, as this conversation was happening, Mr. Jung was standing, then proceeded to walk towards LPN Cabellos, before he sat himself on the ground and complained of falling. *Id*. LPN Cabellos did not determine that Mr. Jung's state required an immediate stretcher call or other immediate medical attention. Exhibit C of MSJ at 76:2-77:9. LPN Cabellos then left the pod. Exhibit E of MSJ at 96:21-25. This was not a situation where Mr. Jung was laying on the floor, clutching his chest, unable to breathe, and showing obvious signs of a medical emergency.

There is nothing so obvious about the description given by LPN Cabellos that a lay person would need to overrule the medical personnel's decision. Plaintiffs take issue with LPN Cabellos' medical assessment, but they do so with three medical experts. *See* Exhibits 3, 4, and 6 of Plaintiffs Opposition. As the Supreme Court stated when creating this cause of action, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97 at 106 (1976). Therefore, by asking this Court to hold Officer Frasier liable, Plaintiffs are asking this Court to hold her to a higher standard than medical personnel. A standard that case law says she should not be held to. "We don't require prison guards to earn medical degrees and thus we don't hold them liable for their failure or inability to diagnose medical conditions that a layperson would not recognize." *DeJesus v. Drace*, No. 15-1065, 2021 WL 3145191, at *4 (D. Del. July 26, 2021).

---

[1] This is not inconsistent with the statement LPN Cabellos gave during the death investigation, it just provides more detail. In the interview she stated, "[h]e said he needed help to get up." Exhibit 2 of Plaintiffs' Opposition at Frasier-26. This is almost identical to her testimony, just missing the context of him having no trouble walking and placing himself on the floor prior to making that statement.

3

Plaintiffs further allege that Officer Fraiser failed to tour the pod to check on Mr. Jung. This again is not supported by the record. Officer Fraiser conducted numerous tours, including headcounts. *See* Exhibit B of MSJ, generally. Plaintiffs ask this Court, disguised as an argument for an inference a jury could make, to discredit Officer Frasier's log of Mr. Jung's refusal to come out for his insulin based on nothing other than an inadmissible opinion from a different Officer. Plaintiffs want to make Mr. Jung's refusal a reason for Officer Frasier to follow up, but she followed the policy regarding the refusal and noted it in her log and told medical staff who then would have taken the next steps. *See* Exhibits A and B of MSJ. Just as she was found to have violated no policy, these facts do not support finding that Officer Frasier was deliberately indifferent to an obvious medical emergency and summary judgment is warranted in her favor.

As to Lt. Bloodsaw, it remains undisputed that she was called to the pod for a non-medical reason. Officer Frasier might not have recalled at her deposition why she called Lt. Bloodsaw, however, she did document why in her log contemptuously with the call. Exhibit B of MSJ at BS30-31. Plaintiffs are again seeking to have this Court somehow discredit the documentation based on her lack of recall at her deposition; a determination that should not, and in this case need not, be made at summary judgment. Lt. Bloodsaw had no information that Mr. Jung was complaining of leg pain. Laying on the floor and refusing to get up, the two facts that Lt. Bloodsaw knew at that time, do not equate to an obvious medical need. With no evidence supporting the theory against Lt. Bloodsaw, summary judgment is warranted.

There is no factual basis for liability against either Lt. Bloodsaw or Officer Frasier and summary judgment must be granted in their favor.

   **C. Plaintiffs have failed to establish municipal libality.**

      **a. No constitutional violation so there can be no municipal liability.**

As shown above, there is no evidence of a city employee being liable for a constitutional violation. Without such, there can be no claim for municipal liability. The Supreme Court of the United States has long stated and held that for municipal liability to attach, there must be a constitutional violation. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, (1985) (there must be a casual connection between the policy and the constitutional violation to impose municipal liability), *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989) (holding that a claim for failure to train can only yield liability when it resulted in the constitutional deprivation suffered), *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404, (1997) ("a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights"), and *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (a pattern of constitutional violations is required to be proven before deliberate indifference can be shown for municipal liability).

The Third Circuit has followed this precedent when examining municipal liability. *See Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) ("A plaintiff seeking to hold a municipality liable under section 1983 must demonstrate that the violation of rights was caused by the municipality's policy or custom. Liability is imposed when the policy or custom itself violates the Constitution or when the policy or custom, while not unconstitutional itself, is the 'moving force' behind the constitutional tort of one of its employees) (citations and quotations omitted); *see also Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim."). For this reason alone, summary judgment should be granted.

    **b. Plaintiffs have not pleaded municipal liability based on a policy or custom.**

Count V of Plaintiffs Complaint pleads only a failure to train, supervise, and discipline cause of action. *See* Amend. Compl. at ¶ 181(a)-(e). The Third Circuit has recently reiterated that unconstitutional policy, practice or custom is a distinct theory of liability from failure to train, supervise, and/or discipline, as the latter requires a specific showing of deliberate indifference. *See Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019), *cert. denied sub nom. City of Camden, New Jersey v. Forrest*, 140 S. Ct. 902, 205 L. Ed. 2d 465 (2020) (internal citations omitted).

> Although [the Third Circuit has] acknowledged the close relationship between policy-and-custom claims and failure-or-inadequacy claims . . . the avenues remain distinct: a plaintiff alleging that a policy or custom led to his or her injuries must be referring to an unconstitutional policy or custom, and a plaintiff alleging failure-to-supervise, train, or discipline must show that said failure amounts to deliberate indifference to the constitutional rights of those affected.

*Id.* at 106. Plaintiffs spend a lot of effort arguing custom when they have not pleaded a claim of custom.

### c. Failure to train, supervise, or discipline has insufficient evidence to support *Monell* standard.

Plaintiffs have abandoned their failure to train theory and proceed only on failures to supervise and discipline.[2] Plaintiffs allege that Former Commissioner Carney's review of every investigation is a failure to supervise. This ignores the fact that each investigation is a form of supervision. An investigation is seeking to determine if the staff acted within their responsibilities under the policies. Said policies are another form of supervision. Staff are disciplined if they are found to be in violation of those policies. This is clear supervision and discipline, and Plaintiffs have no evidence of any failure to conduct either. Plaintiffs appear to want Commissioner Carney to have done more, but this is not the standard. Section 1983 does "not provide plaintiffs or courts

---

[2] Most readily seen in Plaintiffs admission to amount of training PDP does for medical emergencies.

carte blanch to micromanage local governments throughout the United States." *Connick*, 563 U.S. at 68; *see also Durham v. Philadelphia*, 2020 WL 6940021, *2 (E.D. Pa. Nov. 25, 2020). After all, if federal courts could engage "in an endless exercise of second-guessing municipal employee-training programs[,]" it would "implicate serious questions of federalism[.]" *City of Canton*, 489 U.S. at 392.

Additionally, Plaintiffs argue that the Department of Prisons was not supervising or disciplining YesCare Staff. This is not supported by the record. The City engages in audits on medical care within the prison system, Exhibit H of MSJ at 25:4-26:4; reviews corrective action plans, *id*. at 26:5-23; retains a doctor to come in to review medical care within the prison system twice a year, which occasionally includes review of diabetes care, *id*. at 32:2-22; and supervises new medical providers in the corrections setting, Exhibit L of MSJ at 39:5-40:7. In fact, the prison administration revoked LPN Cabellos' security clearance for the exact reasons Plaintiffs feel she is liable to them. *See* Email from First Deputy Beaufort, attached hereto as Exhibit AA.

There is clear evidence of supervision and training and summary judgment in Moving Defendants' favor is warranted for the municipal liability claim for this reason as well.

**D. Access to medical treatment was provided to Mr. Jung.**

Plaintiffs appear to contend that Mr. Jung was not getting the right treatment and therefore he was denied access to treatment under the ADA. This misstates the record. Mr. Jung was provided with access to treatment for his diabetes. Mr. Jung was not a willing patient. As. Dr. Trivikram stated, "[Mr. Jung] was known to be noncompliant, and so we did have discussions about what we could do differently if there were 5 things we could do differently." *See* Exhibit L of MSJ at 201:1-5. Plaintiffs seem to attach several theories on why he wasn't a cooperative patient, however, none of them negate the fact that Mr. Jung was provided access to and receiving

7

treatment. Plaintiffs point to his previous hospitalizations as further evidence that he was not being provided with access to treatment. It is beyond comprehension how evidence of treatment for emergent situations can be used to support an argument that he was not provided access to treatment.

Additionally, evidence of discrimination is needed. The Supreme Court of the United States has held "that States must adhere to the ADA's nondiscrimination requirements with regard to the services they in fact provide." *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 603 n.14 (1999) (internal citations and quotation marks omitted). However, The Supreme Court was very clear that it did not hold, "that the ADA imposes on the States a 'standard of care' for whatever medical services they render, or that the ADA requires States to provide a certain level of benefits to individuals with disabilities." *Id.* Plaintiffs, having no evidence of discrimination, concoct an argument that the Supreme Court has rejected. Plaintiffs' argument is that Mr. Jung was not receiving enough treatment for his diabetes. The case law is clear; this is not actionable under the ACA. *See Jackson v. New Jersey*, 465 Fed. App'x 82, 83 (3d Cir. 2012) ("[T]he documents [plaintiff] attached suggest that the state agencies are attempting to meet his needs, although perhaps not as quickly or comprehensively as he would prefer."). All the evidence in this case shows that Mr. Jung was being treated for his diabetes, Plaintiffs only arguments are to the quickness and comprehensiveness of this treatment.

Summary judgement is warranted in Moving Defendants' favor for the ADA and RA claims as well.

### III.    Conclusion

For all the reasons stated above and in Moving Defendants' Motion, summary judgment is warranted in Moving Defendants' favor.

Date: December 26, 2025                    Respectfully submitted,

                                                                                 _____
**Michael Pestrak**
Senior Attorney
Attorney I.D. No. 208611
**Emily M. Hoff**
Deputy City Solicitor
Attorney I.D. No. 330859
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA  19102
*Attorneys for Defendants City of Philadelphia, Blanche Carney, Gena Fraiser, and Wanda Bloodshaw*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JACOB and JAMES JUNG, as Administrators of the Estate of LOUIS JUNG, JR,** : : : : : | |
| Plaintiffs, : : | Civil Action No. 2:24-cv-05618 |
| v. : : | |
| **CITY OF PHILADELPHIA, et al.,** : : | |
| Defendants. : | |

## CERTIFICATE OF SERVICE

I hereby certify that on the date below, the foregoing Reply in Support of Defendants' Motion For Summary Judgment has been filed on ECF and is available for viewing and downloading.

Date: December 26, 2025            Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　**Michael Pestrak**
　　　　　　　　　　　　　　　　　　　　　　　　Senior Attorney
　　　　　　　　　　　　　　　　　　　　　　　　Attorney I.D. No. 208611
　　　　　　　　　　　　　　　　　　　　　　　　**Emily M. Hoff**
　　　　　　　　　　　　　　　　　　　　　　　　Deputy City Solicitor
　　　　　　　　　　　　　　　　　　　　　　　　Attorney I.D. No. 330859
　　　　　　　　　　　　　　　　　　　　　　　　City of Philadelphia Law Department
　　　　　　　　　　　　　　　　　　　　　　　　1515 Arch Street, 14th Floor
　　　　　　　　　　　　　　　　　　　　　　　　Philadelphia, PA  19102
　　　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Defendants City of Philadelphia, Blanche Carney, Gena Fraiser, and Wanda Bloodshaw*