| | | Policy Number | Page | 1 |
|---|---|---|---|---|
| | PHILADELPHIA PRISONS | | | |
| | POLICIES & PROCEDURES | 4.E.7 | of | 11 |

| | |
|---|---|
| **Part:** IV - Institutional Services<br><br>**Section:** E - Health Services | **Related Pennsylvania Minimum Standards:**<br> Tile 37, PA Code 95.232<br>**NCCHC Standard:** J-E-07<br>**Related ACA Standards:** 4-ALDF-4C-01, 2-CO-4E-01 |
| **Subject:** Access to Care | **Supersedes:** Policy 4.E.7 signed on July 22, 2013 |
| **Approved:** _____<br>Commissioner | **Date:** August 14, 2018 |
| **Effective Date:** September 14, 2018 | **Scheduled PAD Review:** Annually<br>**Scheduled Commissioner's Revview:** August 14, 2022 |

## Purpose

To establish the Philadelphia Department of Prisons' (PDP) obligation to provide inmates with physical and behavioral health care services necessary for the treatment of serious health conditions, as is guaranteed by the United States Constitution, and to continually improve the quality of care and the efficiency of care delivery.

## Policy

It is the policy of the PDP to provide each inmate access to a Qualified Health Care Professional (QHCP) who will screen, provide treatment, and/or refer inmates for ongoing or emerging health care problems as appropriate, normally on a scheduled basis.

## Definitions

*Appointment* – a scheduled opportunity for a patient to meet confidentially with a Practitioner; scheduling is done in the Electronic Health Record (EHR).

*Chronic Care Clinic* – the evaluation and/or treatment of an ambulatory patient for chronic medical conditions by a QHCP in a clinic setting five days a week.

*Convenience Care* – health care requested by an inmate, which does not require treatment by a QHCP, for example standard treatments for self-limited conditions such as mild dandruff and mild acne.

*Sick Call Request SCR* – a form used by inmates to request health care services.
The first section of an SCR is for the inmate's use to provide:
- Identifying information, including name, identification number and current housing assignment;

| | PHILADELPHIA PRISONS POLICIES & PROCEDURES | Policy Number 4.E.7 | Page 2 of 11 |
|---|---|---|---|
| **Part:** IV - Institutional Services<br>**Section:** E - Health Services | | **Subject:** Access to Care<br>**Date:** August 14, 2018 | |

- o A brief statement of the request, meaning what service is requested (medical, mental health, or dental);
- o The inmate's signature; and
- o The date of completion of the request form.

The second section is for the QHCP to provide elaboration on clinical interventions employed and a disposition of the request.

An SCR may also be completed and submitted by any staff member who believes an inmate should be evaluated clinically. Requests submitted other than via an SCR will be accepted, including verbal or other written requests.

*Infectious Disease Clinic* – the evaluation and/or treatment of an ambulatory patient by an Infectious Disease Specialist.

*Medical Necessity - Emergent* – a serious health problem, usually presenting unexpectedly, which can lead immediately to loss of life or limb, or other serious morbidity; no delay in provision of services is acceptable.

*Medical Necessity - Urgent* – a serious health problem, usually presenting unexpectedly, which can lead to loss or life of limb if not quickly addressed; generally, a delay of less than 24 hours is acceptable in an urgent situation.

*Medical Necessity - Routine* – a health problem that does not require immediate treatment and can be addressed within five days for routine behavioral health and physical problems, and 14 days for routine dental problems, without affecting eventual outcome.

*Nurse Sick Call* – the evaluation, treatment, or triage of a patient by a Registered Nurse.

*Nurse Triage* – the sorting and classification of inmates' SCRs by a registered nurse (RN) to determine a priority need and the proper place and time for services to be rendered. Nurse triaging occurs 7 days a week.

*Primary Care Clinic* – the evaluation and/or treatment, usually preventive or routine, of an ambulatory patient by a QHCP, in a clinic setting. Primary care clinics occur five days a week.

*Qualified Health Care Professional (QHCP)* – physicians, physician assistants, nurses (including advanced practice nurses), dentists, dental assistants, mental health professionals, and others who by

| | PHILADELPHIA PRISONS POLICIES & PROCEDURES | Policy Number 4.E.7 | Page 3 of 11 |
|---|---|---|---|
| **Part:** IV - Institutional Services<br>**Section:** E - Health Services | | **Subject:** Access to Care<br>**Date:** August 14, 2018 | |

virtue of their education, credentials, and experience are permitted by law to evaluate and care for patients within their scope of practice. A QHCP licensed and certified to practice medicine as an independent, dependent, or collaborative QHCP when dependent or collaborative practitioners are utilized, proper physician supervision must be demonstrated.

*Security* - the uniformed operations staff at the PDP.

*Unimpeded Access* – the absence of unreasonable barriers to inmate access to health care services.

### Access to Care
Inmates will be informed upon admission and regularly thereafter of their right to receive care and of procedures to follow to obtain care.

### Prioritization
Inmates have a constitutional right to receive appropriate and timely health care services for serious health problems. Provision of health care services to inmates must be one of the highest of PDP priorities.

Health care services must be provided timely by a QHCP in an adequately equipped, maintained, and secure setting (no isolation by sight or sound, with security present in all security settings).

Health care staff will retain the authority to determine medical priorities in order to provide timely access to care.

Inmate access to care must be free of unreasonable barriers. Specific consideration to ensure this includes:
- Approval or disapproval of requests for health care will be by a QHCP, only;

- Inmates must be allowed to request care daily;

- Care must be sufficient to meet the health needs of the inmate population;

- Care should not be controlled, except for reasonable security purposes, by staff who are not part of the health care delivery team;

- Health care providers must be able to work efficiently and rapidly;

- Requests for health care will not be returned to inmates unreasonably;



| PHILADELPHIA PRISONS POLICIES & PROCEDURES | Policy Number 4.E.7 | Page 4 of 11 |
|---|---|---|
| **Part:** IV - Institutional Services<br>**Section:** E - Health Services | **Subject:** Access to Care<br>**Date:** August 14, 2018 | |

- Prescriptions and referrals will be honored unless overridden by a prescriber for valid reasons;

- Inmate movement and waits for on or off-site care, tests, medications and prescribed treatments will not be subject to inordinate delays;

- No housing assignment will preclude or delay access to care;

- Care delivery is not delayed by "count times;"

- Care delivery is not a function of the availability of a security escort. In the rare case that an escort is not available, for example; due to immediate security threats, the Shift Commander must notify the relevant care provider immediately so that appropriate arrangements can be made to assure timely delivery of medical care;

- Care will not be delayed ("bumped") by other scheduled activities, except court appearances;

- Prescribed care must be provided unless a prescriber overrides a prescription, or the inmate refuses the care;

- QHCP will not accept a "no show" as a refusal of care; "no show" visits will be reported to the Shift Commander and rescheduled in the next available encounter time (and documented as such in the medical record);

- Dental reviews of sick call requests will occur within two business days of submission of a dental sick call request;

- Urgent and routine dental services will be provided within 24 hours and 14 days respectively;

- Urgent and routine behavioral health care will be provided within 24 hours and 5 days, respectively; and

- Urgent and routine physical health care will be provided within 24 hours and 5 days respectively.

While access to care must be free of unreasonable barriers:

- Appropriately trained QHCPs will control access to care in ways that reflect inmate health care needs;

**Revised**    **August 14, 2018**    **Revised**

| | PHILADELPHIA PRISONS POLICIES & PROCEDURES | Policy Number 4.E.7 | Page 5 of 11 |
|---|---|---|---|
| **Part:** IV - Institutional Services<br>**Section:** E - Health Services | | **Subject:** Access to Care<br>**Date:** August 14, 2018 | |

- Inmates do not have the right to care simply because they demand care, nor can the inmate dictate the location where care will be provided, the way care is provided or the QHCP to provide care;

- Inmates do not have the right to receive convenience care;

- Inmates need not be seen repeatedly when a requested service has already been scheduled or when a QHCP determines that a service is not needed as clinical circumstances have not changed. However, nothing is to interfere with an inmate's submission of an SCR, and particular care must be taken in these instances to avoid preclusion of evaluation and treatment of new problems as they occur;

- Inmates will be notified of alternative treatment plans when indicated, and these alternatives will be documented as such in the medical record and as required below;

- Inmates who object to proposed alternative treatment plans may register a written medical grievance (refer to PDP Policy and Procedure 3.F.10 Inmate Grievance Procedures); and,

- In no circumstances will Security make a decision regarding the need for care, nor will Security refuse to allow or hinder the submission of requests for care.

### Security Responsibilities

Security will:

- inform all inmates orally, in writing via signs posted in intake areas, and via the Inmate Handbook, of the availability of and how to access routine, urgent and emergent services;

- make necessary arrangements to assure that illiterate and non-English speaking, deaf or other special needs inmates understand the availability of and how to access medical services (refer to PDP Policies and Procedures 5.E.10 Special Needs Inmates, 5.E.10.1 Limited English Proficiency and 5.E.10.2 Deaf and Hard of Hearing Inmates);

- assist any inmate who needs help to complete and submit an SCR;

- remind inmates identified by PDP or QHCP(s) as needing assistance with their appointments, and of the need to take their medications (refer to PDP Policy and Procedure 4.E.24.2, Red Flag Medication Compliance System);

| PHILADELPHIA PRISONS POLICIES & PROCEDURES | Policy Number 4.E.7 | Page 6 of 11 |

**Part:** IV - Institutional Services  
**Section:** E - Health Services  
**Subject:** Access to Care  
**Date:** August 14, 2018

- identify and initiate arrangements for inmates who will need translation services or sign language services (refer to PDP Policies and Procedures 5.E.10 Special Needs Inmates, 5.E.10.1 Limited English Proficiency, and 5.E.10.2 Deaf and Hard of Hearing Inmates);

- make blank SCRs readily available to inmates on housing units at all times (in segregation settings SCRs will be available on the housing units and handed out by nurses during rounds);

- have each facility establish and maintain secure drop boxes on each housing unit to receive inmates' SCRs;

- make such boxes available such that inmates can place SCRs into boxes without first giving them to a Correctional Officer(s);

- treat as "mandatory" all QHCP call-out requests for primary care, chronic care, testing etc. (inmates in general, retain the right to refuse care and will not be subject to disciplinary action in response to refusal of care);

- restrict inmates scheduled for health care to their cells or dormitory areas after breakfast;

- have the inmate sign the housing unit Officers' call-out list to acknowledge postponement of a health care visit if the inmate is not available for the scheduled health care screening, clinic visit, etc., due to an unforeseen court appearance, parole hearing, or attorney visit. The service that was postponed will be rescheduled by health care staff;

- not accept an inmate's refusal of care as reason for not escorting the inmate to medical. Inmates must refuse care in the presence of a QHCP. QHCP(s) will note and sign that the inmate refused care. If an inmate refuses to sign the refusal note, the Correctional Officer will sign his/her name and note that the inmate refused care and to sign the refusal form. In the event an inmate refuses to leave a housing unit to be escorted to medical, the Correctional Officer will alert his/her immediate supervisor and appropriate disciplinary action will be initiated; and,

- if an inmate does not report to medical in an acceptable time frame for their appointment, medical staff will notify the Shift Commander.

**Revised**　　　　　**August 14, 2018**　　　　　**Revised**

ATTORNEYS' EYES ONLY　　　Jung - City Production000209

| | PHILADELPHIA PRISONS POLICIES & PROCEDURES | Policy Number 4.E.7 | Page 7 of 11 |
|---|---|---|---|
| **Part:** IV - Institutional Services<br>**Section:** E - Health Services | | **Subject:** Access to Care<br>**Date:** August 14, 2018 | |

### SCRs Triaging Provision

SCR triaging:

- will be performed daily by a Registered Nurse (RN) trained to apply correctional health care standard screening criteria;

- involves licensed practical nurses (LPNs) in screening, but only in a supportive role, and in collaboration with more senior clinicians;

- screening and date stamping will begin with the first collection of SCR on 3-11pm shift and conclude on the last pick up after 11:00pm;

- will be completed by 8:00 am;

- will result in notification of the Shift Commander and behavioral health provider whenever a SCR is submitted with an emergent clinical need (e.g. suicide threat), even if there is no identifying information on the SCR;

- may result in a QHCP asking to see an inmate to obtain additional information;

- will involve returning forms to inmates otherwise materially incomplete, unless the form reports an emergency need in which case the QHCP will immediately ask the Shift Commander to bring the inmate to medical. A QHCP may also decide to see an inmate to obtain additional information;

- will involve returning SCRs to inmates which request non-medical services with instructions as to how to request the desired service;

- includes the forwarding of sick call request (s) to behavioral health, dental, or other services, as appropriate;

- may result in seeing the inmate the same-day by a QHCP for a nurse assessment and nurse intervention, if necessary, for the inmate's current clinical need (e.g. referral, follow-up appointment, etc.).

Following the triaging of all SCRs, any SCRs marked for return will be returned to the inmate by QHCP, and the inmate will sign a receipt to acknowledge return of the SCR. If the inmate refuses to sign, the QHCP will note the refusal and a member of the security staff will witness the refusal. Receipts and refusals will be entered into the EHR.

**Revised**  **August 14, 2018**  **Revised**

| | PHILADELPHIA PRISONS<br>POLICIES & PROCEDURES | Policy Number<br><br>4.E.7 | Page 8<br><br>of 11 |
|---|---|---|---|
| **Part:** IV - Institutional Services<br>**Section:** E - Health Services | | **Subject:** Access to Care<br>**Date:** August 14, 2018 | |

Inmates requiring scheduling for sick call will be scheduled in a manner that assures reasonably short inmate waits and minimizes provider downtime.

SCRs will be scanned into the EHR when completed; corresponding documentation will be entered in progress notes, NET forms, or other clinical documentation.

### Routine Care

When the QHCP is ready to conduct clinic hours, the housing unit Officer will be alerted. The Correctional Officer will then produce inmates on the clinic call list to the QHCP in an orderly manner.

The QHCP conducting the clinic will:

- record the date, time, and medical complaint in the medical record;
- examine the inmate to the extent required to ascertain the nature of the problem;
- provide appropriate treatment, if possible; and
- schedule the inmate for further examination or treatment, if required.
- document the visit in the Subjective Objective Assessment and Plan (SOAP) format.

If any prescription drugs, syringes, or any other medical paraphernalia are stored or dispensed in this area, they will be kept by the QHCP in locked storage. If the QHCP determines that medications or treatments not available on the housing unit are necessary, the QHCP will notify the housing unit Correctional Officer to provide a movement pass for the inmate to report to the nurse's station for further treatment.

The Correctional Officer assigned to the clinic post will assist the QHCP during clinic with inmate control and scheduling.

The QHCP and security will maintain a copy of the clinic call-out list, including a total list of all inmates attending clinic and those that did not attend and their reason for not attending. The Shift Commander's office will maintain copies of the clinic call-out list from each housing units with notations of the inmate's refusal and the refusal reason. These records will be maintained for at least ninety (90) days.

### Youthful Offenders at Intake

All newly-admitted youthful offenders are referred to behavioral health by the QHCP using the automated electronic referral for the purpose of having an immediate assessment.

Revised              **August 14, 2018**              Revised
ATTORNEYS' EYES ONLY                Jung - City Production000211

| | PHILADELPHIA PRISONS<br>POLICIES & PROCEDURES | Policy Number<br>4.E.7 | Page 9<br>of 11 |
|---|---|---|---|
| **Part:** IV - Institutional Services<br>**Section:** E - Health Services | | **Subject:** Access to Care<br>**Date:** August 14, 2018 | |

### Special Management Access

Physical health care QHCP(s) will make daily morning rounds in the special management housing units and inquire of each inmate if they have any medical or behavioral health problems; behavioral health rounds will be weekly. These encounters will be documented by the respective QHCP in the segregation round logbooks and in medical records as necessary.

The housing unit Correctional Officer will assure that the QHCP visits are documented in the IJMS housing unit log and will notify the unit's supervisor if rounds are not completed as scheduled.

Inmates in special management housing units will have daily access to triage.

Inmates in special management housing units will be provided with SCR(s) by the QHCP(s) and by security.

### Other Clinic Arrangements

Inmates on work release, and other outside programs, that request health care will be seen at the regularly scheduled clinics by a QHCP. Weekenders will also be seen as is medically necessary.

### Urgent or Emergent Services (refer to PDP Policy and Procedure 4.E.5 Medical Services)

In addition to the use of written SCRs to obtain routine services, the PDP access process provides immediate or 24-hour access, respectively, when emergent or urgent care is required. When a QHCP learns of a health emergency by whatever communication mechanism (for example, from a Correctional Officer, from a family member, from an attorney, from a news reporter), services must be provided immediately. Urgent needs must be responded to within 24 hours.

Facilities must be prepared to respond to urgent and emergent health problems using PDP facilities or local off-site services, 24 hours a day, 7 days a week.

When a physician or other practitioner determines that off site emergency travel is required, orders for that travel must include directions regarding the type of transport vehicle to be utilized.

Information regarding emergent and urgent care needs should be used no matter how it is received. Examples of possible routes include:
- a sick call request routinely received describes a problem which is actually urgent or emergent;
- a verbal report from an inmate (either the one who is ill or one who observed him or her) describes what may be an urgent or emergent situation;

| PHILADELPHIA PRISONS POLICIES & PROCEDURES | Policy Number 4.E.7 | Page 10 of 11 |
|---|---|---|
| **Part:** IV - Institutional Services <br> **Section:** E - Health Services | **Subject:** Access to Care <br> **Date:** August 14, 2018 | |

- a verbal report from any staff member who has received information from other staff members or from inmates that is consistent with an urgent or emergent situation;
- a report based upon information received from a non-prison source, such as a family member or attorney; and
- a request submitted verbally, via an incorrect form or in any written format.

The response to a possible emergent or urgent situation must reflect the patient's condition and not the manner in which the information is received. The care delivered must reflect patient needs, and not staff convenience.

On occasion, a disruptive inmate may be demanding emergent care unnecessarily or creating unnecessary concern among others. In order to preserve facility security and stability, it may occasionally be prudent to respond as if a situation is urgent even if it is clear to QHCP that the situation is not. Security will be involved in such cases as needed. After such occurrences, involved personnel should receive information and/or training as necessary in order to minimize the likelihood of future problems. Health care staff should not discount inmate reports of health care problems simply because independent corroboration is lacking (for example, un-witnessed vomiting).

## Convenience Care

Convenience care includes cosmetic services, hygiene items, cold preparations, most allergy care and many other interventions. Some of these interventions are appropriate health interventions but do not rise to the level of being serious health needs. Others are not actually health care issues, (for example, difficulty in obtaining shoes that fit properly). PDP and its QHCP(s) are not required to provide convenience care. QHCP(s) should determine which services are "convenience care services" and convey this conclusion to the individual inmate.

It is tempting to provide comfort or convenience care when an inmate claims to be indigent or is restricted from commissary, or if the QHCP merely finds it convenient to do so. However, the QHCP will not provide convenience care.

## Medical Records

All health care services, including access to care procedures and related screening services, should be documented in the EHR. To facilitate this, the health record should be available to those QHCP(s) seeing inmates. Even in segregation settings, it is possible to create a process that permits contemporaneous charting in a convenient manner. It is not possible to be confident about the appropriateness of a health intervention unless the existing health record data is considered.

**Revised**             **August 14, 2018**             **Revised**

| | PHILADELPHIA PRISONS POLICIES & PROCEDURES | Policy Number 4.E.7 | Page 11 of 11 |
|---|---|---|---|
| **Part:** IV - Institutional Services<br>**Section:** E - Health Services | | **Subject:** Access to Care<br>**Date:** August 14, 2018 | |

## Quality Assurance

Access to care procedures will be monitored continually to assure that access to care meets PDP standards.

## Attachments

"Sick Call Request (SCR)"