IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| JACOB AND JAMES JUNG, ADMINISTRATORS OF ESTATE OF LOUIS JUNG, JR, PLAINTIFFS, <br><br> v. <br><br> CITY OF PHILADELPHIA, ET AL. DEFENDANTS. | CIVIL ACTION: <br><br> No. 2:24-cv-05618-TJS |

### DEFENDANT MARIESHA APOLLON'S PRETRIAL MEMORADNUM

Pursuant to the Court's Case Management Order, Mariesha Apollon ("Nurse Apollon") submits the following Pretrial Memorandum:

**(a) Expert Witnesses to Be Called at Trial and Summary of Opinions**

**Expert 1**: David J. Karras, MD, FACEP, FAAEM

Summary of Opinions:

David Karras, M.D. FACEP, FAAEM, an emergency physician with over 34 years of full-time experience in academic and community emergency departments, including the treatment of patients with diabetic ketoacidosis (DKA) will testify consistent with his already produced expert report, and as follows regarding the care rendered to Mr. Jung by Nurse Apollon at Curran Fromhold Correctional Facility on October 28, 2023:

1. **Intake Screening and Medical History**

    Nurse Apollon conducted an intake screening assessment upon Mr. Jung's admission. The incorrect entries regarding his medical history reflected Mr. Jung's

responses to screening questions. Her subsequent documentation accurately identified Mr. Jung's history of diabetes and relevant medical concerns.

2. **Assessment and Documentation of Glucose and Ketones**

   Nurse Apollon appropriately assessed Mr. Jung's blood glucose level and urine ketones and accurately documented the results.

3. **Notification of Provider and Treatment**

   Nurse Apollon properly notified the responsible medical provider of Mr. Jung's hyperglycemia and ketonuria. Nurse Apollon administered insulin as ordered and documented both her communication with the provider and her subsequent actions in the medical record.

4. **Scope of Responsibility**

   Nurse Apollon was not responsible for Mr. Jung's ongoing monitoring or treatment. Nurses do not independently manage medical conditions except pursuant to provider orders. Nurses, including Nurse Apollon, do not have the authority or responsibility to initiate therapy, order serial monitoring, determine the need for additional treatment, or decide whether admission to a medical unit is warranted. Those duties fall within the scope of practice of medical providers.

5. **Causation**

   Nurse Apollon was not responsible for Mr. Jung's subsequent medical deterioration. No action or omission by Nurse Apollon caused or contributed to Mr. Jung's death from diabetic ketoacidosis. Mr. Jung was asymptomatic during his encounter with Nurse Apollon, and therefore, her actions did not cause his death 9

days later, because metabolic abnormalities such as DKA typically resolve within 1-2 days after initiating therapy.

6. **Plaintiffs' Experts**

Dr. Karras expresses disagreement with the opinions of the experts identified by Plaintiffs, namely Dr. Venters, Nurse Roscoe, and Dr. Williams, on the basis of the opinions expressed above.

**Basis of Opinions**

Dr. Karras has rendered these opinions based on his knowledge and experience as an emergency physician. He has been a full-time emergency physician for over 34 years, practicing in both academic and community emergency departments. He routinely assesses and treats patients with diabetic emergencies, frequently manages critically ill patients with diabetic ketoacidosis, and he teaches emergency medicine to residents and medical students at the bedside and in the classroom, both with and without trainees present.

**Expert 2**: Bonnie J. Holley, MSN, RN

**Summary of Opinions**:

Bonnie Holley, MSN, RN, an expert in registered nursing and correctional health care, will testify that the nursing care provided by Nurse Apollon during Mr. Jung's intake on October 28, 2023, complied with applicable nursing standards and did not contribute to Mr. Jung's death. Per verbal order of the Court during the telephonic conference on December 30, 2025, Nurse Holley's report will be produced by the end of the week of January 5, 2026. Bonnie Holley's opinions are as follows:

1. **Intake Nursing Care**

    The care rendered by Nurse Apollon during the October 28, 2023 intake was conducted correctly and appropriately within the scope of her duties as the intake nurse.

2. **Medical History Screening**

    The intake screening accurately reflected Mr. Jung's own responses to the standard admission questions. Nurse Apollon's documentation correctly recorded the information he provided, including his medical history.

3. **Blood Glucose and Ketone Testing**

    Nurse Apollon appropriately performed a blood glucose test and urine ketone dip and documented the results accurately.

4. **Provider Notification and Insulin Order**

    Based on the test results, Nurse Apollon contacted the responsible medical provider, obtained a verbal order for insulin due to Mr. Jung's hyperglycemia and ketonuria, and acted in accordance with nursing standards.

5. **Insulin Administration and Documentation**

    Nurse Apollon administered the ordered insulin and correctly documented both the medication administration and her communication with the medical provider in Mr. Jung's medical record.

6. **Scope of Responsibility After Intake**

    Nurse Apollon was not responsible for ongoing monitoring or further treatment after completing the intake assessment.

7. **Lack of Involvement in Subsequent Care and Causation**

    Nurse Apollon was not involved in any follow up care provided to Mr. Jung. No action or omission by Nurse Apollon contributed to Mr. Jung's death.

8. **Assessment of Glucose Level and Emergency Criteria**

    At intake, although Mr. Jung's glucose measured over 500 mg/dL, he was asymptomatic and appropriately received insulin. Had Mr. Jung exhibited life-threatening symptoms such as altered mental status, profuse sweating, or vomiting, a nurse in Nurse Apollon's position would have contacted the provider and could have initiated EMS activation. In a true emergency, such as unconsciousness, active bleeding, or respiratory distress, a nurse may call EMS directly. None of those conditions were present during the intake.

    **Basis of Opinions**

Bonnie Holley's findings are made to a reasonable degree of nursing and correctional administrative certainty and are based on the expert's education, experience, and review of the case materials.

**Additional Experts:** Nurse Apollon does not anticipate identifying additional expert witnesses. However, expert witnesses are designated by the City of Philadelphia defendants or YesCare defendants, Nurse Apollon reserves the right to evaluate those reports/disclosures, and call those expert witnesses on her behalf.

**(b) Identify of Each Fact Witness to be Called at Trial and Concise Statement of Nature and Substance of Expected Testimony**

**Fact Witness**: Mariesha Apollon, R.N.

Nurse Apollon will testify consistent with her deposition testimony, and as follows. On August 1, 2023, she began working at the Curran Fromhold Correctional Facility pursuant to a thirteen-week contract through the medical staffing agency Tekkacel. She was hired to provide medical care to inmates in the Philadelphia Department of Prisons, including duties in the intake and triage departments. On October 28, 2023, Nurse Apollon was assigned to intake when she encountered Plaintiffs' decedent, Mr. Jung. She will explain that, during this encounter, she asked standard intake questions and documented Mr. Jung's responses. She will also testify that she recorded the medical history he reported.

Nurse Apollon will further testify that she analyzed Mr. Jung's blood glucose level and performed a urine ketone dip consistent with intake protocol. She then documented the results and immediately contacted the on-call medical provider after obtaining an elevated glucose reading and ketonuria. She will state that she received a verbal order for insulin, administered the ordered dosages, and documented both the medication administration and her communication with the provider.

Nurse Apollon will testify that her role as the intake nurse ended once the intake assessment and ordered interventions were completed, and that ongoing monitoring, reassessment, and follow-up care were the responsibility of other medical staff. She will also explain that, at the time of her encounter with Mr. Jung, he was asymptomatic, did not present with signs of a medical emergency, and did not exhibit symptoms that, in her nursing judgment, required her to call EMS. Nurse Apollon will further testify that she had no involvement in Mr. Jung's subsequent care.

**(c) Cited Portions of Written or Video Deposition Testimony Designations**

None at this time, as Nurse Apollon has not yet received the list of witnesses other parties intend to call either live or via *de bene esse* testimony at the time of trial. Nurse Apollon respectfully reserves the right to supplement this section of her Pretrial Memorandum.

**(d) Relief Sought**

Nurse Apollon seeks dismissal of all claims against her with prejudice as Plaintiffs cannot meet their burden to establish a causal connection between Nurse Apollon's October 28, 2025 intake treatment she provided to Mr. Jung for his diabetic condition and his unfortunate death which occurred 9 days later due to Diabetic Ketoacidosis.

**(e) Anticipated Legal Issues Requiring Ruling & Best Authority on Each Issue**

At this time legal issues exist with regard to the central claims against Nurse Apollon such as the 14th Amendment Deliberate Indifference claim, and medical malpractice claims.

If the deliberate indifference claim survives Nurse Apollon's Motion for Summary Judgment, it will remain an issue because Nurse Apollon's conduct cannot legitimately amount to the high burden of deliberate indifference, particularly because Nurse Apollon provided Mr. Jung care for his diabetic condition. Well-established Federal precedent dictates that, in order for a prisoner to maintain a 1983 action alleging violations of the Eighth Amendment, he or she must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97 (1976). This involves action or inaction well in excess of that which would constitute medical negligence. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In

order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, at 106.

Even if Plaintiffs experts are permitted to testify not one of the four experts show a causal connection between Nurse Apollon's single encounter on October 28, 2023 to Mr. Jung's death on November 6, 2023. Expert opinions must rest on sufficient facts to support a jury verdict. An opinion that lacks factual support or is contradicted by indisputable record evidence cannot sustain a verdict. *Brooke Grp. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209 (1993). This principle is especially important in medical malpractice cases, where technical expertise is required to prove the claim.

Nurse Apollon respectfully reserves the right to supplement this section depending upon the outcome of the pending Motion for Summary Judgment, *Daubert* Motions, and Motion *in limine*. Nurse Apollon notes that the Motion *in limine* deadline is not until January 9, 2026.

                                                                                                       Respectfully submitted,
                                                                                                       **KIERNAN TREBACH, LLP**

Date: January 2, 2026

                                                                                                       _____
                                                                                                       Sarah M. Baker, Esq.
                                                                                                       Jonathan M. Kaminsky, Esq.
                                                                                                       Attorneys for Mariesha Apollon

## CERTIFICATE OF SERVICE

I, Sarah M. Baker, Esquire, hereby certify the foregoing Pre-trial Memorandum of Defendant, Mariesha Apollon has been electronically filed with the Court and is available for viewing and downloading from the Court's Electronic Filing System by all counsel of record.

**KIERNAN TREBACH, LLP**

_____
Sarah M. Baker, Esq.
Jonathan M. Kaminsky, Esq.
Attorneys for Mariesha Apollon

Date: January 2, 2026