**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JACOB and JAMES JUNG, as Administrators of the Estate of LOUIS JUNG, JR, | : | No. 2:24-cv-05618-TJS |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | **JURY TRIAL DEMANDED** |
| CITY OF PHILADELPHIA; YesCare Corp.; BLANCHE CARNEY, Former Commissioner of Philadelphia Dept. of Prisons; LALITHA TRIVIKRAM; MAUREEN GAY; MARIESHA APOLLON; BLAIR CABELLOS; GENA FRASIER; WANDA BLOODSAW, | : | |
| Defendants, | : | |
| v. | : | |
| CAREERSTAFF UNLIMITED, LLC, | : | |
| Third Party Defendant, | : | |
| v. | : | |
| TEKACCEL, INC., | : | |
| Fourth Party Defendant. | : | |

**PLAINTIFFS' TRIAL PRETRIAL MEMORANDUM**

**I.    Nature of the Action and Basis of Jurisdiction**

This is a civil rights wrongful death and survival action asserting claims under 42 U.S.C. § 1983 against City of Philadelphia Defendants, YesCare Corp. Defendants, and Defendant Apollon for violations of the U.S. Constitution, Americans with Disabilities Act, and state medical malpractice law in the death of Louis Jung, Jr. from diabetic ketoacidosis during his incarceration within the Philadelphia Department of Prisons (PDP). The Court has jurisdiction over these claims under, respectively, 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a).

1

## II.    Factual Summary of the Case and Claims Involved

Plaintiffs Jacob and James Jung brought this case as Administrators of the Estate of Louis Jung, Jr [hereafter "Mr. Jung"], their father, who died of diabetic ketoacidosis while incarcerated in the Curran-Fromhold Correctional Facility (CFCF) within the Philadelphia Department of Prisons (PDP). Constitutional claims were brought under the Fourteenth Amendment to the U.S. Constitution against the City of Philadelphia, YesCare Corporation [hereafter "YesCare"], and against defendants former Commissioner of the Philadelphia Department of Prisons Blanche Carney, former YesCare Site Medical Director at CFCF Dr. Lalitha Trivikram, YesCare Nurse Practitioner Maureen Gay-Johnson, PDP Correctional Officer Gena Frasier, PDP Correctional Lieutenant Wanda Bloodsaw, former YesCare Licensed Practical Nurse Blair Cabellos, and former YesCare contracting Registered Nurse Mariesha Apollon. Pennsylvania state law medical malpractice claims were brought against Defendants YesCare, Trivikram, Gay, Apollon, and Cabellos. Americans with Disabilities Act and Rehabilitation Act claims were brought against the City of Philadelphia. Failure to train or supervise staff in providing medical care or discipline staff who failed to provide proper medical care claims were brought against the City of Philadelphia and YesCare. Wrongful Death and Survival Action claims were brought against all defendants. Dkt. 1 at ¶¶ 151-181.

Plaintiffs are proceeding on theories of vicarious liability and direct corporate liability against YesCare on their claim of medical malpractice, as briefed in their motion for summary judgment. Plaintiffs are proceeding on a theory of failure to supervise under Count V and customs, practices, or patterns amounting to deliberate indifference under Count I against the City of Philadelphia. Plaintiffs are proceeding on a theory of failure to train and failure to supervise under

2

Count V and customs, practices, or patterns amounting to deliberate indifference under Count I against Defendant YesCare.

Mr. Jung was a father to three sons: Jacob, James, and Louis III. Mr. Jung was diagnosed with Type 1 diabetes as an adolescent. Type 1 diabetes is an autoimmune condition where an individual's pancreas is unable to produce insulin, resulting in absolute insulin deficiency that requires administration of insulin to treat it, often through multiple daily injections. Type 1 diabetics cannot live without administered insulin. Lack of insulin can cause diabetic ketoacidosis, a life-threatening condition. Diabetic ketoacidosis occurs when the body does not have enough insulin to break down glucose properly, which causes the body to start breaking down fats as a fuel source. This fat breakdown produces fatty acids and ketones, which acidify the blood, and acid build-up in the blood then disrupts normal body processes, ultimately causing multi-organ dysfunction and failure. For a Type 1 diabetic, going without insulin for 24 hours may result in severe metabolic decompensation, including diabetic ketoacidosis and death. Diabetic ketoacidosis can also develop more slowly as acid builds up in the blood in the context of insufficient insulin. Mr. Jung was able to manage his diabetes through self-administered injections while living in the community.

Mr. Jung was incarcerated within the Philadelphia Department of Prisons [PDP] on December 16, 2021. In 2021, Corizon, Inc. was contracted to provide health care for those in custody to PDP, a contract that was eventually assigned to YesCare in February of 2023.

Mr. Jung was hospitalized six times for diabetic ketoacidosis or hyperglycemia while under the care of Corizon/YesCare and PDP from 2021 through June of 2023. His medication administration record for insulin and blood sugar checks was littered with dozens of entries marked "no show" or "refused," and hundreds marked simply "not documented."

YesCare policy defined insulin as a "critical medication" for which each and any missed dose required a follow-up visit with a provider. PDP policy similarly required follow-up visits for missed doses of "critical medications," which it termed "red flag" encounters.

While YesCare/Corizon documented blood glucose checks on a handwritten Finger Stick Blood Glucose (FSBG) form for part of Mr. Jung's time at PDP, most of his electronic health record contains no indication of blood glucose levels or corrective insulin dosages. Several PDP and YesCare staff testified in depositions and are expected to testify at trial to a complex and counterintuitive hodgepodge of documentation systems, prone to glitches and often incomplete, partially owned by the City but operated by YesCare.

There were more than 50 hospitalizations of other patients for blood sugar complications at PDP from 2020-2023. Similar systemic flaws in documentation and diabetic care are apparent from the records of other patients in the lead-up to their hospitalizations for diabetic complications around the same time as Mr. Jung: dozens of "not documented" entries for insulin or blood sugar checks, lack of documented follow-up between diabetic crisis and subsequent hospitalization, or oblique references to critical hyperglycemic levels without a complete note reflecting evaluation for symptoms. Nonetheless, at least two individuals were transferred to the infirmary from PDP facilities other than CFCF to accommodate a greater number of blood glucose checks and a higher level of monitoring in response to poorly controlled diabetes over this period. The infirmary at PDP was never full to capacity during the years 2021-2023. Mr. Jung spent brief periods in the infirmary immediately on return from two of his hospitalizations, but was never transferred to the infirmary for the purpose of accommodating his needs for diabetic care.

At a visit with an endocrinologist in July of 2022, the endocrinologist noted Mr. Jung's report of insulin doses around 4:00 or 5:00 AM and recommended doses at 9:00 AM and 9:00 PM.

His dosing regimen remained unchanged. After one hospitalization in March of 2023, the hospital discharge notes assess his diabetic ketoacidosis as stemming from the dosage regimen at the prison, and recommended four blood sugar checks per day. His blood sugar check and corrective insulin regimen was changed to four times per day; a YesCare medical provider at CFCF then knocked his regimen back down to twice per day, citing both low levels of "staffing" and Mr. Jung's "noncompliance."

YesCare conducted no audits of insulin administration, blood sugar checks, its red flag policy for follow-up visits after missed doses of "critical medications" such as insulin, or its refusal policy prior to Mr. Jung's death. The Philadelphia Department of Prisons conducted no independent audits of basic, daily diabetes care. The one audit that included diabetic chronic care, completed in June of 2023 and communicated to PDP's final policymaker, Defendant Carney, flagged specifically that "refusals of scheduled care was a prominent factor in several inmate patients maintaining poor diabetic control" and that "refusals were not found in the chart for all missed chronic care visits." The consultant warned that "refusal of potentially life-saving treatment, such as diabetes care, should be witnessed by a medical provider in a medical setting. This infrequently happens. Many refusals for chronic care visits are not documented in writing at all."

The PDP and Defendant Carney conducted investigations into deaths in custody for a determination of whether staff had violated policy. Defendant Carney reviewed each of these investigations. Across over a dozen cases resulting in death from 2017 to 2023, the PDP's Office of Special Investigations sustained charges against fourteen correctional officers for failure to render emergency aid to individuals in crisis, and nineteen correctional officers for failing to make rounds or making rounds incapable of assessing the wellbeing of incarcerated individuals. Neither

Defendant Carney nor PDP ordered refresher trainings for correctional staff on rendering emergency aid. Neither Defendant Carney nor PDP reviewed or audited the system of emergency response or access to medical care to evaluate the need to place patients with greater needs for medical care in the infirmary in light of the demonstrated deficiencies of relying on correctional staff as the front line for identifying and responding to medical crises.

Mr. Jung was transferred to Norristown State Psychiatric Hospital on June 2, 2023. He was discharged and returned to PDP on October 27, 2023 at approximately 12:55 PM. His medical intake did not occur until the morning of October 28, 2023, over twenty hours later. Defendant Mariesha Apollon obtained a signed authorization form to request his outside medical and pharmaceutical records, but did not seek or obtain his records from Norristown, an "Intermedex" for local pharmacies, or prior records from PDP. She reviewed a blood glucose check performed by a pre-intake medical assistant showing Mr. Jung's blood glucose level at a critically high 542. Defendant Apollon called Defendant Maureen Gay, the intake provider, and obtained orders to administer insulin. Defendant Apollon checked Mr. Jung's urine for ketones, which were present. She completed the intake process without scheduling Mr. Jung for a follow-up blood glucose check, following up with him personally, scheduling him for an appointment for evaluation from a provider at the next available time, or completing a "Nursing Encounter Tool" (NET) that would have prompted evaluation of Mr. Jung for other symptoms of diabetic ketoacidosis.

Defendant Maureen Gay entered a medication order for Mr. Jung on the evening of October 28, 2023. She did not meet with Mr. Jung face-to-face. She also did not obtain or review Mr. Jung's prior records from Norristown, local pharmacies, or prior records from PDP. Maureen Gay had encountered Mr. Jung before, signing progress notes when he returned from the hospital for diabetic ketoacidosis in April 2022 and shortly before he was re-hospitalized for diabetic

6

ketoacidosis in early January of 2023. She entered a prescription for insulin significantly lower than his dosage at either Norristown or on discharge from the PDP in June of that year – ten units of insulin twice-daily, with a sliding scale of two-twelve units twice a day. At Norristown, he had received 30 units of insulin in the morning, 15 in the evening, and 3-15 units three times a day.

From October 29 to November 5, 2023, Mr. Jung's diabetic care remained catastrophically mismanaged. His medication administration record for the month of November is absent from his records, and all accounts of his blood glucose levels and insulin administrations are drawn from a YesCare report produced after his death. Mr. Jung's final days reflected a near-constant series of policy breaches and deviations from proper care, all consistent with previously occurring issues: failure to complete a NET for a blood sugar for 585 on 10/29; failure to document an insulin dosage on 10/30; failure to complete a NET or document regular insulin for a blood sugar of 500 on 10/31; failure to obtain a refusal form or schedule a red flag for missed insulin on the morning of 11/1; failure to complete a NET or administer regular insulin for a blood sugar of 411 on the evening of 11/1; failure to schedule a red flag appointment for an insulin "no show" on 11/3; failure to document insulin on 11/4; failure to schedule a red flag appointment for an insulin "no show" on the morning of 11/5; and failure to obtain a refusal form or schedule a red flag encounter for missed insulin on the evening of 11/5. Mr. Jung was not "red flagged" for any of his missed insulin doses between October 27 and November 5, 2023. His low insulin dosage ordered by Defendant Gay was never adjusted upward. He was never seen by a medical provider for evaluation of his diabetes between October 28, 2023 and his death on November 6.

On the morning of November 5, 2023, Defendant Gena Frasier was the housing officer on Mr. Jung's block, B1Pod3 at CFCF. Mr. Jung asked to see a nurse. Defendant Frasier did not assist Mr. Jung to request a sick call with a qualified health care provider in a medical setting, as laid out

7

in PDP's access to care policy; she brought Defendant Cabellos, an LPN performing an unrelated medication pass, to his cell door. Mr. Jung was lying on the floor for most or all of this interaction. Defendant Cabellos conducted no physical evaluation of Mr. Jung, did not check his medical records, did not document their encounter, and did not notify any other medical staff. Defendants Cabellos and Frasier walked away from Mr. Jung, where he remained on the floor unattended for nine minutes. Defendant Frasier called for her supervisor, Defendant Wanda Bloodsaw. Defendant Bloodsaw arrived at Mr. Jung's cell, where he remained on the floor. She watched as two other incarcerated men wearing gloves dragged him into his cell. She closed the door, and she walked away.

Defendant Frasier authorized Mr. Jung's cellmate to be moved out of his cell, which the cellmate claims to have requested due to Mr. Jung's vomiting and urination over the cell floor. In the afternoon of November 5, 2023, Defendant Frasier entered into Lock & Track that Mr. Jung had refused insulin. Now-unavailable video of the late afternoon of November 5 reflected that Defendant Frasier remained seated watching television surrounding the period that she claimed Mr. Jung "refused." Defendant Frasier did not check on Mr. Jung or make any further entries referencing Mr. Jung for the remainder of her shift. Mr. Jung remained in his cell alone for the rest of the day and night as his diabetic ketoacidosis caused multi-organ failure. No other medical staff, provider, or nurse interacted with Mr. Jung after the morning of November 5.

Mr. Jung was found unresponsive in his cell on the morning of November 6. He died at the jail. The cause of his death was diabetic ketoacidosis.

## III.    Expert Witnesses

Plaintiffs will call the following expert witnesses at trial:

1. **Dr. Jonathan Williams**: Dr. Williams is an endocrinologist and expert in diabetes care. He will testify regarding the standards of care for treating diabetes, evaluating the care provided to Mr. Jung in October and November 2023, identifying any deviations from the standards of care and the role of defendants in breaching those standards, and how those breaches caused injuries to Mr. Jung, including improperly treated or untreated hyperglycemia, diabetic ketoacidosis, and death. Dr. Williams will testify in regard to any of the records he has reviewed in coming to his opinions in this matter, and any opinion, finding, or other issue discussed in his expert report for this matter. It is the opinion of Dr. Williams that Mr. Jung's diabetes care deviated from the appropriate standard as he was not prescribed sufficient insulin in October and November 2023, his intake screening did not include a review of records nor result in a follow-up assessment in the hours after intake, and then throughout the rest of October and November Mr. Jung was not provided insulin as prescribed on numerous occasions, his hyperglycemia was not properly treated, and he was not seen by medical providers.

2. **Dr. Homer Venters**: Dr. Venters is an expert in correctional health care. He will testify regarding proper standards and practices for providing health care within a correctional setting, particularly diabetes care, and how oversight is to be provided by the medical provider and by the government agency that contracts with the provider. He will testify regarding systemic deficiencies in the provision of diabetes care by YesCare within the Philadelphia Department of Prisons. Dr. Venters' opinions are that improper care was provided to Mr. Jung between December 2021 and November 2023, including his not being provided treatment interventions and

accommodations such as housing in the infirmary; PDP failed to provide oversight of YesCare's diabetes care; Defendant Carney failed to enact reasonable interventions to address and prevent systemic failures of correctional staff to identify and respond to medical emergencies. Dr. Venters will testify in regard to any of the records he has reviewed in coming to his opinions in this matter, and any opinion, finding, or other issue discussed in his expert report for this matter.

3. **Lori Roscoe, DNP, PHD, APRN, ANP-C, CCHP-RN**: Ms. Roscoe is an expert in correctional nursing and will testify regarding the proper standards of correctional nursing, particularly in regard to diabetes care, evaluating the care provided to Mr. Jung during his incarceration within PDP in light of those standards. Ms. Roscoe's opinions are that there were breaches of the standards of care by Defendants Apollon, Gay, Cabellos, and YesCare nursing staff generally during October and November 2023, including failures to review his medical records, failures administer insulin and glucose checks, failures to test for ketones, failures to notify a provider when insulin was missed or glucose levels were elevated, and failures to properly document care. Additionally, Ms. Roscoe is of the opinion that there were failures to provide proper nursing care to Mr. Jung for his diabetes during earlier periods of his incarceration dating back to December 2021. These breaches in the standard of nursing care for Mr. Jung's resulted in injuries up to and including the death of Mr. Jung. Ms. Roscoe will testify in regard to any of the records she has reviewed in coming to her opinions in this matter, and any opinion, finding, or other issue discussed in her expert report for this matter.

4. **Arthur Wallenstein**: Mr. Wallenstein is a correctional expert who will testify regarding standards and norms of correctional practices. His opinions are that correctional defendants failed to ensure Mr. Jung had access to medical care; failed to identify and respond to Mr. Jung's medical concern and need for emergency care on November 5; PDP had deficient practices of identifying and responding to medical emergencies within PDP in the years preceding the death of Mr. Jung, including failures by Defendant Carney; and, Defendants Bloodsaw and Frasier specifically failed to provide access to care and follow-up with Mr. Jung on November 5, 2023. Mr. Wallenstein will testify in regard to any of the records he has reviewed in coming to his opinions in this matter, and any opinion, finding, or other issue discussed in his expert report for this matter.

## IV. Fact Witnesses

1. **Jacob Jung**: Jacob Jung is expected to testify as to his relationship with Louis Jung, Jr., who was his father. He is expected to testify as to the impact that his father's death has had on his life and family. He is also expected to testify as to Louis Jung, Jr.'s self-care for his diabetes while in the community.

2. **James Jung**: James Jung is expected to testify as to his relationship with Louis Jung, Jr., who was his father. He is expected to testify as to the impact that his father's death has had on his life and family. He is also expected to testify as to Louis Jung, Jr.'s self-care for his diabetes while in the community.

3. **Evelyn Tyson**: Evelyn Tyson is expected to testify as to her relationship with Louis Jung, Jr., who was her former husband. She is expected to testify as to the impact that Louis Jung, Jr.'s death has had on her life and family, including on their eldest

son, Louis Jung III, an adult dependent with cerebral palsy. She is also expected to

testify as to Louis Jung, Jr.'s self-care for diabetes while in the community.

4. **Blair Cabellos:** Defendant Cabellos is expected to testify about her interactions

with Louis Jung, Jr and Defendant Gena Frasier on November 5, 2023. She is also

expected to testify regarding her understanding of diabetes, the responsibilities of

Licensed Nurse Practitioners (LPN's) at CFCF, YesCare policies at CFCF, as well

as her nursing education and experience.

5. **Blanche Carney:** Defendant Carney is expected to testify regarding her

supervision of the PDP's correctional staff and medical care during her tenure as

Commissioner. She is expected to testify as to her knowledge of diabetes and

emergency care within the PDP and the PDP's oversight or supervision of diabetes

and emergency care. She is expected to testify to audits of medical care that she

reviewed, and any responsive supervisory actions she took after reviewing them.

She is expected to testify as to the role of PDP correctional staff in facilitating

access to medical care. She is expected to testify as to her review of investigations

into in-custody deaths and any responsive actions she supervised after in-custody

deaths.

6. **Dr. Lalitha Trivikram**: Defendant Former YesCare CFCF Site Medical Director

Dr. Lalitha Trivikram is expected to testify to YesCare's policies and practices

regarding the training and supervision of medical staff and supervision of medical

care, including diabetes care and emergency care, at CFCF while she was site

medical director at CFCF. She is expected to testify as to YesCare's policies and

practices for medical documentation while she was site medical director at CFCF.

She is expected to testify as to policies and practices regarding transfer of individuals at CFCF to the infirmary while she was site medical director at CFCF. She is expected to testify as to her recollection of Louis Jung, Jr. and the acts and omissions of YesCare staff and other medical staff at CFCF that resulted in his death, including her own.

7. **Maureen Gay-Johnson:** Defendant Gay-Johnson is expected to testify to the medical care that was provided to Mr. Jung upon intake, relevant standards for diabetes treatment and management, YesCare policies and practices for intake screening and diabetes management. She was the nurse practitioner working at intake on October 28, 2023, and will testify to the insulin orders she gave for Mr. Jung, any follow up care that was or was not provided, and her conversations with others regarding Mr. Jung, in particular Defendant Apollon.

8. **Gena Frasier:** Defendant Fraiser is expected to testify about her interactions with Louis Jung, Jr., Defendant Blair Cabellos, Defendant Wanda Bloodsaw on November 5, 2023, and her responsibilities and actions taken or not taken throughout her shift on November 5, 2023. She is additionally expected to testify regarding the role of correctional officers in medication administration and recognizing and responding to emergencies, the responsibilities of correctional officers at CFCF under PDP policies, whether she adhered to policies and training on November 5, 2023, as well as her training and experience as a correctional officer.

9. **Lynda Witkowski:** Lynda Witkowski is expected to testify to her job, duties, and role in the quality improvement processes at PDP. She is also expected to explain

PDP/YesCare policies and practices concerning diabetes care, emergency response, red-flagging of critical medical issues, and auditing or oversight of nursing care.

10. **Mariesha Apollon**: Defendant Apollon is expected to testify as to her interactions with Louis Jung, Jr. and Defendant Maureen Gay-Johnson during the intake process on October 28, 2023. She is expected to testify as to her understanding of diabetes and the obligations of a nurse at CFCF to provide appropriate care, as well as her nursing education and experience.

11. **Marsha Jeoboham:** Marsha Jeoboham is expected to describe her training, job duties, and supervisory role over YesCare/CFCF nursing staff, including how nurses were trained, supervised, and disciplined, and how patient information and medical documentation (including MARs and intake records) were supposed to be handled. She is also expected to explain PDP/YesCare policies and practices concerning diabetes care, emergency response, red-flagging of critical medical issues, and auditing or oversight of nursing care.

12. **Patricia Powers:** Major Powers is expected to testify to policies and practices of medication administration and documentation within PDP facilities, including the role of correctional staff in ensuring proper medication administration and documentation; policies and practices of providing emergency medical care within PDP facilities, including the role of correctional staff and officials in identifying and responding to potential and actual medical emergencies; policies and practices pertaining to the placement of incarcerated individuals within an infirmary or medical housing unit within PDP facilities and the referral or transfer of incarcerated individuals to outside medical facilities and hospitals, including the

role of correctional staff and officials in ensuring appropriate placement; the PDP's process for conducting investigations into deaths in custody; and PDP's policies and practices for imposing disciplinary measures on staff for failure to provide access to care, render emergency aid, or otherwise respond to situations where incarcerated people are in need of medical care.

13. **Sandy Varghese**: Ms. Varghese is expected to testify to audits, reviews, evaluations, investigations, or trainings related to medical care, including diabetic care and diabetic ketoacidosis, at PDP; policies and practices for the provision of diabetes treatment within PDP facilities; policies and practices of medication administration and documentation within PDP facilities; policies and practices of providing emergency medical care within PDP facilities; policies and practices pertaining to placement of individuals within an infirmary or other medical housing unit within PDP facilities; and policies and practices pertaining to referral or transfer of incarcerated individuals to outside medical facilities and hospitals.

14. **Shawn Jay:** Shawn Jay is expected to testify about his PDP investigation into the death of Louis Jung, including the evidence reviewed, interviews conducted, conclusions regarding policy violations by correctional and medical staff, and his assessment of how these violations contributed to Mr. Jung's death. He is also expected to testify regarding how internal investigations of staff misconduct, emergencies, and in-custody deaths were conducted.

15. **Wanda Bloodsaw:** Wanda Bloodsaw is expected to testify about her interactions with Louis Jung, Jr and Defendant Gena Frasier on November 5, 2023, along with any other relevant aspect of her job responsibilities and actions taken or not taken

by her on November 5, 2023. She is additionally expected to testify regarding the role of correctional officers in medication administration and recognizing emergencies, the responsibilities of correctional officers at CFCF under PDP policies, whether she adhered to policies and training on November 5, 2023, as well as her training and experience as a correctional officer.

16. **Xavier Beaufort**: First Deputy Commissioner Beaufort is expected to testify as to his decision to revoke Defendant Blair Cabellos's security clearance at the PDP. He is also expected to testify as to the scope of inquiry and the outcomes of the disciplinary hearings for Defendants Frasier and Bloodsaw, at which he served as chair.

## V.  Itemized Statement of Damages

Plaintiffs will ask the jury to award damages for the intangible categories of pre-death pain and suffering of Mr. Jung; Mr. Jung's loss of enjoyment of life; and the lost society, comfort and support on the part of his wrongful death beneficiaries. Plaintiffs will also seek punitive damages against defendants on all claims for which they are available.

Plaintiffs will seek damages for funeral and burial expenses in the amount of $8,145.

## VI.  Important Legal Issues

### 1.  Legal Standard for Plaintiffs' Fourteenth Amendment Claims

Plaintiffs intend to file a *motion in limine* arguing that constitutional claims of deliberate indifference to serious medical needs brought by pretrial detainees under the Fourteenth Amendment is governed by an objective standard. *Short v. Hartman*, 87 F.4th 493 (4th Cir. 2023) discusses how *Kingsley v. Hendrickson*, 579 U.S. 389 (2015) requires an objective analysis, abrogating prior precedent that applied the subjective prong of the Eighth Amendment's deliberate

indifference standard to Fourteenth Amendment claims, a majority position shared by the Second, Sixth, Seventh, and Ninth Circuits. The Third Circuit acknowledged that the question of whether the standard for defendants' mental state is evaluated under a subjective or objective standard remains unsettled in *Hightower v. City of Philadelphia*, 130 F.4th 352, 356 (3d Cir. 2025). One court in the Eastern District of Pennsylvania has held that "The Third Circuit has drawn a clear distinction between the controlling standards under the Eighth and Fourteenth Amendments, holding that 'pretrial detainees are entitled to greater constitutional protection than that provided by the Eighth Amendment.' *Hubbard v. Taylor*, 399 F.3d 150, 167 n.23 (3d Cir. 2005) ("[O]ur analysis is consistent with [*Wolfish*'s] distinction between pretrial detainees' protection from 'punishment' under the Fourteenth Amendment, on the one hand, and convicted inmates' protection from punishment that is 'cruel and unusual' under the Eighth Amendment, on the other.") *Davis v. City of Phila.*, 284 F. Supp. 3d 744, 751-52 (E.D. Pa. 2018) (McHugh, J.).

### 2. Availability of damages for Decedent's loss of enjoyment of life under federal law

Plaintiffs intend to file a *motion in limine* to seek damages for Mr. Jung's loss of life, alternatively referred to as loss of enjoyment of life or loss of life's pleasures. While Pennsylvania law does not provide for hedonic damages in wrongful death or survival actions, federal courts will not apply state-law limitations on recovery under § 1988 if its application would be inconsistent with the federal policy underlying the cause of action under consideration. Other circuit courts have overridden state-law limitations on damages where their prohibition has "the perverse effect of making it more economically advantageous for a defendant to kill rather than injure his victim" in light of the deterrent policy of § 1983. *See Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1104 (9th Cir. 2014) (collecting cases from Tenth, Seventh, and Second Circuits, including rejection of state laws precluding loss-of-life damages). For Third Circuit articulation

17

that "civil rights laws are intended in part to provide broad, consistent recompense for violations of civil rights," *see Bolden v. Se. Pennsylvania Transp. Auth.*, 21 F.3d 29, 35 (3d Cir. 1994).

### 3. Motions in Limine

Plaintiffs may file motions in limine to exclude any mention of a psychiatric provider at Norristown Psychiatric Hospital finding that Mr. Jung was malingering in regard to his competency to stand trial due to that issue not being relevant to any claims or defenses, it having no bearing on his medical care, and the risk of prejudice to the Plaintiffs if it is permitted; any evidence pertaining to use of illegal drugs by Mr. Jung prior to his incarceration within the PDP in December 2021; any evidence that Mr. Jung was or may have been suicidal as there is no evidence to support such a finding and no expert qualified to offer such an opinion; and evidence regarding the criminal charges Mr. Jung was facing or any prior criminal charges or convictions.

## VII.    Exhibit List

Plaintiff reserves the right to amend and supplement this exhibit list. Plaintiff reserves the right to use as an exhibit any document listed as an exhibit by any Defendant and to use any additional exhibits to rebut testimony and evidence presented by Defendants. Plaintiff further reserves the right to use any document for impeachment purposes.

**Exhibits Plaintiff May Offer**

1. American Diabetes Association - Diabetes Management in Detention Facilities (2021).

2. Bloodsaw Disciplinary Packet, Bloodsaw-000146-195.

3. Frasier Disciplinary Packet, Fraiser-000005-62.

4. Jung Medical Records 10/28/23-11/6/23, YesCare 1453-1471.

5. Jung Medical Records: Intake Screening Questionnaire by Correctional Officer, 10/27/23, YesCare 1246-1247.

6. Jung Medical Records: Authorization to Obtain, Use, and Disclose Medical Information, YesCare 1248-1249.

7. Jung Medical Records: 12/20/21-1/5/22 & 1/5/22-1/9/22 Nazareth Hospital Records, YesCare 0381-588.

8. Jung Medical Records: 4/7/22-4/9/22 Nazareth Hospital Records, YesCare 0608-639.

9. Jung Medical Records: 1/8/22-1/12/22 Jefferson Hospital Records, YesCare 1406-1442.

10. Jung Medical Records: 1/23/22-1/29/22 Jefferson Hospital Records, YesCare 1401-1404, 1370-1377, 1387-1394.

11. Jung Medical Records: 3/11/23-3/14/23 Jefferson Hospital Records, YesCare 1322-1331.

12. Jung Medical Records: 3/19/23-3/20/23 Jefferson Hospital Records, YesCare 1340-1348.

13. Jung Medical Records: Endocrinologist, 7/20/22, YesCare 0973-977.

14. Jung Medical Records: Fingerstick Blood Glucose Handwritten Flowsheets, YesCare 0811-812, 826, 658-661, 720-723, 1061-1064, 953-954, 1039-1040.

15. Jung Medical Records: YesCare Progress Note, 5/20/23, YesCare 1482-1483.

16. Jung Medical Records: YesCare Progress Notes on Discharge from PDP to Norristown, 6/2/2023, YesCare 1472-1474.

17. Jung Medical Records: YesCare Progress Notes, 1/20/23-1/23/23, YesCare 1635-1647.

18. Jung Medical Records: Medication Administration Records (MAR) summary, produced according to FRCP 1006 at Dkt. 118, Ex. 17, p.260, and MAR documents, YesCare 0320-0328, 0699-0707, 0816-0821, 0640-0643, 0724-0730, 0743-0749, 0654-0657, 1065-1072, 1000-1004, 0978-0982, 1448-1451, 1381-1386, 1363-1368, 1332-1337, 1299-1305, 1288-1293, 1250-1252.

19. Jung Medical Records: Refusal Forms, YesCare 0316, 0318, 0377-379, 0648-649, 0664-665, 0685-686, 0691-698, 0708-713, 0735-736, 0750-762, 0771, 0806, 0809, 0815, 0822-825, 0827-829, 0955-959, 0964-968, 0971-972, 0983-991, 0994-999, 1005-1006, 1009-1011, 1018-1019, 1043-1058, 1073-1076, 1083-1091, 1267-1270, 1286-1287, 1306-1307, 1313-1314, 1338-1339, 1351-1355, 1357-1360, 1378-1380.

20. Jung Medical Records: YesCare NETs Hypoglycemia/Hyperglycemia and Progress Notes with NETS Hypoglycemia/Hyperglycemia: YesCare 0044-0047, 1955-1956 (12/18/21), 0041-0043, 1949-1950 (12/20/21), 0284-0286, 1859-1860 (2/16/22), 0603-0603, 1823-1824 (4/7/22), 0863-0866, 1698-1704 (12/14/22), 1238-1241, 1660-1662 (1/8/23), 1222-1225, 1637-1639 (1/23/23), 1179-1184, 1185-1188, 1581-1582, 1577-1579 (2/9/23), 1570-1571, 1170-1773 (2/13/23), 1128-1131, 1489-1492 (5/17/23).

21. Jung Medical Records: YesCare Progress Notes 1499-1502, 1505, 1509-1510, 1547-1548, 1551-1552, 1642-1643, 1646-1647, 1665-66, 1670, 1806-1807, 1808-1809, 1820-21.

22. Jung Medical Records: YesCare Progress Notes 2/9/23-2/13/23, 1568-1571, 1574-1583.

23. Jung Medical Records: Labs, YesCare 1999-2000, 2080-2081, 2105-2106.

24. Jung Norristown State Hospital Medical Discharge Summary (p. 4 of pdf); Flow sheets (p. 125-139); Medication Administration Records (p. 153-178).

25. Philadelphia Department of Prisons (PDP) Office of Special Investigations Death Investigations, Jung-City Production 004723-4740, 4786-4800, 4824-4838, 4917-4932, 4936-4953, 4956-4957, 4958-4974, 4997-5012, 5036-5052, 5086-5105, 5109-5130, 5144-5159, 5250-5266, 5316-5333, 5335-5357, 5360-5375, 5511-5521.

26. PDP Office of Special Investigations Jung Death Investigation, City-Jung-000001-11.

27. PDP Policy 4.E.7, Access to Care, Jung – City Production000204-214.

28. PDP Policy 4.E.22, Medical Waste, Jung - City Production002563-2566.

29. PDP Policy 4.E.24.2, Red Flag Medication Compliance System, City Additional Production-000003-5.

30. PDP Policy 4.E.21, Staff Roles in Non-Routine/Emergency Medical Situations, Jung - City Production002567-2578.

31. PDP Training Academy - Housing Officer Duties Powerpoint, Jung - City Production004488-4521.

32. PDP Training: Corizon NCCHC Officer Training Program PowerPoint, Jung - City Production004380-4407.

33. PDP Training: CPR/First Aid, Jung - City Production004466-004477.

34. PDP-Western Correctional Consultants Audit 6/3/2023, Jung - City Production002649-2670.

35. PDP-Corizon Provider Agreement: General Consultant Services, Contract Number 2220374, PJUNG001857-3151.

36. PDP Video Surveillance Footage from CFCF, 11/5/23.

37. YesCare Redacted Medical Record Excerpts for Patients 1, 2, 3, and 4 discussed in the expert report of Dr. Homer Venters:

    a. Patient 1: Pages 516-517 (11/12/21), 462-463 (12/13/21), 240-248 (8/12/22-8/24/22); 967-974 (8/2022); 81-82 (10/19/22), 109-110 (10/14/22), 120-121 (9/29/22), 130-131 (9/28/22).

    b. Patient 2: Pages 162-163 (2/22/22), 129-157 (2/24/22-3/4/22), 214-215 (2/4/22), 440-452 (3/2022), 465-474 (2/2022), 125-127 (3/4/22).

    c.  Patient 3: Pages 114-127 (5/24/22-5/25/22), 502-517 (5/2022), 1-12.

    d.  Patient 4: 563-564 (7/6/22), 302-320 (1/4/23-1/12/23), 2763-2767 (01/2023).

38. YesCare Jung Corrective Action Plan, Chart 18.

39. YesCare Diabetes Mellitus Clinical Pathway, YesCare 3432-3437.

40. YesCare Emergency Room Transfer Logs – Rule 1006 Exhibit at Dkt. 118, Ex. 27, p. 579-583, Summarizing YesCare 3701-4346.

41. YesCare Jung Patient Safety Event Report, YesCare 3496-3504.

42. YesCare Nursing Encounter Tool Hypo/Hyperglycemia, YesCare 3438-3439 and YesCare 1238-1241.

43. YesCare Diabetes Audits Prior to Jung's Death, Charts 2-6 and 16-17.

44. YesCare Policy 102-C-SOP, Core Process: Intake/Receiving Screening Policy, YesCare 03212-03215.

45. YesCare Policy 103-C-SOP, Core Process: Intake: Urgent/Emergent Care, YesCare 03216-3219.

46. YesCare Policy 103-C-SOP, Core Process: Urgent/Emergent Care, YesCare 03216-03219.

47. YesCare Policy 110-C-SOP, Core Process: Medication Verification, YesCare 03237-3239.

48. YesCare Policy 214-C-SOP, Medication Management: Medication Administration, YesCare 3254-3260.

49. YesCare Policy J-B-07.00: CFCF Communication on Patient's Health Needs, YesCare 02212-2213.

50. YesCare Policy J-G-05.01: CFCF Refusal of Medication or Clinical Encounter, YesCare 02360-2364.

51. Any exhibit identified by any defendant.

52. Deposition transcripts of:

    a.  Blair Cabellos

    b.  Blanche Carney

    c.  Dr. Lalitha Trivikram

    d.  Maureen Gay-Johnson

    e.  Gena Frasier

    f.  Jacob Jung

    g.  James Jung

    h.  Lynda Witkowski

    i.  Mariesha Apollon

    j.  Marsha Jeoboham

    k.  Patricia Powers

    l.  Sandy Varghese

    m.  Shawn Jay

    n.  Wanda Bloodsaw

    o.  Xavier Beaufort

53. Report and CV of Dr. Homer Venters.

54. Report and CV of Lori Roscoe, DNP, PhD, APRN, ANP-C, CCHP-RN.

55. Report and CV of Dr. Jonathan Williams.

56. Report and CV of Arthur Wallenstein.

57. Receipt from funeral home.

## VIII.   Objections to Defendants' Exhibits

Plaintiff has no current objections to exhibits thus far identified by the Defendants, though we note that YesCare Defendants have yet to produce an exhibit list, and Defendant Apollon's exhibit list is lacking in specificity and largely lists any and all discovery produced by any party in addition to deposition transcripts and her expert reports, all of which have not been produced. Plaintiffs reserve the right to object to any defendant exhibits once we are apprised of those exhibits, and to object to any exhibit on the basis of relevance under Fed. R. Evid. 401 and  for prejudice, confusion, or waste of time under Fed. R. Evid. 403.

## IX.     Anticipated Length of Plaintiffs' Case-in-Chief

Plaintiffs intend to call 16 fact witnesses and four expert witnesses and anticipate 8-9 days to present their case-in-chief.


Respectfully submitted,

*/s/ Bret Grote*
Legal Director
PA ID No. 317273
bretgrote@alcenter.org
*/s/ Rupalee Rashatwar*
Staff Attorney
PA ID No. 331085
*/s/ Margaret Hu*
PA ID No. 334438
*/s/ Lolo Salsbury Serrano*
PA ID No. 338184
Abolitionist Law Center
990 Spring Garden St., Ste 306
Philadelphia, PA 19123

*Counsel for Plaintiffs*


January 2, 2025

**CERTIFICATE OF SERVICE**

I, Bret Grote, Esq., hereby certify that I caused a true and correct copy of the foregoing

Plaintiffs' Pretrial Memorandum to be electronically filed on January 2, 2026, and thereby served

upon all parties entered into the Court's ECF system.


*/s/ Bret Grote*
Legal Director
Abolitionist Law Center