IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACOB and JAMES JUNG, as Administrators of the Estate of LOUIS JUNG, JR, : : : : Plaintiff, : v. : : : CITY OF PHILADELPHIA; YesCare Corp.; BLANCHE CARNEY, Former Commissioner of Philadelphia Dept. of Prisons; LALITHA TRIVIKRAM; MAUREEN GAY;  MARIESHA APOLLON; BLAIR CABELLOS; GENA FRASIER; WANDA BLOODSAW, : : : : : : : : Defendants. : | No. 2:24-cv-05618-TJS<br><br>**JURY TRIAL DEMANDED** |

**MEMORANDUM OF LAW IN OPPOSITION TO YESCARE'S MOTION TO STRIKE PLAINTIFFS' EXPERT REPORT OF DR. HOMER VENTERS**

I.   **RELEVANT FACTUAL BACKGROUND**

On June 3, 2025, Plaintiffs filed a Motion for Entry of Protective Order. Dkt. 48. That motion moved "for the entry of a Protective Order that will allow the Defendants to disclose confidential incarcerated persons' patient health and mental health information in a manner that ensures compliance with the Health Insurance Portability and Accountability Act of 1996 (HIPAA), and the Pennsylvania Mental Health Procedures Act (MHPA), 50 P.S. § 7111." *Id*. at 1. In that motion Plaintiffs represented to this Court that counsel for YesCare had informed Plaintiffs' counsel "that upon instructions from YesCare General Counsel he was not authorized to agree to the entry of a Protective Order." *Id*. Plaintiffs filed a motion seeking entry of a protective order, including a copy of the proposed order. This Court granted the motion and signed the proposed protective order the following day, June 4, 2025. Dkt. 50. The Protective Order restricted counsel

1

from "using or disclosing the protected health information for any purpose other than the captioned litigation or proceeding for which such information was requested," and limited disclosure to "those persons who need to handle or read the documents in the instant lawsuit." *Id*. The Order also "Requires the defendants and their counsel to produce requested individual incarcerated person's protected health information that would otherwise require a specific individual to sign a HIPAA compliant authorization allowing for the release of his/her personal protected health information." *Id*.

On June 5, 2025, this Court issued an order stating "that the parties may redact from any discovery materials the personal identifying information of people other than plaintiffs' decedent." Dkt. 52.

On the same day that the Motion for Entry of a Protective Order was filed, the parties filed a Confidentiality Agreement with the Court outlining how confidential information was to be used in this litigation. Dkt. 47. That agreement stated that any party to the litigation could designate documents as "Attorneys' Eyes Only." *Id*. at ¶ 1. "Attorneys' Eyes Only" was defined in paragraph two of the Confidentiality Agreement as follows:

> 2. Material produced and marked as Attorneys' Eyes Only may be disclosed only to outside counsel for the receiving party, counsel for the parties, their respective employees or agents *including but not limited to outside experts or consultants retained by counsel for purposes of this action*, including any personnel necessary to assist them, paralegals, administrative staff or vendors, legal interns, investigators, and legal fellows, and any interpreters utilized in litigating this case, any author(s) of the document, and to such other persons as counsel for the producing party agrees in advance, or to the Court, including associated personnel necessary to assist the Court in its functions. Notwithstanding this Order or any designations under it, any Party may disclose relevant information to any regulatory or law enforcement agency or government entity that has an interest in the subject matter of the underlying suit.

2

*Id*. at ¶ 2 (emphasis added). The subsequent paragraph stated that if any party were to file any document marked as Attorneys' Eyes Only on the public docket "it may do so by redacting the confidential or personal identifying information." *Id*. at ¶ 3.

Between July and October, Plaintiffs and counsel for YesCare continued to communicate about Plaintiffs' discovery requests seeking disclosure of certain medical records. In response to YesCare's concerns over the confidentiality of those records, Plaintiffs' counsel stated in a letter and email of August 28, 2025, the following: "In a recent email you indicated that this presents HIPAA issues. That, however, is not an issue in light of the confidentiality order entered by the court in this case, *See* Dkt. 50 (attached), and the Court's order of June 5, 2025 that gives you the additional option of redacting records. *See* Dkt. 52 (also attached)." Ex. 1, Communications with YesCare Counsel, Letter of 9/28/25.[1] On September 15, 2025, one of Plaintiffs' counsel and counsel for YesCare held a phone call in which YesCare's counsel stated that redaction of the requested records would be burdensome. Plaintiffs' counsel replied that redaction was not necessary under the Confidentiality Agreement, as had been expressed in the letter sent on August 28, 2025. YesCare's counsel indicated that he was reluctant to produce unredacted records unless Plaintiffs' counsel would sign an addendum to our Confidentiality Agreement that precluded them from representing any individuals identified in subsequent production. Plaintiffs' counsel sent an email to YesCare counsel on September 17 memorializing this, stating in part: "You had discussed drafting language for a supplemental agreement to the confidentiality agreement that would involve Plaintiffs' counsel stipulating that we will agree not to represent individuals whose records

---

[1] Plaintiffs include this detail to dispel the notion that they were unwilling to accept redacted documents, which is implied in YesCare's Motion to Strike. The letter contained in Plaintiffs Exhibit 1 with this quote contains redactions in regard to the scope of the requested discovery. Although YesCare disclosed information regarding the scope of this request in its motion, Plaintiffs think that should not have occurred for reasons discussed in this brief.

3

we receive in regard to any matter that is the subject of those records. This is amenable and we will review the language you draft for consideration or any suggested revisions."[2] Ex. 1, Communications with YesCare Counsel, Email of 9/17/25. At no point did counsel for YesCare state, imply, or otherwise request to change paragraph two of the Confidentiality Agreement filed with this Court on June 3, 2025 that permitted disclosure of confidential discovery to experts working with counsel.

On October 15, 2025, all parties in this case came to an additional agreement titled "ADDENDUM TO CONFIDENTIALITY AGREEMENT OF JUNE 3, 2025." This has now been filed by YesCare as an exhibit to their motion. Dkt. 140. The final version of the fully-executed Addendum was produced by counsel for YesCare on October 30, 2025. As stated in the preamble of the Addendum, that additional agreement would "supplement" the Confidentiality Agreement already in place. *Id*. It did not abrogate, revise, supersede, or any way modify the extant terms of the Confidentiality Agreement. Paragraph ten indicated that the records were deemed confidential and only to be shared with counsel. *Id*. The Confidentiality Agreement had already defined how documents produced only to attorneys were permitted to be shared in paragraph two, which made clear that expert witnesses, among others, could be provided with confidential documents subject to the terms of the Confidentiality Agreement. Dkt. 47 at ¶ 2. The Addendum addressed Defendants' concerns that Plaintiffs not contact or represent any individual named in the produced documents. Dkt. 140, Ex. A at ¶¶ 11-12.

On December 3, 2025, Plaintiffs produced expert reports to Defendants. On the following day, Plaintiffs sent an email indicating to Defendants' counsel whose records the anonymous patients 1-4 were in Dr. Venters' report so as to allow Defendants the ability to know whose

---

[2] The email erroneously states that the phone call took place on September 17, 2025; the call took place on September 15, 2025.

4

records Dr. Venters was basing that portion of his report on. This was necessary because the records were produced without Bates-Stamp numbers.

On December 5, Plaintiffs' counsel and counsel for Defendant Apollon included Dr. Venters' report in their respective summary judgment filings. Dkt. 95-1 (Plaintiffs' Appendix); Dkt. 97-13 (Ex. J in support of Def. Apollon's Motion for Summary Judgment). In the report, footnote twelve includes three surnames of individuals whose records were not considered by Dr. Venters. There is no confidential information or analysis about any of those individuals contained within the report. On December 12, 2025, Defendant Apollon also filed a copy of this report in her *Daubert* motion. Dkt. 110-8.[3]

On December 18, 2025, YesCare filed a Motion in Limine seeking to preclude Plaintiffs from introducing any expert testimony or evidence at trial. Dkt. 114. This motion did not seek to strike any of the reports from the docket, including Dr. Venters, nor did it raise any allegation that there had been a violation of the Confidentiality Agreement, its Addendum, or any other order governing the use of confidential information in this litigation. *Id*.

On January 2, 2026, approximately one month after the production of Dr. Venters' report and its being filed on the docket, counsel for YesCare has filed a Motion to Strike Dr. Venters' report and preclude him from testifying at trial. In that motion, YesCare has included on the docket for the first time information pertaining to the categories of medical circumstances of those individuals for whom it produced records in this matter when it appended the Addendum and the attachment to the Addendum at Exhibit B. Dkt. 140.

---

[3] When Plaintiffs filed the report of Dr. Venters as part of their Appendix in opposition to the City Defendants' motion for summary judgment, they did redact the surnames in footnote 12 because although the footnote did not contain confidential information, the surnames were not relevant and did not need to be included. Plaintiffs acknowledge that redaction would have been prudent in the earlier filing, but was not compelled by the Confidentiality Agreement.

5

## II. QUESTIONS PRESENTED

1. Whether sharing confidential information with an expert witness and filing an expert report that did not contain confidential information complied with the Confidentiality Agreement's authorization to share documents with experts and its requirement to redact confidential information on public filings.

2. Whether the "extreme" and "draconian" sanction of exclusion of an expert report is warranted.

## III. ARGUMENT

### a. The Confidentiality Agreement and its Addendum Were Not Violated

YesCare's argument as to whether the Addendum permitted the parties to share unredacted documents with experts is unclear. YesCare appears to argue that it was the sharing of unredacted records with the experts that presented a problem, stating that "Plaintiffs' counsel willfully violated the express terms of the Addendum and shared the unredacted protected health information of other inmates with Dr. Venters." But nowhere in the Addendum does it state that parties were required to redact confidential documents when sharing them with experts; that is simply not a term of the Addendum or the Confidentiality Agreement it supplements. Additionally, this Court's Order of June 5, 2025 expressly stated that redaction was optional ("the parties *may* redact"), and the Protective Order itself authorized production of unredacted documents subject to the terms of that Order and the Confidentiality Agreement.

YesCare is not arguing that Plaintiffs were prohibited from sharing discovery with experts working on the case, which would be contrary to the Confidentiality Agreement, which the Addendum merely supplemented, and contrary to common sense and conventional litigation practice. Instead, they argue that there is a non-existent term of the Addendum that required Plaintiffs to redact documents that Defendants did not redact, although they were permitted – but not required – to do so by this Court. YesCare argues that "[i]dentifying information was clearly

6

not needed to perform Dr. Venters' analysis," conceding that the Addendum permitted disclosure of records to experts working with counsel, but implying a *sub silentio* term that required Plaintiffs' counsel to first redact those documents. This is a strained logic, and one that overlooks that this Court already issued a Protective Order allowing production of HIPAA information subject to the terms of the Protective Order and Confidentiality Agreement, the Court permitted defendants' counsel to redact documents if it chose to do so, Dkt. 52, and that Plaintiffs had acknowledged as much in a letter regarding this production in August, Ex. 1. Plaintiffs did not insist on the production of unredacted records, as YesCare counsel could have produced redacted records but declined to do so because it was burdensome. YesCare's counsel negotiated an addendum with the objective of having Plaintiffs' counsel agree not to represent any individuals whose records it obtained. Ex. 1. Nothing in this sequence of events undermined, modified, abrogated, or superseded paragraph two of the Confidentiality Order that expressly permitted counsel to share documents only produced to counsel to those assisting on the case, including but not limited to expert witnesses. Dkt. 47 at ¶ 2.

Further, Plaintiffs and Defendant Apollon did not violate the Confidentiality Agreement or its Addendum by filing Dr. Venters' report. First and foremost, the footnote highlighted by YesCare contains no confidential information whatsoever. The Confidentiality Agreement permits documents marked "Attorneys Eyes Only" to be filed on the public docket if "confidential or personal identifying information" is redacted. Dkt. 47 at ¶ 3. Dr. Venters' footnote indicated that the three surnames he included were not considered since they did not meet a set of compound criteria identified in the body of the report. The text of the report itself does not allow any specific information to be inferred as to whether those individuals met some, all, or none of the criteria listed. It does not provide first names, years of incarceration or records provided, birth dates,

7

addresses, or any other details from which the individual identities corresponding to the surnames could be inferred and thus required redaction under the local rules.[4] As there was no disclosure of confidential information, there is no violation of the Confidentiality Agreement.

### b. Exclusion of the Report and Testimony of Dr. Venters is Not Warranted

"[T]he exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994) (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977)). "[S]triking an expert report is a draconian measure warranted only in extreme cases." *Brown v. Robert Packer Hosp.*, 341 F.R.D. 570, 574–75 (M.D. Pa. 2022). Defendant can neither show willful deception nor flagrant disregard of a court order, let alone any disregard of a court order. Excluding evidence due to a failure to comply with discovery duties is only warranted when the *Nicholas* factors justify such a severe sanction. *See Nicholas v. Pa. State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000). The analysis considers 1) The prejudice or surprise of the party against whom the excluded evidence would have been admitted; 2) The ability of the party to cure that prejudice; 3) The extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and 4) Bad faith or willfulness in failing to comply with a court order or discovery obligation. *Id*. Additionally, courts must examine the importance of the evidence sought to be excluded. *Konstantopoulos,* 112 F.3d at 719. Each one of these factors militates in Plaintiffs' favor.

First, Defendant has not argued any prejudice. And there is none. Defendants argue that Dr. Venters did not need unredacted documents to conduct his analysis, but this overlooks critical

---

[4] *See* E.D.Pa. Local Rule of Civil Procedure 5.1.3, which states that "Personal identifiers such as Social Security numbers, dates of birth, financial account numbers, and names of minor children must be modified or partially redacted in all documents filed either in paper or electronic form.

8

facts: 1) YesCare was authorized to redact documents if it chose; 2) the Confidentiality Agreement, which was not abrogated or superseded by the Addendum, did not require redaction; 3) the Court permitted but did not require redaction; and 4) Dr. Venters is in fact bound by the Confidentiality Agreement's terms as an agent of counsel pursuant to paragraph two. Defendant has not argued that they did not think Plaintiffs would share discovery with expert witnesses, which is an obvious use of discovery materials. Defendant does not argue that they cannot respond to the analysis of Dr. Venters. And Defendant does not argue that the surnames in the footnote are linked to any confidential information, which they are not. Accordingly, there is no prejudice.

The second factor, the ability to cure prejudice, in this context can only mean the ability to protect confidential information. If YesCare was primarily concerned about any alleged violation of the Confidentiality Agreement it does not make sense that it waited a month before seeking a remedy. In the first footnote of their motion, YesCare actually makes clear that its purpose in filing the Motion is to exclude Dr. Venters' testimony and not to cure any alleged violation of the Confidentiality Agreement, as it was adopting a wait-and-see approach to its previously filed motion in limine seeking to exclude expert testimony on timeliness grounds that did not seek to strike Dr. Venters' report from the docket. Dkt. 140, n. 1.

Similarly, if YesCare had an issue with the footnote being on the docket then it should have acted right away. As it stands, YesCare is now the only party who has filed information on the public docket that discusses the scope of the relevant discovery production involved in this section of Dr. Venters' report, which now means that the surnames can be linked to a category of individuals that they could not have been linked to via the public docket previously. This was

9

surprising and improper.[5] Prior to that filing, the three surnames were not linked to any confidential information.

As to the third factor, YesCare does not argue that allowing the evidence would disrupt the orderly and efficient trial of the case. And while YesCare seems to argue that Plaintiffs' willfully failed to comply with a discovery obligation, that is belied by the preceding analysis, which demonstrates that the parties were in agreement that material produced to attorneys could be produced to their experts, and that otherwise protected information could be filed on the public docket if the "confidential or personal identifying information" was redacted.

The only case YesCare cites in support for the extreme sanctions it seeks, *TRUSTID, Inc. v. Next Caller, Inc.*, 2021 WL11960341 (D. Del. July 12, 2021) is readily distinguishable. In that case, plaintiff's counsel "violated multiple source-code-related provisions" "over a period of approximately one-year." *Id*. at *1. The court decided that the plaintiffs were required to return the source-code prior to trial and excluded its use in evidence at trial, based on a finding of willful bad faith, as plaintiffs had not disclosed violations of the protective order; a finding that the defendants would be prejudiced by permitting plaintiffs to retain the source code and present risk of further exposure; doubts about the probative value of using the source code at trial; and recognition that "the testimony of experts who relied on that code" would be as meaningful without publishing the source code itself. *Id*. at *2-3. In contrast, Plaintiffs have willingly disclosed that the records at issue were provided to Dr. Venters, as permitted under the Confidentiality Agreement; do not seek

---

[5] In light of YesCare's filing this information on the docket, Plaintiffs will be moving to redact footnote twelve from Dr. Venters' report as filed in Defendant Apollon's summary judgment and *Daubert* motions, and Plaintiffs' summary judgment motion. Plaintiffs take obligations under the Confidentiality Agreement, its Addendum, and the Court's Protective Order with the utmost seriousness, and although it was YesCare that put information on the docket that contained information that implicates categories of medical circumstances involved in the discovery production at issue, we think the most important thing is to efficaciously address the problem created by YesCare's filing.

10

to use *any* confidential information at trial analogous to the source code, but only limited anonymized information, so there is no risk that confidential information will be disclosed prior to or at trial as there was in *TRUSTID*; and Plaintiffs are moving to redact the footnote from Dr. Venters' report now that the subsequent filing from YesCare has disclosed the universe of records provided to Dr. Venters.

YesCare has not met its burden.

### IV.   CONCLUSION

Due to the foregoing reasons, YesCare's Motion to Strike Dr. Venters' report should be denied.

Respectfully submitted,

*/s/ Bret Grote*
Legal Director
PA ID No. 317273
bretgrote@alcenter.org
*/s/ Rupalee Rashatwar*
Staff Attorney
PA ID No. 331085
*/s/ Margaret Hu*
Staff Attorney
PA ID No. 334438
*/s/ Lolo Salsbury Serrano*
Legal Fellow
PA ID No. 338184
Abolitionist Law Center
990 Spring Garden St., Ste 306
Philadelphia, PA 19123

*Counsel for Plaintiff*

11

**CERTIFICATE OF SERVICE**

I, Bret Grote, Esq., hereby certify that I caused a true and correct copy of the foregoing Brief in Opposition to YesCare Defendants' Motion to Strike to be electronically filed on January 5, 2025, and thereby served upon all parties entered into the Court's ECF system.


*/s/ Bret Grote*
Legal Director
PA ID No. 317273
bretgrote@alcenter.org
Abolitionist Law Center
990 Spring Garden St., Ste 306
Philadelphia, PA 19123


*Counsel for Plaintiffs*