**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JACOB and JAMES JUNG, as | : | |
| Administrators of the Estate of LOUIS | : | |
| JUNG, JR, | : | No. 2:24-cv-05618-TJS |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA; YesCare Corp.; | : | |
| BLANCHE CARNEY, Former | : | |
| Commissioner of Philadelphia Dept. of | : | |
| Prisons; LALITHA TRIVIKRAM; | : | |
| MAUREEN GAY;  MARIESHA | : | |
| APOLLON; BLAIR CABELLOS; GENA | : | |
| FRASIER; WANDA BLOODSAW, | : | |
| | | |
| Defendants. | | |

**JOINT PROPOSED JURY INSTRUCTIONS**

The Parties hereby submit Joint Proposed Jury Instructions in the above-captioned case.

Plaintiffs and the City of Philadelphia Defendants have drafted and revised these instructions.

Defendants objections to proposed instructions are noted in the document.

Counsel for YesCare did not respond to email communications regarding these instructions.

I.    **Section 1983 – Elements of Claim**

For their constitutional claims under Section 1983, Plaintiffs must prove both of the following elements by a preponderance of the evidence:

First: Defendant[1] acted under color of state law.

Second: While acting under color of state law, defendant deprived Mr. Louis Jung., Jr., of a federal constitutional right or statutory right.

---

[1] The City would request that the specific defendants are enumerated here for clarity to the jury.

I will now give you more details on action under color of state law, after which I will tell you the elements plaintiffs must prove to establish the violation of Mr. Louis Jung, Jr.'s federal constitutional rights.

**Adapted from Third Circuit Model Jury Instruction 4.3.**

II.  **Section 1983 – Action under Color of State Law**

The first element of plaintiffs' claim is that the defendants acted under color of state law. This means that plaintiffs must show that the defendants were using power that they possessed by virtue of state law.

A person can act under color of state law even if the act violates state law. The question is whether the person was clothed with the authority of the state, by which I mean using or misusing the authority of the state.

By "state law," I mean any statute, ordinance, regulation, custom or usage of any state. And when I use the term "state," I am including any political subdivisions of the state, such as a county or municipality, and also any state, county or municipal agencies.

Because Defendants Carney, Frasier, and Bloodsaw were officials of the city of Philadelphia at the relevant time, I instruct you that they were acting under color of state law. In other words, this element of plaintiffs' claim is not in dispute, and you must find that this element has been established.[2]

Although Defendants Yescare, Apollon, Gay, Trivikram, and Cabellos are private individuals and a private correctional healthcare provider and not a state official, I instruct you that the relationship between defendants and the state was sufficiently close that they were acting under color of state law. In other words, this element of plaintiffs' claim is not in dispute, and you must find that this element has been established.

**Adapted from Third Circuit Model Jury Instructions 4.4 and 4.4.1.**

III.  **Section 1983 – Deprivation of a Federal Right – Fourteenth Amendment**

I have already instructed you on the first element of plaintiffs' claims, which requires plaintiffs to prove that defendant acted under color of state law.

The second element of plaintiffs' claims is that defendants deprived Mr. Louis Jung, Jr. of a federal constitutional right.

The constitutional right at issue involves the Fourteenth Amendment to the United States Constitution, which guarantees pretrial detainees a right to necessary medical care.

---

[2] The City objects to Defendant Carney being included in this list as she is named in the capacity of a policy maker. Defendants further object to the extent that Plaintiffs are suing Ms. Carney in her individual capacity as they have not pled it.

**Adapted from Third Circuit Model Jury Instruction 4.5.**

**<u>NOTE: Plaintiffs proposed Fourteenth Amendment Standard of Objective Unreasonableness</u>[3]**

**Ninth Circuit 9.30 Particular Rights[4] – Fourteenth Amendment – Pretrial Detainee's Claim re Conditions of Confinement/Medical Care – adapted only to exclude alternative references to safe conditions of confinement.**

The <u>plaintiffs</u> have brought a claim under the Fourteenth Amendment to the United States Constitution against <u>Defendants Apollon, Bloodsaw, Cabellos, Frasier, Gay-Johnson, and Trivikram</u>. The plaintiffs assert the defendants failed to provide needed medical care to Mr. Louis Jung, Jr.

To prevail on this claim, the plaintiffs have the burden of proving each of the following elements by a preponderance of the evidence:

First, the defendant made an intentional decision regarding the denial of needed medical care;

Second, the denial of needed medical care put Mr. Jung at substantial risk of suffering serious harm;

Third, the defendant did not take reasonable available measures to abate or reduce the risk of serious harm, even though a reasonable officer <u>or medical professional</u> under the circumstances would have understood the high degree of risk involved—making the consequences of the defendant's conduct obvious; and

Fourth, by not taking such measures the defendant caused Mr. Jung's injuries.

With respect to the third element, the defendant's conduct must be objectively unreasonable.

**<u>NOTE: If the Court does not apply the Objective Unreasonableness standard, the following Eighth Amendment deliberate indifference standard instruction is offered:</u>**

**Third Circuit 4.11.1: Section 1983 – Conditions of Confinement – Denial of Adequate Medical Care**

Because inmates must rely on prison authorities to treat their serious medical needs, the government has an obligation to provide necessary medical care to them. In this case, plaintiffs claim that <u>Defendants Apollon, Bloodsaw, Cabellos, Frasier, Gay-Johnson, and Trivikram</u> violated the Fourteenth [~~Eighth~~] Amendment to the United States Constitution by showing deliberate indifference to a serious medical need on Mr. Jung's part. Specifically, plaintiffs claim that <u>Mr. Jung's insulin-dependent Type I diabetes was a serious medical need.</u>

In order to establish <u>their</u> claim for a violation of the ~~Eighth~~ <u>Fourteenth</u> Amendment, plaintiffs must prove each of the following three things by a preponderance of the evidence:

---

[3] Plaintiffs have provided authority for this standard in a motion in limine at Dkt. 152.
[4] The City objects to the use of the ninth circuit instruction and would propose the Third Circuit's instruction outlined below as the appropriate instruction for the jury.

First: Mr. Jung had a serious medical need.

Second: Defendants Apollon, Bloodsaw, Cabellos, Frasier, Gay-Johnson, and Trivikram were deliberately indifferent to that serious medical need.

Third: Defendants' deliberate indifference caused harm [~~physical injury~~] to Mr. Jung.

I will now proceed to give you more details on the first and second of these three requirements.

First, plaintiffs must show that Mr. Jung had a serious medical need. A medical need is serious, for example, when:

- A doctor has decided that the condition needs treatment; or
- The problem is so obvious that non-doctors would easily recognize the need for medical attention; or
- Denying or delaying medical care creates a risk of permanent physical injury; or
- Denying or delaying medical care causes needless pain.

Second, Plaintiffs must show that defendants were deliberately indifferent to that serious medical need. Plaintiffs must show that defendants knew of an excessive risk to Mr. Jung's health, and that defendants disregarded that risk by failing to take reasonable measures to address it.

Plaintiffs must show that defendants actually knew of the risk. If plaintiffs prove that there was a risk of serious harm to Mr. Jung and that the risk was obvious, you are entitled to infer from the obviousness of the risk that defendants knew of the risk. However, defendants Bloodsaw and Fraiser claim that even if there was an obvious risk, they were unaware of that risk. If you find that a defendant was unaware of the risk, then you must find that they were not deliberately indifferent.

There are a number of ways in which a plaintiff can show that a defendant was deliberately indifferent, including the following. Deliberate indifference occurs when:

- A correctional staff member, or medical professional denies a reasonable request for medical treatment, and the ~~official~~ staff member or medical professional knows that the denial exposes the inmate to a substantial risk of pain or permanent injury;[5]
- A correctional staff member, or medical professional knows that an inmate needs medical treatment, and intentionally refuses to provide that treatment;
- A correctional staff member, or medical professional knows that an inmate needs medical treatment, and delays the medical treatment for non-medical reasons;
- A correctional staff member,[6] or medical professional knows that an inmate needs medical treatment, and imposes arbitrary and burdensome procedures that result in delay or denial of the treatment;
- [~~A prison official knows that an inmate needs medical treatment, and refuses to provide that treatment unless the inmate is willing and able to pay for it;~~]
- A correctional staff member, or medical professional refuses to let an inmate see a doctor capable of evaluating the need for treatment of an inmate's serious medical need;

---

[5] The City objects to the inclusion of this example, because it is not supported by facts in the record.
[6] The City objects to this example being applied to correctional staff.

- A <u>medical professional</u> persists in a particular course of treatment even though the official knows that the treatment is causing pain and creating a risk of permanent injury.

In this case, Mr. Jung was under medical supervision. Thus, to show that Defendants <u>Frasier and Bloodsaw, non-medical officials</u>, were deliberately indifferent, plaintiffs must show that Defendants Frasier ~~and~~ <u>or</u> Bloodsaw knew that there was reason to believe that the medical staff were mistreating (or not treating) Mr. Jung.

 Mere errors in medical judgment do not show deliberate indifference. Thus, a plaintiff cannot prove that a <u>medical professional such as Defendant Apollon, Cabellos, Gay-Johnson, or Trivikram</u> was deliberately indifferent merely by showing that the <u>medical professional</u> chose a course of treatment that another <u>medical professional</u> disagreed with. However, a <u>medical professional</u> is deliberately indifferent if he or she knows what the appropriate treatment is and decides not to provide it for some non-medical reason. [~~However, a doctor is deliberately indifferent by arbitrarily interfering with a treatment, if the doctor knows that the treatment has worked for the inmate in the past and that another doctor prescribed that specific course of treatment for the inmate based on a judgment that other treatments would not work or would be harmful~~.

IV. **Section 1983 – Liability in Connection with the Actions of Another – Supervisory Officials**[7]

Plaintiffs contend that <u>Defendant Carney's</u> subordinate <u>employees</u>, <u>Defendants Bloodsaw and Frasier</u>, and subordinate <u>medical contractor, YesCare</u>, violated Mr. Jung's federal rights, and that Defendant Carney should be liable for <u>their</u> conduct. If you find that <u>Defendants Bloodsaw, Frasier, or YesCare</u> violated Mr. Jung's federal rights, then you must consider whether Defendant Carney caused <u>their</u> conduct.

Plaintiffs contend that <u>Defendant Trivikrams's</u> subordinates, <u>including Defendants Cabellos, Gay-Johnson, and other medical staff at CFCF</u>, violated Mr. Jung's federal rights, and that Defendant Trivikram should be liable for <u>their</u> conduct. If you find that <u>Defendants Cabellos, Gay-Johnson, or other medical staff at CFCF</u> violated Mr. Jung's federal rights, then you must consider whether Defendant Trivikram caused <u>their</u> conduct.

<u>Correctional supervisors may be liable for the conduct of subordinate employees, as well as contractors such a private health-care companies, provided the following factors are met.</u>[8]

A supervisor such as Defendant Carney or Defendant Trivikram is not liable for <u>a subordinate's</u> violation simply because Defendant Carney or Defendant Trivikram is a supervisor. To show that a supervisor caused a subordinate's conduct, plaintiffs must show one of three things:

---

[7] The City objects to the inclusion of supervisory liability against Defendant Carney as it is not pled in the Complaint.

[8] *Barkes v. First Correctional Medical*, 766 F.3d 307, 324 (3d Cir. 2014), *rev'd on other grounds sub nom Taylor v. Barkes*, 135 S. Ct. 2042-2043 (2015); *McCloskey v. Welch*, 803 F. App'x 578, 583 (3d Cir. 2020).

First: Defendant Carney directed Defendant Bloodsaw, Frasier, or YesCare to take the action in question;

Second: Defendant Carney had actual knowledge of Defendant Bloodsaw, Frasier, or YesCare's violation of Mr. Jung's rights and acquiesced in that violation; or

Third: Defendant Carney, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the violation.

[As I mentioned, the first way for plaintiffs to show that Defendant Carney is liable for Defendant Bloodsaw, Frasier, or YesCare's conduct is to show that Defendant Carney directed [subordinate] to engage in the conduct. Plaintiffs need not show that Defendant Carney directly, with her own hands, deprived Mr. Jung of his rights. The law recognizes that a supervisor can act through others, setting in motion a series of acts by subordinates that the supervisor knows, or reasonably should know, would cause the subordinates to violate the plaintiff's rights. Thus, plaintiffs can show that Defendant Carney caused the conduct if plaintiffs show that Defendants Bloodsaw, Frasier, or YesCare violated Mr. Jung's rights at Defendant Carney's direction.]

[Alternatively, the second way for] Plaintiffs may show that a supervisor is liable for a subordinate's conduct is by showing that the supervisor had actual knowledge of the subordinate's violation of rights and acquiesced in that violation. To "acquiesce" in a violation means to give assent to the violation. Acquiescence does not require a statement of assent, out loud: acquiescence can occur through silent acceptance. If you find that Defendant Carney had authority over Defendants Bloodsaw, Frasier, or YesCare and that Defendant Carney actually knew that they were violating Mr. Jung's rights but failed to stop them from doing so, you may infer that Defendant Carney acquiesced in their conduct. If you find that Defendant Trivikram had authority over Defendants Apollon, Gay-Johnson, or Cabellos, or other medical staff at CFCF, and that Defendant Trivikram actually knew that they were violating Mr. Jung's rights but failed to stop them from doing so, you may infer that Defendant Trivikram acquiesced in their conduct.

[Finally, the third way for] Alternatively, Plaintiffs may show that Defendant Carney is liable for Defendant Bloodsaw, Frasier, or YesCare's conduct by showing that Defendant Carney, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the conduct. Plaintiffs may show that Defendant Trivikram is liable for Defendant Cabellos, Gay-Johnson, or other medical staff at CFCF's conduct by showing that Defendant Trivikram, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the conduct. [Plaintiff] alleges that [supervisor] should have [adopted a practice of] [followed the existing policy of] [describe supervisory practice or policy that plaintiff contends supervisor should have adopted or followed].

To prove that Defendant Carney is liable for Defendants Bloodsaw and Frasier's conduct based on Defendant Carney's failure to supervise correctional staff, Plaintiffs must prove all of the following four things by a preponderance of the evidence:

First: The custom of correctional staff in failing to respond to medical emergencies of incarcerated people without enforcing PDP policy requiring staff to make rounds on the housing units capable of identifying potential medical emergencies created an unreasonable risk of incarcerated people being deprived of access to medical care.

6

Second: <u>Defendant Carney</u> was aware that this unreasonable risk existed.

Third: <u>Defendant Carney</u> was deliberately indifferent to that risk.

Fourth: <u>Defendants Bloodsaw and Frasier's failure to respond to Mr. Jung's need for emergency medical care</u> resulted from <u>Defendant Carney's failure to enforce PDP policy requiring staff to make rounds on the housing units capable of identifying potential medical emergencies.</u>

<u>A high-ranking prison official can expose an inmate to danger by failing to correct serious known deficiencies in the provision of medical care to the inmate population. That the official had no specific knowledge of any particular inmate or the failure of subordinate officials to treat that inmate's serious medical condition is irrelevant.[9]</u>

To prove that <u>Defendant Carney or Trivikram</u> is liable for Defendants <u>Gay-Johnson, Cabellos, or YesCare employees at CFCF's</u> conduct based on Defendant <u>Carney or Trivikram's</u> failure to supervise, Plaintiffs must prove all of the following four things by a preponderance of the evidence:

First: <u>The customs of failing to respond to refusals of care without adhering to YesCare policies for documenting refusals and notifying providers of refusals created an unreasonable risk of incarcerated people being deprived of access to medical care.</u>

Second: <u>Defendant Carney and/or Trivikram</u> was aware that this unreasonable risk existed.

Third: <u>Defendant Carney and/or Trivikram</u> was deliberately indifferent to that risk.

Fourth: <u>Defendants Gay-Johnson, Cabellos, and YesCare employees at CFCF failure to respond to refusals of care by Mr. Jung</u> resulted from <u>Defendant Carney and/or Trivikram's</u> failure to <u>ensure adherence to YesCare policies for documenting refusals and notifying providers in accordance.</u>

Or,

First: <u>The customs of failing to follow the "red flag" procedure for follow-up encounters after missed doses of critical medication without adhering to PDP and YesCare "red flag" policy and notifying providers of missed doses of critical medication created an unreasonable risk of incarcerated people being deprived of access to medical care.</u>

Second: <u>Defendant Carney and/or Trivikram</u> was aware that this unreasonable risk existed.

Third: <u>Defendant Carney and/or Trivikram</u> was deliberately indifferent to that risk.

Fourth: <u>Defendants Gay-Johnson, Cabellos, and YesCare employees at CFCF failure to follow the "red flag" procedure for follow-up encounters after missed doses of critical medication by Mr. Jung</u> resulted from <u>Defendant Carney and/or Trivikram's</u> failure to

---

[9] *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 324 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, 135 S. Ct. 2042 (2015).

ensure adherence to PDP and YesCare's "Red Flag" policy and the requirement to notify medical providers of missed critical medications.

Or,

First: The customs of inadequate documentation and administration of insulin and blood sugar checks without ensuring adherence to YesCare policies and American Diabetes Association Guidelines created an unreasonable risk of incarcerated people being deprived of access to medical care.

Second: Defendant Carney and/or Trivikram was aware that this unreasonable risk existed.

Third: Defendant Carney and/or Trivikram was deliberately indifferent to that risk.

Fourth: Defendants Gay-Johnson, Cabellos, and YesCare employees at CFCF failure to provide adequate insulin and blood sugar checks to Mr. Jung resulted from Defendant Carney and/or Trivikram's failure to ensure administration and documentation of insulin and blood sugar checks in accordance with YesCare policy and the standard of care for treatment of diabetes under the American Diabetes Association guidelines.


**Adapted from Third Circuit Model Jury Instruction 4.6.1.**

V.    **Section 1983 – Liability in Connections with the Actions of Another – Municipalities – General Instruction**

If you find that Mr. Jung was deprived of his Fourteenth Amendment right to necessary medical care, the City of Philadelphia is liable for that deprivation if Plaintiffs prove by a preponderance of the evidence that the deprivation resulted from the City of Philadelphia's official policy or custom – in other words, that the City of Philadelphia's official policy or custom caused the deprivation.[10]

It is not enough for Plaintiff to show that the City of Philadelphia employed a person who violated Mr. Jung's rights. Plaintiff must show that the violation resulted from the City of Philadelphia's official policy or custom. "Official policy or custom" includes any of the following:

-   a rule or regulation promulgated, adopted, or ratified by the City of Philadelphia's legislative body;
-   policy statement or decision that is officially made by the City of Philadelphia's policy-making official;
-   A custom that is a widespread, well settled practice that constitutes a standard operating procedure of the City of Philadelphia, or
-   Inadequate supervision and/or failure to adopt a needed policy. However, inadequate supervision and/or failure to adopt a needed policy does not count as "official policy or custom" unless the City of Philadelphia is deliberately indifferent to the fact that a

---

[10] The City objects to this instruction as the pleadings do not aver this theory of *Monell*. Plaintiffs have only brought failure to train, supervise, or discipline *Monell* claims.

violation of the <u>Fourteenth Amendment right to necessary medical care</u> is a highly predictable consequence of the inadequate supervision and/or failure to adopt a needed policy. I will explain this further in a moment.

I will now proceed to give you more details on each of the ways in which Plaintiffs may try to establish that an official policy or custom of the City of Philadelphia caused the deprivation.

**Adapted from Third Circuit Model Jury Instruction 4.6.3; optional references to inadequate training, screening during hiring process omitted.**


VI.    **Section 1983 – Liability in Connection with the Actions of Another – Municipalities – Custom[11]**

Plaintiffs may prove the existence of an official custom by showing the existence of a practice that is so widespread and well settled that it constitutes a standard operating procedure of <u>the City of Philadelphia</u>. A single action by a lower level employee does not suffice to show an official custom. But a practice may be an official custom if it is so widespread and well-settled as to have the force of law, even if it has not been formally approved. You may find that such a custom existed if there was a practice that was so well settled and widespread that the policymaking officials of the City of Philadelphia either knew of it or should have known of it. <u>I instruct you that Commissioner Carney was the policymaking official for the Philadelphia Department of Prisons.</u>

<u>Plaintiffs claim that the City of Philadelphia's correctional officers in the Philadelphia Department of Prisons engaged in customs of failing to respond to the emergency medical needs of incarcerated people within the Philadelphia Department of Prisons, by failing to make rounds that identified emergency medical needs and by failing to render emergency aid to incarcerated people.</u>

<u>Plaintiffs claim that City of Philadelphia is liable if it knew of and acquiesced in YesCare's customs of inadequate treatment of diabetic patients.[12] Plaintiffs claim that the City of Philadelphia knew of and acquiesced in a custom of failing to follow proper refusal procedures for diabetic care; a custom of failing to properly administer or document blood sugar checks or insulin; and a custom of failing to follow the "red flag" procedure for follow-up encounters after missed doses of critical medication.</u>

If you find that such an official custom was the cause of and the moving force behind the violation of Mr. Jung's constitutional rights, then you have found that the City of Philadelphia caused that violation.

**Adapted from Third Circuit Model Jury Instruction 4.6.6.**

---

[11] The City objects to this instruction as the pleadings do not aver this theory of *Monell*. Plaintiffs have only brought failure to train, supervise, or discipline *Monell* claims.

[12] *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996).

VII.    **Section 1983 – Liability in Connection with the Actions of Another – Municipalities – Liability Through Inadequate Supervision**

Plaintiffs claim that the City of Philadelphia adopted a policy of inadequate supervision through its failure to supervise correctional officers' responses to incarcerated people's emergency medical needs and its failure to supervise YesCare's medical treatment of diabetic patients,[13] and that this policy caused the violation of Mr. Jung's Fourteenth Amendment right to necessary medical care.

In order to hold the City of Philadelphia liable for the violation of Mr. Jung's Fourteenth Amendment right to necessary medical care, you must find that plaintiffs have proved each of the following three things by a preponderance of the evidence:

> First: The City of Philadelphia failed adequately to supervise its employees to provide emergency medical care to incarcerated people, and failed adequately to supervise YesCare by providing oversight and auditing of YesCare's diabetes care. [14]

> Second: The City of Philadelphia's failure to adequately supervise amounted to deliberate indifference to the fact that inaction would obviously result in the violation of Fourteenth Amendment rights.

> Third: The City of Philadelphia's failure to adequately supervise proximately caused the violation of Mr. Jung's Fourteenth Amendment rights.

In order to find that the City of Philadelphia's failure to adequately supervise amounted to deliberate indifference, you must find that plaintiffs have proved each of the following three things by a preponderance of the evidence:

> First: The Department of Prisons knew that employees would confront a particular situation.

> Second: The situation involved a matter that employees had a history of mishandling.

> Third: The wrong choice by an employee in that situation will frequently cause a deprivation of Fourteenth Amendment rights to necessary medical care.

In order to find that the City of Philadelphia's failure to adequately supervise proximately caused the violation of Mr. Jung's Fourteenth Amendment right to necessary medical care, you must find that plaintiffs have proved by a preponderance of the evidence that the City of Philadelphia's deliberate indifference led directly to the deprivation of Mr. Jung's Fourteenth Amendment right to medical care.

**Adapted from Third Circuit Model Jury Instruction 4.6.7, alternative references to inadequate training omitted.**

---

[13] The City objects to the inclusion of this language, it is for Plaintiff, not the Court, to assert their theories of the case. The parties intend to engage in additional meet and confers regarding this objection.

[14] The City objects to this language as it is prejudicial to defense and improper to be from the Court. Further, the phrasing broadens the law inappropriately. The parties intend to engage in additional meet and confers regarding this objection.

VIII.    **Section 1983 – Liability in Connections with the Actions of Another – <u>Private Correctional Healthcare Provider</u> – General Instruction**[15]

If you find that <u>Mr. Jung</u> was deprived of <u>his Fourteenth Amendment right to necessary medical care</u>, YesCare is liable for that deprivation if Plaintiffs prove by a preponderance of the evidence that the deprivation resulted from the <u>YesCare's</u> official policy or custom – in other words, that <u>YesCare's</u> official policy or custom caused the deprivation.

It is not enough for Plaintiff to show that <u>YesCare</u> employed a person who violated <u>Mr. Jung</u>'s rights. Plaintiff must show that the violation resulted from the <u>YesCare's</u> official policy or custom. "Official policy or custom" includes any of the following [*include any of the following theories that are warranted by the evidence*]:

- a rule or regulation promulgated, adopted, or ratified by <u>YesCare</u>;
- policy statement or decision that is officially made by <u>YesCare's</u> policymaking officials;
- A custom that is a widespread, well settled practice that constitutes a standard operating procedure of the <u>YesCare</u>, or
- Inadequate supervision and/or failure to adopt a needed policy. However, inadequate supervision and/or failure to adopt a needed policy does not count as "official policy or custom" unless <u>YesCare</u> is deliberately indifferent to the fact that a violation of the Fourteenth Amendment right to necessary medical care is a highly predictable consequence of the inadequate supervision and/or failure to adopt a needed policy. I will explain this further in a moment.

I will now proceed to give you more details on each of the ways in which Plaintiffs may try to establish that an official policy or custom of YesCare caused the deprivation.

**Adapted from Third Circuit Model Jury Instruction 4.6.3 in light of *Natale v. Camden County Correctional Facility*, 318 F.3d 575 (2003); optional references to inadequate training, screening during hiring process omitted.**

IX.    **Section 1983 – Liability in Connection with the Actions of Another – <u>Private Correctional Healthcare Provider</u> – Custom**

Plaintiffs may prove the existence of an official custom by showing the existence of a practice that is so widespread and well settled that it constitutes a standard operating procedure of <u>YesCare</u>. A single action by a lower level employee does not suffice to show an official custom. But a practice may be an official custom if it is so widespread and well-settled as to have the force of law, even if it has not been formally approved. You may find that such a custom existed if there was a practice that was so well settled and widespread that the policymaking officials of <u>YesCare</u> either knew of it or should have known of it.

Plaintiffs claim that YesCare engaged in a <u>custom of YesCare failing to properly administer or document blood sugar checks or insulin; a</u> custom of failing to <u>follow proper refusal procedures</u>

---

[15] The City takes no position on this instruction, but highlights a concern that general reference to Mr. Jung being deprived of his rights will confuse the jury, as municipal liability is dependent on who caused the underlying violation.

for diabetic care; and a custom of failing to follow the "red flag" procedure for follow-up encounters after missed doses of critical medication.

If you find that such an official custom of <u>YesCare's</u> was the cause of and the moving force behind the violation of <u>Mr. Jung</u>'s constitutional rights, then you have found that the <u>YesCare</u> caused that violation.

**Adapted from Third Circuit Model Jury Instruction 4.6.6 in light of *Natale v. Camden County Correctional Facility*, 318 F.3d 575 (2003).**

### X.    Section 1983 – Liability in Connection with the Actions of Another – <u>Private Correctional Healthcare Provider</u> – Liability Through Inadequate Supervision

Plaintiffs claim that <u>YesCare</u> adopted a policy of <u>inadequate supervision in failing to supervise documentation of medical encounters or medication administrations, failing to supervise the frequency or administration of blood sugar checks or insulin, failing to supervise refusals of diabetic care, failing to supervise the "red flag" procedure for follow-up encounters after missed doses of critical medications,</u> and that these policies caused the violation of Mr. Jung's Fourteenth Amendment right to necessary medical care.

In order to hold <u>YesCare</u> liable for the violation of Mr. Jung's <u>Fourteenth Amendment right to necessary medical care,</u> you must find that plaintiffs have proved each of the following three things by a preponderance of the evidence:

> First: <u>YesCare's</u> failed adequately to supervise its employees <u>in administration or documentation of blood sugar checks or insulin; failed to supervise its employees in following proper refusal procedures for diabetic care; failed to supervise its employees in following the "red flag" procedure for follow-up encounters after missed doses of critical medication.</u>.

> Second: <u>YesCare's</u> failure to adequately supervise amounted to deliberate indifference to the fact that inaction would obviously result in the violation of Fourteenth Amendment rights.

> Third: <u>YesCare's</u> failure to adequately supervise proximately caused the violation of Mr. Jung's Fourteenth Amendment rights.

In order to find that <u>YesCare's</u> failure to adequately supervise amounted to deliberate indifference, you must find that plaintiffs have proved each of the following three things by a preponderance of the evidence:

> First: <u>YesCare</u> knew that employees would confront a particular situation.

> Second: The situation involved a matter that employees had a history of mishandling.

> Third: The wrong choice by an employee in that situation will frequently cause a deprivation of <u>Fourteenth Amendment rights to necessary medical care</u>.

In order to find that <u>YesCare'a</u> failure to adequately supervise proximately caused the violation of Mr. Jung's <u>Fourteenth Amendment right to necessary medical care</u>, you must find that

plaintiffs have proved by a preponderance of the evidence that <u>YesCare's</u> deliberate indifference led directly to the deprivation of Mr. Jung's Fourteenth Amendment right to medical care.

**Adapted from Third Circuit Model Jury Instruction 4.6.7 in light of *Natale v. Camden County Correctional Facility*, 318 F.3d 575 (2003), alternative references to inadequate training omitted.**

XI.    **Americans with Disabilities Act (ADA)[16]**

Plaintiffs have also brought claims under a federal statute: the Americans with Disabilities Act, which I will refer to as the ADA. This statute prevents jails, along with certain other government entities, from discriminating against people on the basis of their disability. Title II of the ADA prohibits discrimination in access to public services by requiring that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[17]

XII.    **ADA – Discrimination by Public Entity**

Plaintiffs may prove that the City of Philadelphia violated his rights under the ADA by proving four elements:

>    **First**: Plaintiffs must prove that Mr. Jung was a qualified individual.

>    **Second**: Plaintiffs must prove that Mr. Jung had a disability.

>    **Third**: Plaintiffs must prove that Mr. Jung was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity.

>    **Fourth**: Plaintiffs must prove that Mr. Jung's exclusion or denial was by reason of his disability.

In other words, Plaintiffs must demonstrate that Mr. Jung was "excluded from a program or service on account of or because of his disability as required."[18]

I will explain more about what each of these things requires Plaintiffs to prove.

The parties have agreed that Mr. Louis Jung, Jr., was a qualified individual under Title II of the ADA due to his Type I diabetes."

---

[16] The City asserts a blanket objection as it is unclear where this, and some of the remaining ADA instructions, are derived from. By way of further response, the City objects to the use of Model Instructions under Chapter 9, as the Third Circuit has made clear that "These instructions are intended to cover only those cases arising under the employment provisions of the ADA. For a discussion and application of the standards governing actions under Titles II and III of the ADA, *see* Bowers v. National Collegiate Athletic Assoc., 475 F.3d 524 (3d Cir. 2007)." *See* Model Instruction 9.0, Cmt. Lns 82-85.
[17] 42 U.S.C. § 12132.
[18] *Kokinda v. Pennsylvania Dep't of Corr.*, 779 F. App'x 944, 950 (3d Cir. 2019).

XIII.    **ADA – Excluded from Participation In or Denied Benefits of Services, Programs, or Activities; Reasonable Accommodations[19]**

The definition of "services, programs, or activities" of a public entity is extremely broad and includes anything that a public entity does.[20] Health care is a service prisons and jails must provide to prisoners.[21][22] Mr. Jung may show that he was discriminated against if he was denied meaningful access to any services, programs, or activities of the jail by reason of his disability. Mr. Jung is claiming that the City of Philadelphia excluded him from the following services, programs, or activities:

- Restricting Mr. Jung's access to blood sugar checks;
- Restricting Mr. Jung's access to corrective insulin dosages;
- Restricting Mr. Jung's access to normal basal insulin dosages.

Mr. Jung may show that he was excluded from participation in or denied benefits of services, programs, or activities of the jail by reason of his disability if he can show that the City of Philadelphia did not provide a reasonable accommodation that would allow him to meaningfully access services, programs, or activities.[23]

In addition to Mr. Jung showing that he was a qualified individual with a disability, in order to prove that the City of Philadelphia failed to provide reasonable accommodations, he must prove three things by a preponderance of the evidence:

First: the City of Philadelphia was informed of the need for an accommodation of Mr. Jung due to a disability. There is no requirement that a request be made for a particular or specific accommodation; it is enough to satisfy this element that the City of Philadelphia was informed of Mr. Jung's basic need for an accommodation, or that Mr. Jung's disability and concomitant need for an accommodation were open and apparent.[24]

Second: Providing accommodation of housing Mr. Jung within the infirmary or medical housing unit would have been reasonable, meaning that the costs of that accommodation would not have clearly exceeded its benefits.[25]

---

[19] The City objects to the language because Mr. Jung was provided with access to treatment for his diabetes. *See Jackson v. New Jersey*, 465 Fed. App'x 82, 83 (3d Cir. 2012) ("[T]he documents [plaintiff] attached suggest that the state agencies are attempting to meet his needs, although perhaps not as quickly or comprehensively as he would prefer."). The City further objects on the basis that it conflates the law of Title I ADA with Title II.

[20] *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 289 (3d Cir. 2019).

[21] *Montanez v. Price*, 154 F.4th 127, 147 (3d Cir. 2025).

[22] The City objects on the basis that this sentence is misleading to the Jury. The language of the cited case includes that "failure to provide adequate medical care to a disabled inmate does not, on its own, give rise to liability under the ADA or RA. *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he [ADA] would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners.... The ADA does not create a remedy for medical malpractice."). . . . [Rather,] Montanez alleges he was denied meaningful access to "medical care" because of his disabilities, which is cognizable under Section 504 and Title II." *Montanez v. Price*, 154 F.4th 127, 147 (3d Cir. 2025).

[23] *Montanez*, 154 F.4th at 148.

[24] *Montanez v. Price*, 154 F.4th 127, 148 (2025).

[25] The City objects to the inserted language as unfounded in law and fact.

<u>Third</u>: The City of Philadelphia failed to provide <u>Mr. Jung with housing within the infirmary or medical housing unit</u> or any other reasonable accommodation.

[In deciding whether Mr. Jung was denied a reasonable accommodation, you must keep in mind that the City of Philadelphia is not obligated to provide a specific accommodation. Mr. Jung may not insist on a particular accommodation if another reasonable accommodation was offered. The question is whether the City of Philadelphia failed to provide any reasonable accommodation of Mr. Jung' disability.]

**Modified from Third Circuit Model Jury Instruction 9.1.3.**


XIV.    **Section 1983 – Damages – Compensatory Damages**

I am now going to instruct you on damages. Just because I am instructing you on how to award damages does not mean that I have any opinion on whether or not the defendants should be held liable.

If you find the defendants are liable, then you must consider the issue of compensatory damages. You must award plaintiffs an amount that will fairly compensate them for any injury actually sustained as a result of the defendants' conduct.

Plaintiffs must show that the injuries would not have occurred without the defendants' acts or omissions. Plaintiffs must also show that the defendants' acts or omissions played a substantial part in bringing about the injury, and that the injury was either a direct result or a reasonably probable consequence of the defendants' acts or omissions. There can be more than one cause of an injury. To find that defendants' acts or omissions caused <u>Mr. Jung's</u> injury, you need not find that defendants' act or omission was the nearest cause, either in time or space. However, if <u>Mr. Jung's</u> injury was caused by a later, independent event that intervened between defendants' acts or omissions and <u>Mr. Jung's</u> injury, a defendant is not liable unless the injury was reasonably foreseeable by the defendant.

Compensatory damages must not be based on speculation or sympathy. They must be based on the evidence presented at trial, and only on that evidence. Plaintiff has the burden of proving compensatory damages by a preponderance of the evidence.

Plaintiffs claim the following items of damages:

- Physical harm to <u>Mr. Jung</u> during and after the events at issue, including <u>death</u>, ill health, physical pain, disability, disfigurement, or discomfort. In assessing such harm, you should consider the nature and extent of the injury and whether the injury is temporary or permanent.
- Emotional and mental harm to <u>Mr. Jung</u> during the events at issue, including fear, humiliation, and mental anguish. [~~and any such emotional and mental harm that [plaintiff] is reasonably certain to experience in the future~~].
- <u>Damages, on behalf of Mr. Jung, in such sum as you find will fairly and justly compensate him for his loss of enjoyment of the life he would have lived. These damages are independent of, and may be in addition to, whatever damages may exist to compensate for the pain and suffering Mr. Jung experienced before he died. Of course, it is difficult to put a value on the life of a human being. You are to determine, as best you</u>

<u>can, in light of all the circumstances and the evidence presented, the value of Mr. Jung's life had he lived.</u>[26]

[~~Each plaintiff has a duty under the law to "mitigate" his or her damages – that means that the plaintiff must take advantage of any reasonable opportunity that may have existed under the circumstances to reduce or minimize the loss or damage caused by the defendant. It is the defendant's burden to prove that Mr. Jung has failed to mitigate. So if the defendant persuades you by a preponderance of the evidence that Mr. Jung failed to take advantage of an opportunity that was reasonably available to him, then you must reduce the amount of Mr. Jung's damages by the amount that could have been reasonably obtained if he had taken advantage of such an opportunity.~~][27]

In assessing damages, you must not consider attorney fees or the costs of litigating this case. Attorney fees and costs, if relevant at all, are for the court and not the jury to determine. Therefore, attorney fees and costs should play no part in your calculation of any damages.

**Adapted from Third Circuit Model Jury Instruction 4.8.1.**

XV.    **Section 1983 – Damages – Punitive Damages**

In addition to compensatory or nominal damages, you may consider awarding plaintiffs punitive damages <u>for violations of Mr. Jung's Fourteenth Amendment rights</u>. A jury may award punitive damages to punish defendants, or to deter the defendants and others like the defendants from committing such conduct in the future.

<u>Punitive damages are not available against a municipality, so you cannot award punitive damages from the City of Philadelphia.</u>[28]

You may only award punitive damages if you find that the defendants acted maliciously or wantonly in violating Mr. Jung's federally protected rights. In this case there are multiple defendants. You must make a separate determination whether each defendant acted maliciously or wantonly.

- A violation is malicious if it was prompted by ill will or spite towards the plaintiff. A defendant is malicious when he consciously desires to violate federal rights of which he is aware, or when he consciously desires to injure the plaintiff in a manner he knows to be unlawful. A conscious desire to perform the physical acts that caused Mr. <u>Jung's</u> injury, or to fail to undertake certain acts, do not by itself establish that a defendant had a conscious desire to violate rights or injure plaintiff unlawfully.
- A violation is wanton if the person committing the violation recklessly or callously disregarded the plaintiff's rights.

If you find that it is more likely than not that the defendants acted maliciously or wantonly in violating <u>Mr. Jung</u>'s federal rights, then you may award punitive damages. However, an award of punitive damages is discretionary; that is, if you find that the legal requirements for punitive

---

[26] *Collado v. City of New York*, 396 F. Supp. 3d 265, 279 (S.D.N.Y. 2019). Plaintiffs have filed a motion in limine on this issue at Dkt. 155.

[27] The City objects to the removal of this language and requests it be included.

[28] *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S. Ct. 2748, 2762 (1981).

damages are satisfied, then you may decide to award punitive damages, or you may decide not to award them. I will now discuss some considerations that should guide your exercise of this discretion. But remember that you cannot award punitive damages unless you have found that the defendants or a particular defendant acted maliciously or wantonly in violating Mr. Jung's federal rights.

If you have found that the defendants acted maliciously or wantonly in violating Mr. Jung's federal rights, then you should consider the purposes of punitive damages. The purposes of punitive damages are to punish a defendant for a malicious or wanton violation of federal rights, or to deter a defendant and others like the defendant from doing similar things in the future, or both. Thus, you may consider whether to award punitive damages to punish the defendants. You should also consider whether actual damages standing alone are sufficient to deter or prevent the defendants from again performing any wrongful acts he may have performed. Finally, you should consider whether an award of punitive damages in this case is likely to deter other persons from performing wrongful acts similar to those the defendants may have committed.

If you decide to award punitive damages, then you should also consider the purposes of punitive damages in deciding the amount of punitive damages to award. That is, in deciding the amount of punitive damages, you should consider the degree to which the defendants should be punished for their wrongful conduct, and the degree to which an award of one sum or another will deter the defendants or others from committing similar wrongful acts in the future.

In considering the purposes of punishment and deterrence, you should consider the nature of the defendants' action. For example, you are entitled to consider whether a defendant's act was violent or non-violent; whether the defendant's act posed a risk to health or safety; whether the defendant acted in a deliberately deceptive manner; and whether the defendant engaged in repeated misconduct, or a single act. You should also consider the amount of harm actually caused by the defendant's act, as well as the harm the defendant's act could have caused and the harm that could result if such acts are not deterred in the future.

Bear in mind that when considering whether to use punitive damages to punish a defendant, you should only punish defendant for harming Mr. Jung, and not for harming people other than Mr. Jung. As I have mentioned, in considering whether to punish defendants, you should consider the nature of defendants' conduct – in other words, how blameworthy that conduct was. In some cases, evidence that a defendant's conduct harmed other people in addition to the plaintiff can help to show that the defendant's conduct posed a substantial risk of harm to the general public, and so was particularly blameworthy. But if you consider evidence of harm defendant caused to people other than Mr. Jung, you must make sure to use that evidence only to help you decide how blameworthy the defendant's conduct toward Mr. Jung was. Do not punish any defendant for harming people other than Mr. Jung.

The extent to which a particular amount of money will adequately punish a defendant, and the extent to which a particular amount will adequately deter or prevent future misconduct, may depend upon the defendant's financial resources. Therefore, if you find that punitive damages should be awarded against defendants, you may consider the financial resources of defendant in fixing the amount of such damages.

**Adapted from Third Circuit Model Jury Instruction 4.8.2.**

**STATE LAW CLAIMS** [29]

XVI.  **Medical Professional Negligence – Introduction**

Professional negligence consists of a negligent, careless, or unskilled performance by a <u>medical professional</u> of the duties imposed on them by the professional relationship with a patient. It is also negligence when a <u>medical professional</u> shows a lack of proper care and skill in the performance of a professional act.

**Adapted from Pennsylvania Suggested Standard Civil Jury Instructions (Sixth Ed.) 14.00**

XVII.  **Medical Malpractice – Standard of Care**

A physician must have the same knowledge and skill and use the same care normally used in the medical profession. A physician whose conduct falls below this standard of care is negligent.

<u>A nurse owes a duty of care to conduct himself or herself as a reasonably prudent nurse would act under the circumstances.</u> [30]

~~A medical provider who professes to be a specialist in a particular field of medicine must have the same knowledge and skill and use the same care as others in that same medical specialty. A specialist whose conduct does not meet this professional standard of care is negligent.~~

~~Under this standard of care, physicians~~ ~~and nurses~~ ~~must also keep informed of the contemporary developments in the medical profession and must use current skills and knowledge. In other words, medical providers must have up-to-date medical skills and knowledge, and if he or she fails to keep current or fails to use current knowledge in the medical treatment of the patient, the medical provider is negligent.~~

You must decide whether defendants <u>Trivikram, Apollon, Gay, and Cabellos</u> were negligent. If you decide that defendants were negligent, then you must decide whether defendants' negligence was a factual cause of the plaintiff's injuries. If you so decide, you must decide the amount of harm Mr. Jung sustained as a result of defendants' negligence.

**Adapted from Pennsylvania Suggested Standard Civil Jury Instructions (Sixth Ed.) 14.10**

XVIII.  **Medical Malpractice – Factual Cause**

**A. Causation**

In order for plaintiffs to recover in this case, <u>Defendant Apollon, Gay-Johnson, Trivikram, Cabellos, and/or other YesCare staff's</u> [31] negligent conduct must have been a factual cause in

---

[29] The City takes no position on the state law claims.

[30] *Hagans v. Hosp. of the Univ. of Pennsylvania*, 343 A.3d 251, 261-62 (Pa Super. Ct. 2025), *reargument denied* (Sept. 15, 2025).

[31] *Sokolsky v. Eidelman*, 93 A.3d 858, 865-66 (Pa. Super. Ct. 2014) (*citing, inter alia, Boring v. Conemaugh Mem'l Hosp.*, 760 A.2d 860 (Pa.Super.2000) (concluding that the trial court properly charged

bringing about harm. Conduct is a factual cause of harm when the harm would not have occurred absent the conduct. To be a factual cause, the conduct must have been an actual, real factor in causing the harm, even if the result is unusual or unexpected. A factual cause cannot be an imaginary or fanciful factor having no connection or only an insignificant connection with the harm.

To be a factual cause, Defendant Apollon, Gay-Johnson, Trivikram, Cabellos, and/or other YesCare staff's conduct need not be the only factual cause. The fact that some other causes concur with the negligence of these defendants in producing an injury does not relieve these defendants from liability as long as their own negligence is a factual cause of the injury.

**B. Increased Risk of Harm**

When a defendant negligently acts or fails to act or negligently delays in taking indicated diagnostic or therapeutic steps, and their negligence is a factual cause of injuries to the plaintiff, that defendant is responsible for the injuries caused.

Where the plaintiff presents expert testimony that the negligent act or failure to act or delay on the part of the defendant has increased the risk of harm to the plaintiff, this testimony, if found credible, provides a sufficient basis from which you may find that the negligence was a factual cause of the injuries sustained.

[If there has been any significant possibility of avoiding injuries and [defendant] has destroyed that possibility, they may be liable to plaintiffs.]

It is rarely possible to demonstrate to an absolute certainty what would have happened under circumstances that the negligent defendant did not allow to come to pass.

**Adapted from Pennsylvania Suggested Standard Civil Jury Instructions (Sixth Ed.) 14.20**


XIX.    **Employee or Independent Contractor**

A person who acts for someone else can be either an employee or an independent contractor.

You must decide whether Defendant Mariesha Apollon was YesCare's employee or an independent contractor.

A person is an employee if the principal has the right to control how the work is to be performed.

A person is an independent contractor if the principal does *not* have the right to control how the work is to be performed.

If YesCare had the right to control how Defendant Apollon performed the work, you may find that Defendant Apollon was YesCare's employee even if YesCare did not exercise that control.

**Adapted from Pennsylvania Suggested Standard Civil Jury Instructions (Sixth Ed.) 6.10**

---

the jury on vicarious liability where Boring claimed that the nursing staff acted negligently when rendering her care), *appeal denied*, 566 Pa. 632, 781 A.2d 137 (2001)).

XX.    **Principal's Vicarious Liability – No Dispute as to Scope of Employment**

A principal is legally responsible for an employee's negligent or wrongful conduct.

In this case, YesCare admits that <u>Defendants Gay-Johnson, Trivikram, and Cabellos</u> were its employees and that their conduct was part of their job. <u>YesCare further admits that its employees were responsible for Mr. Jung's insulin administration and glucose checks throughout his incarceration within the Philadelphia Department of Prisons.</u>

**Adapted from Pennsylvania Suggested Standard Civil Jury Instructions (Sixth Ed.) 6.20**


XXI.    **Hospital Liability for Independent Contractor**

If you find <u>Defendant Mariesha Apollon</u> was negligent, <u>YesCare</u> is responsible for that negligence if plaintiffs prove one of the following:

1. A reasonably prudent person in the patient's position would be justified in believing that the care in question was being provided by <u>YesCare</u> or its agents; or
2. The care in question was advertised or otherwise represented to the patient, as care being provided by <u>YesCare</u>.

**Adapted from Pennsylvania Suggested Standard Civil Jury Instructions (Sixth Ed.) 14.80**


XXII.    **Corporate Liability of Health-Care Provider**

<u>YesCare</u> is directly liable to a patient if it violates a duty that it owes to the patient to ensure the patient's safety and well-being while under the care of <u>YesCare</u>. The following are the duties that <u>YesCare</u> must fulfill and that it cannot pass on to anyone else:

1. A duty to use reasonable care in the maintenance of safe and adequate facilities and equipment;
2. A duty to select and retain only competent health-care personnel;
3. A duty to oversee all persons who practice nursing and other health care within its walls as to patient care; and
4. A duty to formulate, adopt, and enforce adequate rules and policies to ensure quality care for patients.

If you decide that <u>YesCare</u> violated any applicable duty or duties, you must then decide:

1. Whether <u>YesCare</u> knew or should have known of the breach of that duty, and
2. That the conduct was a factual cause in bringing about the harm or injury.

**Adapted from Pennsylvania Suggested Standard Civil Jury Instructions (Sixth Ed.) 14.70**

XXIII. **Medical Malpractice – Damages in Wrongful Death and Survival Actions**

The verdict sheet you will receive when you begin your deliberations includes places for you to record your damages under the Wrongful Death Act and the Survival Act, which I will explain for you now.

If you find that plaintiffs proved Defendant YesCare, Apollon, Gay-Johnson, Trivikram, and/or Cabellos's negligence factually caused Mr. Jung's death, you must award plaintiffs compensation [~~money damages~~].

Plaintiffs claims several types of damages.

This instruction explains two of them.

First, plaintiffs seek damages to compensate Mr. Louis Jung Jr.'s survivors, his children Jacob Jung, James Jung, and Louis Jung III, for the losses they sustained as a result of Mr. Jung's death.

Second, plaintiffs seek compensation for the harm defendants' negligence caused Mr. Jung. These damages are for damages to Mr. Jung between the time of the injury and his death [~~as well as for the loss of income from the time of [his] [her] [their] death until the end of [his] [her] [their] life expectancy~~]. These damages arise from Mr. Jung's right under the law to receive money damages as a result of defendants' negligence.

A. Under the first claim, concerning the children's losses as a result of their father' s death:

1. Mr. Jung's estate is entitled to be compensated for all ~~hospital, medical,~~ funeral and burial~~, and estate administration~~ expenses. [~~It has been stipulated that these expenses total [amount].~~]

[~~2. [Name of plaintiff] is entitled to be compensated for the amount of money [[[[name of decedent] would have spent to support [his] [her] [their] [spouse] [[[[child] [children] [parent] [parents] from the date of [his] [her] [their] death until the end of [his] [her] [their] life expectancy. "Support" includes the cost of food, clothing, shelter, transportation, medical expenses, gifts, insurance, education, entertainment, and recreation.~~]

[~~*If decedent has surviving spouse, parent, or parents:* 3. [Name of plaintiff] is entitled to be compensated the amount of money that fairly and adequately compensates the [spouse] [parent] [parents] for losing [[[[name of decedent]'s companionship, cooperation, affection, comfort, services, [[and] assistance, [and sexual relationship], and for the emotional and psychological loss suffered as a result of the death~~]

4. <u>Jacob Jung, James Jung, and Louis Jung III</u> are entitled to be compensated the amount of money that fairly and adequately compensates them for losing their deceased parent's guidance, teaching, training, advice, education, care, comfort, services, emotional support, and moral upbringing, and for the emotional and psychological loss suffered as a result of the death.

[~~B. Under the second claim, concerning [name of decedent]'s damages, [name of plaintiff] is entitled to be compensated for the gross income, plus the value of fringe benefits, [name of decedent] would have earned between the date of injury and the date of [his] [her] [their] death.~~

~~I will explain later how to determine life expectancy.~~

21

~~From this amount you must deduct the amount you award (pursuant to my previous instruction) to compensate for money [name of decedent] would have spent to support [his] [her] [their] [child] [children] [and/or] [parent] [parents] from the date of [his] [her] [their] death until the end of [his] [her] [their] life expectancy.]~~

C. Mr. Jung is also entitled to be compensated for all mental and physical pain, suffering, and inconvenience ~~[and] loss of life's pleasures[, and disfigurement]~~ that Mr. Jung suffered <u>during his incarceration within PDP between December 2021</u> until <u>his</u> death.

D. Add each of these items of damages together in their proper categories and return your verdict in amounts under the Wrongful Death Act and the Survival Act.

**Adapted from Pennsylvania Suggested Standard Civil Jury Instruction, Sixth Ed. 14.170**


XXIV. **Medical Malpractice – Punitive Damages**

Punitive damages may only be awarded for willful or wanton conduct or reckless indifference.

Reckless indifference is an intentional act or failure to act in disregard of a risk of harm to others that is known or should be known to be highly probable and with a conscious indifference to the consequences. Reckless conduct is also acting or failing to act when existing danger is actually known and with an awareness that harm is highly probable.

In assessing punitive damages, you may consider the character of the health-care providers' act or failure to act, the nature and extent of harm that the health-care provider caused or intended to cause to the patient, and the wealth of the health-care provider.

[Vicarious liability/claim against principal:]

[You may not award punitive damage against <u>YesCare solely on the basis of vicarious liability for the actions of Defendants Gay-Johnson, Apollon, Trivikram, or Cabellos</u> unless plaintiffs have proven that YesCare knew about and allowed the conduct by its agents, Defendants Gay-Johnson, Apollon, Trivikram, or Cabellos.[32]

**Adapted from Pennsylvania Suggested Standard Civil Jury Instruction, Sixth Ed. 14.180**

---

[32] For cases of punitive damages proceeding against a medical corporation on a theory of direct corporate liability, see *Hall v. Episcopal Long Term Care*, 54 A.3d 381, 397 (Pa. Super. Ct. 2012); *Scampone v. Grane Healthcare Co.*, 11 A.3d 967, 991 (Pa. Super. Ct. 2010), *aff'd in part on other grounds sub nom. Scampone v. Highland Park Care Ctr., LLC*, 618 Pa. 363, 57 A.3d 582 (2012); *Ponzini v. Monroe Cnty.*, 789 F. App'x 313, 315 (3d Cir. 2019).

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JACOB and JAMES JUNG, as** | : | |
| **Administrators of the Estate of LOUIS** | : | |
| **JUNG, JR,** | : | |
| **Plaintiffs,** | : | **Civil Action** |
| **v.** | : | **No. 2:24-cv-05618** |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| **Defendants.** | : | |

## CERTIFICATE OF SERVICE

I hereby certify that on the date below, Joint Proposed Jury Instructions was filed via the Court's electronic filing system and is available for downloading.

Date: January 9, 2026

Respectfully submitted,

*/s/ Michael Pestrak*
**Michael Pestrak**
Senior Attorney
Attorney I.D. No. 208611
**Emily M. Hoff**
Deputy City Solicitor
Attorney I.D. No. 330859
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
*Attorneys for Defendants City of Philadelphia, Blanche Carney, Gena Fraiser, and Wanda Bloodshaw*