IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACOB JUNG and JAMES JUNG, as Administrators of the Estate of Louis Jung, Jr. | : : : : | CIVIL ACTION |
| v. | : : | |
| CITY OF PHILADELPHIA, BLANCHE CARNEY, Former Commissioner of Philadelphia Dept. of Prisons, LALITHA TRIVIKRAM, MAUREEN GAY, YESCARE CORP., MARIESHA APOLLON, BLAIR CABELLOS, GENA FRASIER, and WANDA BLOODSAW | : : : : : : : | NO. 24-5618 |

## ORDER

**NOW**, this 21st day of January, 2026, upon consideration of Plaintiffs' Motion for Partial Summary Judgment Against YesCare and Defendant Cabellos (Doc. No. 94) and the response, **IT IS ORDERED** that the motion is **DENIED**.[1]

---

[1] Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In examining a motion for summary judgment, we must view the facts in the light most favorable to the nonmovant and draw all reasonable inferences in his favor. *Peroza-Benitez v. Smith,* 994 F.3d 157, 164 (3d Cir. 2021) (citing *Santini v. Fuentes*, 795 F.3d 410, 416, 419 (3d Cir. 2015)).

Disagreements over what inferences may be drawn from the facts, even undisputed ones, preclude summary judgment. *Revock v. Cowpet Bay W. Condo. Ass'n,* 853 F.3d 96, 112 (3d Cir. 2017) (citing *Windsor Sec., Inc. v. Hartford Life Ins. Co.*, 986 F.2d 655, 659 (3d Cir. 1993)). Credibility determinations, the drawing of legitimate inferences from facts, and the weighing of evidence are matters left to the jury. *In re Asbestos Prod. Liab. Litig. (No. VI)*, 822 F.3d 125, 135–36 (3d Cir. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

There are genuine disputes of material fact and credibility determinations that must be decided by a jury. We cite only a few.

The parties dispute whether Defendant YesCare Corp. deviated from the standard of care for a Type 1 diabetic. Specifically, they dispute whether YesCare breached its duty to provide Louis Jung Jr. insulin and whether that failure led to his death. YesCare

_____
TIMOTHY J. SAVAGE, J.

---

relies on evidence that Jung repeatedly refused insulin and blood sugar checks and its employees documented those refusals. For example, the timeline showing when Jung's medication was administered shows that he refused insulin on November 1 and 5, 2023. Patient Safety Event Report p. 4, Attached as Ex. 20 to Plaintiffs' Statement of Undisputed Material Facts "Pls.' SUMF", ECF No. 95–1. However, plaintiffs argue that a YesCare event report concluded his refusals were not documented correctly and he was not seen by doctors on days he should have been. Pls.' SUMF ¶ 52; Patient Safety Event Report p. 4–6. As a result, plaintiffs argue Jung's alleged refusals are surrounded by too many recording errors for the report to be reliable. Additionally, they claim YesCare employees did not schedule required follow up visits after Jung missed numerous insulin doses. Pls.' SUMF ¶¶ 50,74; Patient Safety Event Report p. 4–6.

The parties also dispute whether Defendant Blair Cabellos deviated from the standard of care. Cabellos testified that during her encounter with Jung on November 5, 2023, after saying he could not stand, Jung walked towards her. Cabellos Dep. 76:20–24, Attached as Ex. 21 to Pls.' SUMF, ECF No. 95–1. She also testified he "gently place[d] himself on the floor" and told her "I just fell." Cabellos Dep. 77:1–5. Cabellos testified that, because there was nothing she could do for him at the time, she instructed a correctional officer to call for a stretcher if Jung continued to complain of leg pain. Cabellos Dep. 77:5–9. At that time, Cabellos did not know Jung was diabetic. Cabellos Dep. 79:20–22. However, in an interview with an investigator, Cabellos had stated that Jung was already on the floor when she arrived. Interview of Blair Cabellos, Attached as Ex. 22 to Pls.' SUMF, ECF No. 95–1. In the interview, Cabellos stated that Jung said he needed help to get up, but Cabellos did not help him because she had been instructed not to go into a cell unless there was more than one officer present. Blair Cabellos Interview. The two versions of this encounter require a credibility determination.

The parties also dispute whether Jung needed medical assistance when Cabellos left the cell block. Cabellos testified Jung had no symptoms that raised a concern because his only articulated symptom was leg pain. Nevertheless, she instructed the correctional officer to call a stretcher if Jung continued to complain of leg pain. Cabellos Dep. 77:5–9. In her interview, Cabellos said she told the officer to call for a stretcher because Jung said he could not get up. Interview of Blair Cabellos. The inconsistencies in Cabellos' testimony raise a question of credibility as to what complaints and symptoms Jung presented and what treatment should have been given.

2