IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACOB and JAMES JUNG, as Administrators of the Estate of LOUIS JUNG, JR, | :<br>:<br>: No. 2:24-cv-05618-TJS |
| Plaintiff, | : |
| v. | : **JURY TRIAL DEMANDED** |
| CITY OF PHILADELPHIA; YesCare Corp.; BLANCHE CARNEY, Former Commissioner of Philadelphia Dept. of Prisons; LALITHA TRIVIKRAM; MAUREEN GAY;  MARIESHA APOLLON; BLAIR CABELLOS; GENA FRASIER; WANDA BLOODSAW, | : |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO CITY DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE SHAWN JAY'S TESTIMONY**

Defendants seek to preclude the testimony of Lieutenant Shawn Jay. Lieutenant Jay is competent to testify as a standard fact witness regarding critically disputed periods of time for which the PDP has lost or destroyed video evidence. As to Lieutenant Jay's reports and lay opinions, both the facts and opinions within his report are admissible under the Federal Rules and Supreme Court case law. If Lieutenant Jay testifies as to these facts and opinions within his report, opportunity for cross-examination of a live witness will lessen any prejudice from introduction of his opinions. Moreover, Lieutenant Jay's lay opinion testimony meets every element of Fed. R. Evid. 701.

I. **Legal Standard**

A "trial court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *United States v. Tartaglione*, 228 F. Supp. 3d 402,

1

406 (E.D. Pa. 2017); *see also Seawright v. Banning*, 677 F. Supp. 3d 310, 313 (E.D. Pa. 2023). A trial court "may reserve judgment until trial in order to place the motion in the appropriate factual context." *Tartaglione*, 228 F. Supp. 3d at 406.

II.     **Argument**

### a. Lieutenant Jay can testify to his personal knowledge and recorded documented recollection of his review of now-deleted video evidence.

Video evidence is usually required to be admitted into evidence directly under the "best evidence rule," Fed. R. Evid. 1002. However, "[a]n original is not required and other evidence of the content of a writing, recording, or photograph is admissible" under certain circumstances. Fed. R. Evid. 1004. These circumstances include where "all the originals are lost or destroyed, and not by the proponent acting in bad faith." Fed. R. Evid. 1004(a).

In this case, the City of Philadelphia has preserved video footage of the B1Pod3 cell block where Mr. Jung was housed from approximately 6:00 AM through 3:00 PM on November 5, 2023; 9:30PM on November 5, 2023 through 6:05 AM on November 6, 2023; and other portions of the morning of November 6, 2023. Counsel for Plaintiffs requested video footage covering the missing afternoon hours of November 5, 2023, from 3:00 to 9:30 PM. Counsel for City Defendants was unable to locate or turn over this video in the course of discovery. Ex. 1, Email communication with counsel for City of Philadelphia.

Lieutenant Shawn Jay conducted the Philadelphia Department of Prisons' investigation into the death of Mr. Jung. In the course of his investigation, he reviewed multiple sources of evidence, including entries into Lock & Track, the PDP's electronic logbook for correctional staff, and video footage. Lieutenant Jay recorded his findings after review of relevant records and video evidence as follows within an Employee Violation Report for Defendant Frasier:

> A review of the electronic logbook (Lock & Track) revealed that you [Gena Frasier] made a Medication Event entry at 16:35 for Insulin and Accu-check, in which one of the four (4) I/P's to receive insulin was IP Jung. At 16:49, you entered another logbook event acknowledging that 1/P Jung had refused his Insulin and Accu-check. Further video review was conducted of B 1 Pod3 for the relevant time periods related to your logbook entries of the said medication events. The video shows that I/P Jung was locked inside of Cell #19 and at no time exited the cell. In addition, at no time did you go to his cell to let him out for Insulin and Accu-check, nor did it appear that you received any indication of his refusal, as you were observed watching TV in the dayroom (Bottom tier area).

Ex. 2, Frasier Employee Violation Report at Fraiser-000010.

Defendant Frasier does not have an independent recollection of this refusal; maintains that she would only have recorded the refusal after "he told me he's refusing insulin," based on her general practices; and claimed not to recall any details even after being confronted with Lieutenant Jay's record to refresh her recollection at her deposition. Ex. 3, Frasier Deposition at 127:1-131:2. The dispute as to what occurred during Mr. Jung's final "refusal" of insulin is highly probative of Defendant Frasier's deliberate indifference. Mr. Jung is not available to rebut Defendant Frasier's representations because he is dead. The only other evidence of this event would have to come from an independent source.

Contrary to Defendants' representations, an eyewitness does not have to be physically present to have 'personal perceptions.' Dkt. 158 at 5. Review of video evidence is regularly found to provide a basis for personal knowledge. *See United States v. Ortiz*, 654 F. App'x 564, 568 (3d Cir. 2016) (testimony of agents who reviewed subsequently deleted video was admissible secondary evidence under Fed. R. Evid. 1004, and was not unduly prejudicial because agents could be cross-examined as to both their personal recollections and their reports discussing the video's contents); *United States v. Muhammad*, 512 F. App'x 154, 161 (3d Cir. 2013) (review of video footage provides basis for personal knowledge in witness testimony).

Lieutenant Jay has personal knowledge of the contents of the video from his prior review, and generated a recorded recollection of his review of video footage while it was fresh in his memory. He is the only eyewitness with current or recorded memory of the hours between 3:00 and 9:00 PM on November 5, 2023 pertaining to Mr. Jung's "refusal" of insulin. The video footage covering the hours of 3:00PM to 9:00PM on November 5, 2023 has been lost or destroyed by the City of Philadelphia, not by Plaintiffs. Plaintiffs are entitled to admit other evidence of the contents of this video under Fed. R. Evid. 1004(a). Lieutenant Jay should, at a minimum, be permitted to testify as to this video review.

> **b. Lieutenant Jay's Office of Special Investigations report is a record of a public office that sets out factual findings from a legally authorized investigation admissible with or without his testimony.**

Hearsay consists of a statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801. One exception to the hearsay prohibition, applicable "regardless of whether the declarant is available as a witness," consists of "a record or statement of a public office if" it sets out "in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and" "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(A)(iii)-(B).

Such records are "not inadmissible merely because they state a conclusion or opinion. As long as the conclusion is based on a factual investigation and satisfies the Rule's trustworthiness requirement, it should be admissible along with other portions of the report." *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170, 109 S. Ct. 439, 450 (1988). The rule does not provide that "factual findings" alone are admissible; rather, "*reports*" that set out "factual findings are admissible." *Id.*

4

at 164. The Supreme Court endorsed a "broad approach to admissibility" under the public record hearsay exception "consistent with the Federal Rules' general approach of relaxing the traditional barriers to 'opinion' testimony. Rules 702–705 permit experts to testify in the form of an opinion, and without any exclusion of opinions on 'ultimate issues.' And Rule 701 permits even a lay witness to testify in the form of opinions or inferences drawn from her observations when testimony in that form will be helpful to the trier of fact." *Id.* at 170.

Lieutenant Jay's Office of Professional Compliance death investigation report is trustworthy. Factors bearing on the trustworthiness of reports under Fed. R. Evid. 803(8)(C) include "the timeliness of the investigation," "the special skill or experience of the official," "whether a hearing was held and the level at which conducted," and "possible motivation problems," including "political bias" or reports produced in contemplation of litigation. *Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1342 (3d Cir. 2002) (internal citations omitted). The investigation was commenced immediately after Mr. Jung's death and concluded within five months. Ex. 4, Jung Death Investigation at City-Jung-000011 (marked complete on March 29, 2024); Ex. 5, Jay Deposition at 20:9-25:19 (describing process and timeline of death investigations). The investigation was commenced and concluded prior to litigation, within the standard course of practice for PDP after a death in custody. *Id.* Lieutenant Jay is an experienced investigator at the PDP; he has been employed at the Office of Professional Compliance since 2019 and conducted several death investigations in addition to Mr. Jung's. Ex. 5, Jay Deposition at 16:1-10.

As described above, some of the purely factual findings of Lieutenant Jay's investigations are highly relevant. His testimony as to his review of now-deleted video evidence is critically probative for Plaintiffs' case against Defendant Frasier. Lieutenant Jay will have to lay a foundation

5

for his review of the video, so the jury will be aware of the nature of his investigative work with respect to Mr. Jung's death. The factual findings and conclusions of his death investigation report are admissible on the papers alone under the hearsay exception of 803(8)(A)(iii) under *Beech*. This hearsay exception applies whether or not the declarant testifies – indicating that testimony of the declarant is contemplated within the rule itself. Defendants seek an untenable combination of rules wherein investigatory conclusions would be admissible if presented as documentary evidence alone, but are transformed into impermissible opinions when given in open court and subjected to cross-examination.

   c. **Lieutenant Jay's opinions are admissible under Fed. R. Evid. 701.**

  Lay opinion testimony is admissible if it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." "In layman's terms, Rule 701 means that a witness is only permitted to give [his] opinion or interpretation of an event when he has some personal knowledge of that incident." *United States v. Fulton*, 837 F.3d 281, 291 (3d Cir. 2016). "While opinion testimony that 'embraces an ultimate issue' to be decided by the trier of fact is not per se inadmissible, such testimony is barred when its primary value is to dictate a certain conclusion." *Id*. (citation omitted). Lay witnesses who conduct internal investigations can be permitted to testify as to their conclusions and opinions, even when they are highly intertwined with ultimate issues in a case. *See United States v. Holovacko*, 781 F. App'x 100, 102-03 (3d Cir. 2019) (finding lay witness bank manager could testify as to his investigation of criminal defendant's bank accounts and his conclusion that there was "misappropriation of assets").

6

Lieutenant Jay's opinions are rationally based on his perception. As cited above, review of video provides a basis for personal knowledge. *Ortiz*, 654 F. App'x at 568; *Muhammad*, 512 F. App'x at 161. Review of other records, including consultation with others, also forms the basis for perception under Rule 701. *See Holovacko*, 781 F. App'x at 103 ("Although some of Hutson's perceptions involved his analysis of records produced by others, that analytic process remains his own personal knowledge, and Hutson confined his testimony to what he personally perceived and concluded"). Lieutenant Jay's personal familiarity with PDP policy and procedures and standard practices for PDP correctional staff is also rationally based on his perception from years working within the PDP.

Lieutenant Jay's personal knowledge of PDP specifically is distinct from Plaintiffs' correctional expert witness, who brings to bear a broader ranging body of knowledge on nationally accepted standards, the standards of professional organizations, and the state of the art within the correctional field writ large, as well as specific specialized knowledge as to correctional supervision and management practices. *See, e.g.,* Fed. R. Evid. 701 Committee Notes on Rules (2000 Amd't) (approvingly citing "*Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993) (no abuse of discretion in permitting the plaintiff's owner to give lay opinion testimony as to damages, as it was based on his knowledge and participation in the day-to-day affairs of the business). Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business. The amendment [adding subsection (c)] does not purport to change this analysis… lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'") Here, Lieutenant Jay's particularized knowledge as

7

to the expectations for policy compliance of PDP staff such as defendants Frasier and Bloodsaw, and contractors such as Cabellos, is probative of whether the policies and training these staff members received rendered them aware of the risk of harm to Mr. Jung in the situation they encountered him in on November 5, 2023 when he was prone on the floor in the doorway of his cell. If PDP's authorized investigator into policy violations found that these staff members failed to adhere to their training and PDP policies then a jury can infer that the training and policy guidance provided to these defendants made them subjectively aware of the risk faced by Mr. Jung, which is a critical element in a deliberate indifferent analysis, and may be relevant for purposes of determining damages, including potential punitive damages.

Further, it is also expected that defendants Frasier, Cabellos, and Bloodsaw will disavow that they acted improperly under the policies and expectations of their employers, and Lieutenant Jay's testimony will directly address this question within the ambit of his extensive particularized knowledge of PDP policies and operations. At a minimum, Lieutenant Jay's testimony as to the impropriety of their conduct is admissible as impeachment evidence.

Lieutenant Jay's perceptions and opinions will be helpful to the jury. As described above, Lieutenant Jay is a fact witness as to a critical disputed period of time. His conclusions as to violations of PDP policy and sustaining of charges against Defendants Frasier and Bloodsaw, based on his personal perceptions, is probative of their constitutional liability, but does not actually embrace the ultimate issue of deliberate indifference. Rather than "dictat[ing] a certain conclusion," there is little risk that the jury will substitute Lieutenant Jay's opinion for their own, particularly if he is allowed to testify and be subjected to cross-examination. *Fulton*, 837 F.3d at 291. Lieutenant Jay's Office of Professional Compliance investigation was legally authorized, set out factual findings, and reached conclusions; but these were not identical to the ultimate

conclusions of the PDP. While Defendant Bloodsaw was ultimately found responsible for five of the violations with which Lieutenant Jay charged her, she was cleared of one charge in her disciplinary hearing. Defendant Frasier was cleared of all charges. The jury will be aware of these results, and will know that others within PDP's disciplinary apparatus disagreed with Lieutenant Jay's conclusions. They will be able to evaluate the underlying facts, assess Lieutenant Jay's credibility, and weigh his testimony against contrary indications in the record, just as with any other witness.

As the opinions and conclusions contained within Lieutenant Jay's death investigation report are admissible under a different legal analysis, live testimony and the opportunity for cross-examination is less prejudicial than allowing his report into the record without cross-examination. In any event, the risk of prejudice is better evaluated at trial than on a motion *in limine*. The Third Circuit has held that "*pretrial* Rule 403 exclusions should rarely be granted.... Excluding evidence as being more prejudicial than probative at the pretrial stage is an extreme measure that is rarely necessary, because no harm is done by admitting it at that stage." *In re Paoli R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990) (emphasis in original). Lieutenant Jay's testimony is not "clearly inadmissible on all potential grounds," *Tartaglione*, 228 F. Supp. 3d at 406, and decisions as to the relative usefulness and prejudice of his testimony can be more fully evaluated at trial.

### III.  Conclusion

For the foregoing reasons, Plaintiffs respectfully contend that Defendants' Motion *in Limine* to Preclude Shawn Jay's Testimony should be denied.

Dated: January 23, 2026

                                                Respectfully submitted,

*/s/ Bret Grote*
Legal Director
PA ID No. 317273
bretgrote@alcenter.org
*/s/ Rupalee Rashatwar*
Staff Attorney
PA ID No. 331085
*/s/ Margaret Hu*
Staff Attorney
PA ID No. 334438
*/s/ Lolo Salsbury Serrano*
Legal Fellow
PA ID No. 338184
Abolitionist Law Center
990 Spring Garden St., Ste 306
Philadelphia, PA 19123

**CERTIFICATE OF SERVICE**

      I, Bret Grote, Esq., hereby certify that I caused a true and correct copy of the foregoing Plaintiffs' Memorandum in Opposition to Defendants' Motion in Limine to be electronically filed on January 23, 2025, and thereby served upon all parties entered into the Court's ECF system.


*/s/ Bret Grote*
Legal Director
PA ID No. 317273
bretgrote@alcenter.org
Abolitionist Law Center
990 Spring Garden St., Ste 306
Philadelphia, PA 19123


*Counsel for Plaintiffs*