**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JACOB and JAMES JUNG, as Administrators of the Estate of LOUIS JUNG, JR, | : : : : | No. 2:24-cv-05618-TJS |
| Plaintiff, | : : | |
| v. | : : | **JURY TRIAL DEMANDED** |
| CITY OF PHILADELPHIA; YesCare Corp.; BLANCHE CARNEY, Former Commissioner of Philadelphia Dept. of Prisons; LALITHA TRIVIKRAM; MAUREEN GAY;  MARIESHA APOLLON; BLAIR CABELLOS; GENA FRASIER; WANDA BLOODSAW, | : : : : : : : : : | |
| Defendants. | | |

<u>**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO CITY DEFENDANTS'**</u>
<u>**MOTION *IN LIMINE* TO PRECLUDE THE PRODUCTION OF BLANCHE CARNEY**</u>
<u>**FOR TRIAL**</u>

Defendants seek to preclude the production of Blanche Carney for trial by invoking an ill-defined doctrine developed in a specific administrative legal context, and now frequently applied to non-party government officials facing deposition requests during pretrial discovery. This limited immunity does not apply to Defendant Carney's testimony at trial. The Federal Rules embody a strong preference for live witness testimony that is not addressed by the caselaw on the "*Morgan* doctrine." Even if Defendant Carney could properly invoke the *Morgan* doctrine at this time, her testimony would meet applicable criteria of the "extraordinary circumstances" as articulated in this jurisdiction.

**I.      The "*Morgan* Doctrine"**

"Federal Rule of Civil Procedure 43(a) embodies the federal courts' preference for live trial testimony: 'At trial, the witnesses' testimony must be taken in open court unless a federal statute,

the Federal Rules of Evidence, these rules or other rules adopted by the Supreme Court provide otherwise.'" *Whitlock v. Allstate Fire & Cas. Ins. Co.*, 635 F. Supp. 3d 371, 377 (E.D. Pa. 2022) (*citing* Fed. R. Civ. P. 43(a)). *See also* Fed. R. Civ. P. 43 Advisory Committee Notes (1996 Amd't) ("The importance of presenting live testimony in court cannot be forgotten. The very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling"); *J.D. v. Price*, 619 F. Supp. 3d 523, 526 (W.D. Pa. 2022) ("The plain language of Rule 43 establishes that live testimony in open court is a deeply entrenched default that will only be excused when three factors are met—good cause, compelling circumstances, and appropriate safeguards"). Fed. R. Civ. P. 32(a)(4) provides specific, enumerated circumstances in which deposition testimony may be used in lieu of live testimony, noting that a court must find either that a witness is unavailable or cannot be procured, Fed. R. Civ. P. 32(a)(4)(A)-(D), or that "exceptional circumstances make it desirable – in the interest of justice and with due regard to the importance of live testimony in open court – to permit the deposition to be used." Fed. R. Civ. P. 32(a)(4)(E).

In *United States v. Morgan*, the United States Supreme Court held it improper for the Secretary of Agriculture to be subjected to examination regarding his mental process prior to issuance of an administrative rate-setting order. The Court held that the Secretary's administrative process "has a quality resembling that of a judicial proceeding," and "[s]uch an examination of a judge would be destructive of judicial responsibility." *United States v. Morgan* ("*Morgan IV*"), 313 U.S. 409, 422, 61 S. Ct. 999, 1004 (1941).

*Morgan IV* is the culmination of a string of Supreme Court decisions that track the birth of New Deal era federal administrative state. Throughout *Morgan I*, 298 U.S. 468 (1936), *Morgan II*, 304 U.S. 1 (1938), *Morgan III*, 307 U.S. 183 (1939), and *Morgan IV*, 313 U.S. 409 (1941), the Supreme Court newly articulated principles of due process within administrative proceedings and

traced the contours of appropriate judicial review for federal agency action. Each of these opinions was issued prior to passage of the Administrative Procedure Act in 1946. For a brief scholarly review of the *Morgan* cases' significance for administrative law and an articulation that "*Morgan IV* was one of the critical building blocks for the modern system of agency adjudication" (rather than a blanket admonition not to question "high level government officials"), *see* Richard J. Pierce, *The Collision Between the Constitution of the 1930s and the Constitution of 2020*, Notice & Comment – A blog from the Yale Journal on Regulation and ABA Section of Administrative Law & Regulatory Practice (Dec. 18, 2019), https://www.yalejreg.com/nc/the-collision-between-the-constitution-of-the-1930s-and-the-constitution-of-2020-by-richard-j-pierce-jr/. To read *Morgan IV* within its historical context, then, is to recognize it as an early articulation of principles later enshrined in the APA and bedrock administrative law – that judicial review of administrative action is generally cabined to the administrative record, rather than open discovery. *See SEC v. Chenery Corp.*, 318 U.S. 80 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based"); 5 U.S.C. § 706 ("the court shall review the whole record or those parts of it cited by a party"); *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) (emphasizing requirement of evaluating the 'whole record' compiled by the agency for § 706 judicial review, citing *Morgan* for principle that "inquiry *into the mental processes of administrative decisionmakers* is usually to be avoided" (emphasis added)).

The Third Circuit Court has cited *Morgan* in the administrative law context in which it developed, or to emphasize that judges themselves are immune from discovery. *See N.L.R.B. v. Baldwin Locomotive Works*, 128 F.2d 39, 47 (3d Cir. 1942) (*citing Morgan* for principle that courts cannot "'probe the mental processes' of an administrative officer 'in reaching his conclusions if

he gave the hearing which the law required'"); *N.L.R.B. v. Sun Drug Co.*, 359 F.2d 408, 413 (3d Cir. 1966) (*citing Morgan* for principle that "it would be disrespectful of 'the integrity of the administrative process' 'to probe the mental processes' of the Board"); *Gulf Oil Corp. v. F. P. C.*, 563 F.2d 588, 612 (3d Cir. 1977) (*citing Morgan* for principle that "Members of an agency charged by Congress with adjudicatory functions 'are assumed to be men of conscience and intellectual discipline capable of judging a particular controversy fairly on the basis of its own circumstances'"); *Grant v. Shalala*, 989 F.2d 1332, 1344 (3d Cir. 1993) (*citing Morgan* for principle that "[i]t has long been recognized that attempts to probe the thought and decision making processes of judges and administrators are generally improper," and holding that district court could not hold a trial on alleged bias of Administrative Law Judge); *Batiz v. Brown*, 676 F. App'x 138, 143 (3d Cir. 2017) (*citing Morgan* for principle that "any direct evidence from the municipal court judge was not discoverable" because "judges are not subject to examination at trial").

In other circuits and various district courts, *Morgan* has metastasized into a broad-ranging reticence to subject any "high ranking government official" to questioning. The out-of-circuit cases cited by the City Defendants vary in their reasoning and application – though it should be noted that most arise in the administrative law context, similar to *Morgan* itself. In another administrative case, the D.C. Circuit rephrased the "rule enunciated by the Supreme Court" in *Morgan* broadly – that "top executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions." *Simplex Time Recorder Co. v. Sec'y of Lab.*, 766 F.2d 575, 586 (D.C. Cir. 1985) (affirming order of Occupational Safety and Health Review Commission, and finding that administrative law judge did not err in refusing to allow appellant company to call Secretary of Labor). This articulation was repeated in other administrative law contexts. *See In re Off. of Inspector Gen., R.R. Ret. Bd.*, 933 F.2d 276, 278 (5th

Cir. 1991) (allowing appellant company a "limited, measured amount of discovery in [an] enforcement action" regarding Inspector General's planned audit of railroad, mindful of the principles in *Simplex* and *Morgan*); *In re U.S. (Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993) (quashing subpoena for Secretary of Food and Drug Administration when defendants in FDA violation action claimed selective prosecution, and paraphrasing *Morgan* broadly as "the Supreme Court has indicated that the practice of calling high officials as witnesses should be discouraged"). The First Circuit then expanded the broad rephrasing from *Simplex* to a civil rights dispute adjacent to the administrative law context, holding a district court had not abused its discretion in barring the deposition of the Mayor of Boston in a § 1983 case claiming the Mayor had ordered an illegal inspection of the plaintiffs' property. *Bogan v. City of Bos.*, 489 F.3d 417, 423 (1st Cir. 2007).

In its application within district courts of the Third Circuit, the "*Morgan* doctrine" is now an ill-defined but circumscribed immunity from *deposition*, not from appearing at trial. Eastern District of Pennsylvania districts courts have incorporated out-of-circuit applications of *Morgan* as a three-prong test, corollary to Fed. R. Civ. P. 26(c), for determining when a "high-ranking government official" may be *deposed*. This deposition-specific test consists of three prongs: the party "seeking the deposition of a high ranking government official must demonstrate" (1) "that his testimony is likely to lead to the discovery of admissible evidence," (2) the testimony "is essential to that party's case", and (3) "that this evidence is not available through any alternate source or less burdensome means." *Hankins v. City of Philadelphia*, No. CIV.A. 95-1449, 1996 WL 524334, at *1 (E.D. Pa. Sept. 12, 1996) (*citing In re U.S. (Kessler)*, 985 F.2d at 512-13, barring deposition of non-party, acting Mayor of Philadelphia under above deposition-specific test, and articulating rule that "[h]igh ranking government officials are generally entitled to limited immunity *from being deposed* concerning matters about which they have *no unique personal*

*knowledge*" (emphasis added)); *Pierce v. City of Philadelphia*, 391 F. Supp. 3d 419, 436 (E.D. Pa. 2019) (barring deposition of non-party, acting Mayor of Philadelphia under same test (internal citations omitted)); *Brennan v. City of Philadelphia*, 388 F. Supp. 3d 516, 520 (E.D. Pa. 2019) (barring oral deposition of acting Mayor of Philadelphia under same test); *Robinson v. City of Philadelphia*, No. CIV.A. 04-3948, 2006 WL 1147250, at *2 (E.D. Pa. Apr. 26, 2006) (barring deposition of acting Mayor of Philadelphia under same test).

It thus would appear to be a consensus view that an acting Mayor of Philadelphia is a "high ranking government official." Beyond that point, little is settled as to who in particular can qualify, or why. *See Johnson v. Att'y Gen. of State of New Jersey*, No. CIV.A. 12-4850 PGS, 2015 WL 4915611, at *3 (D.N.J. Aug. 18, 2015) ("Whether an individual qualifies as a high-ranking government official is decided on a case by case basis"); *United States v. Sensient Colors, Inc*., 649 F. Supp. 2d 309, 316 (D.N.J. 2009) ("the Third Circuit has yet to speak on this issue"); *Fla. v. United States*, 625 F. Supp. 3d 1242, 1246 (N.D. Fla. 2022) ("the threshold question is whether the official seeking to avoid a deposition is 'sufficiently "high-ranking"' … The official bears the burden of making that showing," *citing Estate of Levingston v. Cnty. of Kern*, 320 F.R.D. 520, 525 (E.D. Cal. 2017), *Odom v. Roberts*, 337 F.R.D. 359, 364 (N.D. Fla. 2020)). Some courts have recognized the obvious fact that officials who are no longer in office are *ipso facto* not high-ranking officials any longer. *Holt v. Pennsylvania,* No. 1:18-CV-01272, 2020 WL 435752, at *3 (M.D. Pa. Jan. 28, 2020) (finding that former state police commissioners "are no longer high-ranking officials as they no longer serve as commissioner or as the head of any other department," and the "need to protect them from the burdens of being deposed, as defined by *Morgan*, no longer exists"); *Byrd v. District of Columbia*, 259 F.R.D. 1, 8 (D.D.C. 2009) (finding that "it is the current position, and not any former position, that is evaluated" and that parties seeking protection had not demonstrated

6

why positions of Deputy Mayor and General Counsel for a District Department could qualify at all).

It bears mentioning that Defendant Carney, while then acting Commissioner of the Philadelphia Department of Prisons, testified at the trial in *Pierce* and does not appear to have objected on *Morgan* grounds at that time. *See* 391 F. Supp. at 430, 436. Defendant Carney was recently granted a protective order from a deposition on "*Morgan* immunity" grounds in *Simmons v. City of Philadelphia*, 22-cv-01644-JMG, ECF Doc. No. 94, 1-2, n.1. In *Simmons*, Judge Gallagher did not make a specific finding that a Commissioner of the PDP was "high ranking," and did not devote analysis to the meandering development of the "*Morgan* doctrine" as it has strayed from its original context of bedrock administrative law. He focused narrowly on the contested issue of whether *former* "high ranking government officials" could be protected from *depositions*, and was persuaded by a "general trend of district courts … in determining that the *Morgan* doctrine continues to shield former high-ranking officials from depositions absent extraordinary circumstances" in the absence of "any controlling Third Circuit precedent." *Id.* Judge Gallagher applied the same three-prong, deposition-specific test as other Eastern District courts. *Id.*

## II.    Argument

Defendant Carney should not be permitted to evade the Federal Rules' strong preference for live trial testimony by recourse to the ill-defined *Morgan* doctrine. The instant case differs dramatically from either the administrative-law disputes constituting the bulk of out-of-circuit *Morgan* doctrine precedent, including *Morgan* itself, or the deposition-specific test applied by district courts in this jurisdiction. The legal standards for which Defendant Carney's testimony will be relevant at trial are highly distinguishable from the above, extant applications of the "*Morgan*

doctrine." The doctrine simply does not apply to an individual, named party to a suit, charged with deliberate indifference in violation of the Constitution, in a civil jury trial. This different context sets production of Defendant Carney for trial apart from out-of-circuit applications of *Morgan*; alternatively, it also establishes the "extraordinary circumstances" as articulated in the Eastern District of Pennsylvania's deposition-specific test. The strong preference for live testimony embodied in the Federal Rules should be honored here. Otherwise, this court would have to find that the opaque contours of the *Morgan* doctrine establish the "exceptional circumstances" contemplated by Fed. R. Civ. P. 32(a)(4)(E) that permit use of Defendant Carney's already-conducted deposition as the jury evaluates her liability. It defies logic and lacks authority in the case law for a defendant to give live deposition testimony while being excused from providing live trial testimony, especially when such an exemption is based on holding a government position that she no longer holds.

Defendant Carney is being sued in her individual capacity as a supervisor. Defendant Carney's individual liability as a supervisory defendant does not rest solely on her interactions with or knowledge of Mr. Jung, but on her knowledge of patterns of inadequate medical care or access to care and failure to respond. *Barkes v. First Corr. Med., Inc*., 766 F.3d 307, 324 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, 575 U.S. 822, 135 S. Ct. 2042 (2015) ("A high-ranking prison official can expose an inmate to danger by failing to correct serious known deficiencies in the provision of medical care to the inmate population. That the official had no specific knowledge of any particular inmate or the failure of subordinate officials to treat that inmate's serious medical condition is irrelevant"). Questions of Defendant Carney's personal knowledge of serious deficiencies within the Philadelphia Department of Prisons' diabetes care and emergency medical assistance, as well as those supervisory steps she failed to consider or

failed to take, are core to her liability in this case. Defendant Carney will be questioned as to her personal review of death-in-custody investigations displaying a striking pattern of correctional staff's failure to notice or intervene in emergency medical situations, similar to the facts of Mr. Jung's case. Defendant Carney will be questioned as to, *inter alia*, her personal review of a medical audit drawing her attention to a failure to obtain or document proper refusals of life-saving diabetic care. Defendant Carney will testify as to the supervisory steps she took and those that she failed to take in response to these warning signs and other relevant facts.

These are issues of individualized, personal knowledge and acts or omissions that are "essential to [Mr. Jung's] case" and "not available through any alternative source." *Pierce*, 391 F. Supp. 3d at 436. This is not a matter in which Defendant Carney has "no unique personal knowledge," *Hankins*, 1996 WL 524334 at *1; it is a matter in which her personal involvement is critical to disposition of the claims. *See United States v. Sensient Colors, Inc.*, 649 F. Supp. 2d 309, 317 (D.N.J. 2009) (*citing Sanstrom v. Rosa*, No. 93-7146, 1996 WL 469589 (S.D.N.Y. Aug. 16, 1996), where "it was 'critical' that the plaintiffs prove [deponent's] 'personal involvement in order to recover damages under 42 U.S.C. § 1983'")). The well-recognized constitutional framework of knowledge and failure to act is highly distinguishable from the specifically protected mental processes leading to an administrative decision like rate-setting, as in *Morgan*, or administrative enforcement decisions, as in *Simplex*, 766 F.2d at 586; *R.R. Ret. Bd.*, 933 F.2d at 278; or *Kessler*, 985 F.2d at 512. And trial is not a deposition, which is the context in which *Morgan* has been applied in district courts here.

The jury must evaluate Defendant Carney's knowledge, acts, and omissions. In the absence of live testimony, this could only be accomplished through admission of her deposition testimony. If Defendants' motion is granted, this court will be required to find not only that the vague *Morgan*

9

doctrine, defined in the Eastern District only with reference to depositions, is applicable, but that it constitutes the "exceptional circumstances" of Fed. R. Civ. P. 32(4)(A)(E). Defendants have not attempted to argue that this standard is met – and they could not, as Defendant Carney has belatedly raised a "*Morgan* doctrine" argument after failing to object to her deposition notice. The deposition-specific test distilled in this jurisdiction is inapposite as applied to live testimony at a jury trial. The broader "*Morgan* doctrine" was developed in the context of specifically protected administrative mental processes. It should not be allowed to bloat into a blanket testimonial immunity for municipal officials who violate the Constitution, particularly where their personal knowledge is core to Plaintiffs' proof of liability, and especially when they are no longer employed as a municipal official.

### III.    Conclusion

For the foregoing reasons, Plaintiffs respectfully contend that Defendants' Motion *in Limine* to Preclude Production of Blanche Carney for Trial should be denied.

Dated: January 23, 2026

Respectfully submitted,

*/s/ Bret Grote*
Legal Director
PA ID No. 317273
bretgrote@alcenter.org
*/s/ Rupalee Rashatwar*
Staff Attorney
PA ID No. 331085
*/s/ Margaret Hu*
Staff Attorney
PA ID No. 334438
*/s/ Lolo Salsbury Serrano*
Legal Fellow
PA ID No. 338184
Abolitionist Law Center
990 Spring Garden St., Ste 306
Philadelphia, PA 19123

## <u>CERTIFICATE OF SERVICE</u>

I, Bret Grote, Esq., hereby certify that I caused a true and correct copy of the foregoing

Plaintiffs' Memorandum in Opposition to Defendants' Motion in Limine to be electronically filed

on January 23, 2025, and thereby served upon all parties entered into the Court's ECF system.


*/s/ Bret Grote*
Legal Director
PA ID No. 317273
bretgrote@alcenter.org
Abolitionist Law Center
990 Spring Garden St., Ste 306
Philadelphia, PA 19123


*Counsel for Plaintiffs*