IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACOB and JAMES JUNG, as Administrators of the Estate of LOUIS JUNG, JR, | : <br> : <br> : No. 2:24-cv-05618-TJS <br> : |
| Plaintiff, | : <br> : |
| v. | : **JURY TRIAL DEMANDED** <br> : |
| CITY OF PHILADELPHIA; YesCare Corp.; BLANCHE CARNEY, Former Commissioner of Philadelphia Dept. of Prisons; LALITHA TRIVIKRAM; MAUREEN GAY; MARIESHA APOLLON; BLAIR CABELLOS; GENA FRASIER; WANDA BLOODSAW, | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO CITY DEFENDANTS' MOTION *IN LIMINE* TO BIFURCATE *MONELL* TESTIMONY**

City Defendants seek to bifurcate trial into one proceeding for individual defendants and a subsequent proceeding on *Monell* liability. Their motion does not address the presence of individual supervisory defendant Blanche Carney, or the evidence that will be required to prove individual claims against PDP's medical contractor YesCare. Because the evidence undergirding individual claims and claims for municipal liability is deeply interwoven in this case, bifurcation would be inconvenient and inefficient. Standard methods for cabining the use of evidence, such as limiting instructions to the jury, are sufficient to address Defendants' concerns about prejudice.

I. **Legal Standard**

"For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42. The decision to bifurcate "is a matter to be decided on a case-by-case

1

basis and must be subject to an informed discretion by the trial judge in each instance." *Lis v. Robert Packer Hosp.*, 579 F.2d 819, 824 (3d Cir. 1978). "[B]efore a decision to bifurcate may be made, the trial court, in the exercise of its discretion, must weigh the various considerations of convenience, prejudice to the parties, expedition, and economy of resources." *Emerick v. U.S. Suzuki Motor Corp.*, 750 F.2d 19, 22 (3d Cir. 1984). The moving party bears the burden of showing that bifurcation is warranted. *Yellowbird Bus Co. v. Lexington Ins. Co.*, No. CIV.A. 09-5835, 2010 WL 2766987, at *8 (E.D. Pa. July 12, 2010), aff'd, 450 F. App'x 213 (3d Cir. 2011).

II.     Argument

       a. **Because the Claims are Interwoven, Bifurcation Would Not Be Convenient, Expedite Trial, or Preserve Judicial Economy**

Bifurcation in this instance would only serve to duplicate witnesses, extend trial, and waste judicial resources. Initially, City Defendants assume that proof of an underlying constitutional violation is a necessary prerequisite to the determination of all *Monell* claims, such that a verdict for individual defendants would obviate the need for evidence on municipal liability. This is incorrect. A "municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an *inconsistent* verdict." *Mervilus v. Union Cnty.*, 73 F.4th 185, 196–97 (3d Cir. 2023) (emphasis in original). For example, "it would be consistent for the jury to find [an individual defendant] not liable because he lacked bad faith … while simultaneously holding the County liable for failing to train or supervise him." *Id. See also Crosland v. City of Philadelphia*, 676 F. Supp. 3d 364, 381-383 (E.D. Pa. 2023) (distinguishing individual and municipal claims as to applicability of qualified immunity, and collecting cases that allow municipal liability claims to proceed irrespective of individual liability).

Defendant Frasier and Bloodsaw's individual liability does not necessarily resolve the question of the City of Philadelphia's liability, as a matter of law. As discussed below, Plaintiffs

have also brought *Monell* claims tied to the failures of YesCare. And while highly unlikely given the evidence against Defendants Frasier and Bloodsaw, the jury could theoretically find that Mr. Jung's serious medical need was disregarded but that individual defendants lacked the requisite mental state, or that their collective actions amounted to a constitutional injury but not find liability for each defendant acting alone. *See Mervilus*, 73 F.4th at 196 (*citing Speer v. City of Wynne*, 276 F.3d 980, 985–86 (8th Cir. 2002) ("[S]ituations may arise where the combined actions of multiple officials or employees may give rise to a constitutional violation, supporting municipal liability, but where no one individual's actions are sufficient to establish personal liability for the violation.")).

Even if resolution of claims against Defendants Frasier and Bloodsaw were dispositive of the City's liability, bifurcation would not be called for. While bifurcation may be "*appropriate* where litigation of one issue … may eliminate the need to litigate a second issue," "bifurcation is certainly not *required* in these circumstances, especially when … the 'issues are so closely interwoven that the plaintiff would have to present the same evidence twice in separate trials.'" *In re Bayside Prison Litig.*, 157 F. App'x 545, 548 (3d Cir. 2005) (emphasis in original) (*citing* 20 Moore's Federal Practice and Procedure § 20.03[4][c]); *see also Stadler v. Abrams*, 785 F. App'x 66, 68 (3d Cir. 2019) ("The district court correctly realized that bifurcation here would have served no purpose because of the intertwining nature of the evidence of individual and municipal liability").

Beyond Defendants Frasier and Bloodsaw, Plaintiffs also bring a municipal failure to supervise claim based on the City of Philadelphia's failure to supervise medical contractor YesCare. *See Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 326-27 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, 575 U.S. 822, 135 S. Ct. 2042 (2015) (rejecting notion that

"there is a difference of constitutional import" between employed correctional staff and private medical contractors; "No reasonable prison administrator could believe that hiring a private contractor to provide a constitutionally required service would allow them to abdicate their constitutional supervisory duties"). Individual liability for YesCare as an entity under Section 1983 requires proof of its own customs, policies, practices, or failure to train and supervise. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003). The City is also subject to liability for its failure to supervise YesCare's provision of medical care, as provision of healthcare is a nondelegable duty of county jails. *Ponzini v. Monroe Cnty.*, No. 3:11-CV-00413, 2015 WL 5123720, at *11 (M.D. Pa. Aug. 31, 2015); *Est. of Borroto v. CFG Health Sys., LLC*, 751 F. Supp. 3d 443, 473 (D.N.J. 2024) (collecting cases). The evidence required to try YesCare's corporate liability under § 1983 would overlap significantly with evidence of the City's failure to supervise YesCare and tolerance of YesCare's patterns and practices. Bifurcation would duplicate this evidence unnecessarily.

Critically, City Defendants do not address the evidence required to make Plaintiffs' case for individual liability against Defendant Carney. As Defendants acknowledge in their motion *in limine* to preclude her production at trial, Defendant Carney is being sued in her individual capacity. Dkt. 160 at 5. Defendant Carney's individual liability as a supervisory defendant rests on a showing that she, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citing *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Individual defendants may also be liable in their supervisory capacity if they, "as the person in charge, had knowledge of and acquiesced in [their] subordinates' violations." *Id.* (citing *Baker v. Monroe Township*, 50 F.3d 1186, 1190-91 (3d. Cir.

4

1995)). Defendant Carney's individual liability as a supervisory defendant does not rest solely on her interactions with or knowledge of Mr. Jung, but on her knowledge of patterns of inadequate medical care or access to care and failure to respond. *Barkes*, 766 F.3d at 324 ("A high-ranking prison official can expose an inmate to danger by failing to correct serious known deficiencies in the provision of medical care to the inmate population. That the official had no specific knowledge of any particular inmate or the failure of subordinate officials to treat that inmate's serious medical condition is irrelevant"). As final policymaker for relevant practices within the Philadelphia Department of Prisons – *inter* alia, she signed the contract with Corizon/YesCare, she reviewed all in-custody death investigations and had the power to enact policy changes in response to patterns of deaths, she supervised and had the power to alter PDP's access-to-care policy – Defendant Carney's acts and omissions are also tethered to municipal liability under *Monell*. *See, e.g., Carter v. City of Philadelphia,* 181 F.3d 339, 357 (3d Cir. 1999) (deliberate indifference under "failure to" framework requiring proof that "municipal policymakers know that employees will confront a particular situation"); *Chambers v. City of Philadelphia*, No. CV 23-0137, 2024 WL 870574, at *4, *8 (E.D. Pa. Feb. 29, 2024) (discussing Commissioner Carney as final policymaker for purposes of custom-based municipal liability, where "final policymaker(s) knew that similar unlawful conduct had occurred in the past").

As a practical matter, there is simply no way to try this case against Defendant Carney as an individual, supervisory defendant without proving the incident involving Mr. Jung, alongside other proof concerning reports of deaths and medical emergencies that came to Defendant Carney's attention and to which she failed properly to react. The same proof of deaths and emergencies and failure to implement supervisory steps relevant to Defendant Carney's individual liability overlaps significantly with proof required for Plaintiffs' *Monell* claims. This is precisely the kind of

5

"interwoven" evidentiary issue that justified rejection of bifurcated trial in *Bayside.* 157 F. App'x at 548.

Bifurcation of trial between individual defendants and *Monell* claims would require significant duplication of testimony. Defendant Frasier and Bloodsaw's actions on November 5, 2023 are relevant to *Monell* claims as part of the custom or practice and evidence of a failure to supervise; they would have to be called twice. Defendant Carney's knowledge of patterns within and supervision of the Philadelphia Department of Prisons forms the crux of her individual liability and is highly relevant to the City's *Monell* liability; she would also have to be called twice. The jury's evaluation of YesCare's patterns, practices, and failures to supervise or train would be presented for YesCare's own liability, and then duplicated with additional testimony as to the City's failure to take supervisory steps. Of Plaintiffs' experts, Dr. Homer Venters at a minimum would have to be called twice, to testify as to systemic failures within YesCare and then as to the City's failure to implement appropriate oversight, generating considerable expense. Bifurcation inherently requires multiple sets of opening and closing statements, multiple sets of jury instructions, and duplication of deliberation time. The proposed bifurcation serves neither convenience, efficiency, nor judicial economy.

b. **Denial of Bifurcation Will Not Unduly Prejudice Individual Defendants.**

Defendants' concerns about prejudice can be easily alleviated through standard methods short of bifurcation. Prejudice does not arise "just because all evidence adduced is not germane to all counts against each defendant." *Bayside*, 157 F. App'x at 548 (*citing United States v. Console*, 13 F.3d 641, 655 (3d Cir. 1993)). Juries are regularly presented with evidence of patterns or practices alongside evidence of individuals defendants' acts or omissions, and properly given limiting instructions to consider evidence against one party but not the others. *Id.* When such a

6

limiting instruction is given to the jury, '[courts] presume that the jury follows such instructions, and regard such instructions as pervasive evidence that refusals to sever did not cause undue prejudice.'" *Id.* (*citing United States v. Urban*, 404 F.3d 754, 776 (3d Cir. 2005)). Prejudice should not be found in a joint trial simply because some evidence pertains to one defendant and not another; rather, "some exacerbating circumstances, such as the jury's inability to 'compartmentalize' the evidence, are required." *Urban*, 404 F.3d at 776 (internal citation omitted).

Courts regularly find that individual defendants are not prejudiced by the denial of requested bifurcation in cases involving both individual and municipal liability, given appropriate limiting instructions. *Bayside*, 157 F. App'x at 548 ("Here, the District Judge expressly directed the jury to compartmentalize the evidence [including other videotapes of excessive force used against other inmates], and there is no reason to believe that it was unable or unwilling to do so"); *Carter v. City of Philadelphia*, No. CIV. A. 97-CV-4499, 2000 WL 1368010, at *1 (E.D. Pa. Sept. 12, 2000) ("The Court finds Defendants' argument that prejudice would result from a single trial to be unpersuasive. Rather, any potential prejudice that might exist can be adequately addressed by an appropriate jury instruction"); *Kelley v. Reyes*, No. 2:19-CV-17911 (WJM), 2025 WL 3484931, at *2-*4 (D.N.J. Dec. 4, 2025) (declining bifurcation of individual liability and *Monell* and noting the Third Circuit's embrace of limiting instructions); *D'Arrigo v. Gloucester City*, No. CIV. 04-5967 (JBS), 2007 WL 4440222, at *4 (D.N.J. Dec. 17, 2007) ("It is not unusual in § 1983 cases for plaintiffs to pursue claims against individual defendants while at the same time pursuing a Monell claim against a municipality. This case presents no unusual or special circumstances that justify bifurcation"); *Palmer v. Nassan*, No. 10CV0922, 2011 WL 195532, at *2 (W.D. Pa. Jan. 20, 2011) (citing *Bayside*'s analysis of limiting instructions).

Defendants have made no showing of exacerbating circumstances that would render a jury unable to compartmentalize the evidence given an appropriate instruction. *Bayside*, 157 F. App'x at 548. While matters of corrections may be "hot topics in recent news and media," Dkt. 156 at 9, this context will be inescapable whether individual correctional staff defendants are tried separately or alongside the City. Any concerns about the prejudice to individual defendants from having their case tried alongside *Monell* claims can be fully addressed through instructions to the jury. Bifurcation would not be "convenient," would not "expedite or economize" trial, and any prejudice can be addressed through standard means short of bifurcation. Fed. R. Civ. P. 42.

### III.   Conclusion

For the foregoing reasons, Plaintiffs respectfully contend that Defendants' Motion *in Limine* to Bifurcate *Monell* Testimony should be denied.

Dated: January 23, 2026

                                                         Respectfully submitted,

                                                         <u>/s/ Bret Grote</u>
Legal Director
PA ID No. 317273
bretgrote@alcenter.org
<u>/s/ Rupalee Rashatwar</u>
Staff Attorney
PA ID No. 331085
<u>/s/ Margaret Hu</u>
Staff Attorney
PA ID No. 334438
<u>/s/ Lolo Salsbury Serrano</u>
Legal Fellow
PA ID No. 338184
Abolitionist Law Center
990 Spring Garden St., Ste 306
Philadelphia, PA 19123

**CERTIFICATE OF SERVICE**

I, Bret Grote, Esq., hereby certify that I caused a true and correct copy of the foregoing Plaintiffs' Memorandum in Opposition to Defendants' Motion in Limine to be electronically filed on January 23, 2025, and thereby served upon all parties entered into the Court's ECF system.

*/s/ Bret Grote*
Legal Director
PA ID No. 317273
bretgrote@alcenter.org
Abolitionist Law Center
990 Spring Garden St., Ste 306
Philadelphia, PA 19123

*Counsel for Plaintiffs*