## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| JACOB and JAMES JUNG, as | : | |
| Administrators of the Estate of LOUIS | : | |
| JUNG, JR, | : | No. 2:24-cv-05618-TJS |
|  | : | |
| Plaintiffs, | : | |
|  | : | |
| v. | : | |
|  | : | |
| CITY OF PHILADELPHIA, et al., | : | |
|  | : | |
| Defendants. | : | |

### BRIEF IN SUPPORT OF PETITION FOR FEES AND COSTS

Plaintiffs, through undersigned counsel, respectfully move this Honorable Court for an award of the attorneys' fees and costs to which they are entitled pursuant to 42 U.S.C. § 1988.

### I.    Facts

Plaintiffs Jacob and James Jung brought this case as Administrators of the Estate of Louis Jung, Jr [hereafter "Mr. Jung"], their father, who died of diabetic ketoacidosis while incarcerated in the Curran-Fromhold Correctional Facility (CFCF) within the Philadelphia Department of Prisons. This lawsuit was initiated on October 23, 2024 by the filing of a civil rights action pursuant to 42 U.S.C. § 1983. Dkt. 1. Plaintiffs' claims were based on failures to provide proper medical care and disability accommodations to Mr. Jung.

Constitutional medical care claims were brought under the Fourteenth Amendment to the U.S. Constitution against the City of Philadelphia, YesCare Corporation [hereafter "YesCare"], and against defendants former Commissioner of the Philadelphia Department of Prisons Blanche Carney, Dr. Lalitha Trivikram, Nurse Practitioner Maureen Gay, and John Does. Pennsylvania state law medical malpractice claims were brought against YesCare, Trivikram, and Gay. Americans with Disabilities Act and Rehabilitation Act claims were brought against the City of Philadelphia. Claims regarding

failure to train or supervise staff in providing medical care or access to care were brought against the City of Philadelphia and YesCare. Custom claims relating to inadequate medical care and inadequate emergency response were brought against the City of Philadelphia. Wrongful Death and Survival Action claims were brought against all defendants. Dkt. 1 at ¶¶ 151-181.

Following initial discovery, Plaintiffs filed a First Amended Complaint on March 14, 2025. Dkt. 25. The First Amended Complaint removed the Doe defendants and added additional defendants, including Correctional Officer Gena Frasier and Correctional Lieutenant Wanda Bloodsaw. *Id*. at ¶¶ 9-12. These defendants were sued for violations of the Fourteenth Amendment and under the Wrongful Death and Survival Action counts. *Id*. at ¶¶ 161-164, 182-192.

Plaintiffs engaged in extensive fact discovery and produced reports from three expert witnesses to support Plaintiffs' allegations that the City Defendants had violated Mr. Jung's constitutional rights. Plaintiffs litigated numerous dispositive motions and engaged in extensive pretrial motions practice and negotiation. Plaintiffs ultimately held a four-day jury trial in which they called three expert witnesses and ten fact witnesses. They secured a verdict against the City, Commissioner Carney, and Lieutenant Bloodsaw, with $1,500,000 in compensatory damages and $170,000 in punitive damages against Bloodsaw. As prevailing parties in this litigation, Plaintiffs are entitled to reasonable attorneys' fees and costs.

## II.    <u>Law & Argument</u>

### A.    *Plaintiffs are entitled to receive attorneys' fees and expenses pursuant to 42 U.S.C. § 1988*

It is well established that attorneys' fees, costs, and expenses may be awarded in federal litigation when authorized by statute. 42 U.S.C. § 1988(b); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240 (1975). Even though Section 1988 "refers to a district court's discretion, it is well settled that a prevailing plaintiff should recover an award of attorney's fees absent special

circumstances." *Truesdell v. Phila. Housing Auth.*, 290 F.3d 159, 163 (3d Cir. 2002).

42 U.S.C. § 1988 provides that a court may award the "prevailing party" in a Section 1983 action "reasonable" costs and attorney fees. To determine whether a party is the "prevailing party," a court must ask whether: (1) there is a material alteration of the legal relationship of the parties; and (2) whether that material alteration is judicially sanctioned. *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604-05 (2001).

The first factor requires that the plaintiff "receive at least some relief on the merits of his claim before he can be said to prevail." *Raab v. City of Ocean City*, 833 F.3d 286, 293 (3d Cir. 2016) (quoting *Hewitt v. Helms,* 482 U.S. 755, 760 (1987)). However, "this inquiry does not turn on the magnitude of the relief obtained." *Id.* (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).

A plaintiff need not win on every claim asserted to recover full fees. Some cases may involve "different claims for relief that are based on different facts and legal theories," *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); others, like this one, "involve a common core of facts or will be based on related legal theories." *Id.* at 435. The Supreme Court has affirmed an award of fees in which the District Court found it "inappropriate to adjust respondents' fee award downward to account for the fact that respondents had prevailed only on some of their claims, and against only some of the defendants," because the claims were based on a "common core of facts." *City of Riverside v. Rivera*, 477 U.S. 561, 570 (1986); *see also Dennis v. Jastrzembski,* No. CV 18-2689, 2025 WL 1582452, at *2 (E.D. Pa. June 4, 2025) (finding plaintiff was prevailing party after successful jury trial against two detectives, when municipal liability claim had been dismissed and jury did not find detectives liable under one of plaintiff's legal theories). Parties are considered "prevailing parties" even if they obtain only nominal damages. *Farrar v. Hobby*, 506 U.S. 103, 112 (1992).

In this case, Plaintiffs secured jury verdicts against three of four defendants – Lieutenant Bloodsaw, Commissioner Carney, and the City of Philadelphia. While Correctional Officer Frasier

was ultimately held not liable, the claims against her related to a core of facts common to the other defendants. *Rivera*, 477 U.S. at 570. These included the City's customs of deficient medical care and failures to respond to medical emergencies, and the series of events on Mr. Jung's final day alive, November 5, 2023, that aligned with these customs and ended with him locked in his cell to die. While Americans with Disabilities Act claims were dismissed at the summary judgment stage, these claims also stemmed from a core set of facts common to Mr. Jung's diabetes care from December 2021 through November of 2023. Plaintiffs successfully pursued alternative *Monell* theories, including a claim based on failure to supervise that same diabetes care. Plaintiffs received ample relief on the merits. *Raab*, 833 F.2d at 293.

The second factor concerns whether the "material alteration" is judicially sanctioned. *Raab*, 833 F.3d at 294. That a jury verdict finding liability and awarding of damages constitutes a judicially sanctioned material alteration in the parties' relationship is beyond dispute. *See Farrar*, 506 U.S. at 111 (listing "an enforceable judgment" that "directly benefit[s] him at the time of the judgment or settlement" as a material alteration); *Raab*, 833 F.3d at 604 (*citing Buckhannon,* 532 U.S. at 604 for principle that "enforceable judgments on the merits" meet the standard of a judicially sanctioned material alteration); *Victory v. Berks Cnty.*, 452 F. Supp. 3d 185 (E.D. Pa. 2020) (no dispute as to whether plaintiffs who secured favorable jury verdict were prevailing parties).

Plaintiffs secured an enforceable award of $1,500,000 in compensatory damages and $170,000 in punitive damages. This enforceable judgment is a judicially sanctioned, material alteration in the parties' relationship under *Farrar*, 506 U.S. 103, *Buckhannon*, 532 U.S. 598, and *Raab*, 833 F.3d 286. Plaintiffs meet both prongs of the *Buckhannon* test. They are prevailing parties under Section 1988. Because Plaintiffs are the prevailing parties, they are entitled to reasonable attorneys' fees. As explained below, the fees sought by Plaintiffs are reasonable.

**B.  *The fees sought by Plaintiffs are reasonable.***

When awarding attorneys' fees and costs, courts within the Third Circuit use the "lodestar" method. See *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001). In applying this method, the Court calculates the product of the hours reasonably expended and the  applicable hourly rate for the legal services. *Pub. Interest Research Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179 (3d Cir. 1995). The Court has discretion to adjust the fee for a variety of reasons, including the result obtained by the prevailing party. *Hensley*, 461 U.S. 424; *Perdue v. Winn*, 559 U.S. 542, 554 (2010). Indeed, the U.S. Supreme Court has held that "[w]here a Plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435.

The party seeking fees must submit evidence supporting the hours worked and the rates claimed.  Attached as Ex. 1 is a summary of the fees and costs incurred, including rates charged and time spent. Supporting documentation is included in the other exhibits, as outlined below.

1.    *The Rates Charged Are Reasonable*

The "starting point in determining a reasonable hourly rate is the attorneys' usual billing rate. . . " *Windall*, 51 F.3d at 1185. "The general rule is that a reasonable hourly rate is calculated according to the prevailing market rates in the community." *Washington v. Phila. Cty. Ct. of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996). "The court 'should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably  comparable skill, experience, and reputation.'" *Loughner v. Univ. of Pittsburgh,* 260 F.3d 173, 180 (3d Cir. 2001) (quoting *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)).

This court has discretion to adjust the fee for a variety of reasons, including the result obtained by the prevailing party. *Hensley*, 461 U.S. at 434 ("There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results

obtained.'"). An upward adjustment is also appropriate "where the method used in determining hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value, as demonstrated in part during the litigation." *Perdue*, 559 U.S. at 554-55.

Courts in the Eastern District of Pennsylvania regularly award fees based on the rate schedule of Community Legal Services of Philadelphia. *Huber v. Simon's Agency, Inc.*, No. CV 19-1424, 2025 WL 1710045, at *5 (E.D. Pa. June 18, 2025); *Weirbach v. Cellular Connection*, LLC, No. 5:19-CV-05310-JDW, 2020 WL 6581498, at *7 (E.D. Pa. Nov. 10, 2020); *Rainey v. Philadelphia Housing Auth.*, 832 F.Supp. 127, 129 (E.D. Pa.1993) (citing *Swaayze v. Philadelphia Housing Auth.*, No. 91–2982, 1992 WL 81598, at *2 (E.D. Pa. Apr. 16, 1992)). This method has been approved by the Third Circuit. *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001). The CLS rate schedule, as of January 19, 2023 (last accessed March 5, 2025; updated rates have not been posted), is as follows:

| Experience range | Hourly rate range |
|---|---|
| Attorneys 0-2 years | $235-260 |
| Attorneys 2-5 years | $265-315 |
| Attorneys 6-10 years | $320-415 |
| Attorneys 11-15 years | $420-525 |
| Attorneys 16-20 years | $535-625 |
| Attorneys 21-25 years | $630-715 |
| Attorneys more than 25 years | $735-850 |
| Paralegal 1-10 years | $190-240 |

https://clsphila.org/about-community-legal-services/attorney-fees/, also attached as Ex. 2.

Eastern District courts adjust the CLS fee schedule rates upwards to account for inflation, often by a five percent annual rate. See, e.g., *Huber v. Simon's Agency, Inc.*, No. CV 19-1424, 2025 WL

1710045, at *5 (E.D. Pa. June 18, 2025) (adjusting hourly rates by five percent annually); *Donofrio v. IKEA US Retail, LLC*, No. CV 18-599, 2024 WL 3511614, at *3 (E.D. Pa. July 23, 2024); *Ismail v. IHI Power Servs. Corp.*, No. CV 20-4801, 2023 WL 3689608, at *4 (E.D. Pa. May 25, 2023) (same); *Earley v. JMK Associates*, No. 18-CV-760, 2020 1875535, at *2 (E.D. Pa. Apr. 15, 2020) (same).

The CLS rate reflects only years of experience. Eastern District courts often depart from this base fee schedule in light of other factors. The "fee schedule does not take into account the specialized skills and advanced degrees the attorneys bring to their practice, their experience in the particular field of special education law, the size of the law firm, the level of work performed, nor the positions of counsel." *Damian J. v. Sch. Dist. of Philadelphia*, No. CIV.A. 06-3866, 2008 WL 1815302, at *2 (E.D. Pa. Apr. 22, 2008), aff'd, 358 F. App'x 333 (3d Cir. 2009). *See also Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (assessing market rate for "lawyers of reasonably comparable skill, experience, and reputation," not simply years in practice); *Student Pub. Int. Rsch. Grp. of New Jersey, Inc. v. AT & T Bell Lab'ys*, 842 F.2d 1436, 1450 (3d Cir. 1988) (adopting "community market rate rule" that considers prevailing rate charged by "attorneys of equivalent skill and experience performing work of similar complexity"); *Dennis*, 2025 WL 1582452 at *2 (adopting adjusted rates that "account for the civil rights expertise of plaintiff's counsel"); *Evans v. Philadelphia Hous. Auth.*, No. CIV. A. 93-5547, 1995 WL 154872, at *2 (E.D. Pa. Mar. 31, 1995), *aff'd sub nom. Smith v. Philadelphia Hous. Auth.*, 79 F.3d 1139 (3d Cir. 1996).

The rates sought by counsel in this case are well within the parameters of the CLS fee schedule and the above decisions, as discussed further below and in the attached Declarations. Plaintiffs submit that a departure upward from the CLS rates to account for inflation would be appropriate to reflect the "current market at … at the time of the fee petition." *Simring v. Rutgers,* 634 Fed. Appx. 853, 859 (3d Cir. 2015) (quoting *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001)). Upward adjustment of rates is also appropriate to account for Plaintiff counsel's specialized skill and

experience in prison litigation cases. *Rode*, 892 F.2d at 1183; *Evans*, 1995 WL 154872 at *2.

In this matter, Plaintiffs obtained significant relief that vindicated the Fourteenth Amendment rights of decedent Mr. Jung and demonstrated a custom of indifference to diabetes care and/or medical emergencies within the Philadelphia Department of Prisons. Damages of $1,670,000 in total represent an excellent outcome for Plaintiffs. The Plaintiffs' attorneys have a specialized skillset—particularly, their experience with civil rights and prison litigation respectively. Had Plaintiffs' counsel refused to represent Plaintiffs in this matter, it is very possible that the only other law firms and/or attorneys in the Philadelphia metropolitan area capable of adequately handling this matter would have had higher applicable legal fees, and/or that the Plaintiffs would have been unsuccessful in  obtaining the relief sought.

### *Bret Grote*

Bret Grote is Legal Director of the Abolitionist Law Center ("ALC"). A summary of Mr. Grote's background, described in detail in his Declaration, Ex. 3, is as follows: He is a graduate of the University of Pittsburgh School of Law and has been practicing prisoner rights litigation  since 2013. He is admitted to the United States Court of Appeals for the Third Circuit and each district within Pennsylvania.  He also served as professor at the University of Pittsburgh School of Law from 2014 through 2024 where he taught prison litigation. He began teaching prison litigation as a post-graduate teaching fellow, becoming an adjunct Professor at Law the following year, and eventually becoming a Professor of Practice. He also served as a Lecturer in Law at the University of Pennsylvania Carey School of Law since 2021, teaching courses on Community Lawyering in the Movement to End Mass Incarceration and as an assistant clinical director in the Advocacy for Civil and Racial Justice Clinic. Mr. Grote has litigated dozens of jail and prison conditions cases in each of the federal district courts in Pennsylvania, winning preliminary injunctions in every district court to release clients from solitary confinement,  receive  life-saving  hepatitis-C  treatment,  and  achieving  comprehensive  settlements

against the Pennsylvania Department of Corrections and Allegheny County Jail in several cases. He also successfully argued two leading Third Circuit Eight Amendment cases and was counsel in a case involving the largest monetary settlement for a death-in-custody ever achieved in Pennsylvania.  His hourly rate is $500 per hour, which reflects the community market rate for attorneys of comparable skills and experience, adjusted upward due to his expertise in prison litigation, and is squarely within the range outlined in the CLS schedule.

   *Nia Holston*

   A summary of Ms. Holston's background, described in detail in her declaration, Ex. 4, is as follows: she is a 2019 graduate of the New York University School of Law, where she received a full tuition scholarship for her academic and public service achievements. Ms. Holston also holds a 2023 LL.M. degree in Trial Advocacy from Temple Beasley School of Law.  Following a period of time as an assistant public defender at the Defender Association of Philadelphia, she joined the Abolitionist Law Center as one of two hired staff attorneys to build a Philadelphia practice. Since joining the Abolitionist Law Center, she has focused her practice on civil rights litigation and criminal defense. Ms. Holston has been invited to lecture at numerous national convenings related to prisoners' rights litigation and police accountability, including the National Police Accountability Project, and the Practising Law Institute. Ms. Holston has also served as adjunct law school faculty at the University of Pennsylvania Carey School of Law and Villanova Charles Widger School of Law, where she co-directed a clinic. Further, Ms. Holston has served as a clinical supervisor at New York University School of Law and Temple School of Law.  Recently, Ms. Holston was part of the counsel team that negotiated claims of individuals injured during protests in Philadelphia in May and June 2020, which led to damages payouts of $9.25 million.

   Ms. Holston requests a rate of $365 per hour. That rate falls between the midpoint of her respective range of experience range as guided by CLS attorney's fees rates and reflects her expertise

and role as educator for law students and attorneys on civil rights matters – which are additional factors weighing in favor of a higher rate and not directly contemplated by the CLS rate schedule. *See Damian J.*, 2008 WL 1815302 at *2.

### *Rupalee Rashatwar*

A summary of Ms. Rashatwar's background, described in detail in her Declaration, Ex. 5, is as follows: Rupalee Rashatwar is an ALC staff attorney based in Philadelphia. Ms. Rashatwar graduated from American University Washington College of Law in 2018, where she was one of only five students selected as a Public Interest/Public Service (PIPS) Scholar, and granted a full tuition merit-based scholarship. She has been an active litigator since 2018, starting her legal career at the Office of the Miami Dade Public Defender, where for three years she engaged in a rigorous motions and trial practice culminating in numerous jury and bench trials. Since 2021, Ms. Rashatwar has practiced as a staff attorney at ALC building out the Philadelphia practice, where she has gained an expertise in state compassionate release litigation and where she actively litigates post-conviction criminal appeals in addition to class action and 1983 civil litigation. Ms. Rashatwar has taught numerous CLE's on compassionate release litigation, and has served as a Lecturer in Law at the University of Pennsylvania Carey School of Law and she co-directed the Caritas Clemency Clinic at the Villanova Charles Widger School of Law. Ms. Rashatwar has also served as a clinical supervisor to students at New York University School of Law and Temple School of Law. She is licensed to practice law in Pennsylvania and Florida.

Ms. Rashatwar requests a rate of $385 per hour. This rate falls in the range of experience as guided by CLS attorney's fees rates, reflects her expertise and role as educator for law students, and is squarely within the range outlined in the CLS schedule, adjusted upward based on her nearly 8 years of litigation experience.

*Margo Hu*

A summary of Margo Hu's background, described in detail in their Declaration, Ex. 6, is as follows: Margo Hu is a staff attorney at ALC. Their work focuses on fighting inhumane jail conditions in counties surrounding Philadelphia. Margo graduated from University of Pennsylvania Carey Law School in 2023, where they were a Toll Public Interest Scholar, participated in civil legal and racial justice clinics, co-authored a paper on international poverty penalties and was the recipient of the Langer, Grogan & Diver P.C. Fellowship in Social Justice. They have previously worked in the Wilmington public defender's office as a Partners for Justice advocate and helped found the Delaware Campaign to End Debtor's Prisons, a grassroots effort advocating for statewide court fines and fees reform. Their hourly rate is $280 per hour, which reflects the community market rate for attorneys of comparable skills and experience, and is squarely within the range outlined in the CLS schedule.

*Quinn Cozzens*

A summary of Mr. Cozzens' background, described in detail in his Declaration, Ex. 7, is as follows: Quinn Cozzens has been a Staff Attorney at ALC since 2017. He has been a licensed attorney since 2016 after graduating from University of Pittsburgh School of Law that same year, where he was recipient of the Chief Justice Ralph J. Cappy Scholarship and Dean's Scholarship. Since joining ALC in 2017, Mr. Cozzens has litigated state post-conviction criminal cases and federal prisoner rights cases in each federal district court in Pennsylvania. Mr. Cozzens has experience litigating complex cases related to prison and jail conditions, as well as police accountability, including several class actions, in Pennsylvania federal district courts. Mr. Cozzens requests a rate of $400 per hour, which falls within the range for attorneys with nearly ten years of practice outlined in the CLS schedule and reflects the community market rate for attorneys of comparable skill and experience.

*Lolo Salsbury Serrano*

A summary of Serrano's background, described in detail in their Declaration, Ex. 8, is as follows:

Lolo Serrano is a legal fellow with ALC. Serrano was a Levy Scholar at the University of Pennsylvania Carey Law School, from which they graduated *magna cum laude* in 2025. Serrano was admitted to the Pennsylvania bar in October of 2025 and the Eastern District of Pennsylvania in November of 2025. Serrano is also a candidate for a PhD in legal history from the University of Pennsylvania. They worked at ALC as a legal intern full-time during summers and part-time during academic years for three and a half years prior to admission to the Pennsylvania bar. Serrano's hourly rate is $235 an hour, squarely within the range outline in the CLS schedule for post-law school attorneys with under 2 years' experience.

### *Corinne Austen*

A summary of Ms. Austen's background, described in detail in her Declaration, Ex. 9, is as follows: Corinne Austen has been a Paralegal at the Abolitionist Law Center ("ALC") for two years. She is a licensed social worker and a graduate of Temple University's School of Social Work. Corinne previously worked as a Prison Support Specialist at the Institute for Community Justice for two years, where she served as a legal advocate for incarcerated clients. Her hourly rate is $200 per hour, which reflects the community market rate for paralegals of comparable skills and experience, and is squarely within the range outlined in the CLS schedule.

### *2. The time spent is reasonable*

A prevailing party is entitled to compensation for time "reasonably expended on the litigation." *Webb v. Board of Educ. of Dyer County*, 471 U.S. 234, 242 (1985) (citing *Hensley*, 461 U.S. 424). Time is reasonably expended "on the litigation" when it is "useful and of a type ordinarily necessary to secure the final result obtained from the litigation." *Penn. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1986).

Plaintiffs' counsel established an estate for Mr. Jung, who died intestate. They facilitated the appointment of administrators for the estate as well as taxation and distribution of funds to the estate's

beneficiaries. Plaintiffs brought this suit in their capacities as administrators of their father's estate. Hours expended in establishing and administrating this estate was useful and of the type ordinarily necessary to successfully pursue a wrongful death/survival action.

After filing their complaint, Plaintiffs engaged in extensive fact and expert discovery, including the receipt and review of well over 38,000 pages of documents (including electronically stored documents), review of hours of surveillance video and phone calls, took thirteen depositions, and defended depositions of both named Plaintiffs. Plaintiffs retained three experts, Dr. Homer Venters, Dr. Jonathan Williams, and Arthur Wallenstein, who each produced detailed reports relevant to claims against the City of Philadelphia and testified at trial. Plaintiffs successfully opposed City Defendants' motion to dismiss (Dkt.s 14-15, 17), motion for summary judgment (Dkt.s 99-100, 116-118, 182), and Daubert motion (Dkt.s 111, 129, 184). Plaintiffs filed a successful motion to compel against YesCare defendants that obtained evidence that was important for their municipal liability claims against the City of Philadelphia. Additionally, Plaintiffs filed seven motions in limine (Dkt.s 150-157), a pretrial memorandum (Dkt. 142), and drafted extensive proposed jury instructions (Dkt. 162) and a proposed verdict sheet (Dkt. 159) that were adopted in large part by the trial Court. Plaintiffs briefed opposition to four motions in limine from City Defendants (Dkt.s 156-158, 160; 171-174), as well as a motion in limine filed by YesCare that sought to exclude experts who later testified for Plaintiffs against City Defendants at trial, and a second motion in limine that YesCare filed seeking to exclude the report and testimony of Dr. Venters (Dkt.s 114, 121, 123, 140, 143-144). They participated in oral argument on the motions (Dkt.s 180-181), two mediation sessions in a good faith attempt to resolve the litigation without trial (Dkt.s 68, 167), and concluded the litigation with a four-day trial by jury.

The trial included testimony from three expert witnesses and ten fact witnesses. Plaintiffs assembled over forty exhibits to prove their claims against City Defendants, including a complex failure-to-supervise *Monell* claim incorporating several years' worth of medical records for Mr. Jung

and other individuals. They obtained a successful verdict on liability for three of four defendants, including their *Monell* claims against the City Defendants, with $1,670,000 in total damages including compensatory and punitive awards.

As described above, courts evaluate whether a "common core of facts" applies to fees recovered against defendants found liable at trial, and those found not liable. *Hensley*, 461 U.S. at 434. "[H]ours devoted in part to the case against other defendants may be fairly charged to [another defendant], so long as the plaintiff can establish that such hours also were fairly devoted to the prosecution of the claim against [the other defendant]." *Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208, 1215 (3d Cir. 1978). The same analysis applies to defendants taken to trial and separate defendants who settled prior to trial. In such cases with a "common core of facts," hours "devoted generally to the litigation as a whole" are recoverable. *Hensley*, 461 U.S. at 434. *See Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 789 F. Supp. 1288, 1297 (D.N.J. 1992) ("[A defendant] may be held to account for attorney fees incurred pursuing claims against the settling defendants if the legal work also supported the claims against [the defendant]"), *aff'd in part sub nom. Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 420-21 (3d Cir. 1993) (holding that plaintiffs could also recover fees for separate, prior litigation against separate defendants when work product from prior case was "actually used" and "inextricably linked" to issues in the present cases).

The case against Correctional Officer Frasier was intimately related to the cases against Lieutenant Bloodsaw, Commissioner Carney, and the claims against the City of Philadelphia. Correctional Officer Frasier was the housing officer on the block where Mr. Jung was housed during his final days, she was present for the interaction during which Mr. Jung collapsed to the floor, and she called Lieutenant Bloodsaw to Mr. Jung's cell. Plaintiffs' claims against Correctional Officer Fraiser and Lieutenant Bloodsaw collectively informed their supervisory claim against Commissioner Carney and their *Monell* claim based on PDP correctional staff's persistent failure to identify or respond to

14

medical emergencies. Hours relating to prosecuting the claim against Officer Frasier were inextricably linked to Plaintiffs' presentation of the facts against Bloodsaw, supervisory claims against Carney, *Monell* claims against the City. These fees are recoverable.

This case also originally involved several other defendants, including private correctional medical corporation YesCare and several individual medical defendants, including a registered nurse represented by separate counsel. These claims resolved prior to trial by settlement. Plaintiffs have deducted hours spent solely in relation to pursuit of their claims against these defendants, and deducted fees relating to a fourth correctional nursing expert who did not testify against the City Defendants. Several of Plaintiffs' successful alternative *Monell* theories, including a custom of inadequate diabetes care and failure to supervise diabetes care, are inextricably linked to the discovery pursued against YesCare. Plaintiffs were still required to present extensive evidence of systematically deficient diabetes care in Mr. Jung's own case and those of other YesCare patients at PDP. The hours that remain are only those hours that directly contributed to claims against City Defendants on which Plaintiffs prevailed at trial.

3.    *Costs incurred are reasonable.*

In addition to litigation costs normally recoverable under the Federal Rules of Civil Procedure, costs recoverable under Section 1988 include those litigation expenses normally incurred for an attorney to render his or her services, including, reproduction expenses, telephone expenses, travel time and expenses, and postage. These expenses were necessary to achieve the results obtained, and Plaintiffs seek recovery of these amounts.

Costs were incurred as detailed in Exhibit 10. They include costs for deposition and trial transcripts, expert witness fees and costs, estate fees, and other expenses normally associated with civil rights litigation. The total costs associated with this litigation are $84,670.13.

15

### III.    **Conclusion.**

Counsel undertook risky and high-stakes litigation with no guarantee of recovery of their fees and expenses. They spent over a year investigating, litigating, and preparing for trial on a briskly expedited pretrial schedule. They prosecuted their claims in a four-day jury trial and prevailed on claims against three of four defendants with an award of $1,670,000.

Attorneys should not be dissuaded from undertaking significant litigation, especially to vindicate the constitutional rights of death-in-custody victims, by undercutting the fees to which they would be entitled if successful. Counsel's rates are in line with approved CLS rates, are consistent with rates approved by this Court in other matters, and are typical of rates charged by experienced counsel in similar cases. The time expended by counsel is reasonable, given the novelty of death-in-custody trials in the City of Philadelphia and the substantial amount of work required to bring it successfully.  And the costs incurred are reasonable, given the expert reports and testimony, multiple depositions, and trial time required to prevail in the case.

For the foregoing reasons, this Court should award Plaintiffs $912,817.00 in reasonable fees and $84,670.13 in costs and expenses pursuant to 42 U.S.C. § 1988.

DATED: March 16, 2025                    Respectfully submitted,

*/s/ Bret Grote*
Legal Director
PA ID No. 317273
bretgrote@alcenter.org
*/s/ Rupalee Rashatwar*
Staff Attorney
PA ID No. 331085
*/s/ Nia Holston*
Staff Attorney
PA ID No. 327384
*/s/ Margaret Hu*
PA ID No. 334438

*/s/ Lolo Salsbury Serrano*
PA ID No. 338184
Abolitionist Law Center
990 Spring Garden St., Ste 306
Philadelphia, PA 19123

## CERTIFICATE OF SERVICE

I, Bret Grote, Esq., hereby certify that I caused a true and correct copy of the foregoing Brief in Support of Plaintiffs' Petition for Fees and Costs to be electronically filed on March 16, 2025, and thereby served upon all parties entered into the Court's ECF system.

*/s/ Bret Grote*
Legal Director
PA ID No. 317273
bretgrote@alcenter.org
Abolitionist Law Center
990 Spring Garden St., Ste 306
Philadelphia, PA 19123

*Counsel for Plaintiffs*