# Exhibit B



**Abolitionist Law Center**
**990 Spring Garden**
**Philadelphia, PA 19123**
**abolitionistlawcenter.org**

March 21, 2025

To:
Thomas J. Gregory, Esquire
Two Penn Center Plaza, Suite 1100
1500 John F. Kennedy Boulevard
Philadelphia, PA 19102

Michael Pestrak
Deputy City Solicitor
City of Philadelphia Law Dept.
1515 Arch Street, 14th Floor
Philadelphia, PA 19102

**Re: Plaintiffs' Settlement Demand in *Jung v. City of Philadelphia, et al.***

Counsel,

As previously discussed, we are writing to set forth Plaintiffs Jacob and James Jung's demand for settlement in the case of *Jung v. City of Philadelphia, et al.*, involving the death of their 50-year-old father, Louis Jung, Jr. We have formulated this demand based on a good-faith evaluation of the Jung's likelihood of proving liability and the damages a jury would award. The demand has been calculated to encourage the resolution of this matter before the close of discovery. We provide this demand subject to all privileges applicable to pre-trial settlement negotiations.

Jacob and James Jung demand payment of $15,000,000, inclusive of all fees and costs, and not subject to any confidentiality agreement.

In support of this demand, we outline below 1) the exceptional strength of the evidence supporting Plaintiffs' claims; 2) the substantial harms and losses underlying the damages suffered by Mr. Jung's estate and wrongful death beneficiaries; and 3) recent verdicts and settlements in comparable cases.

**Defendants are Liable for the Death of Mr. Jung**

Louis Jung, Jr., as the defendants and their counsel are well aware, was incarcerated in the Philadelphia Department of Prisons (PDP) in December 2021. Right away, PDP and YesCare were aware that he had Type I diabetes, requiring care consistent with the standards established by the American Diabetes Association. Plaintiffs allegations pertaining to these failures are detailed in the operative First Amended Complaint in this matter and will not be recounted here.

1



**Abolitionist Law Center**
**990 Spring Garden**
**Philadelphia, PA 19123**
**abolitionistlawcenter.org**

In its review of the death of Mr. Jung, the Philadelphia Department of Prisons found that three staff members – two correctional employees of the City and one medical staff employee of YesCare – committed misconduct and failed to render aid to Mr. Jung on November 5, 2023. Mr. Jung was prone on the floor, as visible in video footage of the incident. Defendant Blair Cabellos, a licensed practical nurse, and Defendant Frasier, a correctional officer, both of whom were aware that Mr. Jung was a diabetic, encountered Mr. Jung while he was prone on the ground in the doorway of his cell on November 5. Defendant Cabellos was told by Mr. Jung that he could not get up, but instead of providing any assistance or ensuring that other medical or correctional staff came to provide aid, defendants Cabellos and Frasier walked off the unit without providing any medical care or calling for emergency medical attention. They both left Mr. Jung lying on the floor outside of his cell for approximately nine minutes. Defendant Bloodsaw, a correctional lieutenant, then encountered Mr. Jung on the floor. She watched as two incarcerated people dragged Mr. Jung back into his cell, and then she exited the housing area. Cabellos, Frasier, and Bloodsaw all had a duty to render Mr. Jung aid, a process that would have resulted in emergency treatment for his diabetic ketoacidosis, and would have saved his life.

Instead, Defendant Frasier falsified the housing log by claiming that Mr. Jung refused insulin, though Frasier later reported being unable to recall how Mr. Jung refused insulin.

The next morning, Mr. Jung was discovered by staff who did attempt to provide emergency aid, but it was too late. He died at the Curran-Fromhold Correctional Facility from a treatable illness after approximately 10 days since first presenting with symptoms of diabetic ketoacidosis on October 28, 2023 that should have resulted in immediate emergency medical care from defendants Apollon and Gay.

In addition to these circumstances of Mr. Jung's death, which include damning video evidence of the inexcusable failings of defendants Cabellos, Frasier, and Bloodsaw, Plaintiffs will reveal to the jury how his death was caused by numerous, compound systemic deficiencies in the provision of medical care at PDP facilities. Implicating the City and YesCare, the egregious failures to provide proper medical care that resulted in Mr. Jung's death include:

- Failure to provide him with a diabetes care plan upon his intake to the jail;

- Failure to call for emergency care on October 28, 2023 when Mr. Jung's blood glucose levels were a dangerously high level of 542;

- Failure to place him in the infirmary where his precarious health condition could be properly monitored;

- Failure to take him to a hospital to stabilize his glucose levels and monitor him during his medical emergency;

- Failure to give him prescribed access to insulin and glucose tests;

2



**Abolitionist Law Center**
**990 Spring Garden**
**Philadelphia, PA 19123**
**abolitionistlawcenter.org**

- Failure to document insulin dosages and glucose levels;

- Failure to give him adequate insulin in the last 6 days of his life;

- Failure to "red flag" Mr. Jung for any missed doses of insulin;

- Systemic failures to provide insulin, glucose checks, and diabetes care to diabetic patients in PDP jails;

- Failure to remedy known deficiencies in providing emergency care that had resulted in previous deaths in PDP jails.

The facts obtained in *Monell* discovery will provide ample support for claims against the City and Yescare under well-established legal standards for determining constitutionally adequate medical care, as well as medical malpractice under Pennsylvania state law.

The facts will also readily satisfy the standard of the Americans with Disabilities Act, which prohibits discrimination against qualified individuals with disabilities. 42 U.S.C. § 12132. Specifically, a disabled individual may not "be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id*. Discrimination includes the failure to provide reasonable modifications to policies, practices, and procedures. 28 C.F.R. § 35.130(b)(7). To prevail on an ADA claim, the plaintiff must establish that they (1) are a "qualified individual"; and (2) were excluded from a "program, service, or activity"; or (3) were otherwise discriminated against on the basis of their disability. *Furgess v. Pennsylvania Dept. of Corrections*, 933 F.3d 285, 288–89 (3d Cir. 2019).

Mr. Jung was a qualified individual with a disability given his documented condition of diabetes. App. C to Part 35, 28 C.F.R. § 35.108 (2021). PDP failed to make reasonable accommodations to Mr. Jung for his disability in that they could have easily housed Mr. Jung in a Medical Housing Unit to monitor his glucose levels and insulin intake. Additionally, they did not provide: an initial treatment plan upon admission to PDP, regular glucose level checks, regular and prescribed insulin medication administration, proper documentation of glucose levels and insulin doses, a specialized diabetic diet, training to staff on recognizing the signs and symptoms of diabetic ketoacidosis and appropriate diabetes care, and emergency medical care.

This evidence of the defendants' wrongdoing will culminate in the jury learning in detail from expert medical witnesses how agonizing it is to slowly die from diabetic ketoacidosis. In addition to the pain and suffering of Mr. Jung, the losses caused by the defendants' misconduct are self-evident. As a 50-year-old man he would have returned to his family after the resolution of his criminal charges and had the opportunity to re-enter his community and overcome the obstacles he had faced in the final years of his life. Mr. Jung had a college degree in business management and was employed in various managerial capacities, and was deprived of the opportunity to re-enter the workforce due to the conduct of defendants.



**Abolitionist Law Center**
**990 Spring Garden**
**Philadelphia, PA 19123**
**abolitionistlawcenter.org**

Most importantly, Mr. Jung would have rejoined his family and been a presence in the lives of his three sons. Mr. Jung's affection for his family ran deep and was recognized by all. He had a particularly close relationship with his first-born, Louis Jung III, who has cerebral palsy and whom Mr. Jung played a close role in caring for. His youngest son James is twenty years old and a construction worker. His second son Jacob is a union worker for the International Longshoremen's Association, and whose partner just gave birth to their first child in 2021, a granddaughter that Mr. Jung will not be able to watch grow up. A jury will be left to wonder at how being a grandparent could have positively influenced Mr. Jung in overcoming challenges and reclaiming a positive trajectory in his life. The mother of Mr. Jung's children, Evelyn Tyson, has been robbed of the man who remained her "best friend" even after the end of their marriage, and who helped her care for Louis Jung III, who requires round the clock care.

To the extent any defendant would attempt to argue that Mr. Jung's criminal charges limited the likelihood he would lead a productive and rewarding life after his incarceration, such a strategy would risk offending and inflaming a sympathetic jury that has seen video of PDP employees watching Mr. Jung slowly dying from diabetic ketoacidosis on a prison floor.

Finally, given the availability of civil rights claims presenting constitutional issues, the jury will be instructed that it is permitted to award damages for Mr. Jung's "loss of enjoyment of life." See, e.g., *Banks ex rel. Banks v. Yokemick*, 177 F. Supp. 2d 239, 247 (S.D.N.Y. 2001). These forward-looking damages will compensate Mr. Jung's estate for his loss of the ability to experience and enjoy the rest of his life, and, given his loving family background, this will be substantial.

**Comparable Verdicts and Settlements**

The financial component of the demand set forth above is consistent with verdicts and settlements in comparable cases involving in-custody deaths. The fact that these cases have resulted in multi-million-dollar payouts against correctional and medical employees illustrates that jurors are willing to provide just compensation to plaintiffs notwithstanding the defendants' status as governmental actors. Further, these results confirm that defense efforts to emphasize a decedent's criminal background are ineffective, and, indeed, counterproductive.

- **$82,000,000** verdict for the family of a 52-year-old woman who died in an Oklahoma Jail, including $68 million in punitive damages, in case involving incarcerated woman with multiple serious medical conditions, including diabetes, and municipal and individual liability claims on inadequate medical care in the jail context. https://www.prisonlegalnews.org/news/2023/aug/15/82-million-detainee-death-oklahoma-jail-largest-civil-rights-death-claim-us-history/

- **$33,000,000** verdict in federal court in Tulsa, Oklahoma for the family of a 26-year-old who died in a county jail from sepsis and pneumonia in a "slow tormenting death over several days." https://www.readfrontier.org/stories/jury-awards-33-million-to-the-family-of-a-

4



**Abolitionist Law Center**
**990 Spring Garden**
**Philadelphia, PA 19123**
**abolitionistlawcenter.org**

man-who-died-in-an-oklahoma-jail-as-staff-mocked-him/

- **$28,500,000** verdict for the family of Reverend Ronel Huggins, 43, who died in custody when jail medical staff failed to provide him diabetic medications. The verdict included $7.5 million in punitive damages. Accessible via Lexis, and discussed here: https://www.wltx.com/article/news/sumter-family-awarded-285-million/101-383870896.

- **$26,750,000** verdict from Spokane County and jail medical contractor Naphcare, Inc. for wrongful death from a bacterial infection. 2:20CV00410, 2022 WL 3974126, Westlaw Verdicts and Settlements. See https://www.prisonlegalnews.org/news/2023/oct/15/naphcares-lack-care-leads-2675-million-verdict-washington-jail-death/

- **$12,750,000** settlement against Wellpath, a correctional healthcare company, for the family of a man who died in the Shasta County Jail in 2018 after he was denied necessary medical care by jail intake medical staff for a drug overdose, and then deprived care for three more days until he died. https://www.haddadandsherwin.com/2023/08/21/12-million-for-distraught-inmates-slow-motion-suicide/

- **$12,500,000** settlement for the family of a 58-year-old man who died after 55 hours in a restraint chair in a northern Oklahoma county jail, where the plaintiff's estate was prepared to present video of the death at trial. *See* https://www.cnhinews.com/cnhi/article_357bb014-f509-11e9-b305-3b2f7a8e582c.html

- **$10,250,000** verdict for family of 37-year-old man who died of a broken neck in a Tulsa, Oklahoma jail where jail staff believed the decedent was faking his injuries and where staff fabricated reports stating that decedent could feed himself. *See* https://www.nytimes.com/2017/03/22/us/tulsa-verdict-jail-broken-neck.html

- **$10,000,000** verdict for decedent's estate and family, including punitive damages, from Maricopa County for jail wrongful death from excessive force in restraint chair and potential methamphetamine withdrawal. CV02-1686-PHX, 2006 WL 1544503, Westlaw Verdicts and Settlements. See https://www.abc15.com/news/local-news/investigations/maricopa-county-set-to-approve-massive-settlement-for-in-custody-death

- **$8,500,000** settlement *obtained by Abolitionist Law Center* for family of 29-year-old man who died in the Pennsylvania Department of Corrections after he was doused with pepper spray and not provided medical care for a resultant asthma attack. *See* https://www.inquirer.com/news/pennsylvania-department-corrections- tyrone-briggs-wrongful-death-settlement-pepper-spray-20210908.html

- **$8,300,000** settlement for family of 50-year-old man who was beaten to death by Alameda County Jail staff who mistook the decedent's alcohol withdrawal symptoms as acting out



**Abolitionist Law Center**
**990 Spring Garden**
**Philadelphia, PA 19123**
**abolitionistlawcenter.org**

where liability was based in part on the defendant medical provider's failure to train practical nurses to conduct appropriate withdrawal assessments. *See* https://www.mercurynews.com/2015/02/10/alameda-county-8-3-million-jail-death-settlement-mandates-jail-health-care-reforms/

- **$8,000,000** verdict for family of 57-year-old father, a "brittle diabetic," who died from hypoglycemic shock when Washington state correctional officers failed to call 911 and instead responded as if he were misbehaving. *See* http://www.spokesman.com/stories/2015/apr/18/inmates-family-gets-8-million-jury-award/

- **$7,000,000** settlement for family of 35-year-old woman who committed suicide in the Delaware County (Pennsylvania) jail where defendant medical staff failed to conduct required psychiatric evaluations. *See* http://www.philly.com/philly/news/george-hill-inmate- suicide-lawsuit-7-million-settlement-geo-group-20171109.html

- **$7,000,000** settlement for family of 28-year-old man who died after inadequate treatment for a broken neck suffered during psychotic episode in Eugene, Oregon county jail. *See* http://projects.registerguard.com/rg/news/local/33363570-75/lane-county-jails-medical-provider-agrees-to-settle-inmates-wrongful-death-lawsuit-for-7-million.html.csp

- **6,400,000** settlement in 2024 for family of 33 year old man who died of delirium tremens at the San Bernadino, CA county jail. https://followourcourts.com/2024/06/jail-decedents-family-awarded-6-5m-from-san-bernardino-county/

- **$5,750,000** settlement for family of 39-year-old mentally ill man who died after confinement at Rikers Island facility without access to medication for mental health conditions or diabetes. *See* https://www.nytimes.com/2016/09/28/nyregion/rikers-island-lawsuit-bradley- ballard.html

- **$5,000,000** settlement for family of 50-year-old man who died due to a burst blood vessel in his stomach while in a New Mexico county jail where jail staff ignored complaints from other inmates for seven hours. *See* https://www.seattletimes.com/nation-world/attorney-5m- settlement-reached-in-new-mexico-jail-death/

- **$4,750,000** partial settlement for family of 18-year-old woman who died due to untreated heroin withdrawal in the Lebanon County, Pennsylvania jail. *See* https://www.cbsnews.com/news/victoria-herr-pennsylvania- county-to-pay-4-75m-in-jailed-teens-heroin-withdrawal-death/

- **$3,000,000** partial settlement in June 2020 for family of a man who died after placement in a restraint chair in the Luzerne County Correctional Facility. *See* https://www.wnep.com/article/news/local/luzerne-county/luzerne-county-council-approves- 3-million-lawsuit-shaheen-mackey/523-dac01cac-04da-4cde-b421-

6



Abolitionist Law Center
990 Spring Garden
Philadelphia, PA 19123
abolitionistlawcenter.org

291272770f4d

- **3,300,000** verdict for family of man who died of an overdose in a jail in Orange County, CA. The jury awarded 1.2 million in loss of life damages and 2.1 in wrongful death damages, finding the County of Orange liable for unconstitutional policies, customs, and practices and failure to train. *See* https://www.ocregister.com/2025/03/18/jury-awards-3-3-million-to-father-of-mentally-ill-oc-jail-inmate-who-died-of-fentanyl-overdose/

Our valuation is fully justified by the fact that the PDP has found defendants employed by both PDP and YesCare failed to render necessary medical care that would have saved his life, this failure is on video, and there is damning evidence showing a long-established pattern of systemic failures attributable to both City and YesCare defendants. This figure accounts for the slow and agonizing death of Mr. Jung and the permanent loss of Mr. Jung to his loving family. There will be no litigation "discount" applied to our claims, as the risk of an adverse judgment for Plaintiff is small. Indeed, should the case proceed to a jury trial, we anticipate a verdict that will readily eclipse the lower numbers provided above, and very readily could exceed Plaintiff's demand.

Please respond by April 4, 2025. We hope to reach a just resolution to this case that will avoid protracted litigation and significant expenses accrued.

Sincerely,

*/s/ Bret Grote*
Bret Grote (PA 317273)
*/s/ Nia Holston*
Nia Holston (PA 327384)
*/s/ Rupalee Rashatwar*
Rupalee Rashatwar (PA 331085)
*/s/ Margaret Hu*
Margaret Hu (PA 334438)
990 Spring Garden
Philadelphia, PA 19123
(412) 654-9070
bretgrote@abolitionistlawcenter.org
nia@alcenter.org
rupalee@alcenter.org
margo@alcenter.org

Plaintiffs' Counsel

7