**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JACOB and JAMES JUNG, as          :
Administrators of the Estate of LOUIS    :
JUNG, JR,                         :      No. 2:24-cv-05618-TJS
                                  :
            Plaintiff,            :
                                  :
      v.                          :
                                  :
CITY OF PHILADELPHIA, et al.,     :
                                  :
            Defendants.           :

**PLAINTIFFS' BRIEF IN OPPOSITION TO CITY OF PHILADELPHIA'S MOTION
FOR DIRECTED VERDICT ON THE CROSS CLAIM AGAINST YESCARE CORP.**

The City renews its motion for a directed verdict on an unripe, unenforceable contractual indemnification cross-claim against YesCare. Plaintiffs oppose.

This claim does not ripen until Plaintiffs are paid. As the City notes, when the claim does ripen, Plaintiffs will not be the proper party in interest to litigate it. Once Plaintiffs are paid, the City will be free to pursue their state-law argument against YesCare, an indispensable party to this dispute. Several procedural vehicles are available to facilitate litigation of this claim among the actual parties in interest, in the venue in which it belongs. They are noted below.

Until Plaintiffs are paid and the crossclaim ripens, they maintain a strong interest in opposing any attempt from the City Defendants to shift their properly imposed liability away. They take this opportunity to note that the crossclaim fails, three times over, as a matter of Pennsylvania law.

**A.  Dispute over the validity and scope of the indemnification clause is not ripe until Plaintiffs are paid.**

1

Claims for indemnification do not ripen under Pennsylvania law until payment is actually tendered. "Under Pennsylvania law, actual payment, and not just a verdict or judgment, is required" for a "matured right to indemnification" to arise. *McClure v. Deerland Corp.*, 585 A.2d 19, 23 (Pa. 1991) (*citing Beary v. Container General Corporation*, 568 A.2d 190, 193 (Pa. 1989). "It is clear that before the right of indemnification arises, the indemnitor must in fact pay damages to a third party. Any action for indemnification before such payment, as in the present case, is premature." *F. J. Schindler Equip. Co. v. Raymond Co.*, 418 A.2d 533, 534 (Pa. Super. 1980) (*citing Builder's Supply Co. v. McCabe*, 77 A.2d 368 (Pa. 1951)). *See also Ogontz Fire Co. v. Twp.*, No. CV 23-569, 2025 WL 2004692, at *5 (E.D. Pa. July 17, 2025); *DCD Nucar Alni LLC v. Rothrock Motor Sales, Inc.*, No. 5:25-CV-4327, 2025 WL 3516667, at *11 (E.D. Pa. Dec. 8, 2025); *Invensys Inc. v. Am. Mfg. Corp.*, No. CIV.A. 04-3744, 2005 WL 600297, at *3 (E.D. Pa. Mar. 15, 2005).

Plaintiffs are awaiting payment. This claim is not ripe.

**B.  The indemnification clause is unenforceable under Pennsylvania law.**

Defendants in this case were held directly liable for deliberate indifference – knowing of, and disregarding, an excessive risk of harm. They cannot contract away this liability. Indemnification would violate Pennsylvania public policy and is unenforceable on multiple grounds. Ex-ante exculpation of reckless, grossly negligent, or intentional conduct is prohibited. Exculpation of duties imposed by law intended to protect health and welfare is prohibited. The indemnification clause is not drafted with the explicit provisions that would be required to shift liability for even negligent conduct. The clause is unenforceable.

      i.      Indemnification for Defendants' deliberate indifference would exculpate the equivalent of reckless conduct, which is prohibited under Pennsylvania law.

2

Contractual terms that shift liability for a party's own reckless, grossly negligent, or intentional conduct are unenforceable in Pennsylvania as violative of public policy. Were courts "to sanction releases for reckless conduct, parties would escape liability for consciously disregarding substantial risks of harm to others … such releases would jeopardize the health, safety, and welfare of the people by removing any incentive for parties to adhere to minimal standards of safe conduct." *Tayar v. Camelback Ski Corp.*, 47 A.3d 1190, 1200-03 (Pa. 2012) (holding contractual release for reckless conduct is unenforceable as violative of public policy); *see also Feleccia v. Lackawanna Coll.*, 215 A.3d 3 (Pa. 2019) (contractual release for grossly negligent conduct is unenforceable as violative of public policy);[1] *Zaftr Inc. v. Lawrence*, No. CV 21-2177, 2023 WL 349256, at *7 (E.D. Pa. Jan. 20, 2023) (collecting Pennsylvania cases); *Hackerman v. Demeza*, No. 1:13-CV-02883, 2016 WL 1295036 (M.D. Pa. Mar. 31, 2016) (same); Restatement (Second) of Contracts § 195(1) (1981) ("A term exempting a party from tort liability for harm caused intentionally or recklessly is unenforceable on grounds of public policy"); Williston, Contracts § 19.24 (1998) ("An attempted exemption from liability for a future intentional tort or crime or for a future willful or grossly negligent act is generally void[.]"); 15 Corbin on Contracts § 85.18 (2003) ("Courts do not enforce agreements to exempt parties from tort liability if the liability results from that parties' own gross negligence, recklessness, or intentional conduct.")

Plaintiffs pled, proved, and secured damages against the City Defendants for their own deliberate indifference. It is well-settled, under the Eighth-Amendment standards applied by this

---

[1] While these cases deal with release clauses rather than indemnification clauses, Pennsylvania state and federal courts have both noted that the same standards apply. *Valhal Corp. v. Sullivan Assocs., Inc.*, 44 F.3d 195, 202 (3d Cir. 1995) ("the test used to determine the enforceability of exculpatory and indemnity provisions is the same," applying Pennsylvania law); *Dilks v. Flohr Chevrolet, Inc.*, 192 A.2d 682, 688 n.11 (Pa. 1963) ("there is such a substantial kinship between both types of contracts as to render decisions dealing with indemnity clauses applicable to decisions dealing with exculpatory clauses, and vice versa").

Court in its jury instructions, that "acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Farmer v. Brennan*, 511 U.S. 825, 836, 114 S. Ct. 1970, 1978 (1994). That defendants "knew of an excessive risk" and "disregarded" that risk, the law applied in this case, is materially indistinguishable from the exculpation for "consciously disregarding substantial risks of harm" found unenforceable in *Tayar*. City Defendants' attempt to shift liability for this class of conduct would violate public policy and Pennsylvania law. The indemnification clause cannot be enforced.

    ii.    <u>Even if not unenforceable on public policy grounds, the indemnification clause would be insufficiently specific to shift liability for Defendants' acts.</u>

If liability-shifting were available to the City Defendants in this instance, which it is not, the contract would be insufficiently explicit to provide indemnification even for negligence. "[E]xculpatory contracts" are "generally disfavored," "subject to close scrutiny," and only permissible when stated "with the greatest particularity, beyond doubt by express stipulation." *Feleccia*, 215 A.3d at 16-17. "Under Pennsylvania law, the court must strictly construe the scope of an indemnity contract against the party seeking indemnification." *Jacobs Constructors, Inc. v. NPS Energy Servs., Inc.*, 264 F.3d 365, 371 (3d Cir. 2001).

It is "well-established that indemnification for a party's own negligence will not be inferred and must be stated expressly, clearly, and unequivocally in an indemnity clause." *Jacobs*, 364 F.2d at 371 (*citing Perry v. Payne*, 66 A. 553, 557 (Pa. 1907) ("The liability on such indemnity is so hazardous, and the character of the indemnity so unusual and extraordinary, that there can be no presumption that the indemnitor intended to assume the responsibility unless the contract puts it beyond doubt by express stipulation. No inference from words of general import can establish it"); *Ruzzi v. Butler Petroleum Co.,* 588 A.2d 1, 5 (Pa. 1991)).

4

In *Ruzzi*, the Pennsylvania Supreme Court found that an owner's obligation to indemnify a contractor "from any and all liability for claims for loss, damage, injury or other casualty to persons or property caused" by a renovation project was not specific enough to require indemnification of the contractor's own negligence. 588 A. 2d at 5. *Also compare Ogontz*, 2025 WL 2004692 at *4 (argument that agreement covering "any action or proceeding" extended to negligence of indemnitee "gets the standard exactly backward. Pennsylvania courts regularly and specifically rule against indemnification in actions arising from the claimant's own's actions … where the contract at issue contains only such 'words of general import'") *with Hershey Foods Corp. v. Gen. Elec. Serv. Co.*, 619 A.2d 285, 288 (Pa. Super. 1992) (allowing indemnification where indemnity clause covered losses caused "in whole or in part by any negligent act or omission of [the indemnitor] … *regardless of whether or not it is caused in part by a party indemnified hereunder*.")

The City's indemnification clause with Corizon/YesCare closely mirrors the legally insufficient clauses in *Ruzzi* and *Ogontz Fire Co.*: it purports to cover "any and all losses," etc., "occasioned wholly or in part by Provider's act or omission," etc. It contains no explicit mention of the City's, or the City's agents' – that is, the indemnitees' – own acts or omissions. At best, the provision that YesCare as indemnitor may be liable for acts occasioned "in whole or in part" by YesCare/indemnitor gestures at an implication that the other "part," if any, might be the City/indemnitee. This is far from the "clear and unequivocal" liability-shifting language required in Pennsylvania to indemnify against liability from one's own acts. "No inference from words of general import can establish such indemnification." *Ruzzi*, 588 A.2d at 4. The clause cannot be applied to shift liability imposed on the City for its own acts.

iii.    <u>Indemnification is not available for performance of legal duties intended to protect health and life.</u>

"[P]arties charged with a duty of public service cannot contractually exculpate themselves from liability" even for negligence. *Degliomini v. ESM Prods., Inc.*, 253 A.3d 226, 240 (Pa. 2021) (*citing, inter alia,* 17A C.J.S. Contracts § 73 (1963) ("The rule invalidating contracts exempting from liability for negligence is frequently limited to the principle that parties cannot stipulate for protection against liability for negligence in the performance of a legal duty or a duty of public service, where a public interest is involved or a public duty owed, or, when the duty owed is a private one, where public interest requires the performance thereof"); 57A Am. Jur. 2d Negligence § 56 ("No person can, by agreement, exempt himself or herself from liability for negligence in the performance of a duty imposed upon him or her by law, especially a duty imposed upon him or her for the benefit of the public.")). "Any attempt by a negligent party to exculpate himself for a violation of a statute intended for the protection of human life is invalid." *Warren City Lines, Inc. v. United Ref. Co.*, 287 A.2d 149, 151 (Pa. Super. 1971) (*citing Boyd v. Smith*, 94 A.2d 44 (Pa. 1953), and finding "no material basis on which to distinguish between a statute … and a regulation which is so intended").

City Defendants had not just a statutory or regulatory, but a *constitutional* duty, to provide necessary medical care to people incarcerated in their prisons. This duty is imposed by constitutional law and given effect by statute in 42 U.S.C. § 1983. There is "no material basis" on which to distinguish between stand-alone statutes or regulations and the United States Constitution, *Warren*, 287 A.2d at 151 – if anything, the latter should be given greater weight. This constitutional duty implicates core public interests of health and welfare. Constitutional law recognizes that an "inmate must rely on prison authorities to treat his medical needs," is intended to avoid "unnecessary and wanton infliction of pain," and maintains consistency with "contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 291

6

(1976). Defendants were sued for acting with deliberate indifference to the health of Mr. Jung, under color of state law. They were found liable. They "cannot contractually exculpate themselves" for this liability. *Degliomini*, 253 A.3d at 240.

In short, the indemnification clause cannot erase the City Defendants' liability for damages that resulted from their own deliberate indifference. Contracts that exculpate gross negligence or recklessness are unenforceable in Pennsylvania. Because the City Defendants had a constitutional responsibility to provide access to necessary medical care, a duty implicating public welfare imposed by law, they could not even contract away liability for negligence. The contract's language would be insufficiently specific to shift liability for negligence, let alone deliberately indifferent conduct. The indemnification clause cannot be enforced.

## C. This court could dismiss the contractual indemnification claim with or without prejudice, or sever and remand City Defendants and YesCare to state court.

As briefed above, City Defendants' contractual indemnification claim fails as a matter of law and should be dismissed on the merits. Plaintiffs strongly oppose the City Defendants' attempt to shift their properly imposed liability as a matter of principle, public policy, and Pennsylvania law. With that being said, Plaintiffs are not the proper parties to be litigating the contractual dispute. The issue of contractual indemnification only ripens once Plaintiffs are paid. Once that occurs, this dispute involves a question of state contract law between City Defendants and a separate, third party who is no longer in this case. The indemnification crossclaim could be dismissed without prejudice or severed to give YesCare an opportunity to oppose it. State court would be the logical forum to hear this separate case.

Federal Rule of Civil Procedure 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." "The Federal Rules of Civil Procedure give district courts broad discretion in deciding whether to

7

sever a case by way of severing parties or claims." *Graudins v. Retro Fitness, LLC*, 921 F. Supp. 2d 456, 467 (E.D. Pa. 2013). Courts consider several factors in deciding whether to sever claims, including "convenience of the parties, avoiding prejudice, and promoting expedition and economy." *Id.* at 468.

The prejudice to YesCare in litigating this claim *in absentia* has the potential to be extreme. YesCare is no longer a party to this case, having been dismissed from the action with prejudice on February 25, 2026. Dkt. 208. The City Defendants appear to be arguing that YesCare is liable for $1.5 million in damages arising from the City Defendants' own deliberate indifference. YesCare certainly has an interest in presenting fulsome argument as to why this is not the case. YesCare's interest in this cross-claim is so foundational that proceeding in their absence would likely violate Fed. R. Civ. P. 19 – the court cannot afford any relief to the City in their absence, and their absence practically impairs and impedes their ability to protect against the City's arguments against them.

The prejudice to the City from severance is minimal. As briefed above, their claim does not ripen until Plaintiffs are paid. At that point the principal litigation will have concluded and this Court can close the case. Since litigation of the indemnification cross-claim cannot occur until that point under any circumstances, severance and remand could only preserve this court's judicial economy, ensure that YesCare has an opportunity to defend itself against $1.5 million of another party's liability, and leave City Defendants in essentially the same position as before.

Plaintiffs have no real interest in the City's indemnification claim. They certainly would not be prejudiced by its dismissal, severance, and/or remand, provided that the City Defendants properly tender payment prior to litigating their flawed indemnification theory. Litigating a state-law contract matter in which Plaintiffs have no actual stake is, however, certainly an inconvenience. This can be taken into account under the Rule 21 factors.

8

This Court would have to retain jurisdiction over this action after its resolution and Plaintiffs' payment, reverse dismissal of YesCare or permit its re-joinder as a third-party defendant, and adjudicate a state-law contract claim with a tenuous relation to the facts underlying the now-resolved substantive dispute. This does not serve this court's interests in expeditiousness and judicial economy. Severance is proper.

Once severed, this state-law claim should be returned to a state-court venue. District courts may decline to exercise supplemental jurisdiction when "the claim raises a novel or complex issue of State law," "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction," the court "has dismissed all claims over which it has original jurisdiction," or where "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). Declining to exercise supplemental jurisdiction over state-law contractual crossclaims is standard practice. *See Pride Mobility Prods. Corp. v. Dylewski*, No. CIV.A. 3:08-CV-0231, 2009 WL 249356 (M.D. Pa. Jan. 27, 2009) (declining to exercise supplemental jurisdiction and dismissing without prejudice, *inter alia*, contractual indemnification crossclaims); *Cucchiara v. Hollingsworth*, No. 15-CV-314 (KBF), 2016 WL 6068193, at *8 (S.D.N.Y. Oct. 14, 2016) (declining to exercise supplemental jurisdiction and dismissing without prejudice state-law indemnification claim in part because it would not ripen until after a verdict as to liability); *Nevares v. Morrissey*, No. 95 CIV. 1135 (JGK), 1998 WL 265119, at *7 (S.D.N.Y. May 22, 1998) (same).

While the state-law issue raised here is not particularly novel or complex – the indemnification provision is plainly unenforceable under these circumstances – it does involve application of Pennsylvania public policy that a state court may be better positioned to evaluate in the first instance. 28 U.S.C. § 1367(c)(1). Once Plaintiffs are paid, the underlying constitutional

9

litigation will be complete. The state-law contract crossclaim will not only "predominate" other claims; it will be the only live claim subject to litigation. 28 U.S.C. § 1367(c)(2). Similarly, under 1367(c)(3), all federal claims subject to this court's original jurisdiction will have been finally resolved by the time City Defendant's crossclaim ripens. Addressing the crossclaim now, after the City failed to object to YesCare's dismissal, would present an "exceptional" procedural tangle where its dismissal would have to be reversed, or it would have to be added anew as a third-party defendant with a novel pleading. 28 U.S.C. § 1367(c)(4). Remand to state court would be permissible under this Court's broad discretion to decline supplemental jurisdiction.

City Defendants' crossclaim should be dismissed. Plaintiffs and this Court are under no obligation to entertain it. Putting aside its failure on the merits, the claim is not yet ripe. If City Defendants wish to continue developing their flawed theory, they should pursue YesCare in state court.

DATED: April 23, 2026

Respectfully submitted,

*/s/ Bret Grote*
Legal Director
PA ID No. 317273
bretgrote@alcenter.org
*/s/ Rupalee Rashatwar*
Staff Attorney
PA ID No. 331085
*/s/ Nia Holston*
Staff Attorney
PA ID No. 327384
*/s/ Margaret Hu*
PA ID No. 334438
*/s/ Lolo Salsbury Serrano*
PA ID No. 338184
Abolitionist Law Center
990 Spring Garden St., Ste 306
Philadelphia, PA 19123

10

## <u>CERTIFICATE OF SERVICE</u>

I, Bret Grote, Esq., hereby certify that I caused a true and correct copy of the foregoing

Plaintiffs' Brief in Opposition to City Defendants' Motion for Directed Verdict to be electronically

filed on April 23, 2026, and thereby served upon all parties entered into the Court's ECF system.


<u>/s/ Bret Grote</u>
Legal Director
PA ID No. 317273
bretgrote@alcenter.org
Abolitionist Law Center
990 Spring Garden St., Ste 306
Philadelphia, PA 19123



*Counsel for Plaintiffs*

12