**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JACOB JUNG and JAMES JUNG, as Administrators of the Estate of Louis Jung, Jr.** | : | **CIVIL ACTION** |
| **v.** | : | |
| **CITY OF PHILADELPHIA, BLANCHE CARNEY, Former Commissioner of Philadelphia Dept. of Prisons, YESCARE CORP., GENA FRASIER, and WANDA BLOODSAW** | : | **NO. 24-5618** |

**MEMORANDUM OPINION**

**Savage, J.** **October 23, 2026**

A jury found the City of Philadelphia, Blanche Carney and Wanda Bloodsaw liable for violating Louis Jung Jr.'s constitutional right to adequate medical care, causing his death while in the City's custody. The jury awarded $1,500,000 in compensatory damages against the City, Carney, and Bloodsaw. It awarded $170,000 in punitive damages against Bloodsaw. The jury found Correctional Officer Gena Frasier not liable.[1]

The plaintiffs now petition for an award of attorneys' fees and costs.[2] They seek $912,817.00 in fees and $84,670.13 for costs, totaling $997,670.13.[3] After carefully reviewing the defendants' objections, we conclude the plaintiffs are entitled to most, but not all, of their fees and costs. We reduce the plaintiffs' fees by $74,211.47 bringing the total fee award to $923,458.66.

---

[1] Because we write for the parties, we do not provide a full account of the litigation and the background. That can be found in the Memorandum Opinion addressing post-trial motions. *See Jung v. City of Philadelphia*, 24-cv-5618, 2026 WL 2873798 (E.D. Pa. Sept. 24, 2026).

[2] *See* Pls.' Pet. for Fees and Costs ["Pls.' Pet."] at 1, ECF No. 222.

[3] *See id.* Ex. 1.

## Analysis

A prevailing party in a § 1983 action is entitled to reasonable attorneys' fees. *See* 42 U.S.C. § 1988; *McKenna v. City of Philadelphia*, 582 F.3d 447, 455 (3d Cir. 2009). A plaintiff is a prevailing party if he succeeds "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Mancini v. Northampton Cnty.*, 836 F.3d 308, 321 (3d Cir. 2016) (quoting *Truesdell v. Phila. Hous. Auth.*, 290 F.3d 159, 163 (3d Cir. 2002)). The relevant question is whether the party "essentially succeeded" on his basic claim "even if it did not prevail in full." *Dennis v. Jastrzembski*, No. 18-cv-2689, 2025 WL 1582452, at *2 (E.D. Pa. June 4, 2025) (citing *Hughes v. Repko*, 578 F.2d 483, 487 (3d Cir. 1978); *Inmates of Allegheny Cnty. Jail v. Pierce*, 716 F.2d 177, 181 (3d Cir. 1983)).

The plaintiffs are prevailing parties. Although we granted summary judgment for the defendants on two of plaintiffs' claims,[4] the case proceeded to trial on the remaining claims and the jury found Bloodsaw, Carney, and the City liable for violating Jung's rights. Neither the summary judgment ruling nor the jury's finding in favor of Frasier alter the plaintiffs' status as prevailing parties. The plaintiffs' unsuccessful and successful claims share a "common core of facts" and are based on "related legal theories." *See McKenna*, 582 F.3d at 457 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)). The plaintiffs "essentially succeeded" on their primary claim that the defendants violated Jung's constitutional right to adequate medical care. Thus, they are prevailing parties, entitling them to attorneys' fees and costs.

---

[4] *See* February 4, 2026 Order, ECF No. 182 (granting partial summary judgment for defendants).

Determining reasonable attorneys' fees requires a two-part analysis. First, we evaluate the reasonableness of the hourly rate charged. *See Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001). Then, we assess the reasonableness of the time spent. *See id*. The party seeking fees has the burden of establishing that the rates and hours are reasonable. *Clemens v. N.Y. Cent. Mut. Fire Ins. Co.*, 903 F.3d 396, 400 (3d Cir. 2018). Once the reasonable rate and reasonable amount of hours are established, they are multiplied to yield the "lodestar," which is presumed to be a reasonable fee. *Id*. The burden then shifts to the opposing party to demonstrate that the fee is unreasonable. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

Objections must be specific. *See id.*; *United States v. Eleven Vehicles, Their Equip. & Accessories*, 200 F.3d 203, 211–12 (3d Cir. 2000). The request cannot be reduced based on factors not raised by the opposing party. *Eleven Vehicles*, 200 F.3d at 11–12; *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 178 (3d Cir. 2001). Nevertheless, once the adverse party specifically objects to a fee request, we have considerable discretion to "adjust the fee award in light of those objections." *Rode*, 892 F.2d at 1183 (citations omitted).

In determining a reasonable hourly rate, the starting point is the attorneys' usual billing rate. *Pub. Int. Rsch. Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995). We also compare the attorneys' rate to the market rates in the community "for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Loughner*, 260 F.3d at 180 (quoting *Rode*, 892 F.2d at 1183). Here, the defendants do not

object to the billing rates.[5] Indeed, the rates are consistent with, if not lower than, the standard hourly rates charged by attorneys of comparable experience in Philadelphia.[6] Thus, we find they are reasonable.

Next, the plaintiffs claim their attorneys and paralegal spent 2,565 hours working on this matter.[7] The defendants object to the time spent.[8] They argue that many entries are unnecessary, excessive, duplicative, or unrecoverable "administrative" tasks.[9]

We can reduce hours if they are excessive, redundant, unnecessary, or not adequately documented. *See Clemens*, 903 F.3d at 400–01. Hours billed to an adversary are not reasonable if they would not be reasonable when billed to a client. *Maldonado*, 256 F.3d at 184 (citing *Windall*, 51 F.3d at 1188).

*Officer Frasier*

The defendants object to fees attributable to litigating the claims against Frasier, whom the jury found not liable.[10] They argue that because the plaintiffs' theory of liability for Frasier was distinct from the other defendants, the time spent on the claim against her should be deducted.[11]

Even if the legal theories were distinct, there is significant overlap among the facts relevant to Frasier and the other defendants. Actions that involve multiple claims for relief

---

[5] Attorney Bret Grote's hourly rate was $500; Nia Holston's was $365; Rupalee Rashatwar's was $385; Margo Hu's was $280; Quinn Cozzens's was $400; and Lolo Serrano's was $235. Paralegal Corinne Austen's hourly rate was $200. *See* Pls.' Pet. Ex. 1.

[6] *See id.* Ex. 2.

[7] *See id.* Ex. 1.

[8] *See* Defs.' Resp. in Opp'n to Pls.' Mot. for Att'ys' Fees ["Defs.' Opp'n"] at 3–4, ECF No. 223.

[9] *See id.* at 5–7.

[10] *See id.* at 3–4.

[11] *See id.* at 3.

which share "a common core of facts *or* . . . [are] based on related legal theories" cannot "be viewed as a series of discrete claims." *Hensley*, 461 U.S. at 435 (emphasis added). As the plaintiffs note, Frasier's testimony was vital to providing a clear timeline of the events leading to Jung's death.[12] Her interactions with Jung, her medicine administration logs, and her testimony about the prison's procedures were essential to the plaintiffs' theory of the case against all defendants. Hence, because the claims against Frasier share a common core of facts with the other defendants, the judgment in her favor does not require a reduction in the fee award.

The defendants only object to a few billing entries related to Frasier, which amount to less than 18 hours.[13] Most of the billing entries the defendants challenge concern Frasier's deposition, which we reduce for a different reason discussed later. Even if Frasier was not a named defendant, she was a critical witness who would have been deposed because of her involvement in the underlying events. Therefore, the defendants have failed to show the fees are unreasonable.

*Plaintiffs' ADA and RA claims*

Next, the defendants object to several billing entries related to the plaintiffs' claims under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA").[14] We granted summary judgment on those claims.[15] However, we will not reduce fees because those claims also share a common core of facts with the prevailing claims. The plaintiffs'

[12] *See* Reply Br. in Supp. of Pls.' Pet. for Fees and Costs ["Pls.' Reply"] at 2–3, ECF No. 230.

[13] *See* Defs.' Opp'n at 4 n.1. Additionally, many of the entries include work for assignments not attributable to Frasier. Excluding the time for Frasier's deposition, the actual time objected to is around 10 hours.

[14] *See id.* at 4–5.

[15] *See* February 4, 2026 Order, ECF No. 182.

central claim was the denial of medical care to Jung. As the plaintiffs state, they "pursued factual investigation and expert opinions that served both their ADA theory and their constitutional claims."[16]

The Supreme Court has held that "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Hensley*, 461 U.S. at 435. The defendants were found liable for the core claim that the defendants caused Jung's death. We have no reason to find that plaintiffs acted in bad faith in raising the unsuccessful claims. Therefore, because there is sufficient overlap between the claims, we will not reduce the fees attributable to the unsuccessful ADA and RA claims.

*Duplicative Billing for Depositions*

The defendants object to billing entries where multiple attorneys attended depositions.[17] All depositions were attended by at least three of the plaintiffs' attorneys or paralegal.[18] The plaintiffs state that the additional attorneys "entered their appearances" and "spoke on the record" at many of the depositions.[19] They argue that this warrants a full fee award for the depositions.[20] We disagree.

Courts in this district routinely deny fees for more than one attorney at a conference, deposition, or other proceeding. *See Spear v. Optimal Strategix Grp., Inc.*, No. 2:23-cv-03361, 2025 WL 1139256, at *2 (E.D. Pa. Apr. 16, 2025) (subtracting fees for

---

[16] Pls.' Reply at 4.

[17] Defs.' Opp'n at 5–6.

[18] *Id.* at 5 nn.2–6.

[19] *See* Pls.' Reply at 11.

[20] *Id.*

"[w]hichever attorney did not defend or depose the witness" at deposition); *Damian J. v. Sch. Dist. of Phila.*, No. 06-cv-3866, 2008 WL 1815302, at *4 (E.D. Pa. Apr. 22, 2008) (deducting fees billed by second attorney who attended depositions because "it was only [the first attorney] who actually took" the deposition); *Sheffer v. Experian Info. Sols., Inc.*, 290 F. Supp. 2d 538, 546 (E.D. Pa. 2003) (reducing fees for the "mere attendance" of a second attorney at a deposition). Consistent with these decisions and our previous decision in *Turner v. Avo Corp.*, we limit fees to the attorney who took or defended the deposition. *See* No. 24-cv-715, 2026 WL 1601606, at *3 (E.D. Pa. June 3, 2026).

The plaintiffs also claim that each attorney and the paralegal "performed various functions, including conducting the examination on the record, managing and introducing exhibits, tracking testimony against prior records and deposition transcripts, and identifying follow-up lines of questioning in real time."[21] They do not identify the specific contributions made by each attorney that justify billing for their time. In some instances, the attorneys' own records show that they merely "watched" or "took notes" on the deposition.[22] Without adequate justification for the billing entries of each attorney, we will only award fees for one attorney who took or defended the deposition.

Although we recognize that "[i]t is eminently reasonable for multiple attorneys to work on the same assignments,"[23] we distinguish, for example, a senior attorney reviewing a motion draft prepared by a junior associate from several attorneys sitting in on a deposition. In most cases, it is unreasonable to bill for an attorney's presence if they

[21] *Id.* at 12–13.

[22] *See, e.g.*, Pls.' Pet. Ex. 5 at 66 of 138 ("Watched [A]pollon deposition and debrief . . . ."), Ex. 8 at 103 of 138 ("Blanche Carney deposition notetaking."), Ex. 9 at 129 of 138 ("[L]istening to Witowski depo.").

[23] Pls.' Reply at 11 (quoting *Minehan v. McDowell*, No. 21-cv-5314, 2023 WL 8701296, at * 3 (E.D. Pa. Dec. 15, 2023), *aff'd*, No. 2023-2737, 2024 WL 4403873 (3d Cir. Oct. 4, 2024)).

did not actually conduct or defend the deposition in a meaningful manner. Accordingly, after reviewing the billing entries, we reduce the fee award by $38,282.00. For an accounting of the deductions made, see Appendix A.

Separately, the defendants object to the number of depositions that were conducted. They object to the depositions of Patricia Powers, Xavier Beaufort, Nurse Jeoboham, Nurse Apollon, Dr. Gay, and Dr. Trivikram as none of them were called at trial.[24] We find that these depositions were reasonable even though the witnesses did not testify at trial. As the plaintiffs point out, "[e]ach of the depositions here contributed to either the development of the claims against the City's correctional staff or in developing the factual record related to lapses in YesCare's diabetes care at [the prison]."[25] We will not question the plaintiffs' "strategic decisions to limit live testimony subsequent to Nurse Apollon and YesCare's settlement,"[26] as the defendants have not made a showing that the depositions were unreasonable other than expressing discontent with the amount. Therefore, we will not reduce the fees based on the number of depositions taken of persons who did not testify at trial.

*Administrative and Clerical Work*

The defendants object to billing entries for "administrative" tasks. Although they do not identify specific entries, they object to tasks including "sending emails for scheduling, saving documents to an electronic file, taking lunch, and transporting files to court."[27] Courts routinely reduce fee awards for tasks that are administrative in nature such as

---

[24] Defs.' Opp'n at 5–6.

[25] Pls.' Reply at 11.

[26] *Id.*

[27] Defs.' Opp'n at 6.

scheduling, printing, organizing binders, and paying invoices. *See, e.g.*, *Pa. State Lodge Fraternal Ord. Of Police v. Twp. of Springfield*, No. 23-cv-332, 2024 WL 1219960, at *5 (E.D. Pa. Mar. 21, 2024) ("[F]iling- and scheduling-related tasks and communications are administrative in nature, and as such, the fees incurred on those tasks are not appropriately shifted to Defendants."); *Sheffer*, 290 F. Supp. 2d at 549 ("Clerical tasks should not be billed at senior associate or paralegal rates."). So will we.

The plaintiffs do not appear to contest the fees for administrative tasks except as it applies to the administration of Jung's estate.[28] Raising an estate was a necessary step to pursue the present action. *Harvey v. Mohammed*, 951 F. Supp. 2d 47, 57–58 (D.D.C. 2013) ("The costs of establishing th[e] estate were necessary to the pursuit of the § 1983 action . . . ."). We will not reduce the award for those fees. However, there are many administrative tasks that are excessive, unnecessary, or are not adequately documented. After careful review of the plaintiffs' request, we reduce the fee award by $25,092.00 for administrative tasks. For an accounting on the deductions made, see Appendix B.

The plaintiffs include invoices for various office supplies.[29] Generally, "the cost of office supplies is not recoverable as a cost." *Becker v. ARCO Chem. Co.*, 15 F. Supp. 2d 621, 636 (E.D. Pa. 1998). These costs are considered administrative overhead and are not recoverable. We find it unreasonable to seek compensation for expenses including shipping and parking fees.[30] We reduce the fee award by an additional $138.47.

---

[28] *See* Pls.' Reply at 14 ("Defendants attempt to spin caselaw limiting recovery for fees for clerical 'or administrative' tasks into a bar on recovery for 'tasks and costs of administration of the estate, which was not a litigation activity.'").

[29] *See* Pls.' Pet. Ex. 10.

[30] *See id.*

*Evidence Not Relevant to or Used Against the City*

The defendants object to fees associated with several witnesses not used against the City.[31] They note that the plaintiffs claim not to seek reimbursement for expenses related to a correctional nursing expert who did not testify at trial.[32] However, the plaintiffs' petition contains billing entries related to the nursing expert.[33] The plaintiffs do not justify these fees in their reply and do not address the defendants' objections. Because the plaintiffs fail to explain how these fees relate to the defendants from whom they seek reimbursement, we reduce the fee award by $6,519.00.

The defendants also object to "billing related to experts that were not only not used at trial, but who produced no report provided in discovery."[34] Similarly, the plaintiffs do not respond to these objections, other than making a general argument that they are entitled to compensation for time "reasonably expended on litigation."[35]

We agree with the defendants that the plaintiffs do not sufficiently "connect[] that billing to any of the evidence used in this case."[36] For that reason, we reduce the fee award by $2,300.00 for the unsupported billing. For an accounting of the deductions made, see Appendix C.[37]

---

[31] Defs.' Opp'n at 7–8.

[32] *See id.*; Pls.' Pet. at 15 ("Plaintiffs have deducted . . . fees relating to a fourth correctional nursing expert who did not testify against the City Defendants.").

[33] *See* Defs.' Opp'n at 7 n.9. Although the defendants state that there are costs "related to expert Roscoe's report," plaintiffs' list of costs does not include any costs for Roscoe except $8.40 in shipping fees to send a USB drive—which we deducted for other reasons. *See* Pls.' Pet. Ex. 10 at 137 of 138.

[34] Defs.' Opp'n at 8.

[35] *See* Pls.' Reply at 14 (citing *Webb v. Bd. of Educ. of Dyer Cnty.*, 471 U.S. 234, 242 (1985)).

[36] *See* Defs.' Opp'n at 8.

[37] The defendants separately object to billing entries for "work done solely related to the Nurse Apollon and or for communication with YesCare." *See* Defs.' Opp'n at 8. Rather than provide specific objections to entries, the defendants provide a date range of "3/25/27 [sic] through 2/12/26." *Id.* Further, the

*Errors in Billing*

The defendants contend that attorney Hu's fee total was improperly calculated because of a discrepancy between the "subtotal" listed in plaintiffs' Exhibit 6 and the grand total listed in plaintiffs' Exhibit 1.[38] This is merely a typo as the grand total reflects the appropriate multiplication (455.2 * 127,456).[39] This is not a ground for reduction.

The defendants argue that the plaintiffs improperly billed for Lolo Serrano as an attorney when she was not yet admitted to the bar.[40] Serrano was admitted on October 20, 2025. We will not award fees for the work conducted by Serrano prior to her admission to the bar. Therefore, we reduce the fee award by $1,880.00.[41]

*Partial Degree of Success*

Finally, the defendants contend that the fee request is excessive because the plaintiffs achieved only a partial degree of success.[42] They contend that "the judgment amount was . . . less than 15% of the amount sought."[43] The plaintiffs counter that they made the demand discussed by the defendants at the early stages of litigation prior to discovery.[44] On January 15, 2025, a settlement conference was held a month before

---

defendants' objections lack specificity. Without proper support for these objections, we decline to reduce fees.

[38] *See id.* at 8.

[39] *See* Pls.' Reply at 13.

[40] Defs.' Opp'n at 8.

[41] 10.2 hours were billed at a rate of $235 per hour from September 18, 2025, to October 15, 2025. *See* Pls.' Pet. Ex. 8 at 102 of 138. Because we already rejected the billing entry for the deposition of Shawn Jay, it was not considered in this calculation—only the remaining eight hours.

[42] *See* Defs.' Opp'n at 9.

[43] *See id.* This calculation is based on a $15,000,000 initial demand made to all defendants in this action. *id.*

[44] *See* Pls.' Reply at 5.

trial.[45] The plaintiffs offered to settle with all defendants for $4,000,000.[46] The YesCare defendants settled for $1,200,000.[47] The City defendants offered to settle for $750,000, less than half the amount the jury awarded.[48]

The Supreme Court has instructed that we must "consider the relationship between the extent of success and the amount of the fee award." *Hensley*, 461 U.S. at 438. The Third Circuit measures the extent of success by looking at (1) "the difference between the relief sought and achieved"; and (2) the "significance of the legal issue decided and whether the litigation served a public purpose." *Jama v. Esmor Corr. Servs., Inc.*, 577 F.3d 169, 176 (3d Cir. 2009). Therefore, we look at the significance of the verdict, not only its monetary value.

The plaintiffs' opening demand was $15,000,000. An initial demand in a civil rights action, especially with multiple defendants, does not always reflect "a fair measure of what a party is truly seeking in damages." *Lohman v. Duryea Borough*, 574 F.3d 163, 169 (3d Cir. 2009). Indeed, offers made closer to trial are often more indicative of a reasonable number grounded in careful calculation based on evidence obtained during discovery. *See id.* Consequently, we look at the plaintiffs' success in light of the settlement negotiations a month before trial.

At the settlement conference, the plaintiffs demanded $4,000,000 to settle all claims against all defendants.[49] They negotiated with the YesCare defendants for

---

[45] *See id.* Ex. 2.

[46] *See id.*

[47] *See id.*

[48] *See id*. The defendants do not dispute these amounts.

[49] *Id.* Ex. 2 at 4.

$1,200,000 "in light of YesCare's financial problems."[50] At trial, the jury awarded $1,670,000 against the City defendants. In total, the plaintiffs received $2,870,000 from all parties. This is a substantial amount, and not far from plaintiffs' last demand. Further, the amount awarded at trial was more than double what the city offered.[51]

The plaintiffs' initial $15,000,000 demand does not change our analysis. The Third Circuit upheld a district court's decision not to reduce fees when the plaintiff only received 5% of her demand. *See Mancini*, 836 F.3d at 320–21. In *Mancini*, the plaintiff prevailed on only one of fifteen claims. *Id.* The Third Circuit found that measuring the degree of success "is left to the district court's discretion." *Id.* at 321. Here, the plaintiffs' success was substantial.

The litigation also served an important public purpose. As the plaintiffs articulate, they initiated the litigation in part to bring light "to the inhumane conditions of the Philadelphia jails" in hopes of "generating enough public accountability to reduce the likelihood that such a torturous death would occur again."[52] These are important goals that advance efforts to increase transparency, accountability, and uphold the constitutional rights of incarcerated individuals.[53] Therefore, we find the plaintiffs have achieved both monetary and public-purpose success.

Our inquiry does not end here. The Supreme Court has instructed that "[a] reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley*, 461 U.S. at 440. We recognize that the

---

[50] *Id.* Ex. 2 at 5–6.

[51] *Id.* Ex. 2 at 3.

[52] *Id.* Ex. 2 at 6–7.

[53] *See id.* Ex. 2 at 6–8.

plaintiffs have not succeeded on all their claims. However, as previously discussed, those claims share a common core of facts and are based on related legal theories. This is not grounds for a fee reduction as "a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Id.*; *see also Mancini*, 836 F.3d at 321 (finding the district court did not abuse its discretion in holding that "although [the plaintiff] ultimately prevailed only on one claim and received a portion of the relief she sought, reduction would be inappropriate because her claims are interconnected"). In light of the success obtained by the plaintiff, we will not further reduce the award based on the plaintiffs' degree of success.

## Conclusion

After reducing fees and costs, we will award attorneys' fees and costs to the plaintiffs in the amount of $923,458.66.

Appendix A

| | Deposition | Credited Attorney[54] | Additional Attorneys | Hours Deducted | Amount Reduced |
|---|---|---|---|---|---|
| 1 | Gena Frasier[55] | Grote | Holston, Rashatwar | 6.5 | $2,435.5 |
| 2 | Wanda Bloodsaw[56] | Grote | Holston, Rashatwar | 5.5 | $2,067.5 |
| 3 | Maureen Gay[57] | Grote | Holston, Rashatwar, Hu, Paralegal | 13.2 | $3,605 |
| 4 | Blair Cabellos[58] | Hu | Grote, Holston, Rashatwar, Paralegal | 12.5 | $5,342.5 |
| 5 | Blanche Carney[59] | Grote | Rashatwar, Hu, Serrano, Paralegal | 11 | $4,080 |
| 6 | Mariesha Apollon[60] | Grote | Rashatwar, Hu, Serrano, Paralegal | 13.4 | $3,810 |
| 7 | Lydna Witkowski[61] | Rashatwar | Grote, Hu, Serrano | 9.7 | $1,917 |
| 8 | Shawn Jay[62] | Hu | Rashatwar, Serrano, Paralegal | 8.7 | $2,557 |
| 9 | Xavier Beaufort[63] | Serrano | Grote, Hu, Paralegal | 4.6 | $1,340 |

[54] Neither party's briefing indicates which attorney took or defended each deposition. The parties did not attach any deposition transcripts. We exercised our judgment based on the billing records to determine who to credit for the deposition.

[55] *See* Pls.' Pet. Ex. 3 at 24 of 138, Ex. 4 at 54 of 138, Ex. 5 at 65 of 138.

[56] *See id.* Ex. 3 at 24 of 138, Ex. 4 at 54 of 138, Ex. 5 at 65 of 138.

[57] The timesheet entries for attorneys Holston and Hu contain block billing for 8 and 7 hours respectively, which account for multiple tasks. *See id.* Ex. 4 at 54 of 138, Ex. 6 at 82 of 138. Because the plaintiffs have not specified the time billed for the deposition, we deduct 3.5 hours from each commensurate with the hours logged by attorneys Grote and Rashatwar. *See id.* Ex. 3 at 26 of 138, Ex. 4 at 65 of 138.

[58] *See id.* Ex. 3 at 25 of 138, Ex. 4 at 54 of 138, Ex. 5 at 58 of 138, Ex. 6 at Ex. 9 at 127 of 138.

[59] *See id.* Ex. 3 at 31 of 138, Ex. 5 at 66 of 138, Ex. 6 at 83 of 138, Ex. 8 at 103 of 138.

[60] *See id.* Ex. 3 at 31 of 138, Ex. 5 at 66 of 138, Ex. 6 at 84 of 138, Ex. 8 at 104 of 138.

[61] *See id.* Ex. 3 at 32 of 138, Ex. 5 at 66 of 138, Ex. 6 at 84 of 138, Ex. 8 at 105 of 138.

[62] *See id.* Ex. 5 at 65 of 138, Ex. 6 at 83 of 138, Ex. 8 at 102 of 138, Ex. 9 at 128 of 138.

[63] It is not clear who conducted this deposition. Attorney Hu bills 3 hours, but the records indicate she "assist[ed]" with the deposition. *See id.* Ex. 6 at 84 of 183 ("[R]eviewing records to assist with beaufort

| | | | | | |
|---|---|---|---|---|---|
| 10 | Lalitha Trivikram[64] | Grote | Hu, Serrano | 10 | $2,620 |
| 11 | Arthur Wallenstein[65] | Rashatwar | Grote, Hu | 6 | $2,340 |
| 12 | Patricia Powers[66] | Grote | Hu, Paralegal | 4.7 | $1,180 |
| 13 | Sandy Varghese[67] | Grote | Hu, Paralegal | 5.7 | $1,380 |
| 14 | Plaintiffs[68] | Grote | Hu, Holston | 6 | $1,935 |
| 15 | Jeoboham[69] | Hu | Grote, Serrano | 5.2 | $1,672.5 |

deposition."). The paralegal's billing entry states "helping Lolo [Serrano] prep Zoom." *See id.* Ex. 9 at 129 of 138. Because Serrano's billing records indicate extensive preparation for the deposition, we are inclined to credit Serrano. *See id.* Ex. 8 at 103–05 of 138.

[64] *See id.* Ex. 3 at 32 of 138, Ex. 6 at 84 of 138, Ex. 8 at 106 of 138.

[65] *See id.* Ex. 3 at 35 of 138, Ex. 5 at 68 of 138. Ex. 6 at 85 of 138.

[66] *See id.* Ex. 3 at 30 of 138, Ex. 6 at 83 of 138, Ex. 9 at 128 of 138. The defendants claim that attorney Serrano billed for this deposition, but the billing entries for the relevant dates do not show any billing entries for Serrano attending the deposition. *See* Defs.' Opp'n at 5 n.6.

[67] *See* Pls.' Pet. Ex. 3 at 31 of 138, Ex. 6 at 83 of 138, Ex. 9 at 128 of 138. The defendants claim that attorney Serrano billed for this deposition, but the billing entries for the relevant dates do not show any billing entries for Serrano attending the deposition. *See* Defs.' Opp'n at 5 n.6.

[68] *See* Pls.' Pet. Ex. 3 at 26 of 138, Ex. 4 at 54 of 138, Ex. 6 at 82 of 138. The defendants claim that Serrano billed for this deposition, but this deposition took place on September 8, 2025, ten days before Serrano's first billing entry. *See* Pls.' Pet. Ex. 8 at 102 of 138 (showing the first billing entry on "9/18/25"). Additionally, both billing entries contain block billing. We deduct three hours from each billing entry, commensurate with the amount of time attorney Grote billed.

[69] *See id.* Ex. 3 at 32 of 138, Ex. 6 at 84 of 138, Ex. 8 at 106 of 138.

Appendix B

| | Date | Entry | Hours | Fee Reduction | Attorney |
|---|---|---|---|---|---|
| 1 | 2/28/24 | "scanning medical records"[70] | 2.5 | $500 | Paralegal |
| 2 | 8/19/24 | "legal team meeting to discuss defendants to name, complaint review process, scheduling meeting with expert and scheduling meeting with clients"[71]<br><br>[This billing entry totals .8 hours. We allocate .3 to "scheduling meeting with expert and scheduling meeting with clients." We allocate the remainder to the additional tasks.] | .3 | $150 | Grote |
| 3 | 2/14/25 | "draft meeting agenda and email co-counsel to schedule meeting"[72] | .3 | $150 | Grote |
| 4 | 2/15/25 | "work on legal team agenda; email ALC co-counsel about meeting and next steps"[73] | .2 | $100 | Grote |
| 5 | 2/18/25 | "jung bate stamp"[74] | .2 | $40 | Paralegal |
| 6 | 5/28/25 | "meet and confer with Pestrak regarding outstanding discovery from City; meeting with Nia and Rupalee to discuss next steps in discovery, mediation preparation; review training list sent by Nia and ask City to provide; review draft protective order and email opposing counsel copy of draft protective order; email clients to schedule next meeting"[75] | .2 | $100 | Grote |

[70] *Id.* Ex. 9 at 125 of 138.

[71] *Id.* Ex. 3 at 13 of 138.

[72] *Id.* Ex. 3 at 15 of 138.

[73] *Id.*

[74] *Id.* Ex. 9 at 126 of 138.

[75] *Id.* Ex. 3 at 20 of 138.

| | | | | | |
|---|---|---|---|---|---|
| | | [This billing entry totals 1.6 hours. We allocate .2 to "email clients to schedule next meeting" and the remainder to the additional tasks.] | | | |
| 7 | 6/5/25 | "MAR analysis / tabbing"[76]<br><br>[This billing entry totals 4 hours. We allocate .5 to "tabbing" and the remainder to the additional tasks.] | .5 | $140 | Hu |
| 8 | 6/10/25 | "reviewing yescare disco and tabbing"[77]<br><br>[This billing entry totals 3.5 hours. We allocate .5 to "tabbing" and the remainder is allocated to the other tasks.] | .5 | $140 | Hu |
| 9 | 6/11/25 | "review expert materials from Hayden Smith; talk with Margo about YesCare production, organizing it, potential responses; download zoom links for depositions"[78]<br><br>[This billing entry totals 1.1 hours. We allocate .2 to "download zoom links for depositions" and the remainder to the additional tasks.] | .2 | $100 | Grote |
| 10 | 6/11/25 | "reviewing and tabbing old and new discovery"[79]<br><br>[This billing entry totals 4 hours. We allocate .5 to "tabbing" and the remainder to the additional tasks.] | .5 | $140 | Hu |
| 11 | 6/11/25 | "jung depo scheduling"[80] | 1.9 | $380 | Paralegal |

[76] *Id.* Ex. 6 at 80 of 138.

[77] *Id.* Ex. 6 at 81 of 138.

[78] *Id.* Ex. 3 at 21 of 138.

[79] *Id.* Ex. 6 at 81 of 138.

[80] *Id.* Ex. 9 at 126 of 138.

| | | | | | |
|---|---|---|---|---|---|
| 12 | 6/12/25 | "tabbing defendants' discovery"[81] | 5 | $1,400 | Hu |
| 13 | 6/13/25 | "jung depo scheduling, PDP visit research, Telegram"[82]<br><br>[This billing entry totals 1 hour. We allocate .5 hours to "jung depo scheduling" and the remainder to the additional tasks.] | .5 | $100 | Paralegal |
| 14 | 6/23/25 | "email experts about mediation schedule; email Tom re: third-party complaint timing"[83]<br><br>[This billing entry totals .2 hours. We allocate .1 to "email experts about mediation schedule" and the remainder to the additional tasks.] | .1 | $50 | Grote |
| 15 | 6/25/25 | "jung depo cancellations"[84] | .2 | $40 | Paralegal |
| 16 | 7/10/25 | "review recent discovery production from YesCare, email Tom Gregory to schedule call tomorrow; message co-counsel about recent discovery production"[85]<br><br>[This billing entry totals .7 hours. We allocate .1 to "email Tom Gregory to schedule call tomorrow" and the remainder to the additional tasks.] | .1 | $50 | Grote |
| 17 | 8/13/25 | "review draft responses to Apollon discovery from Margo; email clients to schedule meeting to review discovery responses and update on discovery; message co-counsel about next | .1 | $50 | Grote |

[81] *Id.* Ex. 6 at 81 of 138.

[82] *Id.* Ex. 9 at 126 of 138.

[83] *Id.* Ex. 3 at 22 of 138.

[84] *Id.* Ex. 9 at 126 of 138.

[85] *Id.* Ex. 3 at 23 of 138.

| | | | | | |
|---|---|---|---|---|---|
| | | steps; review Frasier's discovery production"[86]<br><br>[This billing entry totals .5 hours. We allocate .1 to "email clients to schedule meeting to review discovery responses and update on discovery." We allocate the remainder to the additional tasks.] | | | |
| 18 | 8/15/25 | "email Kaminsky about Apollon deposition date; email Tom Gregory about outstanding discovery; email clients with calendar invite for meeting"[87]<br><br>[This billing entry totals .3 hours. We allocate .1 to "email clients with calendar invite for meeting" and the remainder to the additional tasks.] | .1 | $50 | Grote |
| 19 | 8/18/25 | "deposition preparation, print exhibits, review outline and review discovery; deposition of Frasier"[88]<br><br>[This billing entry totals 5.3 hours. We allocate .2 hours to "print exhibits" and the remainder to the additional tasks.] | .2 | $100 | Grote |
| 20 | 8/22/25 | "witness book scanning"[89] | .4 | $80 | Paralegal |
| 21 | 8/28/25 | "jung cabellos depo scheduling"[90] | .3 | $60 | Paralegal |
| 22 | 9/1/25 | "email experts Dr. Venters and Dr. Williams to schedule consultations; email notice for Apollon deposition to Kaminsky; | .3 | $150 | Grote |

[86] *Id.* Ex. 3 at 24 of 138.

[87] *Id.*

[88] *Id.*

[89] *Id.* Ex. 9 at 126 of 138.

[90] *Id.* Ex. 9 at 127 of 138.

| | | | | | |
|---|---|---|---|---|---|
| | | message with Margo about Cabellos deposition"[91]<br><br>[This billing entry totals .8 hours. We allocate .3 to "email experts Dr. Venters and Dr. Williams to schedule consultations" and the remainder to the additional tasks.] | | | |
| 23 | 9/9/25 | "email Tom Gregory about hospital/er records; email defs counsel about extending discovery and deposition scheduling; print documents for mediation; discuss mediation with Margo"[92]<br><br>[This billing entry totals 1.1 hours. We allocate .2 to "print documents for mediation" and the remainder to the additional tasks.] | .2 | $100 | Grote |
| 24 | 9/17/25 | "cabellos transcript and media saving in MyCase"[93] | .5 | $100 | Paralegal |
| 25 | 9/22/25 | "Jung doc organization phone call with bret, organizing documents for experts"[94] | 2.4 | $480 | Paralegal |
| 26 | 10/6/25 | "jung – paying depo invoice and scheduling depos"[95] | .5 | $100 | Paralegal |
| 27 | 10/8/25 | "scheduling depos, disco organization"[96] | 3.2 | $640 | Paralegal |
| 28 | 10/9/25 | "deposition scheduling"[97] | .2 | $40 | Paralegal |
| 29 | 10/14/25 | "review draft addendum to confidentiality order; email opposing counsel about addendum; send Corinne | .2 | $100 | Grote |

---

[91] *Id.* Ex. 3 at 25 of 138.

[92] *Id.* Ex. 3 at 26 of 138.

[93] *Id.* Ex. 9 at 127 of 138.

[94] *Id.*

[95] *Id.*

[96] *Id.* Ex. 9 at 128 of 138.

[97] *Id.*

| | | | | | |
|---|---|---|---|---|---|
| | | instructions for gathering exhibits for deposition; email corrections expert; consult with Dr. Venters about upcoming 30(b)(6) depositions"[98]<br><br>[This billing entry totals 1.3 hours. We allocate .2 to "send Corinne instructions for gathering exhibits for deposition" and the remainder to the other tasks.] | | | |
| 30 | 10/15/25 | "doc organization, expert call, depo scheduling, etc."[99]<br><br>[This billing entry totals 1.9 hours. We allocate 1.4 to "doc organization . . . depo scheduling, etc." and the remainder to the additional tasks.] | 1.4 | $280 | Paralegal |
| 31 | 10/17/25 | "email zoom link for Apollon deposition to opposing counsel"[100] | .1 | $50 | Grote |
| 32 | 10/22/25 | "jung depo scheduling"[101] | .5 | $100 | Paralegal |
| 33 | 10/27/25 | "jung usb for experts"[102] | .3 | $60 | Paralegal |
| 34 | 10/28/25 | "expert docs, saving depo transcript"[103] | .7 | $140 | Paralegal |
| 35 | 10/31/25 | "scheduling depos"[104] | .3 | $60 | Paralegal |
| 36 | 11/3/25 | "saving videos to usb drive, usb drive set up, deposition scheduling. bates stamping doc for bret, going to usps to mail usb drive, paying invoices"[105] | 2 | $400 | Paralegal |
| 37 | 11/4/25 | "jung depo scheduling"[106] | .3 | $60 | Paralegal |

[98] *Id.* Ex. 3 at 30 of 138.

[99] *Id.* Ex. 9 at 128 of 138.

[100] *Id.* Ex. 3 at 30 of 138.

[101] *Id.* Ex. 9 at 128 of 138.

[102] *Id.*

[103] *Id.*

[104] *Id.*

[105] *Id.* Ex. 9 at 129 of 138.

[106] *Id.*

| | | | | | |
|---|---|---|---|---|---|
| 38 | 11/5/25 | "Finish first pass Jung med rec reviews and full-complete [sic] timeline with batestamps, dates, record type, description"[107]<br><br>[This billing entry totals 5 hours. We allocate 1 to "full-complete [sic] timeline with batestamps, dates, record type, description." We allocate the remainder to the additional tasks.] | 1 | $235 | Serrano |
| 39 | 11/7/25 | "jung depo scheduling"[108] | .4 | $80 | Paralegal |
| 40 | 11/10/25 | "depo scheduling"[109] | .7 | $140 | Paralegal |
| 41 | 11/10/25 | "cellmate visit scheduling, team meeting"[110]<br><br>[This billing entry totals 2.2 hours. We allocate .7 to "cellmate visit scheduling" and the remainder to the additional tasks.] | .7 | $140 | Paralegal |
| 42 | 11/11/25 | "legal team meeting to discuss depositions, summary judgment strategy, potential witness outreach; review case documents; schedule client meeting"[111]<br><br>[This billing entry totals 1.9 hours. We allocate .2 to "schedule client meeting" and the remainder to the additional tasks.] | .2 | $100 | Grote |
| 43 | 11/11/25 | "legal team meeting to discuss depositions, summary judgment strategy, potential witness outreach; review case | .2 | $56 | Hu |

[107] *Id.* Ex. 8 at 104 of 138.

[108] *Id.* Ex. 9 at 129 of 138.

[109] *Id.*

[110] *Id.*

[111] *Id.* Ex. 3 at 32 of 138.

| | | | | | |
|---|---|---|---|---|---|
| | | documents; schedule client meeting”[112]<br><br>[This billing entry totals 2 hours. We allocate .2 to “schedule client meeting” and the remainder to the additional tasks.] | | | |
| 44 | 11/14/25 | “beaufort prep, printing, final draft questions”[113]<br><br>[This billing entry totals 1.5 hours. We allocate .5 hours to “printing” and the remainder to the additional tasks.] | .5 | $117.5 | Serrano |
| 45 | 11/14/25 | “depo scheduling”[114] | .2 | $40 | Paralegal |
| 46 | 11/20/25 | “expenses”[115] | .7 | $140 | Paralegal |
| 47 | 11/24/25 | “emails, experts, doc organization, etc.”[116] | 1 | $200 | Paralegal |
| 48 | 11/26/25 | “Third-party med records finishing up, cite checks, OCR and upload; Jung med records review, chronological spreadsheet entry”[117]<br><br>[This billing entry totals 3.5 hours. We allocate 1 hour to “chronological spreadsheet entry” and the remainder to the additional tasks.] | 1 | $235 | Serrano |
| 49 | 11/26/25 | “expert videos, getting usb drive, jung expenses”[118] | 1.5 | $300 | Paralegal |
| 50 | 12/3/25 | “usb drive cover letter”[119] | .4 | $80 | Paralegal |
| 51 | 12/3/25 | “meeting and misc jung admin tasks”[120] | .7 | $140 | Paralegal |

[112] *Id.* Ex. 6 at 84 of 138.

[113] *Id.* Ex. 8 at 105 of 138.

[114] *Id.* Ex. 9 at 130 of 138.

[115] *Id.*

[116] *Id.*

[117] *Id.* Ex. 8 at 108 of 138.

[118] *Id.* Ex. 9 at 130 of 138.

[119] *Id.*

[120] *Id.*

| | | | | | |
|---|---|---|---|---|---|
| | | [This billing entry totals 2.2 hours. We allocate .7 to "misc jung admin tasks" and the remainder to the additional tasks.] | | | |
| 52 | 12/4/25 | "chat, scheduling"[121] | .7 | $140 | Paralegal |
| 53 | 12/9/25 | "jung- batestamps and chat"[122] | .5 | $100 | Paralegal |
| 54 | 12/11/25 | "paying invoices"[123] | .2 | $40 | Paralegal |
| 55 | 12/12/25 | "deposition invoice payment"[124] | .2 | $40 | Paralegal |
| 56 | 12/18/25 | [This billing entry was left blank and filed under the "Admin" category. Because there are not sufficient details about the task billed for, we deduct the entire amount.][125] | .8 | $160 | Paralegal |
| 57 | 12/19/25 | "finalizing appendixes, RCS, discussing daubert, video, and trial prep and deadlines"[126]<br><br>[This billing entry totals 4 hours. We allocate 1 to "finalizing appendixes" and the remainder to the additional tasks.] | 1 | $280 | Hu |
| 58 | 12/19/25 | "City brief and RCS finalization, video appendix"[127]<br><br>[This billing entry totals 1.5 hours. We allocate .5 hours to "video appendix" and the remainder to the additional tasks.] | .5 | $117.5 | Serrano |

[121] *Id.* Several of the following entries include "chat" as a task. Without any specificity as to what the "chat" consisted of or how it was relevant to the litigation, we will not award fees.

[122] *Id.*

[123] *Id.*

[124] *Id.*

[125] *Id.* Ex. 9 at 131 of 138.

[126] *Id.* Ex. 6 at 86 of 138.

[127] *Id.* Ex. 8 at 111 of 138.

| | | | | | |
|---|---|---|---|---|---|
| 59 | 12/19/25 | "Appendices finalization, printing/scanning/merging for final filing"[128] | 1 | $235 | Serrano |
| 60 | 12/19/25 | "appendices exhibits list consolidation for trial exhibit reference"[129] | .5 | $117.5 | Serrano |
| 61 | 12/19/25 | "chat messages catchup and communication"[130] | .5 | $100 | Paralegal |
| 62 | 12/22/25 | "Exhibit list appendices pulling and spreadsheet creation"[131] | 4 | $1,120 | Hu |
| 63 | 12/22/25 | "Exhibit list appendices pulling and spreadsheet creation"[132] | 2 | $470 | Serrano |
| 64 | 12/22/25 | "Deposition cover pages for exhibit pulling"[133] | .2 | $47 | Serrano |
| 65 | 12/24/25 | "Exhibit list ordering/relabeling"[134] | 1 | $235 | Serrano |
| 66 | 12/24/25 | "med records spreadsheet review and exhibits list bates stamp/description tune-up"[135]<br><br>[This billing entry totals 1 hour. We allocate .5 hours to "exhibits list bates stamp/description tune-up" and the remainder to the additional tasks.] | .5 | $117.5 | Serrano |
| 67 | 12/26/25 | "Exhibit list edits"[136] | .3 | $70.5 | Serrano |
| 68 | 12/26/25 | "Exhibit bates check, document pulling as double-check, drive creation for trial"[137] | 2 | $470 | Serrano |
| 69 | 12/30/25 | "email update to clients and schedule visit with them; outline | .2 | $100 | Grote |

[128] *Id.*

[129] *Id.*

[130] *Id.* Ex. 9 at 131 of 138.

[131] *Id.* Ex. 6 at 86 of 138.

[132] *Id.* Ex. 8 at 112 of 138.

[133] *Id.* Ex. 8 at 111 of 138.

[134] *Id.* Ex. 8 at 112 of 138.

[135] *Id.*

[136] *Id.* Ex. 8 at 113 of 138.

[137] *Id.*

| | | | | | |
|---|---|---|---|---|---|
| | | pretrial memorandum; review motion in limine research”[138]<br><br>[This billing entry totals 1.3 hours. We allocate .2 to scheduling a visit with clients and the remainder to the additional tasks.] | | | |
| 70 | 1/23/26 | “finalize and file briefs in opposition to City’s motions in limine; email clients to schedule meeting to discuss trial schedule and preparation”[139]<br><br>[This billing entry totals 1.8 hours. We allocate .2 to “email clients to schedule meeting to discuss trial schedule and preparation.” We allocate the remainder to the additional tasks.] | .2 | $100 | Grote |
| 71 | 1/29/26 | “print documents to prepare for oral argument”[140] | .7 | $350 | Grote |
| 72 | 2/4/26 | “jung - transcript ordering, 3 hour meeting, follow up tasks creating folders and looking at handcarts”[141]<br><br>[This billing entry totals 3.8 hours. We allocate .8 to “transcript ordering . . . follow up tasks creating folders and looking at handcarts.” The remainder is allocated to the other tasks.] | .8 | $160 | Paralegal |
| 73 | 2/5/26 | “email experts and clients with scheduling update”[142] | .2 | $100 | Grote |

[138] *Id.* Ex. 3 at 37 of 138.

[139] *Id.* Ex. 3 at 40 of 138.

[140] *Id.*

[141] *Id.* Ex. 9 at 131 of 138.

[142] *Id.* Ex. 3 at 41 of 138.

| | | | | | |
|---|---|---|---|---|---|
| 74 | 2/5/26 | "Facts x witness and exhibit spreadsheet for trial prep; exhibit pulls for some missing ones"[143] | 4.5 | $1,057.5 | Serrano |
| 75 | 2/5/26 | "exhibit binder assemble accessible drive from original list"[144] | 2 | $470 | Serrano |
| 76 | 2/6/26 | "SJ, MIL, Daubert, other motions, orders uploading and organization for quick access"[145] | 2 | $470 | Serrano |
| 77 | 2/10/26 | "[Emails] with various team members"[146] | 1 | $280 | Hu |
| 78 | 2/10/26 | "legal team meeting, office supply list, subpoena edits"[147]<br><br>[This billing entry totals 2.2 hours. We allocate .5 hours to "office supply list" and the remainder to the additional tasks.] | .5 | $100 | Paralegal |
| 79 | 2/15/26 | "work on Trivikram outline; review witness outlines from Nia; email Venters to schedule prep session; call with Evelyn; prep session with Roscoe"[148]<br><br>[This billing entry totals 5.4 hours. We allocate .2 to "email Venters to schedule prep session" and the remainder to the additional tasks.] | .2 | $100 | Grote |
| 80 | 2/19/26 | "work on outlines for Williams, Carney; notes on closing; email Wallenstein to set up prep session"[149] | .2 | $100 | Grote |

[143] *Id.* Ex. 8 at 116 of 138.

[144] *Id.*

[145] *Id.*

[146] *Id.* Ex. 6 at 88 of 138. Without any specificity as to the subject matter of the emails, we categorize them as administrative.

[147] *Id.* Ex. 9 at 131 of 138.

[148] *Id.* Ex. 3 at 43 of 138.

[149] *Id.* Ex. 3 at 44 of 138.

| | | | | | |
|---|---|---|---|---|---|
| | | [This billing entry totals 3.2 hours. We allocate .2 to “email Wallenstein to set up prep session” and the remainder to the additional tasks.] | | | |
| 81 | 2/19/26 | “Jung lunch after court (includes food pickup)”[150] | 1.5 | $300 | Paralegal |
| 82 | 2/19/26 | “binder quote, supply ordering”[151] | .6 | $120 | Paralegal |
| 83 | 2/20/26 | “team meeting to prepare exhibit binders; prep session with Susan Lin on opening and closing arguments; session with Dr. Venters; schedule prep sessions”[152]<br><br>[This billing entry totals 7.3 hours. We allocate .2 to “schedule prep sessions” and 1 to “team meeting to prepare exhibit binders.” We allocate the remainder to the additional tasks.] | 1.2 | $600 | Grote |
| 84 | 2/20/26 | “trial attorney consultation opening/closing, visuals, exhibit entry; binder finalization for printers, exhibit culling discussion and Fedex file assembling; Corrine discussion binder logistics; dr Venters; office supply checks and USB restock; exhibit admission research”[153]<br><br>[This billing entry totals 8 hours. We allocate towards 5 to “binder finalization for printers, . . . Fedex file assembling . . . office supply checks and USB restock.” We allocate the remainder to the additional tasks.] | 5 | $1,175 | Serrano |

[150] *Id.* Ex. 9 at 132 of 138.

[151] *Id.*

[152] *Id.* Ex. 3 at 44 of 138.

[153] *Id.* Ex. 8 at 119 of 138.

| | | | | | |
|---|---|---|---|---|---|
| 85 | 2/20/26 | "exhibit binder fedex order and associated tasks"[154] | 3 | $600 | Paralegal |
| 86 | 2/21/26 | "depo printing and organization; Wallenstein and Williams calls; trial supply run for physical binders, USBs; exhibit-by-witness organization"[155]<br><br>[This billing entry totals 8 hours. We allocate 6 towards "depo printing and organization . . . trial supply run for physical binders, USBs; exhibit-by-witness organization." We allocate the remainder to the additional tasks.] | 6 | $1,410 | Serrano |
| 87 | 2/22/26 | "witness q drafting; binder printing received and ordering in binders, tabbing all five binders, print and add color exhibits, double-checks; backup/rebuttal exhibits printing, labeling, organizing, on drive and in paper"[156]<br><br>[This billing entry totals 9 hours. We allocate 7 hours towards "binding printing received and order in binders, tabbing all five binders, print and add color exhibits, labeling, organizing, on drive and in paper." We allocate the remainder to the additional tasks.] | 7 | $1,645 | Serrano |
| 88 | 2/23/26 | "Binders printing and organizing; additional exhibits – potential rebuttal, etc – printing and organizing; team meeting for last minute task distribution; USB finalization, digital exhibit renaming, organizing; witness | 6.5 | $1,527.5 | Serrano |

[154] *Id.* Ex. 9 at 132 of 138.

[155] *Id.* Ex. 8 at 119 of 138.

[156] *Id.*

| | | | | | |
|---|---|---|---|---|---|
| | | mock session runthrough; video-exhibit colloquy script for following along with different frames of player"[157]<br><br>[This billing entry totals 9 hours. We allocate 6.5 hours to "[b]inders printing and organizing; additional exhibits – potential rebuttal, etc – printing and organizing . . . USB finalization, digital exhibit renaming, organizing." We allocate the remainder to the additional tasks.] | | | |
| 89 | 2/23/26 | "gathering supplies (boxes, suitcases, totes, etc.) and food order"[158] | 1 | $200 | Paralegal |
| 90 | 2/24/26 | "day 1 – transport trial materials to court; notetaking; exhibit assistance, drafting direct examination questions and deposition review"[159]<br><br>[This billing entry totals 9 hours. We allocate 1 to "transport trial materials to court" and the remainder to the additional tasks.] | 1 | $280 | Hu |
| 91 | 2/24/26 | "day 1 – transport trial materials, binders, notes to court; notetaking; prep for next-day witness digital exhibit handling, exh. # notes insert on colloquy draft for pulling up"[160]<br><br>[This billing entry totals 8 hours. We allocate 1 to "transport trial materials, binders, notes to | 1 | $235 | Serrano |

[157] *Id.* Ex. 8 at 120 of 138.

[158] *Id.* Ex. 9 at 132 of 138.

[159] *Id.* Ex. 6 at 90 of 138.

[160] *Id.* Ex. 8 at 120 of 138.

| | | | | | |
|---|---|---|---|---|---|
| | | court" and the remainder to the additional tasks.] | | | |
| 92 | 2/26/26 | "day 3 – taking notes, assisting with exhibits, typing up notes and highlighting quotes for closing, transporting materials back to office"[161]<br><br>[This billing entry totals 8 hours. We allocate 1 to "transporting materials back to office" and the remainder to the additional tasks.] | 1 | $280 | Hu |
| 93 | 2/26/26 | "trial materials organizing, transporting, bankers box office storage"[162] | .8 | $188 | Serrano |
| 94 | 3/3/26 | "Call w Jim and Evelyn, clients, about press and got talking points from them"[163] | 1 | $385 | Rashatwar |
| 95 | 3/5/26 | "Call w Evelyn about comms and next steps in litigation, discussion about outcome and possible comms strategies"[164]<br><br>[This billing entry totals .5 hours. We allocate .3 to the discussion "about comms" and "possible comms strategies." We allocate the remainder to the additional tasks.] | .3 | $115.5 | Rashatwar |

[161] *Id.* Ex. 6 at 90 of 138.

[162] *Id.* Ex. 8 at 120 of 138.

[163] *Id.* Ex. 5 at 75 of 138.

[164] *Id.*

Appendix C

| | Date | Entry | Hours | Fee Reduced | Attorney |
|---|---|---|---|---|---|
| 1 | 6/13/25 | "consultation with correctional nursing expert Lori Roscoe work on mediation statement, message with team, email Lori Roscoe"[165] | 1.1 | $550 | Grote |
| 2 | 9/19/25 | "create list of documents for experts; email expert Roscoe; share expert review plan with co-counsel"[166]<br><br>[This billing entry totals .5 hours. We allocate .2 to "email expert Roscoe" and the remainder to the additional tasks.] | .2 | $100 | Grote |
| 3 | 10/2/25 | "talk with expert Lori Roscoe about case, documents to review, areas to focus on"[167] | 1.2 | $600 | Grote |
| 4 | 10/23/25 | "talk with Correctinal [sic] Nursing Expert Lori Roscoe"[168] | .7 | $350 | Grote |
| 5 | 11/19/25 | "outline possible SJ filing, discovery review tasks; review draft report from Roscoe; mtg with Lolo and Bassel to discuss record review"[169]<br><br>[This billing entry totals 1.9 hours. We allocate .5 to "review draft report from Roscoe" and the remainder to the additional tasks.] | .5 | $250 | Grote |

165 *Id.* Ex. 3 at 22 of 138.

166 *Id.* Ex. 3 at 28 of 138.

167 *Id.* Ex. 3 at 29 of 138.

168 *Id.* Ex. 3 at 31 of 138.

169 *Id.* Ex. 3 at 33 of 138.

| | | | | | |
|---|---|---|---|---|---|
| 6 | 11/19/25 | "legal research, review Montanez case; review updates to Venters report; review Roscoe report"[170]<br><br>[This billing entry totals 1.3 hours. We allocate .4 to "review Roscoe report" and the remainder to the additional tasks.] | .4 | $200 | Grote |
| 7 | 11/21/25 | "research review on medical negligence; consult with correctional nursing expert Lori Roscoe"[171]<br><br>[This billing entry totals 1 hour. We allocate .5 to "consult with correctional nursing expert Lori Roscoe" and the remainder to the additional tasks.] | .5 | $250 | Grote |
| 8 | 11/21/25 | "legal team mtg to discuss record review and summary judgment strategy; review Venters draft report; prepare emails for Venters and Roscoe and email team about expert follow-ups"[172]<br><br>[This billing entry totals 3.3 hours. We allocate .3 to "prepare emails for . . . Roscoe and email team about expert follow-ups." We allocate the remainder to the additional tasks.] | .3 | $150 | Grote |
| 9 | 12/1/25 | "review draft report from Lori Roscoe; review latest draft from Venters"[173]<br><br>[This billing entry totals 1.5 hours. We allocate .75 to "review draft report from Lori Roscie" and | .75 | $375 | Grote |

[170] *Id.*

[171] *Id.*

[172] *Id.*

[173] *Id.* Ex. 3 at 34 of 138.

| | | | | | |
|---|---|---|---|---|---|
| | | the remainder to the additional tasks.] | | | |
| 10 | 12/2/25 | "review latest version of report from Venters; review final report of Roscoe; review draft brief for summary judgment"[174]<br><br>[This billing entry totals 5 hours. We allocate 2 to "review final report of Roscoe" and the remainder to the additional tasks.] | 2 | $1000 | Grote |
| 11 | 12/15/26 | "Work on Trivikram outline; review witness outlines from Nia; email Venters to schedule prep session; call with Evelyn; prep session with Roscoe"[175]<br><br>[This billing entry totals 5.4 hours. We allocate 2 to "prep session with Roscoe" and the remainder to the additional tasks.] | 2 | $1000 | Grote |
| 12 | 11/21/25 | "[Call with] Lori Roscoe"[176] | .6 | $141 | Serrano |
| 13 | 12/1/25 | "Roscoe report review and comments"[177] | .5 | $117.5 | Serrano |
| 14 | 11/21/25 | "call w lori roscoe"[178] | 1 | $385 | Rashatwar |
| 15 | 2/15/26 | "witness prep lori roscoe"[179] | 2 | $770 | Rashatwar |
| 16 | 6/13/25 | "consultation with correctional nursing expert Lori Roscoe"[180] | 1 | $280 | Hu |
| 17 | 1/23/24 | "review expert report and cv of Dr. Philipson; email co-counsel about outreach to Dr. Philipson"[181] | .5 | $250 | Grote |

174 *Id.*

175 *Id.* Ex. 3 at 43 of 138.

176 *Id.* Ex. 8 at 106 of 138.

177 *Id.*

178 *Id.* Ex. 5 at 67 of 138.

179 *Id.* Ex. 5 at 72 of 138.

180 *Id.* Ex. 6 at 81 of 138.

181 *Id.* Ex. 3 at 10 of 138.

| | | | | | |
|---|---|---|---|---|---|
| 18 | 1/24/24 | "email Dr. Philipson regarding expert witness assistance"[182] | .2 | $100 | Grote |
| 19 | 1/30/24 | "draft retainer for Dr. Philipson"[183] | .4 | $200 | Grote |
| 20 | 3/22/24 | "email Dr. Philipson glucose records; email co-counsel to prepare for consultation tomorrow"[184] | 1.6 | $800 | Grote |
| 21 | 8/28/24 | "review medical records to send to Dr. Philipson"[185] | .9 | $450 | Grote |
| 22 | 6/4/25 | "review expert witness CV and fee schedule from Dr. Jonathan Williams and draft retainer agreement"[186] | .4 | $200 | Grote |
| 23 | 6/4/25 | "finalize and send deposition notices to defense counsel; finalize fee agreement and send to Dr. Williams."[187]<br><br>[This billing entry totals .4 hours. We allocate .2 to "finalize fee agreement and send to Dr. Williams" and the remainder to the additional tasks.] | .2 | $100 | Grote |
| 24 | 6/4/25 | "talk with corrections expert Gary Raney to get referrals for possible corrections experts to use"[188] | .4 | $200 | Grote |

[182] *Id.*

[183] *Id.*

[184] *Id.* Ex. 3 at 11 of 138.

[185] *Id.* Ex. 3 at 14 of 138.

[186] *Id.* Ex. 3 at 21 of 138.

[187] *Id.*

[188] *Id.*